NO. _____

---

## UNITED STATES COURT OF APPEALS

## FOR THE FEDERAL CIRCUIT

---

In Re: RICHARD CORNELIUS JACKSON, Petitioner.

---

PETITION FOR WRIT OF MANDAMUS TO THE MERIT SYSTEMS PROTECTION

BOARD IN CH-1221-23-0376-W-1 and CH-1221-24-0117-W-1

---

## PETITION FOR WRIT OF MANDAMUS

RICHARD CORNELIUS JACKSON

1023 25TH AVE.

BELLWOOD, IL 60104

PHONE: (312) 285-6390

*Pro Se* Petitioner

June 30, 2025

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………………..3-5

CERTIFICATE OF INTEREST…………………………………………………………………...6

STATEMENT OF RELATED CASES……………………………………………………………....7

I.     RELIEF SOUGHT…………………………………………………………….....8

II.    ISSUES PRESENTED…………………………………………………………….9

III.   PARTIES TO THE PROCEEDING…………………………………………………10

IV.   FACTUAL BACKGROUND…………………………………………………...11

V.    JURISDICTION…………………………………………………………..12

VI.   SUMMARY OF ARGUMENT……………………………………………………12

VII.  LEGAL STANDARD…………………………………………………………..13

VIII. ARGUMENT FOR WRIT……………………………………………………...14

    A.  The Administrative Judge has committed clear legal error as it relates to his jurisdiction analysis…………………………………………………………...19

    B.  This Court should Order the reassignment of Mr. Jackson's appeals……………20

    C.  The Petitioner has no other adequate means to attain the relief desired………….20

    D.  The proper circumstances exist for the issuance of the Writ of Mandamus……....20

IX.   COSTS ASSOCIATED WITH FILING THIS PETITION…………………………..21

X.    CONCLUSION AND PRAYER FOR RELIEF……………………………………...21

    CERTIFICATE OF COMPLIANCE……………………………………………..749

    CERTIFICATIONS……………………………………………………………749

    PETITIONER'S APPENDIX…………………………………………..750-752

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019)………………10

*Rickel v. Department of the Navy*, 31 F.4ᵗʰ 1358, 1365-66 (Fed. Cir. 2022……………….......10,16

*Briley v. NARA*, F.3d 1373 (Fed. Cir. 2001)………………………………………………………...10

*In re Innotron Diagnostics*, 800 F.2d 1077, 1081-82 (Fed. Cir. 1986) …………………………12

*Allied Chemical Corp. v. Daiflon, Inc*., 449 U.S. 33, 35 (1980)…………………………………14

*In re Newman*, 763 F.2d 407, 409-10 (Fed. Cir. 1985)…………………………………………..14

*Lamb v. Principi*, 284 F.3d 1378 (Fed. Cir. 2002)………………………………………………14

*Kerr v. U.S. Dist. Court for the N. Dist. of Cal*., 426 U.S. 394, 403 (1976)…………………..14

*Roche v. Evaporate Milk Ass'n*, 319 U.S. 21, 26 (1943)…………………………………………14

*Cheney v. US. Dist. Court for D.C*., 542 U.S. 367, 380-81 (2004)………………………………14

124 S. Ct. 2576, 159 L.Ed.2d 459 (2004)…………………………………………………………..14

*Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)…………………………………………………...14

*Cheney*, 542 U.S at 381……………………………………………………………………………14

*La Buy v. Howes Leather Co*., 352 U.S. 249, 255 (1957)………………………………………..14

*In re Nissim Corp*., 428 F. App'x 981, 983 (Fed.Cir. 2011)……………………………………...14

*Schucker v. FDIC,* 401 F.3d 1347 (Fed. Cir. 2005)………………………………………………14

*McLaughlin v. OPM,* 353 F.3d 1363 (Fed. Cir. 2004)………………………………………....15

*Shibuya v. USDA*, 119 MSPR 537 (2013)………………………………………………………..15

*Simmons v. Department of the Air Force*, 99 M.S.P.R. 28, ¶ 22 (2005)…………………………15

*Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11……………………………………16

*Carr*, 185 F.3d at 1323…………………………………………………………………………...16

*Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015)……………………………...16

*Soto, 2022 MSPB* 6, ¶ 18…………………………………………………………………………...16

*Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019)………………16

*Smith, 2022 MSPB* 4, ¶¶ 26-30…………………………………………………………………………16

*Miller v. Department of Justice*, 842 F.3d 1252, 1259-63 (Fed. Cir. 2016)……………………..16

*Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶14 (2015)………………………………17

*Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015)………………………...17

*Powers v. Dept. of Navy*, 97 MSPR 554 (2004)…………………………………………………17

*Lu*, *122 M.S.P.R. 335, ¶ 7*...………………………………………………………………………...17

*Rhee v. Dept. of Treasury*, 117 MSPR 640 (2012)………………………………………………17

*Kohler v. Dept. of Navy, 108 MSPR 510 (2008)*…………………………………………………17

*Board of Regents v. Roth,* 408 U.S. 564 (1972)…………………………………………………18

*Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591 (2008)………………………………………18

*McCarthy v. International Boundary and Water Commission,* 116 M.S.P.R. 594,, 18 (2011)…..18

*Polaroid Corp. v. Eastman Kodak Co.,* 867 F.2d 1415 (Fed.Cir. 1989)……………................8,19

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988)………………………..18,19

*Mason v. DHS*, 116 MSPR 135 (2011)…………………………………………………………...19

*Cassidy v. DOJ*, 118 MSPR 74 (2012)…………………………………………………………...19

*Eluhu v. VA*, 801 Fed. Appx. 952 (6th Cir. 2020 NP)…………………………………………19

*El-Gabrowny*, *supra*., citing *In re Drexel Burnham Lambert Inc*.,……………………………...19

861 F.2d 1307 (2d Cir. 1988)…………………………………………………………………19

*Shoaf v. Department of Agriculture*, 97 M.S.P.R. 68 ¶ 7 (2004)…………………………19

*Tao v. MSPB,* 855 F. App'x 716 (Fed. Cir. 2021 NP)…………………………………………20

*Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382 (Fed. Cir. 2018)…………...20

*Contreras v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1363, 1369 (Fed. Cir. 2017)……………20

*Webb v. Board of Ed. of Dyer County*, 471 U.S. 234, 243 (1985)…………………………………21

*Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546, 558-59 (1986)……..21

## **Statutes**

5 U.S.C. § 2302(b)(4)7…………………………………………………………………….....9

28 U.S.C. § 1651(a)…………………………………………………………………………...12

28 U.S.C. § 1331…………………………………………………………………………………12

5 U.S.C. § 7703(b)(1)…………………………………………………………………………12

28 U.S.C. § 1295(a)(9)……………………………………………………………………...12

5 U.S.C. § 703........…………………………………………….......…..........................12,20

5 U.S.C. § 2302(b)(8)……………………………………………………………………………15

5 USC § 2302(b)(9), 5 U.S.C. § 1221(e)(2)……...………………………………………...17

5 U.S.C. §706……………………………………………………………………………………18

5 U.S.C. §7703(c)……………………………………………………………………………..18

28 U.S.C. § 455(a)………………………………………………………………………………19

5 C.F.R. § 1201.92(b)…………………………………………………………………………20

28 U.S.C. § 2412(d)………………………………………………………………………...21

# <u>CERTIFICATE OF INTEREST</u>

Petitioner, Richard C. Jackson, hereby certifies that he is the sole real party, he represents no other entities, and has no parent corporations. Fed.Cir.R. 47.4 is not applicable.

Executed June 30, 2024                                       Respectfully Submitted,

By: _____

Richard C. Jackson

1023 25th Ave.

Bellwood, IL 60104

(312) 285-6390

Rcjackson83@outlook.com

*Pro Se* Petitioner

# STATEMENT OF RELATED CASES

Petitioner, Richard C. Jackson, previously filed a writ of mandamus for Merit Systems Protection Board (MSPB) cases **CH-1221-23-0376-W-1** and **CH-1221-24-0117-W-1**. The previous writ, under **Case No. 24-145**, was filed because the Petitioner's Individual Right of Action Appeals were not being processed by the MSPB. At the time of that filing, the MSPB cases languished for 15 months and 9 months respectively. Petitioner also wishes to inform the Court that he has a pending case with this Court filed pursuant to the Veterans Employment Opportunities Act, under **Case No. 2025-1614**, which is pending with the Court.

Executed June 30, 2025                    Respectfully Submitted,

By: _____

Richard C. Jackson

1023 25th Ave.

Bellwood, IL 60104

(312) 285-6390

Rcjackson83@outlook.com

*Pro Se* Petitioner

## **PETITION FOR WRIT OF MANDAMUS**

## **I.    RELIEF SOUGHT**

Petitioner, Richard Cornelius Jackson ("Mr. Jackson" or "Petitioner"), respectfully requests this honorable Court issue a writ of mandamus directing the Merit Systems Protection Board ("MSPB" or "Board") to, (i) withdraw AJ Daniel R. Fine ("AJ" or "AJ Fine"), from Mr. Jackson's current appeals and prevent his future assignment (ii) vacate AJ' Fine's jurisdiction analysis (iii) assign a new administrative judge without similar biases, prejudices or demonstrable favoritism, (iv) draw adverse inferences from the United States Citizenship and Immigration Services ("Agency"), failure to produce its response and file as ordered by the AJ (v) Order the MSPB stay processing of Mr. Jackson's Individual Right of Action ("IRA") appeals pending a ruling from this Court's decision on the writ (vi) Grant the subpoena seeking the appearance and testimony of a former Agency official who reviewed the Petitioner's grievance, (vii) issue any mandates and prohibitions as this Court deems appropriate.

## **II.    ISSUE PRESENTED**

1.   Whether AJ Fine clearly abused his discretion by refusing to disqualify himself from Petitioner's appeals;

2.   Whether AJ Fine clearly abused his discretion delaying a ruling on certification of interlocutory orders for appeal;

3.   Whether AJ Fine committed clear legal error when he failed to adhere to MSPB and the Federal Circuit's case precedent when analyzing Board jurisdiction;

4.   Whether AJ Fine has caused additional harm to the Petitioner's appeals by failing to complete processing/adjudication within the MSPB's 120-day standard without justification; and,

5.    Whether AJ Fine has caused additional harm to the Petitioner's prosecution of his appeals by failing to adhere to MSPB and Federal Circuit case precedent.

### III.    PARTIES TO THE PROCEEDING

1.    Richard C. Jackson is the Petitioner.

2.    The Honorable Daniel R. Fine is the administrative judge to whom mandamus is sought.

3.    The Merit Systems Protection Board is the administrative agency to which mandamus is sought.

4.    United States Citizenship and Immigration and Services will be directly affected if the writ is granted.

### IV.    FACTUAL BACKGROUND

A.    <u>Whistleblower Retaliation</u>

On June 23, 2023, Mr. Jackson filed his first of two IRA appeals under MSPB Case No. CH-1221-23-0376-W-1 ("the 0376 Appeal"). On December 5, 2023, Mr. Jackson filed his second IRA appeal under MSPB Case No. CH-1221-24-0117-W-1 ("the 0117" Appeal"). Mr. Jackson filed his appeals because the U.S. Office of Special Counsel (OSC) declined to initiate enforcement action on his behalf after he complained of:

- The Agency violating 5 U.S.C. § 2302(b)(4), abusing its authority and creating a hostile work environment;[1]

- The Agency unlawfully procuring his credit report one day after he filed his EEOC formal complaint;

---

[1] Petitioner did not file an appeal because the OSC Attorney misinformed him regarding his right to appeal the decision to the MSPB.

- The Agency proposing and then issuing a 5-day suspension, 11-days after he filed a grievance against his supervisor[2];

- The Agency altered a year-old certified timecard (at the time) one day after he informed management of his intent to file a complaint with the Federal Labor Relations Authority (FLRA); and,

- The Agency issued a punitively low performance appraisal in retaliation for his protected activity.

Of note, the Agency initially refused to submit its response and file on August 17, 2023, when ordered to do so by the AJ (*See Petitioner's Appendix ("PA")*, at pp. 30 and 49), which resulted in the Petitioner motioning to sanction. As a result of this refusal, Petitioner has argued the Agency failed to meet its burden under the "clear and convincing" standard because it provided no comparators. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022). For reasons yet unknown, the Board refused to adjudicate these IRA appeals, specifically the 0376 Appeal, which Mr. Jackson believes should have been decided in his favor when the Agency failed to follow the AJ's Order to provide its response and file. AJ Fine's failure to adjudicate the appeals within the Board's 120-day[3] standard (*See PA*, at 36), resulted in affording the Agency additional time for subsequent acts of retaliation, which caused Mr. Jackson to be denied his right to seek prompt and corrective action. *Briley v. NARA*, F.3d 1373 (Fed. Cir. 2001). The MSPB has contributed to the Agency exacerbating his physical and mental disabilities incurred during service in the U.S. Navy.

---

[2] The District Director reviewed the grievance and dismissed it on May 10, 2023. A meeting with the Field Office Director was set up the same day to inform the Petitioner of the proposed suspension.
[3] The Board's purported 120-day standard is gleaned from the AJ's Acknowledgment Order.

On July 21, 2023, Mr. Jackson motioned to sanction the Agency for its failure to provide its response and file as ordered by the AJ. (*See PA*, at pp. 587-593). On July 31, 2023, the Agency provided a response to Mr. Jackson's motion for sanctions. (*See PA*, at pp. 583-586). The AJ would rule on the motion for sanctions on August 3, 2023. (*See PA*, at pp. 594-596.). The AJ would deny Mr. Jackson's motion to sanction the Agency, characterizing it as "severe". Mr. Jackson would then file a motion to disqualify the AJ due to perceived favoritism. (*See PA,* at pp. 597-684). The AJ denied the motion to disqualify (*See PA,* at pp. 686-687) and would also deny the motion seeking certification for interlocutory appeal (on motion to disqualify AJ). (*See PA,* at pp. 687-692).

On December 18, 2023, Mr. Jackson filed a motion for joinder of his two IRA appeals. On February 15, 2024, the AJ denied the motion for joinder but would later grant the motion on January 7, 2025. The ruling on Board jurisdiction was issued on October 30, 2024. (*See PA*, at pp. 549-582). Mr. Jackson disagrees with AJ Fine's jurisdictional analysis, and he filed his timely response on November 13, 2024. (*See PA*, at pp. 693-712). The AJ denied the Petitioner's motion on June 17, 2025, (*See PA*, at pp. 713-715), resulting in a motion to certify issue for interlocutory appeal (*See PA*, at pp. 722-730). AJ Fine has indicated that the motion is "under advisement" and reminded the parties "that they must continue to comply with all dates and deadlines" from the June 17, 2025, Order. On June 23, 2025, the Agency responded to the Petitioners motion to certify issue for interlocutory appeal. Of note, the Agency cited to its jurisdictional response (*See PA*, at pp. 731-738), but that is the very response and file the Agency initially failed to submit as ordered. The response has been deemed late and is not being considered. The fact that the Agency is citing to a pleading that is ***not*** being considered, and should have been *stricken*, speaks to how AJ Fine's processing of the appeals in question prejudices Mr. Jackson's prosecution –

ultimately confusing him and leaving him questioning if there is any legal strategy that won't lead to his appeals being harmed. For the aforementioned reasons, Mr. Jackson requests this Court draw an adverse inference on the Agency's failure to meet its burden under *Carr*, i.e., it having failed to provide any comparators.

On June 26, 2025, the Petitioner filed a motion to subpoena *ad testificandum,* seeking the appearance of a former employee, Mirash DEDVUKAJ, whose testimony is relevant to the outcome of the appeal. (*See PA*, at pp. 741-747). The Petitioner argues that Mr. DEDVUKAJ should be subpoenaed because after he filed a grievance with him on April 30, 2023, he was scheduled for a meeting with the proposing official ***the same day*** Mr. DEDVUKAJ dismissed the grievance in its entirety.[4]

## V.     JURISDICTION

Under the All-Writs Act, this Court has the authority to issue a Writ of Mandamus in aid of its jurisdiction. 28 U.S.C. § 1651(a); 28 U.S.C. § 1331. This Court has subject matter jurisdiction over appeals from the Board. 5 U.S.C. § 7703(b)(1); 28 U.S.C. § 1295(a)(9). The Board's final decision with respect to Mr. Jackson's IRA appeals would be appealable to this Court, and it thus has jurisdiction to issue the writ sought. *In re Innotron Diagnostics*, 800 F.2d 1077, 1081-82 (Fed. Cir. 1986) (explaining the Court's authority to issue a writ of mandamus if the Court has jurisdiction over an appeal). This Court may act in **absence, or inadequacy** of the Board which has no sitting members. 5 U.S.C. § 703.

## VI.     SUMMARY OF ARGUMENT

---

[4] The AJ's jurisdictional analysis does not afford jurisdiction to the Petitioner's disclosure that the issuance of a suspension immediately after a grievance was filed is not whistleblower retaliation; hence, one of the reasons for this writ of mandamus.

The Petitioner disclosed to the U.S. Office of Special Counsel ("OSC") the agency's wrongdoing for all disclosures that are the subject of his IRA Appeals. Almost immediately, the Agency began pretextual investigations, proposing suspensions, altering timecards and issuing punitively low performance appraisals.

The Petitioner argued MSPB and this Court's case precedent for all the criterion needed for AJ Fine to make an informed decision on jurisdiction. He also provided all the evidence that supported his arguments. For reasons unknown to Mr. Jackson, the AJ is not adhering to the doctrine of ***stare decisis***, and appears to be completely ignoring the evidence he provided in not only the IRA Appeals, but his appeal pursuant to the Veterans' Employment Opportunities Act (VEOA) appeal as well. Mr. Jackson's VEOA appeal is currently on petition for review with this Court, arguing among other things, that AJ Fine ignored his argument that the Agency removed documents from at least 10 of his submitted job applications[5].

AJ Fine's processing of his VEOA Appeal and what occurred in the IRA Appeals early on led to Mr. Jackson filing a motion to disqualify the AJ. Suffice it to say, the motion was denied along with the motion seeking interlocutory appeal. AJ denied disqualification utilizing an erroneous subjective standard and failed to address case-specific facts. AJ Fine's deep-seated favoritism makes fair judgement impossible.

## VII.    LEGAL STANDARD

---

[5] The VEOA petition for review is pending the Agency's response to this Court, due on July 9, 2025. **Case No. 2025-1614**

Notwithstanding this Court's authority to issue a writ of mandamus, it is a drastic remedy limited to extraordinary circumstances. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980); *In re Newman*, 763 F.2d 407, 409-10 (Fed. Cir. 1985); *Lamb v. Principi*, 284 F.3d 1378 (Fed. Cir. 2002). In order for a court to issue a writ of mandamus three conditions must be met: (1) petitioner must establish he has a clear and indisputable right to the writ; (2) the petitioner has no other adequate means to attain the relief he desires; and (3) the writ must be appropriate under the circumstances even if the first two conditions are met. *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). In particular, the writ will only issue to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporate Milk Ass'n*, 319 U.S. 21, 26 (1943) (indicating additionally that one purpose of a writ of mandamus is to remove obstacles to judicial review).

In addition to establishing a clear and undisputable right to the writ, a petitioner must establish that no other adequate remedy exists for the relief desired. *Cheney v. US. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004); 124 S. Ct. 2576, 159 L.Ed.2d 459 (2004). In particular, the writ will not be issued in substitute of an appeal. *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947). Even if these two conditions are met, the reviewing court must further deem the circumstances proper for the writ to issue. *Cheney*, 542 U.S at 381. Determination of the proper circumstances is within the discretion of the court. *La Buy v. Howes Leather Co.*, 352 U.S. 249, 255 (1957). Clear abuses of discretion warrant mandamus. *In re Nissim Corp.*, 428 F. App'x 981, 983 (Fed.Cir. 2011).

## VIII.   ARGUMENT FOR WRIT

**A. The Administrative Judge has committed clear legal error as it relates to his jurisdiction analysis**

<u>*Agency unable to meet its burden under "Carr"*</u>

While a Mandamus doesn't typically correct mere errors in judgment, it can be used when a lower court's decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, constituting an abuse of discretion or the violation of a clear legal duty. The trial court's decision rests on the resolution of factual issues or matters committed to the court's discretion, the relator must establish that the trial court could reasonably have reached only one decision. Error of law as to questions of law however, the trial court is given little deference in matters involving the determination of legal principles if the trial court does not analyze or apply the law correctly, it commits an abuse of discretion.

Mr. Jackson argues the AJ has engaged in conduct that is inconsistent with the Board and the Federal Circuit's precedent, and the Court must review for abuse of discretion. *Schucker v. FDIC,* 401 F.3d 1347 (Fed. Cir. 2005); *McLaughlin v. OPM,* 353 F.3d 1363 (Fed. Cir. 2004).

In *Shibuya v. USDA*, 119 MSPR 537 (2013), the Board held that "in an adverse action appeal, such as the appellant's demotion appeal, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Simmons v. Department of the Air Force*, 99 M.S.P.R. 28, ¶ 22 (2005). Once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he made a disclosure protected under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action." It is of importance to note that the Agency failed to provide its response and file as ordered by the AJ, prompting the Petitioner to file a motion to sanction. The AJ would deny the motion, but would later rule in the jurisdiction analysis that because the agency's response and

file was late it would not be considered. Petitioner requests this Court draw an adverse inference against the Agency.

In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr*, 185 F.3d at 1323. As previously mentioned, the agency failed to meet its burden under *Carr* because it provided no comparators. The agency bears the burden of proving that it would have taken the same action in the absence of the Appellant's protected activity. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015).

Because the agency bears the burden of proof, when it fails to introduce relevant comparator evidence, the third *Carr* factor is effectively removed from consideration, although it cannot weigh in the agency's favor. *Soto, 2022 MSPB* 6, ¶ 18; *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022). If the first two *Carr* factors either do not support a finding that the agency would have taken the same personnel action in the absence of the disclosure or protected activity, or support such a finding with respect to one of those *Carr* factors but not the other, the failure to present evidence of the third *Carr* factor may prevent the agency from carrying its overall burden. *Smith, 2022 MSPB* 4, ¶¶ 26-30; *Miller v. Department of Justice*, 842 F.3d 1252, 1259-63 (Fed. Cir. 2016). As previously mentioned, in the Agency's response to the

Petitioner's motion seeking interlocutory appeal, it cited to the very jurisdictional response that is not being considered by the Board because the Agency initially ignored the AJ's orders to do so.

AJ Fine's jurisdictional analysis fails to address the Agency's inability to meet its burden under *Carr* and there is no indication he has drawn an adverse inference on the agency's failure to do so. The Agency bears the burden of proving that it would have taken the same action in the absence of the Petitioner's protected activity. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶14 (2015). The Agency must also show by clear and convincing evidence that it would have taken the action absent the disclosure or activity. 5 U.S.C. § 1221(e)(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015); *Powers v. Dept. of Navy*, 97 MSPR 554 (2004); *Lu*, *122 M.S.P.R. 335, ¶ 7.*

### *The AJ has not considered the Petitioner's "convincing mosaic" argument*

An Administrative Judge may find an Appellants evidence to be a "convincing mosaic" of retaliation for an appellant's prior Board appeal, protected EEO activity and grievances; reviewing the "ample evidence supporting the administrative judge's findings of retaliation for filing a Board appeal and grievances" and noting, in particular, "the suspicious timing of this treatment—immediately following [appellant's] reinstatement to duty following her prior Board appeal" and the agency's failure to investigate an allegation of reprisal made during the reply to proposed adverse action leading to the adverse action appealed to the Board. *Rhee v. Dept. of Treasury*, 117 MSPR 640 (2012) (involving a 5 USC § 2302(b)(9) claim.

In *Kohler v. Dept. of Navy, 108 MSPR 510 (2008)*, the Board held that to establish retaliation using circumstantial evidence, an appellant must provide evidence establishing a "convincing mosaic" of retaliation; "As a general rule, this mosaic has been defined to include

three general types of evidence: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that employees similarly situated to the appellant have been better treated; and (3) evidence that the employer's stated reason for its actions is pretextual. Where an employer's motives or state of mind are relevant, the record must be carefully scrutinized for circumstantial evidence that would support an inference of retaliatory animus."

AJ Fine's ruling on jurisdiction and the subsequent denial of the Petitioner's motion for reconsideration does not address the Petitioner's convincing mosaic argument. This Court must set aside orders not analyzing facts against appropriate legal standards. 5 U.S.C. §706; 5 U.S.C. §7703(c). The most arbitrary of decisions are ones with no reasoning at all. *Board of Regents v. Roth,* 408 U.S. 564 (1972); *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591 (2008). Petitioner's interlocutory appeal (1) raises important legal questions with substantial grounds for difference of opinion; (2) denial will cause undue harm to Petitioner and public. *McCarthy v. International Boundary and Water Commission,* 116 M.S.P.R. 594,, 18 (2011). This Court must consider risk of injustice to parties, risk of injustice in other cases, risk of undermining public confidence. *Polaroid Corp. v. Eastman Kodak Co.,* 867 F.2d 1415 (Fed.Cir. 1989), citing *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988).

*The AJ has not correctly applied the knowledge/timing test criterion*

The AJ's jurisdictional analysis and the subsequent denial of the Petitioner's motion for reconsideration fails to utilize the knowledge/timing test. Once an appellant's evidence establishes by preponderant evidence that the knowledge/timing test has been met, the administrative judge must find that the appellant has shown that his whistleblowing was a

contributing factor in the personnel action at issue. *Mason v. DHS*, 116 MSPR 135 (2011); *Cassidy v. DOJ*, 118 MSPR 74 (2012). Proof of reprisal includes timing and knowledge of the disclosures by decisionmakers. *Eluhu v. VA*, 801 Fed. Appx. 952 (6th Cir. 2020 NP). The Petitioner provided the AJ his arguments supported by case precedent and evidence, yet the jurisdictional analysis fails to address either. This Court must consider risk of injustice to parties, risk of injustice in other cases, risk of undermining public confidence. *Polaroid Corp.,* 867 F.2d 1415 (Fed.Cir. 1989), citing *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847 (1988).

**B.  This Court should Order the reassignment of Mr. Jackson's appeals**

AJ Fine should be disqualified from Mr. Jackson's IRA Appeals and any other appeals currently pending or those filed in the future at the MSPB, due to a demonstrated impartiality. 28 U.S.C. § 455(a). The correct legal standard objectively examines record facts, then decides whether a reasonable person understanding relevant facts would disqualify the judge. *El-Gabrowny*, *supra*., citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307 (2d Cir. 1988). It is critically important to identify facts that might reasonably cause an objective observer to question a judge's impartiality. *Shoaf v. Department of Agriculture*, 97 M.S.P.R. 68 ¶ 7 (2004).

Petitioner's motion to disqualify AJ Fine relied on case-specific facts, i.e., the demonstrated favoritism related to the AJ's rulings that prejudiced against Mr. Jackson's substantive rights as a *pro se* litigant. Mr. Jackson believes what is most egregious is AJ Fine refusing to process and adjudicate Mr. Jackson's appeals in the usual manner.  The MSPB has a 120-days standard for adjudicating appeals. This is what led to Mr. Jackson filing a writ of mandamus in September 2024 (Case 24-145). After Mr. Jackson first motion to disqualify was filed, AJ Fine appears to have retaliated against him by refusing to process his IRA Appeals within the Boards 120-day standard. The IRA Appeals that are the subject of this writ are **2 years**

**old and 18 months old** respectively. AJ Fine, although he has scheduled a hearing for July 28, 2025, he has not adhered to the doctrine of *stare decisis*. Because of this failure, Mr. Jackson will suffer harm to his substantive rights unless this Court steps in. He respectfully requests this Court Order the MSPB stay processing of Mr. Jackson's IRA appeals pending a ruling from this Court and grant the subpoena seeking the appearance and testimony of a former Agency official who reviewed the Petitioner's grievance, which the Petitioner argues resulted in a suspension. Based on these facts, Mr. Jackson requests this Court consider reassignment to a different AJ as requested. *Tao v. MSPB,* 855 F. App'x 716 (Fed. Cir. 2021 NP); *Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382 (Fed. Cir. 2018); *Contreras v. Sec'y of Health & Hum. Servs*., 844 F.3d 1363, 1369 (Fed. Cir. 2017).

### C. The Petitioner has no other adequate means to attain the relief desired

Mr. Jackson cannot compel the Board to adhere to its own or the Federal Circuit's case precedent on his IRA appeals. This Court has exclusive jurisdiction over any appeal which may follow the Board's final decision on the Petitioner's appeals, and thus Mr. Jackson has no other means to obtain the relief desired. Additionally, as of April 9, 2025, the MSPB does not have a quorum, so the motion to certify interlocutory appeal will not be reviewed. 5 U.S.C. § 703. This Court is the last bastion of fairness for the Petitioner's MSPB appeals.

### D. The proper circumstances exist for the issuance of the Writ of Mandamus

Prior to filing this petition, Mr. Jackson filed a motion for reconsideration as it relates to the AJ's ruling on jurisdiction. That motion was denied on June 17, 2025. A motion seeking certification of issue for interlocutory appeal was then filed on June 20, 2025. An interlocutory appeal is intended to either "materially advance the completion of the proceeding" or **to prevent "undue harm to a party or the public".** 5 C.F.R. § 1201.92(b). He also filed a motion to

subpoena a former agency official currently on administrative leave pending retirement. The AJ

has ordered the Petitioner to comply with his Hearing Order (*See PA*, at 716-721). Because AJ

Fine has failed to adhere to the MSPB's and Federal Circuit's case precedent as it relates to

jurisdiction, it appears AJ Fine expects Mr. Jackson to waive his right to Board or Court review

because the AJ has not ruled on the motion to certify interlocutory appeal, or his motion to

subpoena. Mr. Jackson respectfully requests this Court's prompt intervention and Order a stay

until a ruling on this writ is issued.

## IX.    COSTS ASSOCIATED WITH FILING THIS PETITION

Mr. Jackson seeks an award of the costs associated with filing this petition under the

Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Due to AJ Fine's clear legal error

relating to his interpretation of MSPB and the Federal Circuit's case precedent regarding

whistleblower retaliation, Mr. Jackson considers it reasonably necessary to file this petition to

compel the Board to address the error on the cases. *Webb v. Board of Ed. of Dyer County*, 471

U.S. 234, 243 (1985) (indicating that litigation efforts seeking a final conclusion to the result of

underlying litigation are reasonably necessary). An award of the costs associated with his

reasonably necessary efforts to obtain the remedy he seeks in this petition to the Court is proper.

*Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546, 558-59 (1986).

## X.    CONCLUSION AND PRAYER FOR RELIEF

Under the totality of circumstances surrounding Mr. Jackson's case, the MSPB has

committed clear legal errors relating to MSPB jurisdiction over his IRA Appeals. No other

adequate remedy exists to compel the Board to adhere to case precedent and correct the clear

legal error of AJ Fine on these appeals. For this reason, Mr. Jackson prays that the Court issue a

writ of mandamus compelling the MSPB to grant the aforementioned relief sought for the

appeals filed on June 23, 2023, and December 5, 2023, respectively, and award the costs

associated with filing this petition.

DATED: June 30, 2025                                              Respectfully Submitted,

By: _____

                                                                 Richard C. Jackson

                                                                 *Pro Se* Petitioner

**MSPB e-Appeal 2.8.0.16**

(Appellant)

**Richard Cornelius Jackson v. Department of Homeland Security**
CH-1221-23-0376-W-1

| Status | Assigned Office | Assigned |
|---|---|---|
| Regional Pending | Central Regional Office | Fine, Daniel |

## Case Record

### Petition for Review

| Select | Tab Number | Date Issued/Received | Name | | Submitted By |
|---|---|---|---|---|---|
| | | | No data available in table | | |

Rows per page: 500 ▾   0-0 of 0

### Initial Appeal

| Select | Tab Number | Date Issued/Received | Name | Submitted By |
|---|---|---|---|---|
| ☐ | 62 | 06/27/2025 | Designation of Representative | Appellant |
| ☐ | 61 | 06/26/2025 | Motion to Subpoena Ad Testificandum | Appellant |
| ☐ | 60 | 06/23/2025 | Order to Agency | MSPB |
| ☐ | 59 | 06/23/2025 | Response to Appellants 06 20 2025 Motion to Certify Issue for Interlocutory Appeal | Agency |
| ☐ | 58 | 06/20/2025 | Motion to Certify Issue for Interlocutory Appeal | Appellant |
| ☐ | 57 | 06/17/2025 | Hearing Order | MSPB |
| ☐ | 56 | 06/17/2025 | Order and Summary of Status Conference | MSPB |
| ☐ | 55 | 06/13/2025 | Notice to the Board (FOIA Lawsuit) | Appellant |
| ☐ | 54 | 05/29/2025 | Order Rescheduling Status Conference | MSPB |
| ☐ | 53 | 05/28/2025 | Request for Extension of Time | Agency |
| ☐ | 52 | 05/20/2025 | Order Scheduling Status Conference | MSPB |
| ☐ | 51 | 05/13/2025 | Notice of Substitution of Agency Counsel | Agency |
| ☐ | 50 | 04/30/2025 | Change of Contact Information | Agency |
| ☐ | 49 | 04/24/2025 | Notice of Withdrawal of Representation | Appellant |
| ☐ | 48 | 04/22/2025 | Mediation Termination Notice | MSPB |
| ☐ | 47 | 03/13/2025 | Notice of Appearance | Appellant |
| ☐ | 46 | 02/13/2025 | Mediation Referral Notice | MSPB |
| ☐ | 45 | 02/10/2025 | AGENCY EXECUTED MAP AGREEMENT | Agency |
| ☐ | 44 | 02/10/2025 | Appellant Executed MAP Agreement | Appellant |
| ☐ | 43 | 02/07/2025 | Order and Summary of Status Conference | MSPB |
| ☐ | 42 | 01/14/2025 | Order Re Gathering Discovery Deadlines and Scheduling Status Conference | MSPB |
| ☐ | 41 | 01/07/2025 | Order of Joinder | MSPB |
| ☐ | 40 | 12/11/2024 | Mediation Termination Notice | MSPB |
| ☐ | 39 | 11/18/2024 | Mediation Notices | MSPB |
| ☐ | 38 | 11/15/2024 | Appellant Executed MAP Agreement | Appellant |
| ☐ | 37 | 11/15/2024 | Agency's Executed MAP Agreement | Agency |
| ☐ | 36 | 11/15/2024 | Order and Summary of Status Conference | MSPB |
| ☐ | 35 | 11/14/2024 | Failure to Show Order | MSPB |
| ☐ | 34 | 11/14/2024 | Response to Ruling on Jurisdiction | Appellant |
| ☐ | 33 | 11/13/2024 | Response to 10 30 2024 Ruling on Jurisdiction | Appellant |
| ☐ | 32 | 11/12/2024 | Response to 10 31 2024 ORDER ON APPELLANT RESPONSE TO RULING ON JURISDICTION | Appellant |
| ☐ | 31 | 11/01/2024 | Order Rescheduling | MSPB |
| ☐ | 30 | 11/01/2024 | Motion to Reschedule Telephonic Conference | Appellant |
| ☐ | 29 | 10/31/2024 | Order on Appellant Response to Ruling on Jurisdiction | MSPB |
| ☐ | 28 | 10/31/2024 | Response to 10 30 2024 Ruling on Jurisdiction | Appellant |
| ☐ | 27 | 10/31/2024 | Order Scheduling Status Conference | MSPB |
| ☐ | 26 | 10/30/2024 | Ruling on Jurisdiction | MSPB |
| ☐ | 25 | 07/11/2024 | Suspension Order | MSPB |
| ☐ | 24 | 02/15/2024 | Order Denying Certification | MSPB |
| ☐ | 23 | 11/06/2023 | Proof of Service | Appellant |
| ☐ | 22 | 10/18/2023 | Motion for Certification of Issue for Interlocutory Appeal | Appellant |
| ☐ | 21 | 09/06/2023 | Notice of Intent to File Interlocutory Appeal | Appellant |
| ☐ | 20 | 09/06/2023 | Order on Appellant's Motion to Disqualify | MSPB |
| ☐ | 19 | 08/17/2023 | AGENCY Ex A-3 to Narrative Response JACKSON | Agency |
| ☐ | 18 | 08/17/2023 | AGENCY Exhibit A 1-4 to Narrative Response JACKSON | Agency |
| ☐ | 17 | 08/17/2023 | AGENCY Narrative Response 0376 JACKSON | Agency |
| ☐ | 16 | 08/17/2023 | Motion to Disqualify Administrative Judge | Appellant |
| ☐ | 15 | 08/10/2023 | Notice of Appellant's Intent to Motion to Disqualify Judge | Appellant |
| ☐ | 14 | 08/03/2023 | Order on Pending Motions | MSPB |
| ☐ | 13 | 08/01/2023 | Notice to The Board (Appellant's Intent to file Motion to Subpoena) | Appellant |
| ☐ | 12 | 07/31/2023 | AGENCY Response to Motion for Sanctions JACKSON | Agency |
| ☐ | 11 | 07/21/2023 | Motion to Sanction Agency | Appellant |
| ☐ | 10 | 07/11/2023 | Copy of FOIA Lawsuit Mentioned in Jurisdiction Statement | Appellant |
| ☐ | 9 | 07/06/2023 | Appellant's Jurisdictional Brief | Appellant |
| ☐ | 8 | 07/02/2023 | List of Exhibits (For Tab 1 Initial Appeal) | Appellant |
| ☐ | 7 | 06/28/2023 | Response to Agency Motion to Stay Discovery | Appellant |
| ☐ | 6 | 06/27/2023 | AGENCY Motion for Stay JACKSON | Agency |
| ☐ | 5 | 06/27/2023 | Agency Representative Addition | Agency |
| ☐ | 4 | 06/26/2023 | Jurisdiction Order | MSPB |
| ☐ | 3 | 06/26/2023 | Acknowledgment Order | MSPB |
| ☐ | 2 | 06/23/2023 | OSC Letter and 5-Day Suspension Letters | Appellant |
| ☐ | 1 | 06/23/2023 | Initial Appeal | Appellant |

Rows per page: 500 ▾   1-62 of 62

Tracking Inbox / Appeal (CH-1221-24-0117-W-1)

**Appeal**    Case Info    Pleadings    Case Associations

**Richard Cornelius Jackson v. Department of Homeland Security**
CH-1221-24-0117-W-1

| Status | Assigned Office | Assigned |
|---|---|---|
| Regional Pending | Central Regional Office | Fine, Daniel |

## Case Record

### Initial Appeal

| Select | Tab Number | Date Issued/Received | Name | Submitted By |
|---|---|---|---|---|
| ☐ | 42 | 06/27/2025 | Designation of Representative | Appellant |
| ☐ | 41 | 06/23/2025 | Order to Agency | Appellant |
| ☐ | 40 | 06/23/2025 | Response to Appellants 06 20 2025 Motion to Certify Issue for Interlocutory Appeal | Agency |
| ☐ | 39 | 06/20/2025 | Motion to Certify Issue for Interlocutory Appeal | Appellant |
| ☐ | 38 | 06/17/2025 | Hearing Order | MSPB |
| ☐ | 37 | 06/17/2025 | Order and Summary of Status Conference | MSPB |
| ☐ | 36 | 06/13/2025 | Notice to the Board (FCRA Lawsuit) | Appellant |
| ☐ | 35 | 05/29/2025 | Order Rescheduling Status Conference | MSPB |
| ☐ | 34 | 05/28/2025 | Request for Extension of Time | Agency |
| ☐ | 33 | 05/20/2025 | Order Scheduling Status Conference | MSPB |
| ☐ | 32 | 05/13/2025 | Notice of Substitution of Agency Counsel | Agency |
| ☐ | 31 | 04/30/2025 | Change of Contact Information | Agency |
| ☐ | 30 | 04/24/2025 | Withdrawal of Representation | Appellant |
| ☐ | 29 | 04/22/2025 | Mediation Termination Notice | MSPB |
| ☐ | 28 | 03/13/2025 | Notice of Appearance | Appellant |
| ☐ | 27 | 02/12/2025 | Mediation Referral Notice | MSPB |
| ☐ | 26 | 02/10/2025 | AGENCY EXECUTED MAP AGREEMENT | Appellant |
| ☐ | 25 | 02/10/2025 | Appellant Executed MAP Agreement | Appellant |
| ☐ | 24 | 02/07/2025 | Order and Summary of Status Conference | MSPB |
| ☐ | 23 | 01/14/2025 | Order Re-Setting Discovery Deadlines and Scheduling Status Conference | MSPB |
| ☐ | 22 | 01/07/2025 | Order of Joinder | MSPB |
| ☐ | 21 | 01/07/2025 | Ruling on Jurisdiction | MSPB |
| ☐ | 20 | 12/11/2024 | Mediation Termination Notice | MSPB |
| ☐ | 19 | 11/18/2024 | Mediation Notices | MSPB |
| ☐ | 18 | 11/15/2024 | Appellant Executed MAP Agreement | Appellant |
| ☐ | 17 | 11/15/2024 | Agency Executed MAP Agreement | Agency |
| ☐ | 16 | 11/12/2024 | Response to 11 04 2024 Order to the Appellant | Appellant |
| ☐ | 15 | 11/04/2024 | Order to the Appellant | MSPB |
| ☐ | 14 | 09/19/2024 | Suspension Order | MSPB |
| ☐ | 13 | 02/23/2024 | Jurisdiction Brief (Pleading 2 of 2) | Appellant |
| ☐ | 12 | 02/23/2024 | Response to 02 15 2024 Order to the Appellant | Appellant |
| ☐ | 11 | 02/15/2024 | Order to the Appellant | MSPB |
| ☐ | 10 | 02/15/2024 | Order on Pending Motions | MSPB |
| ☐ | 9 | 12/21/2023 | AGENCY Response to Order on Jurisdiction 24-0117 JACKSON | Agency |
| ☐ | 8 | 12/21/2023 | Agency Motion for Stay 24-0117 JACKSON | Agency |
| ☐ | 7 | 12/18/2023 | Opposed Motion for Joinder of IRA Appeals | Appellant |
| ☐ | 6 | 12/11/2023 | Motion to Dismiss Without Prejudice | Appellant |
| ☐ | 5 | 12/11/2023 | Motion to Withdraw Agency Representative - Peter Gregory | Agency |
| ☐ | 4 | 12/07/2023 | Agency Rep Addition | Agency |
| ☐ | 3 | 12/06/2023 | Jurisdiction Order WPEA IRA Appeal | MSPB |
| ☐ | 2 | 12/06/2023 | Acknowledgment Order | MSPB |
| ☐ | 1 | 12/05/2023 | Initial Appeal | Appellant |

Rows per page: 500 ⌄   1-42 of 42

### UNITED STATES OF AMERICA
### MERIT SYSTEMS PROTECTION BOARD
### CENTRAL REGIONAL OFFICE

| | |
|---|---|
| RICHARD CORNELIUS JACKSON,<br>        Appellant, | DOCKET NUMBER<br>CH-1221-23-0376-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>   SECURITY,<br>        Agency. | DATE: June 26, 2023 |

### ACKNOWLEDGMENT ORDER

This office has received the appellant's individual right of action (IRA) appeal .  A copy of the appeal is being sent to the agency with this Order.  I am the administrative judge assigned to this appeal.

I **ORDER** the parties to follow the procedures set out in the separate notices below.  If any party fails to follow my orders or the Board's regulations, I may impose sanctions pursuant to 5 C.F.R. § 1201.43.  If either party has a question regarding any aspect of the case processing instructions set forth in this order, he or she may seek clarification at the phone number listed under my signature at the end of this order.

### NOTICE TO THE APPELLANT

### INTRODUCTION

If your appeal is timely filed, and within the Board's jurisdiction, you have the right to a hearing on the merits of your case.  If you requested a hearing, I will schedule a hearing for you.  If you did not request a hearing, you have 10 calendar days from the date of this Order to file a written request for one.  If you do not request a hearing, you waive your right to one.  In that event, you and the

agency will be given an opportunity to make written submissions before the record on your appeal closes.

If you have not already done so, you are directed to provide me a copy of the letter you filed with the Office of Special Counsel delineating your whistleblowing allegations.

## DESIGNATION OF REPRESENTATIVE

You may name a representative. If you already have a representative, you must fill out the enclosed "Designation of Representative" form and file it with the Board and with the agency within 10 calendar days of the date of this Order unless you have included your representative's name, address, telephone number, and signature in your appeal. If your representative has filed the appeal for you and you have not personally signed the appeal or submitted a signed "Designation of Representative" form, you also must file a signed "Designation of Representative Form" with the Board and with the agency within 10 calendar days of the date of this Order. If you name a representative after receiving this Order, fill out the enclosed "Designation of Representative" form and file it with the Board and the agency **immediately** after obtaining your representative.

You must **immediately** notify the Board and the agency in writing of any changes in the name, address, or telephone number of your designated representative.

If you register as an e-filer (see information below), you can use electronic filing to file a Designation of Representative, or to notify the Board of a change in contact information.

## DISCOVERY

Discovery is the procedure you may use to learn of any facts, documents, or other evidence the agency has that may be helpful to your case. If you wish to engage in discovery, initial requests or motions must be served on the other party within 30 calendar days of the date of this Order. Unless you are filing a motion

to compel, you must not submit your discovery requests and responses to the Board.  If you do, they will be rejected and returned to you.  The procedures used for discovery are at 5 C.F.R. §§ 1201.71-.85.

You may request that I waive the time limits for discovery set forth at 5 C.F.R. § 1201.73(d) in order to accommodate the particular circumstances of your appeal.  The Board expects all parties to assist in the expeditious processing of this case by honoring requests for relevant documents and producing material witnesses without additional Board intervention.

The regulations require that the parties attempt to resolve a discovery dispute before filing a motion to compel with me.  Thus, the party who disputes the other's compliance must discuss the anticipated motion with the other party, and they both must make a good faith effort to resolve the dispute and narrow their disagreement.  They must also include with any motion a statement indicating that they have complied with this requirement.  5 C.F.R. § 1201.73(c) (1).

## RESPONSE TO MOTIONS

You may file a response or objection to any motion filed by the agency. Unless otherwise specified by me or the Board's regulations, your response or objection must be filed with this office and served upon the agency within 10 calendar days of the date that appears on the agency's certificate of service. I will reject any untimely response or objection unless you show good cause for the delay in filing.  **Note that if, prior to the close of the record, you fail to object to any of my written or verbal rulings on a matter raised by you or the agency, you will be precluded from challenging that ruling on petition for review or cross-petition for review.**

## GENERAL INSTRUCTIONS

### FILING PLEADINGS WITH THE MSPB

A "pleading" is any written submission setting out claims, allegations, arguments, or evidence. Pleadings include briefs, motions, petitions, attachments, and responses. 5 C.F.R. § 1201.4(b). Pleadings can be filed via postal mail, facsimile (fax), personal or commercial delivery, or in electronic format via e-Appeal Online (https://e-appeal.mspb.gov/). Pursuant to 5 C.F.R. § 1201.26, all pleadings filed with the Board must meet the following requirements:

(1) All pleadings must be legible and either printed on 8½ by 11 inch paper, or formatted so that they will print on 8½ by 11 inch paper.

(2) All pleadings must be filed by the date set by me or the Board's regulations. The date of filing is the date your submission is postmarked, faxed, the date of electronic submission if you e-file, or the date of receipt if you personally deliver it to the Board's regional office. Extensions of filing dates will only be granted if requested in writing and if good cause is shown. **A continuance of a hearing date will be granted only if requested in writing in accordance with the Board's regulation at 5 C.F.R. § 1201.51(c), which requires an affidavit or sworn statement, and if you are able to show extraordinary circumstances.**

(3) All pleadings must be served upon opposing parties and their representatives, must be accompanied by a certificate of service stating (a) the names and addresses of the parties served; (b) the manner of service (personally delivered, mailed, faxed, or electronic delivery); and (c) the date of service. A certificate of service is attached to this Order and lists the names and addresses of the parties who must be served in this case. The attached certificate of service constitutes a model which you may follow in preparing your own certificate of service. The Board may reject a submission that does not have a certificate of service. If you register as an e-filer, a certificate of service will be prepared automatically as part of the pleading you file online.

### Pleadings Submitted in Hardcopy

When a pleading submitted by postal mail, fax, personal or commercial delivery includes three or more documentary attachments, the attachments should

be "tabbed." A "tab" is a dividing page, a portion of which extends beyond the normal 8½ inch width of the paper, and which contains a description or label. When such a pleading is submitted via fax, each page of the attachments should be sequentially numbered and the attachments should be preceded by a table of contents describing each attachment and indicating the page on which it starts. Special instructions for preparing the Agency's response to the appeal under 5 C.F.R. § 1201.25 are included below.

All documents within a tab must have new page numbers (by hand if necessary) so that each document, within each tab, is re-numbered, from the first page of the first document to the last page of the last document. This will allow for specific page references to the record, by tab and by page number within a tab. The new page numbers should be placed in the bottom right-hand margin of each page. If some pages within a tab are already numbered in the bottom-right margin, parties should place the new page numbers just to the right of the original page numbers.

**Pleadings Submitted via e-Appeal Online**

Electronic bookmarks and tables of contents take the place of physical "Tabs" in pleadings filed by traditional means. When an e-filed pleading contains three or more electronic supporting documents, each attachment must be identified, either by filling out the table for such attachments at e-Appeal Online, or by uploading the supporting documents in the form of one or more PDF files in which each attachment is bookmarked. 5 C.F.R. § 1201.14(g)(3).

Regardless of whether it is uploaded or entered online, each pleading will be assembled into a single PDF document, which will include all electronic attachments, and will contain sequential page numbers. E-filers need not manually paginate their pleadings and attachments.

Pleadings are subject to a file size limit. To avoid exceeding this limit, e-filers are encouraged to scan documents in black and white and to adjust settings

to limit file size.  If what would otherwise be a single pleading must be broken into multiple pleadings because of the size limit, each should contain the same descriptive title, together with a "Part" designation in parentheses, e.g., Agency File (Part A), Agency File (Part B), etc.

For more information about e-filing, read the Board's regulation at 5 C.F.R. § 1201.14, or visit e-Appeal Online (https://e-appeal.mspb.gov/) and click the link entitled "How does Electronic Filing Work?"

## REGULATIONS

For more detailed information on these procedures, you should refer to the Board's regulations in 5 C.F.R. Parts 1201 and 1209.  The regulations are available for review in agency personnel offices, law libraries, some large public libraries, and at the Board's website (http://www.mspb.gov).

## <u>NOTICE TO THE AGENCY/INTERVENOR</u>

### AGENCY RESPONSE

I **ORDER** the agency to read, comply with, and/or respond to any and all portions of the "Notice to Appellant" which are applicable to it.  I also **ORDER** the agency to serve me, appellant, and appellant's representative (if applicable), with the material listed on the enclosed schedule and any other information required by 5 C.F.R. § 1201.25 within 20 calendar days of the date of this Order.

### DESIGNATION OF REPRESENTATIVE

The agency must designate a representative.  I **ORDER** the agency to file the name, address, and telephone number of the person authorized to act for the agency on the enclosed "Designation of Representative" form within 20 calendar days of the date of this Order.  The representative must have authority to settle this appeal or be able to directly reach someone with that authority on short notice.

## NOTICE TO THE PARTIES

### SETTLEMENT

The Board strongly encourages the settlement of the appeals that come before it.  Even where discussions between the parties do not result in settlement, they often help to define the issues and assist the parties in agreeing to stipulations.  I therefore urge the parties to contact each other to discuss the possibility of settlement as early in this proceeding as possible.  I am available to assist in the discussions.  The parties should discuss concrete, specific settlement proposals unless either party concludes in good faith that no compromise of any kind is possible. They must also be prepared to discuss with me the status of any settlement discussions.  *See* 5 C.F.R. § 1201.41(b)(12) (the administrative judge is authorized to "[h]old prehearing conferences for the settlement and simplification of issues").

If the parties agree to settle this appeal, and to enter the agreement into the record, the Board will retain the authority to enforce its terms.  However, if they do not enter the agreement into the record, the Board will have no authority to enforce the agreement.


FOR THE BOARD:                  _____/S/_____
                                Daniel R. Fine
                                Administrative Judge
                                Central Regional Office
                                230 South Dearborn Street, Room 3100
                                Chicago, IL 60604
                                Phone: (312) 353-2923
                                Fax:    (312) 886-4231
                                V/TDD (800) 877-8339

Enclosures

**MSPB SCHEDULE 1221**
**REQUIREMENTS FOR AGENCY FILE**

Insofar as the content of the Agency File is concerned, the instructions that follow apply in all cases.  Insofar as the instructions refer to tabbing and numbering of Agency File materials, they apply only to instances in which the Agency File is submitted via postal mail, or personal or commercial delivery. **When the Agency File is submitted via e-Appeal Online, the requirements of 5 C.F.R. § 1201.14(g)(3) apply.**  When the Agency File is submitted via fax, each page of the attachments should be sequentially numbered and the attachments should be preceded by a table of contents describing each attachment and indicating the page on which it starts.

## General Information

All evidence submitted will be disclosed to the parties.  Therefore, no classified document can be received in evidence unless accompanied by a statement that it is declassified and that full disclosure is permitted.

## Materials Required to be Tabbed, with Pages Re-numbered within a Tab, and Filed

1.  A narrative response to the appeal and all material issues raised by appellant.

    [Include the reason the personnel action(s) identified by appellant was (were) taken, proposed, threatened, or not taken.]

2.  A statement whether appellant is covered by a collective bargaining agreement and whether that agreement covers the action being appealed.

    [If so, provide a copy of the applicable provision(s) and state whether appellant has grieved the action. If appellant has, submit a copy of the grievance and indicate the date it was filed.]

3.  A statement whether appellant has filed a formal complaint of discrimination on the action being appealed.

    [If so, indicate its current status, provide a copy of the complaint, indicate the date the complaint was filed, and the agency's decision, if any.]

4.  Copies of all other documents which are relevant and material to this appeal.

    [Provide copies, if applicable, of the notice of proposed action; appellant's response(s); the decision letter; the SF-50 (or other notification of personnel action) documenting the action; and evidence supporting the action.]

## Instructions for Assembly of the Agency File

The agency's file must be organized as described below.  Failure to do so will result in rejection of the submission.

All documents submitted in hardcopy must be bound at the top (not the side) with a two-hole fastening device.  The holes must be 2 and 3/4 inches apart.  A cover is not required.

Documents in item 4 must be arranged by date with the most recent on top and the oldest on bottom.  Documents must be individually tabbed using the letters of the alphabet, e.g., 4a, 4b, 4c, etc.

All documents within a tab must have new page numbers (by hand if necessary) so that each document, within each tab, is re-numbered, from the first page of the first document to the last page of the last document.  This will allow for specific page references to the record, by tab and by page number within a tab.  The new page numbers should be placed in the bottom right-hand margin of each page.  If some pages within a tab are already numbered in the bottom-right margin, parties should place the new page numbers just to the right of the original page numbers.

A Table of Contents is placed on top of the tabbed documents.  Use the following headings for the Table:

> LocationDate        Document Description Source
>
> [The "location" is the tab number; the "date" is the date of the document; the "document description" fully identifies the document; and the "source" indicates the individual or office, who authored or otherwise produced the document.]

A completed Designation of Agency Representative form must be placed on top of the Table, if not previously submitted.  A transmittal letter, identifying the case by name and docket number, must be placed on top of the Designation.

A Certificate of Service must be inserted on the bottom of the tabbed file.



# Merit Systems Protection Board

## -- Designation of Representative --

Please print or type:

| | |
|---|---|
| **Appellant's Name:** | **Richard Cornelius Jackson** |
| **Agency Name:** | **Department of Homeland Security** |
| **Docket Number:** | **CH-1221-23-0376-W-1** |

The parties may use this form or a similar document to designate any organization or individual to represent them before the Board.  (Appellants representing themselves do not need to submit a designation of representative).  The choice of representative must not result in a conflict of interest for the organization or person chosen.  Each party must make all arrangements for representation. **The Board does not designate a representative for any party to this appeal.** The representative(s) must be able to proceed promptly.  Normally, continuances or extensions of time **will not be granted** if the appellant or agency delays in seeking or arranging representation, if the representative cannot proceed in a timely manner, or for changes in representative(s).    Despite the designation of representative**, the parties remain personally responsible for prosecuting the case in a timely manner.**

The purpose of the representative is to assist and counsel the appellant or agency in the preparation, presentation, or defense of the appeal.  The representative appears with, or for, the party at hearings, settlement negotiations, or other proceedings before the Board**.  The representative has the authority to settle the appeal.  Any limitation on the representative's settlement authority must be filed in writing with the Board.  By designating a representative, you agree to allow the Board to disclose to your representative all information concerning the appeal**.

**DESIGNATION:**  The individual or organization named below is hereby designated to represent the

Appellant ❑              Agency ❑

in connection with this appeal before the Board**.  This individual or organization is to be served copies of all communications concerning this appeal from the Board or from the other party(ies)**.  The address and telephone number of the representative provided below must be correct and specific to ensure that mail or other communications are received promptly.  Any change or cancellation of this designation **must be provided, in writing,** to the Board, and to the other party(ies).

**SERVICE METHOD:** US Mail ❑              FAX ❑              E-Mail ❑

Name of Representative: _____
Address: _____
_____
City: _____  State: _____ Zip Code: _____
Phone Number: _____FAX: _____Other(E-Mail, etc.): _____

Signature of Appellant or Agency Authorizing Official: _____  Date: _____

Representative's Signature: _____  Date: _____

**RETURN THIS FORM TO THE BOARD OFFICE WHERE THE APPEAL IS PENDING.  PROVIDE A COPY TO THE OTHER PARTY(IES).  <u>BOARD REGULATIONS REQUIRE THAT COPIES OF ALL COMMUNICATIONS MUST BE SERVED ON THE OTHER PARTY(IES).</u>**

# PRIVACY ACT STATEMENT

During the course of processing the appeal, which you or your representative has filed, the Merit Systems Protection Board collects personal information that is relevant and necessary to reach a decision in your case. The Merit Systems Protection Board collects this information in order to process appeals under one or more of the following authorities: Title 5 U.S.C. §§ 1302, 1221, 3301, 3302, 4302, 5115, 5338, 5345, 5346, 7151, 7154, 7301, 7501, 7512, 7701,and 8347; as well as Executive Orders 9803, 11222, 11478, 11491, and 11787. Because your appeal is a voluntary action, you are not required to provide any personal information to the Merit Systems Protection Board in connection with your appeal. Conceivably, failure to provide all information essential to reaching a decision in your case could result in the dismissal or denial of your appeal.

**DECISIONS OF THE MERIT SYSTEMS PROTECTION BOARD ARE AVAILABLE TO THE PUBLIC UNDER THE PROVISIONS OF THE FREEDOM OF INFORMATION ACT AND ARE POSTED TO THE MERIT SYSTEMS PROTECTION BOARD'S PUBLIC WEBSITE. SOME INFORMATION ABOUT THE APPEAL ALSO IS USED IN DEPERSONALIZED FORM FOR STATISTICAL PURPOSES. FINALLY, INFORMATION FROM YOUR APPEAL FILE MAY BE DISCLOSED AS REQUIRED BY LAW UNDER THE FREEDOM OF INFORMATION ACT AND THE PRIVACY ACT. *SEE* 5 U.S.C. §§ 552, 552A.**

UNITED                    STATES                    OF                    AMERICA
MERIT SYSTEMS PROTECTION BOARD

## NOTICE

### SUSPENDED APPEAL PROCEDURE

Both the appellant and the agency are entitled to have this appeal adjudicated as quickly as possible, usually within 120 days (*see* 5 U.S.C. §7702(a)(1)). In some situations, however, the parties or the judge may conclude that more time than is routinely provided should be granted. Therefore, the judge may issue an order suspending the processing of an appeal for up to 30 days. The judge may grant a second order suspending the processing of an appeal for up to an additional 30 days. No case may be suspended for more than a total of 60 days under these procedures. *See* 5 C.F.R. § 1201.28.

Should the parties contact the administrative judge during the period of suspension for assistance, and if the administrative judge's involvement is likely to be extensive, the judge will notify the parties that it will be necessary to terminate the suspension and return the case to standard processing.

# NOTICE

## ALTERNATIVE DISPUTE RESOLUTION

In an effort to provide alternatives to the regulatory adjudication process, the Board offers the parties to the cases several dispute resolution options. This notice explains those possibilities so that you can consider them and discuss them with the administrative judge before you decide how to proceed. All options are cost free. Resolving your case with the assistance of a professional who will guide the parties through the process offers the best chance of reaching a resolution that benefits both parties. Accordingly, the Board encourages you to be always open to such a resolution.

## THE MEDIATION APPEALS PROGRAM

The Mediation Appeals Program (MAP) is a voluntary, confidential process in which the parties meet with an experienced mediator in a non-litigious, non-adversarial setting. Even more than other available settlement options, MAP encourages the parties to approach settlement with an open mind and to consider possible resolutions that may not be available in the adjudication process. Both parties must agree to mediation, and the Board must concur that it could be beneficial, given the circumstances of the case and of the parties. Because the case will be outside the normal adjudication process while it is in MAP, your agreement to mediate requires that you be ready to proceed to mediation without delay, and that you be willing to finalize any settlement you may reach expeditiously. Cases should normally not spend more than 45 days in MAP.

The mediator will meet with the parties and facilitate discussions between them to find common grounds on which to resolve the case. Mediations may be done in-person, virtually, or by telephone. If the efforts to resolve the case do not result in a settlement, the mediator will have no input into the adjudication of the case. Nonetheless, the parties will likely return to adjudication with a better understanding of what is important to them and to the other party, which often helps them reach a settlement during the adjudicatory process. MAP is further described online at https://www.mspb.gov/appeals/mediationappeals.htm.

If you have other questions regarding MAP, discuss them with the administrative judge, or you may contact the MAP coordinator at regionaloperations@mspb.gov.

## THE SETTLEMENT JUDGE PROGRAM

A settlement judge is an administrative judge like the one assigned to your case, but they are assigned specifically and solely to discuss settlement options

with the parties. Like the administrative judge assigned to your case, a settlement judge is skilled at evaluating the parties' positions and offering sound advice on the strengths and weaknesses of each party's position. A settlement judge plays no part in the processes and procedures through which a case goes during the course of the traditional adjudication process and has no input into the decision if the case does not settle. Thus, some parties feel more open to frank discussion of their cases and their settlement goals with a settlement judge.

Unlike MAP, both parties do not have to request the services of a settlement judge. However, there must be a genuine willingness by both parties to explore settlement before one will be appointed. Accordingly, if after initial settlement discussions among the parties and the assigned administrative judge, a party believes the assignment of a settlement judge would be useful, a request may be made to the administrative judge. If administrative judge concurs, a settlement judge will be assigned.

## THE MSPB SETTLEMENT PROGRAM

The administrative judge assigned to decide your case will explore the possibility of settlement with the parties to almost all cases. Thus, you need not make any election if this is the option you prefer. Through the documents filed by the parties and the evidence submitted, the administrative judge becomes thoroughly familiar with the case and is in the best position to discuss the strengths and weaknesses of the case, as well as to evaluate not just the likelihood of success but also the validity of settlement offers made by the parties, and to suggest proposals for their consideration. Administrative judges often spend considerable time working with the parties to help them craft mutually beneficial settlements in lieu of adjudication, in which it is more likely that there will be a "winning" and a "losing" side. Any settlement discussions with the administrative judge have no effect on the ultimate outcome of the case if it does not settle.

## ELECTRONIC FILING AT THE MSPB

Parties and representatives who register as e-filers can file virtually any type of pleading, including a new appeal, in electronic form. Those who register as e-filers will receive documents issued by the Board, and pleadings filed by other e-filers, in electronic form. Registration and filing are done via the Board's e-Appeal site on the Internet: (https://e-appeal.mspb.gov). The Board's electronic filing application includes the following features:

- Both the Board and e-filers will receive electronic documents on the same day they are submitted.
- E-filers need not disclose their e-mail addresses to anyone except the MSPB.
- E-filers can either enter their pleadings online or upload them as electronic files.
- Documents can be submitted in any common electronic format, including word-processing and image formats (electronic files created by scanning paper documents).
- Should they choose to do so, e-filers will be able to submit their pleadings and supporting attachments in the form of declarations made under penalty of perjury. The Board gives greater evidentiary weight to statements in this form than to unsworn statements.
- Regardless of whether it is uploaded or entered online, each pleading will be assembled into a single PDF document, which will include all electronic attachments, and which will contain sequential page numbers. Pagination will enable everyone involved to make specific citations to the record.
- If unable to complete a pleading while online, an e-filer will be able to save his or her work and complete it during a later session.
- E-filers will be provided a confirmation of electronic filing, and will be able to print or download a copy of the assembled pleading as a PDF document.
- Service of pleadings on other e-filers will be automated.
- If you elect to be served electronically, MSPB will e-mail you notification when documents are posted to the e-Appeal repository. You will need to download or read the documents from the repository. If your mail service has spam filters, please ensure that mail from @mspb.gov is approved or check your junk folder routinely.
- When a party who is an individual is represented, the party and the representative can separately decide whether to register for e-filing. If only the representative registers for e-filing, the party will continue to receive documents by regular mail unless I waive that rule in a specific case.
- Although registration as an e-filer permits participants to file pleadings electronically, they may file any pleading, or portion of a pleading, by non-electronic means. As noted above, however, the Board strongly urges the parties to submit all pleadings and attachments electronically.
- Registration as an e-filer can be withdrawn at any time, but while in effect means that the individual consents to accept electronic service of all documents issued by the Board and all pleadings submitted by other e-filers.

For further information about electronic filing, please read the Board's regulation at 5 C.F.R. § 1201.14, or visit the Board's regular website (http://www.mspb.gov), or the Board's e-Appeal site (https://e-appeal.mspb.gov).

## NOTICE TO SELF-REPRESENTED APPELLANTS

Your petition for appeal indicates that you are currently representing yourself before this office. The Federal Circuit Bar Association (FCBA) may be able to assist you in finding an attorney to represent you, if you are interested in pro bono representation, that is, representation at no cost to you.  If you are interested in being represented in your appeal before this office, please click on this link or paste it into the address bar on your browser:

http://fedcirbar.org/Pro-Bono/Government-Employees-Pro-Bono/Overview-FAQ

**Please note** that the MSPB neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.  It will be the decision of the individual appellant to contact the FCBA about the possibility of pro bono representation, and it will be the decision of any attorney an appellant is referred to whether they will provide pro bono representation.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Mail          Richard Cornelius Jackson
                         1023 25th Ave
                         Bellwood, IL 60104

<u>Agency Representative</u>

Electronic Mail          Peter D. Gregory
                         Department of Homeland Security
                         Citizenship and Immigration Services
                         Chief of the Commercial & Administrative Law Div.
                         USCIS Office of the Chief Counsel
                         20 Massachusetts Avenue, N.W., Suite 4210
                         Washington, DC 20529-2120

| June 26, 2023 | /s/ |
|---|---|
| (Date) | Allison McKinley |
|  | Paralegal Specialist |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## CENTRAL REGIONAL OFFICE

| | |
|---|---|
| RICHARD CORNELIUS JACKSON,<br>             Appellant, | DOCKET NUMBER<br>CH-1221-23-0376-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>     SECURITY,<br>             Agency. | DATE: June 26, 2023 |

---

**THIS DOCUMENT CONTAINS IMPORTANT INFORMATION ABOUT THIS APPEAL AND ITS PROCESSING.  PLEASE READ THE ENTIRE DOCUMENT CAREFULLY.**

---

## ORDER ON JURISDICTION AND PROOF REQUIREMENTS

**There is a question whether this appeal is within the Board's jurisdiction.  As a result, the Board might dismiss the appeal for lack of jurisdiction without addressing the merits of the case.  This Order provides necessary information concerning the jurisdictional issue and the burdens of proof the appellant must meet to show that the Board should not dismiss this appeal for lack of jurisdiction, as well as how to prove the claim on the merits.**

The appeal claims the agency took retaliatory action because of the appellant's whistleblowing or other protected activity.  I **ORDER** the parties to follow the procedures set out below.  If either party has a question about any of the case processing instructions in this Order, you may call this office at the telephone number listed under my signature at the end of the Order for assistance.

## NOTICE TO THE APPELLANT

Your claim that the agency retaliated against you because of your whistleblowing or other protected activity appears to be an individual right of action (IRA) appeal. *See* 5 U.S.C. § 1221. To establish Board jurisdiction over an IRA appeal, you must show that you exhausted your administrative remedies before the Office of Special Counsel (OSC) and make nonfrivolous allegations that: (1) you engaged in whistleblowing activity by making a protected disclosure, or engaged in other protected activity as specified below; and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take one of the personnel actions listed at 5 U.S.C. § 2302(a).

Specifically, you must first prove by a preponderance of the evidence that you brought your whistleblower or other complaint to the attention of OSC, sought corrective action for it, and exhausted OSC's procedures. Preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would need to find that a contested fact is more likely true than untrue. 5 C.F.R. § 1201.4(q). You have "exhausted" OSC's procedures once OSC has notified you that it is terminating its investigation into your complaint. You may also show you exhausted OSC's procedures if 120 days have passed since you filed your claim with OSC and you have not received a termination notice. To satisfy this requirement, you must have informed OSC of the precise ground of your claim and given it a sufficient basis to pursue an investigation which might lead to corrective action. The test of the sufficiency of your claim to OSC is the statement you made in the complaint requesting corrective action or in other submissions to OSC, not any later characterization of those statements. It is not necessary, though, that you have correctly labeled the category of wrongdoing when you raised it to OSC. In this appeal, I will review only those alleged disclosures and personnel actions that were specifically raised to and exhausted at OSC.

A whistleblowing "disclosure" is defined at 5 U.S.C. § 2302(a)(2)(D) as "a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure

evidences-(i) any violation of any law, rule, or regulation; or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *See* 5 U.S.C. § 2302(b)(8).

In addition, 5 U.S.C. § 2302(b)(9) protects certain activity that may form the basis for an IRA appeal. Specifically, that section makes it unlawful to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of (A) the exercise of any appeal, complaint or grievance right granted by any law, rule, or regulation with regard to remedying a violation of section 2302(b)(8), discussed immediately above; (B) testifying for or otherwise lawfully assisting any individual in the exercise of any appeal, complaint or grievance right granted by any law, rule, or regulation; (C) cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or (D) refusing to obey an order that would require an individual to violate a law, rule, or regulation.

A nonfrivolous allegation is a claim under oath or penalty of perjury or supported by evidence relevant to the matter at issue that, if proven, could establish the matters it asserts. 5 C.F.R. § 1201.4(s). Because you must make nonfrivolous allegations as to each of the jurisdictional requirements set out in this Order (except exhaustion at OSC, as stated above), your claim and evidence must pertain to the proof required to support each element of those jurisdictional requirements. Conclusory, vague, or unsupported allegations are not enough to meet this standard. As an administrative agency, the Board has wide latitude in the kinds of evidence that it can accept, and affidavits are just one example of the kind of evidence that may be used to support an allegation. The way in which an allegation may be supported will often depend on the particular facts of the case.

The Board has held that a "gross waste of funds" is more than a debatable expenditure, and is one that is significantly out of proportion to the benefit reasonably expected to accrue to the government; that "gross mismanagement" means a management

action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission; and that an "abuse of authority" occurs when a Federal official or employee arbitrarily or capriciously exercises power and adversely affects anyone's rights or causes personal gain or advantage to himself or to someone he prefers.

If your claim is made under section 2302(b)(8), you need not prove that the matter you disclosed actually established any of the conditions described above, such as gross mismanagement. You must, however, make a nonfrivolous allegation that the matter you disclosed was one that a reasonable person in your position would believe was evidence of any of these situations. The test for determining whether your belief was reasonable is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by you, the employee or applicant, could reasonably conclude that the actions of the Government evidence such violations, mismanagement, waste, abuse, or danger. 5 U.S.C. § 2302(b).

A nonfrivolous allegation that a protected disclosure or activity was a contributing factor in the decision to take or fail to take a personnel action against you is a detailed, factual allegation that you disclosed one of the above matters or engaged in one of the protected activities, and that agency officials responsible for the personnel action were aware of your disclosure or activity and acted within such time that a reasonable person could find that the disclosure or activity contributed to the action. A disclosure shall not be excluded from 5 U.S.C. § 2302(b)(8), however, because of the amount of time which has passed since the occurrence of the events described in the disclosure. 5 U.S.C. § 2302(f)(1)(G). Meeting the knowledge and timing test satisfies your burden, but there are also other ways for you to satisfy it. If you do not introduce allegations and evidence to meet that test, the Board will then consider any relevant evidence on the contributing factor question, including the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing or activity was personally directed at the proposing or deciding official, and whether those individuals had a desire or motive to retaliate against you. You may also show that the official accused of taking retaliatory

action had imputed knowledge of your protected disclosure or activity by showing that individuals with actual knowledge of it influenced the official's action.

There is also another way to gain whistleblower status, which is by making a nonfrivolous allegation that the agency perceived you as a whistleblower. For example, you may gain this status if you make a nonfrivolous allegation that: The agency believed you to be the person who made anonymous complaints concerning violations of law, even though you were not, *see Special Counsel v. Department of the Navy,* 46 M.S.P.R. 274 (1990); the agency knew of your intention to blow the whistle, although you had not done so, *see Mausser v. Department of the Army,* 63 M.S.P.R. 41 (1994); or you disagreed with a public position of the agency but expressed that only within the agency and did not intend for your expression of disagreement to constitute a whistleblowing disclosure but the acting official saw your view as dangerous, *see Thompson v. Farm Credit Administration,* 51 M.S.P.R. 569 (1991); *see also Holloway v. Department of the Interior,* 82 M.S.P.R. 435, ¶ 15 (1999) (a newspaper reported, with no discussion of the particulars, that the appellant had disclosed "fraud, waste and abuse," and the appellant showed that the agency acted because of the report).

In cases of perceived whistleblowing, the analysis focuses on the agency's perceptions, i.e., whether the agency officials involved in the personnel actions at issue believed that you made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). In those cases, whether you actually made protected disclosures is immaterial to both the jurisdictional and merits issues of the appeal.  However, you must still establish that you exhausted your remedies with OSC on the issue of whether the agency perceived you as a whistleblower and make nonfrivolous allegations that the agency's perception was a contributing factor in its decision to take or not take the personnel action at issue.  *King v. Department of the Army*, 116 M.S.P.R. 689, ¶¶ 8, 9 (2011).

The Board has also decided that an individual alleging a violation of 5 U.S.C. § 2302(b)(9)(C) may gain protected status by claiming to have been perceived as having engaged in protected activity. *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417 (2016). That provision makes it a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, any personnel action because of "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency or the Special Counsel, in accordance with applicable provisions of law." To establish jurisdiction, the appellant must prove that he exhausted his remedy with OSC and make nonfrivolous allegations that the agency perceived him to have engaged in the protected activity and that this perception was a contributing factor to the personnel actions at issue. The Board has not yet addressed whether a claim that an agency perceived an appellant to have engaged in any of the other activities listed in § 2302(b)(9) is protected. However, if you believe that retaliation occurred because of such a perception, you must make nonfrivolous allegations concerning the specific facts on which your claim is based.

## PROOF OF CLAIM

If you show that the Board has jurisdiction over your appeal, you are entitled to a hearing on the merits of the appeal, at which you must prove each of those same matters by preponderant evidence, as defined above, i.e., that you engaged in whistleblowing or other protected activity, or were perceived to have done so, that contributed to the personnel action(s). In other words, you must show that it is more likely than not that you engaged in whistleblowing or other protected activity, or were perceived to have done so, and that this contributed to the personnel action.

If you meet this burden, then for the agency to prevail it must show by clear and convincing evidence that it would have taken the same personnel action even if you had not made a disclosure or engaged in other protected activity. In order to determine whether the agency met its clear and convincing evidence burden, the Board looks at the strength of the evidence the agency used in support of the personnel action, the existence

and strength of any motive to retaliate on the part of the agency officials who were involved in the decision(s), and any evidence that the agency takes similar actions against employees who are not whistleblowers or have not engaged in other protected activity, but who are in other ways similar to you with respect to your Federal employment.

If you claim that you were perceived as a whistleblower or to have engaged in an activity under section 2302(b)(9), as noted above, whether you actually were a whistleblower or engaged in such activity is not material; however, you must establish by preponderant evidence the same matters that established jurisdiction. If you meet your burdens on the merits of the appeal, the agency may still prevail if it can show by clear and convincing evidence that it would have taken the personnel action even if it had not perceived you to be as a whistleblower or to have engaged in such activity.

## REQUIRED SUBMISSIONS

For purposes of deciding whether the Board has jurisdiction over your appeal (that is, whether you proved you exhausted your remedy at OSC and made nonfrivolous allegations as to each of the other jurisdictional elements discussed earlier), I **ORDER** the appellant to file a statement, accompanied by evidence, listing the following: (1) your protected disclosure(s) or activity(ies); (2) the date(s) you made the disclosure(s) or engaged in the activity(ies); (3) the individual(s) to whom you made any disclosure(s); (4) why your belief in the truth of any disclosure(s) was reasonable; (5) the action(s) the agency took or failed to take, or threatened to take or fail to take, against you because of your disclosure(s) or activity(ies); (6) why you believe a disclosure or activity, or a perception of such a disclosure or activity, was a contributing factor to the action(s); and (7) the date of your complaint to OSC, the matters you raised in it and any amendments, and the date that OSC notified you it was terminating its investigation of your complaint, or if you have not received such notice, evidence that 120 days have passed since you filed your complaint with OSC. Unless you submit a copy of the complaint you submitted to OSC, along with any amendments you filed there, and a copy of the OSC letter notifying you of your right to appeal to the Board, your response must be in the

form of an affidavit, sworn statement, or declaration under penalty of perjury, 28 U.S.C. § 1746, a form for which is found in the Board's regulations at 5 C.F.R. Part 1201, Appendix IV. The law does not require that you submit a copy of OSC's letter, but it does provide that you bear the burden of establishing the required elements of an IRA appeal.

You must file this statement within 10 calendar days of the date of this Order, and must serve a copy on the agency at the same time. The agency may file a response on the jurisdictional issue within 20 calendar days of the date of this Order. Unless I tell the parties otherwise, the record on the issue of jurisdiction will close on the date the agency's response is due. No evidence and/or argument on jurisdiction filed after that date will be accepted unless the party submitting it shows that it was not readily available before the record closed. Notwithstanding the close of the record, however, pursuant to 5 C.F.R. § 1201.59(c), a party must be allowed to respond to new evidence or argument submitted by the other party just before the close of the record. If there is no jurisdiction, I will dismiss your appeal. If the Board has jurisdiction, I will adjudicate your appeal and will schedule a hearing if you requested one.

FOR THE BOARD:                    _____/S/_____
                                  Daniel R. Fine
                                  Administrative Judge

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Mail        Richard Cornelius Jackson
                       1023 25th Ave
                       Bellwood, IL 60104

Agency Representative

Electronic Mail        Peter D. Gregory
                       Department of Homeland Security
                       Citizenship and Immigration Services
                       Chief of the Commercial & Administrative Law Div.
                       USCIS Office of the Chief Counsel
                       20 Massachusetts Avenue, N.W., Suite 4210
                       Washington, DC 20529-2120

| June 26, 2023 | /s/ |
| :---: | :---: |
| (Date) | Allison McKinley |
| | Paralegal Specialist |

RICHARD CORNELIUS JACKSON v. DEPARTMENT OF HOMELAND SECURITY
Docket # CH-1221-23-0376-W-1
Appellant's Jurisdictional Brief
Summary Page

**Case Title :** RICHARD CORNELIUS JACKSON v. DEPARTMENT OF HOMELAND
SECURITY

**Docket Number :** CH-1221-23-0376-W-1

**Pleading Title :** Appellant's Jurisdictional Brief

**Filer's Name :** Richard Cornelius Jackson

**Filer's Pleading Role :** Appellant

**Details about the supporting documentation**

N/A

# Table of Contents

Pleading Interview ................................................................................................ 3

Uploaded Pleading Text Document ...................................................................... 4

    Jurisdiction Brief ............................................................................................... 4

    Exhibit 1 ............................................................................................................ 20

    Exhibit 2 ............................................................................................................ 39

    Exhibit 3 ............................................................................................................ 52

    Exhibit 4 ............................................................................................................ 60

    Exhibit 5 ............................................................................................................ 63

    Exhibit 6 ............................................................................................................ 75

    Exhibit 7 ............................................................................................................ 111

    Exhibit 8 ............................................................................................................ 119

    Exhibit 9 ............................................................................................................ 157

Certificate of Service ........................................................................................... 163

RICHARD CORNELIUS JACKSON v. DEPARTMENT OF HOMELAND SECURITY
Docket # CH-1221-23-0376-W-1
Appellant's Jurisdictional Brief
Online Interview

1. Would you like to enter the text online or upload a file containing the pleading?

See attached pleading text document

_____

2. Does your pleading assert facts that you know from your personal knowledge?

Yes

_____

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

_____

# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD
# CENTRAL REGIONAL OFFICE

RICHARD CORNELIUS JACKSON,                          DOCKET NUMBER
Appellant,                                          CH-1221-23-0376-W-1

v.

DEPARTMENT OF HOMELAND                              DATE: July 6, 2023
SECURITY,
Agency.                                             ADMINISTRATIVE JUDGE
                                                    DANIEL R. FINE

## STATEMENT DEMONSTRATING

## MERIT SYSTEMS PROTECTION BOARD JURISDICTION

### INTRODUCTION

Pro Se Appellant, RICHARD CORNELIUS JACKSON, hereby submits in the above-captioned matter, the Appellant's statement demonstrating that the Merit Systems Protection Board ("MSPB" or "Board") has jurisdiction over this Individual Right of Action (IRA) Appeal.

In order to determine the merits of an IRA appeal, the Board must examine whether the Appellant established by preponderant evidence each of the jurisdictional requirements; if he did, it must order corrective action unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of his protected activity. *See Powers v. Dept. of Navy, 97 MSPR 554 (2004).*

Of note, prior to the enactment of the Whistleblower Protection Enhancement Act of 2012 (WPEA), an appellant could only file an IRA appeal with the Board based on allegations of whistleblower reprisal under section 2302(b)(8). *See Wooten*, 54 M.S.P.R. at 146. Following the WPEA's enactment, however, an appellant also may file an IRA appeal with the Board concerning alleged reprisal based on certain other classes of protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). *See* 5 U.S.C. § 1221(a); *Hooker*, 120 M.S.P.R. 629, ¶ 9.

The Appellant will delineate below why the Board has jurisdiction over his Appeal. Specifically, the Appellant will detail his: 1) protected disclosures or activities; 2) the dates he made the disclosures or engaged in the activities; 3) the individual(s) to whom he made any disclosures; 4) why his belief in the truth of any disclosures was reasonable; 5) the actions the Agency took or failed to take, or threatened to take or fail to take, against him because of his disclosures or activities; 6) why he believes a disclosures or activities, or a perception of such a disclosures or activities, was a contributing factor to the actions; and 7) the dates of his complaints to the U.S. Office of Special Counsel (OSC), the matters he raised in it and any

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

amendments, and the date that OSC notified him it was terminating its investigation of his complaint.

## APPELLANT'S PROTECTED ACTIVITY[1]

The U.S. Equal Employment Opportunity Commission (EEOC) details protected activity as:

- filing or being a witness in an EEO charge, complaint, investigation, or lawsuit;
- communicating with a supervisor or manager about employment discrimination, including harassment;
- answering questions during an employer investigation of alleged harassment;
- refusing to follow orders that would result in discrimination;
- resisting sexual advances, or intervening to protect others;
- requesting accommodation of a disability or for a religious practice; and,
- asking managers or co-workers about salary information to uncover potentially discriminatory wages.

*Complaints to Department of Labor (DOL)*

On July 25, 2022, because he suspected his veterans' preference rights had been violated, the Appellant filed a complaint with DOL after he believed the Agency had not selected him for a 10th job under USCIS announcement PSC-2022-0035. The Appellant would request the case be closed due to fear of reprisal (Tab 8, at 137). On February 13, 2023, the Appellant filed a second complaint to DOL alleging the same after deciding he would challenge the Agency on its 10th job non-selection. DOL closed the complaint as untimely filed which led to the Appellant's first Appeal under MSPB Case No. CH-3330-23-0216-I-1. On March 14, 2023, the Appellant filed a third DOL complaint alleging his veterans' preference rights had been violated after non-selection for an 11th job announcement for the Vermont Service Center under USCIS Job Announcement ESC-2022-0044[2].

*Complaint to Local Management\**

On January 25, 2023, the Appellant informed his supervisors, Concepcion RAZO (RAZO), Pauline WOODSON (WOODSON), Kevin RIDDLE ("FOD" or "Field Office Director") and Carissa SHEFFLER (SHEFFLER) via e-mail (Tab 8, at 72) of RAZO's behavior and how he perceived it to be unfair treatment and a possible prohibited personnel practice. The Appellant notified "management" (WOODSON, FOD and SHEFFLER), that he was accused of performance deficiency by RAZO (Tab 8, at 73) after he observed her hiding behind his office door on 2 occasions on January 24, 2023. The Appellant also informed management that he suspected RAZO's behavior was due to him informing her on January 13, 2023, that he was interviewing for another position soon (Tab 8, at 73 ¶ 3).

---

[1] All complaints filed will be listed. Only the complaints with a "*" near the headline indicate the Appellant believes contributed to reprisal.
[2] Appellant believes that only the third DOL complaint contributed to reprisal since DOL contacted the Agency to investigate.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

*First Complaint to OSC\**

The Appellant was unhappy with management's handling of RAZO's behavior, so he filed a complaint (Exhibit 1) with the U.S. Office of Special Counsel (OSC) on January 28, 2023, and filed a complaint pursuant to 5 U.S.C. § 2302(b)(4), alleging Abuse of Authority and Hostile Work Environment. The Appellant believed (and still does) that RAZO's behavior was done in order to have a pretext to provide a negative reference to officials from the Vermont Service Center under USCIS Job Announcement ESC-2022-0044. The Appellant would ultimately not be selected for the position. Unfortunately, the agency was successful in convincing OSC not to pursue his allegations, although he had informed the OSC attorney of his non-selection. The Appellant would eventually file a separate Appeal under MSPB Case No. CH-3333-23-0328-I-1.

*Complaints to Agency\**

On February 9, 2023, The Appellant filed a Harassment complaint (Tab 8, at 68) with the Agency's Anti-Harassment Hotline. On February 10, 2023, he submitted Form G-1476A, Request to Initiate Pre-Complaint Process (Tab 8, at 42-53) to the Agency's Office of Equal Opportunity and Inclusion (OEOI). He alleged the actions of RAZO were discriminatory in nature based on his race and disability status. The Appellant alleged further that RAZO's role in his non-selection for the USCIS job with the Vermont Service Center was discriminatory in nature and rooted in retaliation.

On March 19, 2023, the Appellant filed a formal complaint (Tab 8, at 19-169) with the Agency's OEOI alleging that it had violated Title VII of the Civil Rights Act of 1964, Uniformed Services Employment and Reemployment Rights Act, Vietnam Era Veterans' Readjustment Assistance Act of 1974, Americans with Disabilities Act of 1990, and Section 503 of the Rehabilitation Act of 1973.

*Appeals Filed with the MSPB\**

The aforementioned Appeals under case numbers CH-3330-23-0216-I-1 and CH-3333-23-0328-I-1 were filed with the Board because the Appellant reasonably believes the Agency has violated his veterans' preference rights. Appeal No. CH-3330-23-0216-I-1 (Tab 8, at 146) was filed on March 7, 2023. Appeal No. CH-3333-23-0328-I-1 (Exhibit 2) was filed on May 19, 2023.

*Grievance Submitted to District Director*

On April 30, 2023, a grievance (Tab 8, at 189) was submitted to the District Director, Mirash DEDVUKAJ (DEDVUKAJ). The Appellant alleged RAZO had denied his leave request due to his refusal to sign the 2023 Mid-Cycle Review and his refusal to meet with her.

*Complaint Submitted to Agency EEO Director and Deputy*

On May 5, 2023, the Appellant e-mailed the Agency EEO Director (Tab 8, at 243). He contacted the EEO Director pursuant to Chapter 5 of the EEOC's Management Directive 110:

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

Chapter IV, D(1), notifying of his dissatisfaction regarding the processing of his formal complaint.

*Second, Third and Fourth Complaints filed with OSC\**

On March 21, 2023, the Agency unlawfully procured the TransUnion Consumer Report of the Appellant after he filed a formal complaint on March 20, 2023. On March 30, 2023, he filed a second complaint with OSC (Tab 8, at 6-14), requesting an investigation to determine who "ordered the procurement of my credit report without my express written consent". When the OSC attorney e-mailed him her preliminary decision (Tab 8, at 291), he responded and provided a more detailed rebuttal (Tab 8, at 290). On May 12, 2023 (Tab, 8, at 171-178) the Appellant filed a third complaint with OSC alleging the Agency proposing a 5-day suspension was retaliatory for his grievance from April 30th against RAZO.

On June 2, 2023, the Appellant filed a fourth complaint with OSC[3] (Exhibit 3), alleging that the Agency was "backdating" a certified timecard from July of 2022 without any cause or notice to the Appellant. OSC closed the complaint and provided notification that it would not move forward with an investigation (Exhibit 4).

*Complaints filed with the Federal Labor Relations Authority (FLRA)*

Finally, on June 1, 2023, the Appellant filed Unlawful Labor Charges (Exhibit 5) with the Federal Labor Relations Authority (FLRA) against the Agency. A separate complaint was filed against the Union. He alleges the retaliatory and discriminatory acts of the Agency violate his rights as a federal Bargaining Unit Employee.

## BELIEF IN THE TRUTH OF ANY DISCLOSURES WAS REASONABLE

Per Board instruction, the Appellant is to detail "why his belief in the truth of any disclosures was reasonable". Respectfully, the Appellant will explain why he believes a statement for the aforementioned, contradicts the plain text of federal whistleblower statutes and neglects Congress's purpose and intent to provide broad IRA appeal rights against retaliation, both for making whistleblower disclosures as well as for engaging in activities related to whistleblowing. With that being said, the Appellant prays that the Board's analysis does not depart from well established precedent that allegations of retaliation for engaging in protected activities are correctly analyzed under section 2302(b)(9).

The Appellant filed complaints with OSC alleging that the Agency unlawfully procured his TransUnion Consumer Report and later subjected him to a proposed adverse action, a 5-day suspension, after he filed a grievance against RAZO for denying his leave request and threatening him with disciplinary action. It should be noted that the Agency's retaliation, which started in January 2023, created a significant change in working conditions after making both protected disclosures and engaging in protected activities, including disclosing information to the following:

---

[3] OSC completed its preliminary review on June 30, 2023, which is after the Appellant filed this IRA Appeal.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

- DOL;
- Management at the Chicago Field Office;
- Agency's OEOI and Anti-Harassment Offices;
- Appeals to the MSPB (alleging veterans preference violations);
- Filing with FLRA; and,
- OSC.

While many of the Appellant's disclosures were made in the context of his protected activities, he separately alleged retaliation both for making protected disclosures under section 2302(b)(8) and for engaging in protected activities under section 2302(b)(9). After OSC closed the Appellant's complaints, he timely filed this IRA Appeal with the Board alleging the same theories of retaliation he raised in his complaints with OSC.

Congress explicitly created 14 distinct prohibited personnel practices, including two separately-defined provisions prohibiting retaliation for making a protected disclosure or engaging in a protected activity. *See* 5 U.S.C. § 2302(b)(8) and (9). These statutory provisions offer protection for "distinctly different" actions. *See Williams v. Dep't of Defense, 46 M.S.P.R. 549, 553 (1991)*. The essential difference between the protections of sections 2302(b)(8) and (9) is between "reprisal based on disclosure of information and reprisal based upon exercising a right to complain." *See Serrao v. Merit Sys. Prot. Bd., 95 F.3d 1569, 1575 (Fed. Cir. 1996)* (*citing Spruill v. Merit Sys. Prot. Bd.*, *978 F.2d 679, 690 (Fed. Cir. 1992))*. Notably, while section 2302(b)(8) prohibits retaliation for making protected disclosures, section 2302(b)(9) prohibits retaliation for, among other things, disclosing information to OSC, exercising certain appeal, complaint, or grievance rights, and testifying or assisting in the exercise of certain appeal, complaint, or grievance rights.

In addition to offering statutory protection against retaliation for distinctly different actions, sections 2302(b)(8) and (9) have different legal standards. Claims under section 2302(b)(8) require complainants to have a reasonable belief that their disclosures evidence a violation of law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See S. Rep. No. 112-155 (2012 U.S.C.C.A.N. 589, 598-99; Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999)*. However, the statute imposes no such requirement for claims under section 2302(b)(9). Thus, even when an Appellant alleges retaliation for actions that could be protected under both sections 2302(b)(8) and (9), the analysis for a claim under each provision would necessarily be different.

Respectfully, given these distinctions, the Appellant prays that the Board separately analyze whether he was retaliated against based on his protected activities under section 2302(b)(9). Respectfully, the Appellant believes that an analysis of "reasonable belief" is not required for the Board to conduct a substantive review of his disclosures. The statute contemplates that individuals may file IRA appeals under *either* statutory provision *or* both. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a) (individuals alleging retaliation for making protected disclosures *or* engaging in certain protected activities have IRA appeal rights and "may seek corrective action from the Board … for a prohibited personnel practice described in section 2302(b)(8) *or* section 2302(b)(9)(A)(i), (B), (C), or (D) ….") (emphases added).

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

Respectfully, the Appellant argues that it would be axiomatic that a statute should not be interpreted to render one part superfluous. *See Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 612 (1991), recons. denied, 52 M.S.P.R. 375 and aff'd, 981 F.2d 1237 (Fed. Cir. 1992); see, e.g., Horner v. Merit Sys. Prot. Bd., 815 F.2d 668, 674 (Fed. Cir. 1987).

In similar cases, the Board has consistently recognized these statutory distinctions and held that such activities are protected under section 2302(b)(9), not section 2302(b)(8). *See, e.g., Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261, 265 (Fed. Cir. 2015) (disclosures made during grievance process are allegations of prohibited personnel practices under section 2302(b)(9), not section 2302(b)(8)); *Luecht v. Dep't of the Navy*, 87 M.S.P.R. 297, 302 (2000) (finding EEO complaints, IRA appeals, and union grievances are section 2302(b)(9) activities, not section 2302(b)(8) disclosures).

Congress has made clear that section 2302(b)(9) protects certain *activities* separate and apart from the protection for disclosures under section 2302(b)(8). To the extent that the scope of these protections against retaliation may overlap, section 2302(b)(9)'s protection is aimed at the complainant's *activities*, not at the underlying disclosures or their reasonableness.

Since passing the CSRA in the late 1970s, Congress has protected federal employees from retaliation for engaging in a particular activity—exercising appeal rights. *See* Pub. L. No. 95-454 (1978) § 101(a). In 1989, with the passage of the WPA, Congress added statutory protections to section 2302(b)(9) for other activities, namely disclosing information to or cooperating with OSC or an Office of Inspector General, exercising complaint and grievance rights, testifying for or assisting an individual in the exercise of appeal, complaint, or grievance rights, and refusing to obey an order that violates a law[4]. *See* Pub. L. No. 101-12, 103 Stat. 16 (1989) § 4(b).

When Congress passed the WPEA in 2012, it further strengthened the protections against retaliation in section 2302(b)(9). Significantly, the WPEA provided complainants with IRA appeal rights to the Board for many section 2302(b)(9) claims. *See* Pub. L. No. 112-199, 126 Stat. 1475 (2012) § 101(b). The expansion of these protections and the introduction of IRA appeal rights for certain section 2302(b)(9) claims, such as those at issue in this case, indicate that Congress intended for complainants, like the Appellant, to be able to bring IRA appeals for section 2302(b)(9) claims along with and independent from any related section 2302(b)(8) claims.

It is undisputed that based on the evidence, the Appellant 1) made disclosures to OSC, 2) complained to management at the Chicago Field Office, 3) filed Appeals with the MSPB, 4) complained to DOL, 5) filed complaints with the Agency's OEOI and Anti-Harassment Offices, 6) complained to the Agency EEO Director and Deputy, and 7) filed complaints with the FLRA. __*All*__ of these activities have long been held to be protected under section 2302(b)(9). *See* 5 U.S.C. § 2302(b)(9).

---

[4] In 2017, Congress amended section 2302(b)(9) to include protections for employees who refuse to obey an order that would require that employee to violate a "rule, or regulation" in addition to a law.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

The Appellant prays that upon a final Board analysis, it determines that the Appellant engaged in protected activity, further finding that it is immaterial as it relates to the Appellant's disclosures, as to whether or not he, or any person would "reasonably believe" evidenced a violation of law, rule, or regulation under section 2302(b)(9). *See, e.g., Special Counsel v. Hathaway*, *49 M.S.P.R. 595, 612 (1991)* (section 2302(b)(9) covers disclosures to OSC that do not meet the terms of section 2302(b)(8)), *recons. denied, 52 M.S.P.R. 375, aff'd, 981 F.2d 1237 (Fed. Cir. 1992).*

### ACTIONS THE AGENCY TOOK OR FAILED TO TAKE, OR THREATENED TO TAKE OR FAIL TO TAKE, AGAINST APPELLANT BECAUSE OF HIS DISCLOSURES OR ACTIVITIES, AND CONTRIBUITNG FACTORS

The Appellant repeats each claim of protected activity here from pages 2-4. Although he only complained to OSC of retaliation for the unlawful procurement of his TransUnion Credit Report and retaliation for having filed a grievance, the Appellant wishes to provide the Board a convincing mosaic of the Agency's retaliation prior to his IRA Appeal to the Board.

An Administrative Judge may find an Appellants evidence to be a "convincing mosaic" of retaliation for an appellant's prior Board appeal, protected EEO activity and grievances; reviewing the "ample evidence supporting the administrative judge's findings of retaliation for filing a Board appeal and grievances" and noting, in particular, "the suspicious timing of this treatment—immediately following [appellant's] reinstatement to duty following her prior Board appeal" and the agency's failure to investigate an allegation of reprisal made during the reply to proposed adverse action leading to the adverse action appealed to the Board. *See Rhee v. Dept. of Treasury, 117 MSPR 640 (2012)* (involving a 5 USC § 2302(b)(9) claim.

*Complaints to Department of Labor*

The Agency failed to inform the Appellant why he was not selected for any of the 11 jobs that he was qualified for, that subsequently led to 2 MSPB Appeals, although it is required to do so based on its own Merit Promotion and Internal Placement Plan (MD 255-001) (Exhibit 6)). Per the MD 255-001, section V(B)(16), the Agency must release the information if there is a Freedom of Information Act request (FOIA) or a complaint. The Appellant filed a FOIA request in July of 2022 and the Agency has unlawfully withheld evidence of its misconduct, despite an Active MSPB Appeal. The Appellant was forced to file a federal lawsuit in the U.S. District Court of Northern Illinois on July 3, 2023, in order to force the release of the documents. The Agency, here, demonstrates its propensity to violate the law and its own procedures in order to further a retaliatory and discriminatory animus.

*Contributing Factor*

For the contributing factors delineated henceforth, "in order to satisfy the contributing factor IRA jurisdictional criterion, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way". *See Kukoyi v. VA, 111 MSPR 404 (2009).* Further, a 'contributing factor'

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

means the disclosure affected the agency's decision to threaten, propose, take, or not take the personnel action regarding the appellant. See *Ingram v. Dept. of Army*, *116 MSPR 525 (2011).*

The Appellant believes that the third complaint to the DOL regarding the Agency's alleged violation of his veterans' preference rights contributed to the Agency's decision to suspend the Appellant for 5-days without pay. The complaint was submitted to DOL on March 14, 2023. Two months later, the Agency proposed to suspend the Appellant and a month later carried it out. Once an appellant's evidence establishes by preponderant evidence that the knowledge/timing test has been met, the administrative judge must find that the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue. See *Mason v. DHS*, *116 MSPR 135 (2011).*

Additionally, the Board may find that under the knowledge-timing test an appellant makes a nonfrivolous allegation that the alleged protected disclosure was a contributing factor in his non-selection where selecting officials were influenced by individuals who were in a position to adversely react to appellant's protected disclosures. *See Cassidy v. DOJ, 118 MSPR 74 (2012).*

*Complaint to Local Management*

Local management failed to adequately address the Appellant's concerns when he reported those concerns to them on January 25, 2023. The Appellant believes the Agency is complicit in the treatment he has received since he began his protected activities. He has not been removed from RAZO's team because the Agency has no interest in mitigating conflict, as its intent is to ensure his working conditions are unbearable, imposing a chilling effect on his whistleblowing and to ensure subjugation. *See Covarrubias v. SSA, 113 MSPR 583 (2010).*

*Contributing Factor*

The Appellant promptly alerted management to RAZO's behavior on January 25, 2023, because he identified it as retaliation for seeking out an employment opportunity. Since that day, the Agency has engaged in the retaliatory acts that caused this Appeal. The Appellant believes SHEFFLER attributed more weight to RAZO, WOODSON and FOD's defenses as it relates to his allegations of wrongdoing against them. In his reply to SHEFFLER regarding the proposed suspension (Tab 8, at 180-187), he alleged it was retaliatory in nature. Unfortunately, their influence overshadowed his disclosures. In *Mangano v. VA, 109 MSPR 658 (2008)*, the Board noted the possibility of influence on a deciding official of other officials with potentially retaliatory motives. To make it to a Hearing, the knowledge of agency officials who took or influenced the taking of the prohibited action need only be alleged. *See Jessup v. DHS, 107 MSPR 1 (2007).*

The Appellant made his disclosure in January 2023 to the same officials who would later suspend him in June of 2023. The Board has held that evidence that the official taking the action knew of the disclosure and that the action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor meets the appellant's burden on that issue. *See Tatsch v. Dept. of Army, 100 MSPR 460 (2005).*

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

The Agency has failed to act as it relates to ensuring the Appellant is free from a work environment that is incessantly retaliatory and discriminatory. A lengthy delay in taking a corrective action can constitute a "failure to take" a personnel action under 5 USC 2302(b) (citing *Special Counsel v. Brown*, *61 MSPR 559, 568–69 (1994)). See Carson v. Dept. of Energy, 109 MSPR 213 (2008).*

## Complaints to OSC

The Agency failed to address the issues raised by the Appellant after it learned of those issues via OSC's preliminary reviews. If the appellant makes a disclosure outside the chain of command, the disclosure is protected even if the information disclosed is known to but remains uncorrected by management. *See Wadhwa v. VA, 110 MSPR 615 (2009), overruled on other grounds, Hau v. DHS, 123 MSPR 620 (2016).* As a result, the Agency failed to take corrective action. The Agency demonstrated insentience when it learned via OSC, that an employee was being suspended after having filed a grievance and earlier complaining of the unlawful procurement of his TransUnion credit report.

As it relates to the unlawful procurement of the Appellant's TransUnion Consumer Report, the Agency failed to provide an explanation worthy of belief (Tab 8, at 281). The Agency's explanation contradicts the message it transmitted to employees on May 31, 2023 (Tab 8, at 288).

## Contributing Factor

The Agency's Office of Security and Integrity (OSI) unlawfully procured the Appellants TransUnion credit report one day after his formal complaint was transmitted to the Agency's OEOI. The Appellant alleging that the office within the Agency that purports to have "integrity", may actually be deficient, no doubt ruffled some feathers – especially within OSI. The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate. *See Simmons v. Dept. of Air Force, 99 MSPR 28 (2005). See* also *Mattil v. Department of State, 118 M.S.P.R. 662, ¶ 21 (2012), with* the Board holding that it is proper to consider evidence regarding an investigation if it is so closely related to a personnel action that it could have been a pretext for gathering information to retaliate for whistleblowing.

## Complaints to Agency

The Appellant believes that the Agency's failure to process his EEO formal complaint in the "usual manner" constitutes a significant change in working conditions and rise to the level of a personnel action. See *Mattil v. Dept. of State*, *118 MSPR 662 (2012).* The Agency has allowed interference during the EEO process by failing to address local management's attempts to perform investigatory duties in violation of EEOC's Management Directive 110: Chapter IV, D(1). The Appellant reported the interference (Tab 8, at 243-244), but the Agency failed to take action against local management because it is complicit in their unlawful acts toward the Appellant.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

*Contributing Factor*

As with OSI, the Agency's OEOI being labeled as corrupt and possibly compromised by the Appellant, ruffled the feathers on the same bird. Local management official Shauna HARRIS (HARRIS), who is the District's Chief of Staff reporting to SHEFFLER, attempted to interfere with the EEO process by claiming she was assigned to be the Management Inquiry Officer (MIO) for the complaint against RAZO. The Appellant respectfully notified her that she was ineligible to do so. The Appellant reported the breach to the Agency's Anti-Harassment Program Manager, Leah SUTHERLIN (SUTHERLIN), which only resulted in another attempt to interfere. The next attempt would come from a supervisor assigned in Detroit named Jovana GJELAJ (GJELAJ), (Tab 8 at 248)). Note that this supervisor is also a District employee as is HARRIS. Likewise, the Appellant informed GJELAJ she was interfering with the EEO process.

When the Appellant filed his earlier grievance against RAZO to District Director DEDVUKAJ on April 30, 2023, the interference from HARRIS was reported the same day to SUTHERLIN. GJELAJ's interference was reported on May 5, 2023, to the Agency's EEO Director and Deputy (Tab 8, at 243). This no doubt influenced DEDVUKAJ's decision to retaliate against the Appellant for opposing the unlawful interference from his subordinates regarding his EEO complaint. As a result, on May 10, 2023, DEDVUKAJ's decision (Tab 8, at 191) finding no merit to the Appellant's grievance lends credence to the Appellant's theory that he ordered a suspension in retaliation for the grievance. The Appellant's analysis is plausible because there is no other explanation. The Board has held that the lack of any other plausible explanation gives circumstantial evidence its probative effect. *See Dogar v. DOD, 95 MSPR 52 (2003).*

As a result, the Appellant reasonably believes that the foregoing events were a contributing factor in the decision to suspend him. The 5-day suspension without pay is tainted with reprisal. The Board has no discretion to affirm a penalty tainted by illegal reprisal, even if the agency's penalty might otherwise have been reasonable. *See* 5 U.S.C. § 7701(c)(2)(B); *Sullivan v. Dep't of the Navy, 720 F.2d 1266, 1278 (Fed. Cir. 1983)* (Nies, J., concurring) ('In an adverse action proceeding,…the merits cannot be the determinative factor that there was no reprisal. A *meritorious adverse action must be set aside where there is reprisal*.' (emphasis added))."). *See Siler v. EPA*, 908 F.3d 1291 (Fed. Cir. 2018).

*Appeals Filed with MSPB*

The Agency failed to investigate the Appellant's claims of his veterans' preference rights being violated for the non-selection for 11 jobs within the Agency. It has sought to obstruct the Appellants right to inspect documents related to the selection of federal job applicants pursuant to the precedent set forth in *Core v. USPS*, which finds there is no "substantial invasion of privacy in information identifying successful federal job applicants". The Agency has for 11 months now, failed to respond to the Appellants FOIA request. It is required to do so based on its own Merit Promotion and Internal Placement Plan. *See* Exhibit 6.

The Appellant would like to highlight for the Board the Agency's willingness to submit fraudulent documents in order to advance its agenda. On June 8, 2023, the Agency submitted a Motion to Dismiss (Exhibit 7) the Appellants Appeal under Case No. CH-3333-23-0328-I-1. The

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

Agency' Motion listed that "*The vacancy announcement for ESC-2022-0044 put applicants on notice that the job was a merit promotion opportunity limited to current USCIS employees and CTAP eligibles. The vacancy announcement for ESC-2022-0044 stated that the job was open to "Internal to an agency," defined as "Current federal employees of this agency." The job announcement provided further detail on the applicants eligible to apply for ESC-2022-0044 with the statement, "Clarification from the agency: Current USCIS employees with competitive status and CTAP eligible." See page 2 of Job Announcement No. ESC-2022- 0044, a true and accurate copy of which is attached hereto as Agency Exhibit A". See* Exhibit 7, at 5, #4.

However, this was not completely…accurate. The Appellant would come to realize that the "true and correct" copy of the job announcement the Agency attached in support of its Motion was a fraudulent copy. The copy that the Agency submitted was missing the requisite statement regarding preference eligible veterans submitting their applications under the Veterans Employment Opportunities Act (VEOA). The Agency's fraudulent copy of the job announcement was submitted to the Board because the Agency failed to realize that the Appellant had already submitted a true and correct copy (Exhibit 8) with his initial Appeal under Case No. CH-3330-23-0216-I-1[5]. The amoral act of submitting a fraudulent document to the Board demonstrates the Agency's resolve knows no bounds in its quest to retaliate against the Appellant.

*Contributing Factor*

The Appellant's Appeals seek Agency accountability before the Board. In his Pleadings, he has alleged that the Agency removed documents from at least ten of his job applications in order to deny him the right to compete as a 10-point preference eligible veteran. This extraordinary claim, if true, would mean the Agency lacks credibility before the Board. It would also indicate that the Agency's leadership would no doubt lose the confidence of the workforce if the Appellant is vindicated. The Agency is indefatigable in its efforts to silence the Appellant. So much so, it has resorted to unlawful retaliation and submitting forged evidence to the Board in order to do so. The Agency bears the burden of producing relevant, material, and credible evidence of its compliance. *See Sweet v. USPS, 89 MSPR 28 (2001).* The Appellant believes the Agency's conduct before the Board renders its evidentiary submissions unworthy of credence henceforth.

The allegations of the Appellant are quite serious and the Agency has demonstrated it will stop at nothing to stifle the Appellant's ability to prove his claims. Due to the aforesaid conduct of the Agency, it is self-evident why the Board Appeals contributed to the retaliatory acts of the Agency.

*Grievance Submitted to District Director*

After the Appellant reported the denial of leave and threats of disciplinary action from RAZO to DEDVUKAJ via a grievance (Tab 8, at 189-190), the Agency proposed a retaliatory 5-

---

[5] The Appellant does not believe the Agency Representative *intended* to mislead the Board with the fraudulent copy of the job announcement. He believes the Agency altered the job announcement shortly after the Appellant's first MSPB Appeal. The Appellant believes the Agency misled its own representative in order to further its retaliatory and discriminatory ambitions against the Appellant.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

day suspension (Tab 8, at 194-200) thereafter. "Reprisal for exercising a grievance right is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9), not 5 U.S.C. § 2302(b)(8)," and WPEA does not change that result. *See Mudd v. VA*, 120 MSPR 365 (2013). The Appellant believes DEDVUKAJ ordered the suspension that the Field Office Director initiated and SHEFFLER upheld. An appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *See Aquino v. DHS, 121 MSPR 35 (2014).*

The Agency proposed to suspend (Tab 8, at 194-200) the Appellant on May 11, 2023, due to his allegedly 1) Refusing to Follow Supervisory Instructions and 2) Disrespectful Conduct. The Appellant argues that the meeting was not mandatory based on RAZO's e-mail (Tab 9, at 234). RAZO clearly stated "Send me a reply if you are open to meeting with me and at what time". That indicates the meeting wasn't mandatory. The Appellant was not open to meeting with RAZO. In fact, he had submitted a Reasonable Accommodation request seeking a revision of supervisory methods (Tab 8, at 236-238) which was completely ignored by respondeat superiors and the Agency. The Appellant does not wish to be in her presence because of the discriminatory animus she harbors towards him, and the fact that she aggravates his service-connected mental disability. *See* Tab 8, at 183 ¶2. The Agency absolutely refuses to remove the Appellant from RAZO's team.

The Appellant was the only employee required to meet with her and viewed it as further evidence of her discriminatory animus. He reasonably believed that RAZO and WOODSON were planning to threaten him for refusing to sign the Mid-Cycle Review (Tab 8, at 209-210) because initially she was opposed to a Union Representative attending. *See* Tab 8, at 209 ¶1. The meeting only became mandatory because RAZO and WOODSON wanted to threaten the Appellant for refusing to sign the Mid-Cycle Review. Signing performance appraisals are not required by the Office of Personnel Management (OPM). The Appellant would agree to meet with RAZO if she agreed to being recorded.

The Appellant had a reasonable belief that RAZO and WOODSON were planning to subject him to threats. He informed RAZO that she had "been less than truthful when questioned regarding your behavior since January 2023". See Tab 8, at 210. RAZO denied hiding behind the Appellant's door when questioned by the EEO Counselor. *See* Tab 8, at 37 ¶1. In light of the fact that RAZO had demonstrated a propensity to be dishonest, the Appellant informed her that he found her "morally deficient" and "untrustworthy". *See* Tab 8, at 210. The Appellant made the remarks to her only after she changed her mind and made the meeting mandatory, threatening him with "further action to include disciplinary action". He refused to meet with RAZO unless he had "documented proof of what is said during the meeting". *See* Tab 8, at 210. WOODSON exuded desperation as she requested a Union Representative, Samuel LOPEZ (LOPEZ), speak with the Appellant regarding the meeting (Tab 8, at 253-254). The Appellant would decline the meeting. If the meeting were truly mandatory after initially not being so, WOODSON would not have needed to seek LOPEZ's assistance in convincing the Appellant to attend it.

RAZO affirmed the Appellants analysis of her which he details in the subsequently headlined "Complaints Filed with the FLRA" section. RAZO would be caught by the Appellant

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

attempting to amend a certified timecard from July 2022, in an attempt to set up pretextual retaliation.

There is the issue of the Appellant's timely submitted leave request being denied by RAZO that contributed to the grievance. She requested that he "create two separate request since May 1st falls in a different pay period". *See* Tab 8, at 216. The Appellant opposed doing so because he believed it to be pretext for retaliation, in which she'd allege his leave requests were untimely (which she'd eventually do). When the Appellant request RAZO "cite a reference or regulation that allows you to deny my leave request because the dates were in different pay periods", she ignored the request. Instead, WOODSON answered for her, demanding that he "follow the instructions" of RAZO.

As if almost on cue, RAZO would send an e-mail (Tab 8, at 293) on May 23, 2023, alleging that the Appellant had "a recurring pattern of not properly requesting leave in advance". She'd go on to write *"Specifically, in the CBA, Agreement 2022, Article 24(a)(2) states that except in an emergency situation or in the event of an unanticipated absence, annual leave will be requested in advance utilizing WebTA. Agreement 2022 also states that leave preferences that span more than one week (regardless of duration), shall be submitted as soon as possible, but no later than 45 days in advance of the scheduled leave. Due to your continued unanticipated leave requests, management is unable to sufficiently predict your work schedule, which adversely affects the office requirements and productivity."* *See* Tab 8, at 294-295. For the Appellant, opposing RAZO's request that he change his leave request was validated, as the e-mail she sent revealed her pretextual ambition. When the Appellant requested RAZO provide proof to support her allegations, she ignored him. See Tab 8, at 293 ¶1.

Protected activity includes "participating" in an EEO process or "opposing" discrimination. These two types of protected activity arise directly from two distinct statutory retaliation clauses that differ in scope. Participation in an EEO process is more narrowly defined to refer specifically to raising a claim, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under the EEO laws, but it is very broadly protected. By contrast, opposition activity encompasses a broader range of activity by which an individual opposes any practice made unlawful by the EEO statutes. The protection for opposition is limited, however, to those individuals who act with a reasonably good faith belief that a potential EEO violation exists and who act in a reasonable manner to oppose it.

*Contributing Factor*

As previously stated, the Agency is complicit in RAZO's unlawful conduct to such a degree that it is willing to manufacture claims of misconduct against the Appellant to protect her. Rather than mitigate the conflict between RAZO and the Appellant, it wishes to subjugate him to her animus. Her denying his leave request for a reason that not even she could articulate, which only later was revealed to be clearly pretextual, is used to charge the Appellant as "insolent". The Agency would then allege that RAZO's meeting was mandatory although her e-mail solicited team members' "interest" in meeting with her. Charges the Agency used to substantiate a retaliatory 5-days suspension without pay. The Appellant has alleged from the very beginning in his formal complaint that he is languishing in a hostile work environment.

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

In *Savage v. Dept. of Army*, *122 MSPR 612 (2015)*, the Board held that a hostile environment was determined to be a form of covered personnel action in an IRA case; "The statute defines 'personnel action' to include, among other listed actions, 'any other significant change in duties, responsibilities, or working conditions.' 5 U.S.C. § 2302(a)(2)(A)(xii). The legislative history of the 1994 amendment to the WPA indicates that the term 'any other significant change in duties, responsibilities, or working conditions' should be interpreted broadly, to include 'any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system.' *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999) (quoting 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey))."

The Agency has created a hostile work environment and seeks to impose a "chill" to those who dare complain. The actions of the Agency are tainted with reprisal. As a result, the Appellant reasonably believes that the foregoing events were a contributing factor in the decision to suspend him. The 5-day suspension without pay is tainted with reprisal. The Board has no discretion to affirm a penalty tainted by illegal reprisal, even if the agency's penalty might otherwise have been reasonable. *See* 5 U.S.C. § 7701(c)(2)(B); *Sullivan v. Dep't of the Navy*, *720 F.2d 1266, 1278 (Fed. Cir. 1983)* (Nies, J., concurring) ('In an adverse action proceeding,…the merits cannot be the determinative factor that there was no reprisal. A *meritorious adverse action must be set aside where there is reprisal*.' (emphasis added))."). *See Siler v. EPA*, *908 F.3d 1291 (Fed. Cir. 2018)*.

*Complaint Submitted to Agency EEO Director and Deputy*

The Appellant e-mailed the Agency EEO Director (Tab 8, at 243) on May 5, 2023. He contacted the EEO Director pursuant to Chapter 5 of the EEOC's Management Directive 110: Chapter IV, D(1), notifying of his dissatisfaction regarding the processing of his formal complaint. Neither the Director nor her Deputy responded to the Appellant. The Agency failing to respond to the Appellant's complaint was its response; that it is complicit in the interference.

*Contributing Factor*

Respectfully, in order to prevent being repetitive, the Appellant wishes for p.10, ¶¶ 1-3 to be referenced as the contributing factors here. *See* "Complaints to Agency, Contributing Factor".

*Complaints Filed with the FLRA*

On June 1, 2023, RAZO was informed via e-mail that he intended to file a complaint (Tab 8, at 265). RAZO would retaliate against him by altering a certified timecard from July 2022 (Tab 8, at 268-272). The Appellant has attempted to have the Agency review the breach, but it has refused to do so (Tab 8, at 274-279). The Appellant reasonably believes this was done by RAZO so she could have pretext to attack his credibility before the FLRA, and to later retaliate against him by alleging he violated the Fair Labor Standards Act by altering his certified timecard from nearly a year ago. The Appellant also filed a complaint against the Union (Exhibit 9). The Appellant believes this represents the depravity of RAZO *and* the Agency because

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

instead of investigating his concerns, it asserts nonsensically that he caused the action when the record clearly indicates she initiated it.

The Appellant believes RAZO's alteration of a certified timecard was reprisal for filing a complaint with the FLRA. "[U]nder the WPEA an aggrieved employee now has the right, under certain circumstances, to seek corrective action from the Board when he or she suffers reprisal as a result of filing an EEO complaint. *See* 5 U.S.C. § 2302(b)(9)(A)(i) (prohibiting an agency from retaliating against an employee for 'the exercise of any appeal, complaint, or grievance right" related to whistleblowing."'). *See Gray v. MSPB*, 650 Fed. Appx. 775 (Fed. Cir. 2016 NP). The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate. *See Simmons v. Dept. of Air Force, 99 MSPR 28 (2005)*.

*Contributing Factor*

The Agency is complicit in RAZO's behavior because it sought to avoid an Unfair Labor Charge from the FLRA, as its actions thus far against the Appellant left it no recourse but to set up a hit job. The Appellant has previously detailed how this Agency is willing to break the law in order to further its retaliatory and discriminatory ambitions and does not wish to repeat it here. The Appellant catching the Agency yet again attempting to manufacture evidence to fuel it retaliatory motives was not only a contributing factor but was pretextual.

In *Kohler v. Dept. of Navy, 108 MSPR 510 (2008),* the Board noted that to establish retaliation using circumstantial evidence, an appellant must provide evidence establishing a "convincing mosaic" of retaliation; "As a general rule, this mosaic has been defined to include three general types of evidence: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that employees similarly situated to the appellant have been better treated; and (3) evidence that the employer's stated reason for its actions is pretextual. Where an employer's motives or state of mind are relevant, the record must be carefully scrutinized for circumstantial evidence that would support an inference of retaliatory *animus*."

### DATES OF HIS COMPLAINTS TO THE OSC AND THE MATTERS RAISED

The Board has jurisdiction over an IRA appeal if the appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that he made a protected disclosure that was a contributing factor in the agency's decision to take a personnel action. In an IRA appeal, the Board lacks jurisdiction to also adjudicate the merits of the agency's personnel action. *See Johnson v. DOJ, 104 MSPR 624 (2007)*.

Additionally, in cases involving multiple alleged protected disclosures, the Board has jurisdiction where the appellant has exhausted his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken for at least one alleged protected disclosure. See *Tullis v. Dept. of Navy*, 117 MSPR 236 (2012). *See also Harvey v. Dept. of Navy, 92 MSPR 51 (2002)* (pursuant to *Yunus v. VA, 242 F.3d 1367*).

JACKSON v USCIS, CASE CH-1221-23-0376-W-1

On January 28, 2023, he filed a complaint pursuant to 5 U.S.C. § 2302(b)(4), alleging Abuse of Authority and Hostile Work Environment. *See* Exhibit 1. On March 21, 2023, the Agency unlawfully procured the TransUnion Consumer Report of the Appellant after he filed a formal complaint on March 20, 2023. On March 30, 2023, he filed a second complaint with OSC *See* Tab 8, at 6-14. The Appellant requested an investigation to determine who "ordered the procurement of my credit report without my express written consent". When the OSC attorney e-mailed him her preliminary decision, *See* Tab 8, at 291, he responded and provided a more detailed rebuttal *See* Tab 8, at 290.

On May 12, 2023, the Appellant filed a third complaint with OSC alleging the Agency proposing a 5-day suspension was retaliatory for his grievance from April 30th against RAZO. *See* Tab, 8, at 171-178. On June 2, 2023, the Appellant filed a fourth complaint with OSC. *See* Exhibit 3. He alleged that the Agency was "backdating" a certified timecard from July of 2022 without any cause or notice to him. OSC closed the complaint and provided notification that it would not move forward with an investigation. *See* Exhibit 4.

The Appellant met his exhaustion burden with OSC although it decided not to investigate *any* of the four complaints he filed. Exhaustion is determined based on the complaint or other written materials submitted to OSC. *See Abou-Hussein v. MSPB*, *557 Fed. Appx. 979 (Fed. Cir. 2014 NP)*. The Appellant is cognizant that only 2 of 4 claims are reviewable to the Board (the March 30 and May 12, 2023 complaints). For all of his claims however, the Appellant provide specific allegations to OSC before presenting this IRA Appeal to the Board. *See McCarthy v. MSPB*, 809 F.3d 1365 (Fed. Cir. 2016).

OSC was given the precise nature of the Appellants claimed reprisal accusations, which gave OSC an opportunity to investigate and respond as appropriate. *See Baney v. MSPB, 349 Fed. Appx. 545 (Fed. Cir. 2009 NP)*. For reasons unbeknownst to the Appellant, OSC decided none of his complaints warranted an investigation, which left him at the mercy of the Agency. His complaints to OSC contained the core of his retaliation claims and gave it sufficient basis to pursue an investigation, satisfying the exhaustion requirement. *See Briley v. NARA, 236 F.3d 1373 (Fed. Cir. 2001)*.

## CONCLUSION

WHEREFORE, the Appellant respectfully requests the Merit Systems Protection Board GRANT jurisdiction over his IRA Appeal, thereby ordering corrective action and all relief that the Board deems fit.

Respectfully Submitted,

Richard. C. Jackson

Page **16** of 16

# EXHIBIT 1

 **COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**

For instructions or questions, call the Case Review Division at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

 Retaliation for Whistleblowing

 Retaliation for Protected Activity

 Obstruct Competition

 Give Unauthorized Preference

 Encourage Withdrawal from Competition

 Nepotism

 Improper Political Recommendation

 Violate Veterans Preference

 Discrimination for Non-Job-Related Conduct

 Other Bases of Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

## PART 1: IMPORTANT INFORMATION ABOUT FILING A COMPLAINT

**Required Complaint Form.** Complaints alleging a prohibited personnel practice or a prohibited activity must be submitted on this form, either by e-filing or by mail. Information not submitted on or accompanied by this form may be returned by OSC to the filer. The complaint will be considered filed on the date on which OSC receives the completed form. 5 C.F.R. § 1800.1, as amended.

**No OSC Jurisdiction.** OSC cannot take any action on complaints filed by employees of

- the FBI, CIA, DIA, NSA, National Geospatial-Intelligence Agency, ODNI, National Reconnaissance Office or other intelligence agencies excluded from coverage by the President;
- the Government Accountability Office;
- the Postal Rate Commission; and
- the uniformed services of the United States (*i.e.*, uniformed military employees). OSC does have jurisdiction over civilian employees of the armed forces.

**Limited OSC Jurisdiction.** For employees of some federal agencies or entities, OSC's jurisdiction is limited to certain types of complaints, as follows –

- FAA employees only for allegations of retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8) and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302(b)(9).
- employees of government corporations listed at 31 U.S.C. § 9101 only for allegations of retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8) and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302 (b)(9).
- U.S. Postal Service employees only for allegations of nepotism.
- TSA employees only for allegations of discrimination under § 2302(b)(1), retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8), and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302(b)(9).

**Election of Remedies.** You may choose only one of three possible methods to pursue your prohibited personnel practice complaint: (a) a complaint to OSC; (b) an appeal to the Merit Systems Protection Board (MSPB) (if the action is appealable under law or regulation); or (c) a grievance under a collective bargaining agreement. If you have already filed an appeal about your prohibited personnel practice allegations with the MSPB, or a grievance about those allegations under the collective bargaining agreement (if the action is grievable under the agreement), OSC may lack jurisdiction over your complaint. 5 U.S.C. § 7121(g).



## COMPLAINT OF PROHIBITED PERSONNEL PRACTICE  OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

| **Navigation Bar** |
| --- |
| ◀ **Add / Delete a Complaint** |
| **Prohibited Personnel Practices (PPP)** |
| About Filing a Complaint |
| Select your PPPs |
| Biographical Information |
| Your Complaint |
| Retaliation for Whistleblowing |
| Retaliation for Protected Activity |
| Obstruct Competition |
| Give Unauthorized Preference |
| Encourage Withdrawal from Competition |
| Nepotism |
| Improper Political Recommendation |
| Violate Veterans' Preference |
| Discrimination for Non-Job-Related Conduct |
| Other Bases of Discrimination |
| Improper Personnel Actions |
| Non-Disclosure Agreement |
| Improper Accessing of Medical Records |
| Coerce Political Activity |
| Other |
| **Attachments** |
| Consent |
| Report Government Wrongdoing (Disclosure) |
| Certification |
| Submission |

**Complaints Involving Discrimination.**

- Race, Color, Religion, Sex, National Origin, Age, and Disability (or Handicapping Condition): OSC is authorized to investigate discrimination based upon race, color, religion, sex, national origin, age, or disability (or handicapping condition), as well as retaliation related to EEO activity. 5 U.S.C. § 2302(b)(1). However, OSC generally defers such allegations to agency procedures established under regulations issued by the Equal Employment Opportunity Commission (EEOC). 5 C.F.R. § 1810.1, If you wish to report allegations of discrimination based on these bases, you should contact your agency's EEO office immediately. There are specific time limits for filing such complaints. Filing a complaint with OSC will not relieve you of the obligation to file a complaint with the agency's EEO office within the time prescribed by EEOC regulations (at 29 C.F.R. Part 1614).

- Marital Status and Political Affiliation: OSC is authorized to investigate discrimination based on marital status or political affiliation. 5 U.S.C. § 2302(b)(1).

- Sexual Orientation and Gender Identity: OSC is authorized to investigate discrimination based on sexual orientation and gender identity. 5 U.S.C. §§ 2302(b)(1) and (b)(10). EEOC also may have jurisdiction over complaints of discrimination on these bases.

**Complaints Involving Veterans Rights.** By law, all complaints alleging denial of veterans' preference requirements or USERRA must be filed with the Veterans Employment and Training Service (VETS) at the Department of Labor (DOL). 38 U.S.C. § 4301, et seq., and 5 U.S.C. § 3330a(a).

OSC Form-14
PROHIBITED PERSONNEL PRACTICES
Page 2 of 18

OMB No. 3255-0005
Expires 02/29/2020



**COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**

For instructions or questions, call the Case Review Division at (202) 804-7000.

| **Navigation Bar** | |
|---|---|
| ◀ Add / Delete a Complaint | |
| **Prohibited Personnel Practices (PPP)** | |
| About Filing a Complaint | |
| Select your PPPs | |
| Biographical Information | |
| Your Complaint | |
| Retaliation for Whistleblowing | |
| Retaliation for Protected Activity | |
| Obstruct Competition | |
| Give Unauthorized Preference | |
| Encourage Withdrawal from Competition | |
| Nepotism | |
| Improper Political Recommendation | |
| Violate Veterans' Preference | |
| Discrimination for Non-Job-Related Conduct | |
| Other Bases of Discrimination | |
| Improper Personnel Actions | |
| Non-Disclosure Agreement | |
| Improper Accessing of Medical Records | |
| Coerce Political Activity | |
| Other | |
| **Attachments** | |
| Consent | |
| Report Government Wrongdoing (Disclosure) | |
| Certification | |
| Submission | |

## PART 2: SELECT YOUR PPPs

Please check **ALL** that apply (you MUST check one option). A customized series of questions will appear following the "Biographical Information" section, below, based on your selections. You can return to this part at any time prior to submitting your complaint if you would like to add or remove allegations. All fields allow ample space to respond, but each question has a character limit; if you can no longer type you have hit the limit.

### RETALIATION CLAIMS

☐ *Retaliation for Whistleblowing*

Retaliation for reporting a violation of law, rule, or regulation; gross mismanagement; gross waste of funds; abuse of authority; a substantial and specific danger to public health or safety; or censorship related to scientific research.

☐ *Retaliation for Protected Activity*

Retaliation for filing a complaint or grievance; assisting another with a complaint or grievance; cooperating with an OSC, OIG, or internal investigation; or refusing to obey an illegal order.

### ILLEGAL SELECTION PRACTICE CLAIMS

☐ *Obstruct Competition*

Intentionally deceive or obstruct anyone from competing for federal employment.

☐ *Give Unauthorized Preference*

Give an unauthorized preference or advantage, including defining the manner or scope of competition, to improve or injure the employment prospects of any person.

☐ *Encourage Withdrawal from Competition*

Influence or encourage anyone to withdraw from competition to improve or injure the employment prospects of any person.

☐ *Nepotism*

Involvement in the appointment, promotion, or advancement of a relative, or advocacy on behalf of a relative.

☐ *Improper Political Recommendation*

Request or consider a recommendation based on political connections or influence rather than one based on personal knowledge of a person's ability to perform a job.

☐ *Violate Veterans' Preference*

Take or fail to take, recommend, or approve a personnel action if doing so would violate a veterans' preference requirement. This type of complaint must be filed with the Department of Labor. Please click here to go to that site.



## COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

| Navigation Bar | DISCRIMINATION CLAIMS |
|---|---|

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

Retaliation for Whistleblowing

Retaliation for Protected Activity

Obstruct Competition

Give Unauthorized Preference

Encourage Withdrawal from Competition

Nepotism

Improper Political Recommendation

Violate Veterans Preference

Discrimination for Non-Job-Related Conduct

Other Bases of Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

### DISCRIMINATION CLAIMS

☐ *Discrimination for Non-Job-Related Conduct*

Discrimination for conduct that does not adversely affect job performance, including claims of sexual orientation or gender identity discrimination.

☐ *Other Bases of Discrimination*

OSC examines claims of discrimination based on **marital status** and **political affiliation.** OSC does NOT ordinarily investigate claims of discrimination based on race, color, religion, sex, national origin, age, and handicapping condition. These claims are typically better filed with an agency's EEO office.

### OTHER CLAIMS

☑ *Improper Personnel Actions*

Take or fail to take a personnel action if doing so would violate any law, rule, or regulation implementing or directly concerning a merit system principle.

☐ *Non-Disclosure Agreement*

Implement or enforce a non-disclosure agreement or policy that lacks notification of whistleblower rights.

☐ *Improper Accessing of Medical Records*

Accessing the medical records of another employee or applicant for employment as a part of, or otherwise in furtherance of, the commission of a prohibited personnel practice.

☐ *Coerce Political Activity*

Coerce a person to engage in political activity, to include providing a political contribution or service, or take action against a person for doing so.

☑ *Other*

Please use this area to describe employment problems that do not fall into one of the categories listed above.



# COMPLAINT OF PROHIBITED PERSONNEL PRACTICE  OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

Retaliation for Whistleblowing

Retaliation for Protected Activity

Obstruct Competition

Give Unauthorized Preference

Encourage Withdrawal from Competition

Nepotism

Improper Political Recommendation

Violate Veterans' Preference

Discrimination for Non-Job-Related Conduct

Other Bases of Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

## PART 3: BIOGRAPHICAL INFORMATION

*\* Denotes Required Fields*

1. Complainant Information:

   Title  Mr

   First Name* Richard                    Middle Initial  C

   Last Name* Jackson

2. Contact Information:

   Address Location*  ☑ Domestic   ☐ International

   Address Line 1*  1023 25th Ave

   Address Line 2

   City*  Bellwood                        State*  IL

   Zip Code*  60104

   *At least ONE phone number OR email address is required.

   Cell Phone Number  (312) 285-6390

   Office Phone Number  (312) 239-5444        Ext.

   Home Phone Number

   Email Address  rcjackson83@outlook.com

   Preferred means of contact:

   ☑ email   ☐ home phone   ☑ cell phone   ☐ office phone

   ☐ Please do not contact me on my office phone

3. Do you have representation?*  ☐ Yes  ☑ No

4. Complainant's employment status:*

   ☑ Current Federal Employee

   ☐ Former Federal Employee

   ☐ Applicant For Federal Employment

   ☐ Non-Federal Employee *(please specify below)*

5. If current or former federal employee, please list most recent position title, series, grade:

   Title (for instance, Investigator)  Immigration Services Officer

   Series (for instance, GS-1810)  GS-1801

   Grade (for instance, GS-9)  GS-12



# COMPLAINT OF PROHIBITED PERSONNEL PRACTICE  OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

Retaliation for Whistleblowing

Retaliation for Protected Activity

Obstruct Competition

Give Unauthorized Preference

Encourage Withdrawal from Competition

Nepotism

Improper Political Recommendation

Violate Veterans Preference

Discrimination for Non-Job-Related Conduct

Other Bases of Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

6.  Please provide your dates of employment in this position. 10/31/2016

7.  Department name:* HOMELAND SECURITY

8.  Agency name:* CITIZENSHIP AND IMMIGRATION SERVICES

9.  Agency subcomponent: Field Office Directorate

10. Street Address: 101 W. Ida B. Wells Drive

11. City:* Chicago

12. State:* IL          ☐ Check here if agency address is international.

13. Zip Code: 60605

14. Are you covered by a collective bargaining agreement? *(Check one.)*
    ☑ Yes   ☐ No   ☐ I don't know

15. Which of the following apply to your employment status? *(Check all applicable items.)*

    a. Competitive Service
    ☐ Temporary appointment          ☑ Career or career-conditional appointment
    ☐ Term appointment               ☐ Probationary employee

    b. Excepted Service
    ☐ Schedule A                     ☐ Schedule B        ☐ Schedule C
    ☐ National Guard Technician      ☐ Postal Service
    ☐ Tennessee Valley Authority     ☐ Non-appropriated fund
    ☐ Other *(specify)*:

    c. Senior Executive Service (SES) or Executive Level
    ☐ Career SES                     ☐ Executive Level V or above
    ☐ Non-career SES                 ☐ Presidential appointee (Senate-confirmed)

    d. Other
    ☐ Civil service annuitant        ☐ Military officer or enlisted person
    ☐ Former civil service employee  ☐ Contract employee
    ☐ Unknown                        ☐ Other *(specify)*:



## COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

| Navigation Bar | |
|---|---|

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

  Retaliation for Whistleblowing

  Retaliation for Protected Activity

  Obstruct Competition

  Give Unauthorized Preference

  Encourage Withdrawal from Competition

  Nepotism

  Improper Political Recommendation

  Violate Veterans' Preference

  Discrimination for Non-Job-Related Conduct

  Other Bases of Discrimination

  Improper Personnel Actions

  Non-Disclosure Agreement

  Improper Accessing of Medical Records

  Coerce Political Activity

  Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

16. What other action(s), if any, have you taken to appeal, grieve, or report this matter under any other procedure? *(Check all that apply.)*

☐ None, or not applicable

☐ Appeal with Merit Systems Protection Board (MSPB)  Date: _____

☐ Grievance under collective bargaining agreement procedure  Date: _____

☐ Grievance filed under agency grievance procedure  Date: _____

☐ Discrimination complaint filed with agency  Date: _____

☐ USERRA claim with VETS (Department of Labor)  Date: _____

☐ Appeal filed with Office of Personnel Management  Date: _____

☐ Lawsuit filed in Federal Court  Date: _____

  Court name: _____

☐ Reported matter to agency Inspector General  Date: _____

☐ Reported matter to member of Congress  Date: _____

  Name of Senator or Representative: _____

☑ Other *(specify)*: Notified managers via e-mail  Date: 01/24/2023

17. What action would you like for OSC to take if we find that a prohibited personnel practice has occurred?

Remove from their positions and or demote all those responsible



**COMPLAINT OF PROHIBITED PERSONNEL PRACTICE  OR OTHER PROHIBITED ACTIVITY**

For instructions or questions, call the Case Review Division at (202) 804-7000.

---

**Navigation Bar**

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

　Retaliation for
　Whistleblowing

　Retaliation for Protected
　Activity

　Obstruct Competition

　Give Unauthorized
　Preference

　Encourage Withdrawal from
　Competition

　Nepotism

　Improper Political
　Recommendation

　Violate Veterans'
　Preference

　Discrimination for
　Non-Job-Related Conduct

　Other Bases of
　Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of
Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government
Wrongdoing (Disclosure)

Certification

Submission

---

## PART 4: DETAILS OF YOUR COMPLAINT

### Improper Personnel Actions

　　　An agency official is prohibited from taking or failing to take a personnel action if doing so results in the violation of a law, rule, or regulation that implements, or directly concerns, a merit system principle listed in 5 U.S.C. § 2301. 5 U.S.C. § 2302(b)(12). Retaliation for petitioning a member of Congress or exercising your First Amendment rights falls under this section.

　　　Please briefly answer the following questions about your claim under this section. If there is more than one instance, you may repeat the process until you have answered the questions for each instance. To do so, click the "Add Another Improper Personnel Actions Claim" button at the end of this section. You will have an opportunity to attach supporting documentation before you submit your form.

1. What was the personnel action(s) taken or not taken? Check all applicable:

| | |
|---|---|
| ☐ Removal | ☐ Reinstatement |
| ☐ Suspension | ☐ Reassignment |
| ☐ Other Discipline | ☑ Harassment/Hostile Work Environment |
| ☐ VA Expedited Process | ☐ Psychiatric Examination |
| ☐ Gag Order | ☐ Performance Evaluation |
| ☐ Detail | ☐ Changes to Duties/Working Conditions |
| ☐ Promotion | ☐ Pay, Benefits, Training |
| ☐ Appointment | ☑ Other |

Describe:

Prohibited Personnel Practice - Supervisor Razo's behavior towards me changed after I informed her on 1/13/2023 via Microsoft TEAMS, that I had an interview coming up for another position, and that she may be contacted for reference purposes. Since then, I noticed her behavior towards me became hostile. She has excessively supervised me by hiding behind my office door in an attempt to catch me doing what I'm not sure. She has not done this to any of the other members on my team to my knowledge. She has accused me of being deficient in performance orally, but has refused to provide me the requested written performance counseling to put the assertion on record. I believe this was being done to have cause to inform the prospective employer that I wasn't meeting performance standards, resulting in me not being selected for the position.

Abuse of Authority - Supervisor Razo has excessively supervised me after not even a full month of being assigned to her. She was caught by myself and a co-worker hiding behind my door trying to spy on me on 1/23/2023. I happened to notice her on two separate occasions hiding and peeking behind my office door, but I pretended not to see her as I was extremely uncomfortable and confused. She would enter my office and accuse me of being deficient in performance, which

---



## COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

   Retaliation for Whistleblowing

   Retaliation for Protected Activity

   Obstruct Competition

   Give Unauthorized Preference

   Encourage Withdrawal from Competition

   Nepotism

   Improper Political Recommendation

   Violate Veterans Preference

   Discrimination for Non-Job-Related Conduct

   Other Bases of Discrimination

Improper Personnel Actions

   Non-Disclosure Agreement

   Improper Accessing of Medical Records

   Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

---

is not supported by my performance record since onboarding nearly 7 years ago. She stated my "numbers" for the month were unsatisfactory. I informed her that I did not understand her assertion because I did not have an excessive amount of cases in my office, nor did she elaborate on what the number was that I needed to meet.

Hostile Work Environment - I notified management via e-mail of Supervisor Razo's behavior on 1/24/2023. I wanted to hold out hope that management would be outraged by her treatment of one of the office's most productive employees. However, the Field Office Director, Kevin Riddle, wanted me to participate in a meeting with Supervisor Razo and her direct supervisor, Pauline Woodson. I informed Mr. Riddle that I did not want to meet with those who I believe were suddenly and unfairly targeting me; subjecting me to threats of performance negligence. I believe Pauline Woodson has solicited statements from other supervisors in an attempt to begin retaliating against me but I do not have proof so there is not a complaint against her at this time. I am confident there are emails in the system that confirm this - even if they have been deleted. I have an outstanding performance record with my employer and great working relationships with all previous supervisors. So, when suddenly I am excessively monitored and accused of a performance deficiency after I inform managers of an interview for a new position, I feel unsafe. If my request is investigated, I do hope it not be delegated to EEOC. I believe Pauline Woodson has a spouse working there and that has lead to her operating with a sense of being beyond reproach. Please assist. Thank you.

2. When was the personnel action(s) taken or not taken?

01/23/2023 - 01/27/2023

3. State the name, title, and position in your chain of command of the agency official(s) involved in the personnel action(s).

| First Name | Last Name | Title (e.g., Deputy Director) | Chain of Command (e.g., 1st level supervisor) | |
|---|---|---|---|---|
| Concepcion | Razo | Supervisor | 1st level | Del |

**Add Row**

4. Describe the role played by each agency official listed above in the personnel action(s) that is the subject of your complaint. (e.g., recommending official, proposing official, deciding official, approving official, etc.).

She has excessively monitored me and accused me orally of performance deficient.

5. What law, rule, or regulation was violated by the agency's taking or failing to take the personnel action(s)?

Ward v U.S. Postal Service, 634 F.3d 1274, 1280 (Fed. Cir. 2011), Collective Bargaining Rules, Prohibited Personnel Practices (5 USC § 2302(b)) and failing to remove me from Supervisor Razo's team after being notified of treatment.

OSC Form-14
PROHIBITED PERSONNEL PRACTICES
Page 9 of 18

OMB No. 3255-0005
Expires 02/29/2020

Pleading Number : 2023026123          Submission date : 2023-07-06 10:23:58          Confirmation Number: 411191697          page 29 of 163

 **COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**

For instructions or questions, call the Case Review Division at (202) 804-7000.

## Navigation Bar

◀ Add / Delete a Complaint

**Prohibited Personnel Practices (PPP)**

About Filing a Complaint

Select your PPPs

Biographical Information

Your Complaint

Retaliation for Whistleblowing

Retaliation for Protected Activity

Obstruct Competition

Give Unauthorized Preference

Encourage Withdrawal from Competition

Nepotism

Improper Political Recommendation

Violate Veterans Preference

Discrimination for Non-Job-Related Conduct

Other Bases of Discrimination

Improper Personnel Actions

Non-Disclosure Agreement

Improper Accessing of Medical Records

Coerce Political Activity

Other

**Attachments**

Consent

Report Government Wrongdoing (Disclosure)

Certification

Submission

---

> **Add Another Improper Personnel Actions Claim**

### Other

OSC also has jurisdiction over certain other activities prohibited by statute. If none of the categories of wrongdoing above apply to your circumstances, please tell us the basis of your complaint below. OSC will determine whether we have jurisdiction over your complaint. **You will have an opportunity to attach supporting documentation before you submit your form.**

### Attachments

☑ I would like to attach documents to my complaint.

Please note that the space available for attachments is limited. Therefore, **DO NOT** attach every document and email that may be relevant to your claim. You will have an opportunity to make additional submissions at a later date. We recommend limiting attachments to official forms and correspondence that document the action(s) at issue in your complaint (*e.g.*, proposed AND final disciplinary action, along with any written reply you submitted; letter of reprimand; performance appraisal; PIP; vacancy announcement) **if these documents are relevant to your allegations.**

To see the attachments that have been successfully added to your form, click on the paperclip icon 📎 in the dark gray panel on the far left side of your screen. Please note that, if you print a copy of your form, the attachments will not print with it. However, any documents that appear in the paperclip panel 📎 will be transmitted to OSC.

---

 **COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY**

For instructions or questions, call the Case Review Division at (202) 804-7000.

| **Navigation Bar** |
| --- |
| ◀ Add / Delete a Complaint |
| **Prohibited Personnel Practices (PPP)** |
| About Filing a Complaint |
| Select your PPPs |
| Biographical Information |
| Your Complaint |
| Retaliation for Whistleblowing |
| Retaliation for Protected Activity |
| Obstruct Competition |
| Give Unauthorized Preference |
| Encourage Withdrawal from Competition |
| Nepotism |
| Improper Political Recommendation |
| Violate Veterans Preference |
| Discrimination for Non-Job-Related Conduct |
| Other Bases of Discrimination |
| Improper Personnel Actions |
| Non-Disclosure Agreement |
| Improper Accessing of Medical Records |
| Coerce Political Activity |
| Other |
| **Attachments** |
| Consent |
| Report Government Wrongdoing (Disclosure) |
| Certification |
| Submission |

## PART 5: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION

*Denotes Required Fields*

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. Please: (a) select and check one of the Consent Statements below; and (b) keep a copy for your own records.

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act and other applicable federal laws allow information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears in the Form Submission part of this form.

*(Please check ONLY one)*

☑ *Consent Statement 1*

I consent to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity and information about my complaint if OSC decides that such disclosure is needed to investigate my complaint (for example, to request information from the agency, or seek a possible resolution).

☐ *Consent Statement 2*

I consent to OSC's communication with the agency involved in my complaint, but I *do not agree* to allow OSC to disclose my identity to that agency. I agree to allow OSC to disclose only information about my complaint, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate my complaint (for example, to request information from the agency, or seek a possible resolution). I understand that in some circumstances, OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that my request for confidentiality may prevent OSC from taking further action on the complaint.

☐ *Consent Statement 3*

I do not consent to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint.



# REPORT GOVERNMENT WRONGDOING (DISCLOSURE)

Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

Prohibited Personnel Practices (PPP)

**Report Government Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

  Violation of Law, Rule, or Regulation

  Gross Mismanagement

  Gross Waste of Funds

  Abuse of Authority

  Danger to Public Health

  Danger to Public Safety

  Censorship Related to Scientific Research

**Attachments**

Consent

Certification

Submission

## PART 1: IMPORTANT INFORMATION ABOUT FILING A DISCLOSURE

### OSC WHISTLEBLOWER DISCLOSURE CHANNEL

Under 5 U.S.C. § 1213 and related provisions, the Office of Special Counsel (OSC) serves as a secure channel for federal employees, former federal employees, and applicants for federal employment with reliable knowledge of the wrongdoing to disclose:

- a violation of law, rule or regulation;
- gross mismanagement;
- gross waste of funds;
- an abuse of authority;
- a substantial and specific danger to public health or safety; and/or
- censorship related to scientific research.

### OSC JURISDICTION

OSC has no jurisdiction over disclosures filed by:

- employees of the U.S. Postal Service and the Postal Regulatory Commission;
- members of the armed forces of the United States (*i.e.*, non-civilian military employees);
- state employees operating under federal grants;
- employees of federal contractors;
- other employees or federal agencies that are exempt under federal law; and
- Congressional or judicial branch employees.

### ANONYMOUS SOURCES

While OSC will protect the identity of persons who make disclosures, it will not consider anonymous disclosures. If a disclosure is filed by an anonymous source, the disclosure will be referred to the Office of Inspector General in the appropriate agency. OSC will take no further action.

### RETALIATION

Do you believe you suffered retaliation by your agency for disclosing wrongdoing? If yes, you may file a complaint for retaliation by selecting Add/Delete a Complaint from the top left corner. Select Option 1 to complete and submit a Complaint of Prohibited Personnel Practice or other Prohibited Activity (PPPs). *If you have already completed the Complaint of Prohibited Personnel Practice or other Prohibited Activity above, please continue with this Disclosure.* PPPs are employment-related activities that are banned in the federal workforce.  PPPs generally involve some type of personnel decision or action and may result in personal relief for people who have been subject to a PPP.  For example, if we find that you were removed from federal service in retaliation for whistleblowing, OSC may act to get your job back.  PPPs can also include allegations of harassment, failure to issue appraisals, and improper hiring.  Do not file a disclosure to report retaliation or other PPPs.



# REPORT GOVERNMENT WRONGDOING (DISCLOSURE)

Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

Prohibited Personnel Practices (PPP)

**Report Government Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

   Violation of Law, Rule, or Regulation

   Gross Mismanagement

   Gross Waste of Funds

   Abuse of Authority

   Danger to Public Health

   Danger to Public Safety

   Censorship Related to Scientific Research

**Attachments**

Consent

Certification

Submission

## PART 2: BIOGRAPHICAL INFORMATION

### * Denotes Required Fields

1. Complainant Information:

   Title  Mr

   First Name* Richard       Middle Initial  C

   Last Name* Jackson

2. Contact Information:

   Address Location* ☑ Domestic ☐ International

   Address Line 1* 1023 25th Ave

   Address Line 2

   City* Bellwood       State* IL

   Zip Code* 60104

   *At least **ONE** phone number **OR** email address is required.

   Cell Phone Number  (312) 285-6390

   Office Phone Number  (312) 239-5444   Ext

   Home Phone Number

   Email Address  rcjackson83@outlook.com

   Preferred means of contact:

   ☑ email ☐ home phone ☑ cell phone ☐ office phone

   ☐ Please do not contact me on my office phone

3. Do you have representation?* ☐ Yes ☑ No

4. Complainant's employment status:*

   ☑ Current Federal Employee

   ☐ Former Federal Employee

   ☐ Applicant For Federal Employment

   ☐ Non-Federal Employee *(please specify below)*

5. If current or former federal employee, please list most recent position title, series, grade:

   Title (for instance, Investigator)  Immigration Services Officer

   Series (for instance, GS-1810)  GS-1801

   Grade (for instance, GS-9)  GS-12



# REPORT GOVERNMENT WRONGDOING (DISCLOSURE)

Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

Prohibited Personnel Practices (PPP)

**Report Government Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

  Violation of Law, Rule, or Regulation

  Gross Mismanagement

  Gross Waste of Funds

  Abuse of Authority

  Danger to Public Health

  Danger to Public Safety

  Censorship Related to Scientific Research

**Attachments**

Consent

Certification

Submission

6. Please provide your dates of employment in this position. 10/31/2016

7. Department name:* HOMELAND SECURITY

8. Agency name:* CITIZENSHIP AND IMMIGRATION SERVICES

9. Agency subcomponent: Field Office Directorate

10. Street Address: 101 W. Ida B. Wells Drive

11. City:* Chicago

12. State:* IL    ☐ Check here if agency address is international*

13. Zip Code: 60605

14. Are you covered by a collective bargaining agreement? *(Check one.)*
  ☑ Yes   ☐ No   ☐ I don't know

15. Which of the following apply to your employment status? *(Check all applicable items.)*

  a. Competitive Service
    ☐ Temporary appointment   ☑ Career or career-conditional appointment
    ☐ Term appointment   ☐ Probationary employee

  b. Excepted Service
    ☐ Schedule A   ☐ Schedule B   ☐ Schedule C
    ☐ National Guard/Reserve Tech   ☐ Postal Service
    ☐ Tennessee Valley Authority   ☐ Non-appropriated fund
    ☐ Other *(specify):*

  c. Senior Executive Service (SES) or Executive Level
    ☐ Career SES   ☐ Executive Level V or above
    ☐ Non-career SES   ☐ Presidential appointee (Senate-confirmed)

  d. Other
    ☐ Civil service annuitant   ☐ Military officer or enlisted person
    ☐ Former civil service employee   ☐ Contract employee
    ☐ Unknown   ☐ Other *(specify):*



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

| **Navigation Bar** |
| --- |

◀ Add / Delete a Complaint

Prohibited Personnel Practices
(PPP)

**Report Government
Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

  Violation of Law, Rule, or
  Regulation

  Gross Mismanagement

  Gross Waste of Funds

  Abuse of Authority

  Danger to Public Health

  Danger to Public Safety

  Censorship Related to
  Scientific Research

**Attachments**

Consent

Certification

Submission

## PART 3: SELECT YOUR DISCLOSURES

Please identify the type of wrongdoing that you are alleging (check ALL that apply - you MUST check one option). If you check "violation of law, rule, or regulation," specify, if you can, the particular law, rule or regulation violated (by name, subject, and/or legal citation).

☑ Violation of law, rule, or regulation *(please specify)*:

    Prohibited Personnel Practice, Abuse of Authority

☐ Gross mismanagement

☐ Gross waste of funds

☐ Abuse of authority

☐ Substantial and specific danger to public health

☐ Substantial and specific danger to public safety

☐ Censorship related to scientific research

For each allegation, please answer the following questions (be as specific as possible). Please keep in mind that you will have an opportunity to provide more information and someone from OSC will contact you.

If OSC determines there is a substantial likelihood of wrongdoing, OSC will refer your disclosures to the involved agency for an investigation and report.  To meet the substantial likelihood standard, there must be a significant probability that the information reveals wrongdoing that falls within one or more of the categories above. In its evaluation, OSC considers the strength, reliability, and credibility of the disclosures.  If the substantial likelihood determination cannot be made, OSC will determine whether there is sufficient information to exercise its discretion to refer the allegations.

**If there is more than one instance, you may repeat the process until you have answered the questions for each instance. To do so, click the "Add Another Instance" button at the end of each section. All fields allow ample space to respond, but each question has a character limit; if you can no longer type you have hit the limit.  You will have an opportunity to attach supporting documentation before you submit your form.**

    Violation of law, rule, or regulation

  a. Who took the action?

| First Name | Last Name | Title | |
| --- | --- | --- | --- |
| Concepcion | Razo | Supervisor | Del |

    [ Add Row ]



# REPORT GOVERNMENT WRONGDOING (DISCLOSURE)

Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

**Navigation Bar**

◀ Add / Delete a Complaint

Prohibited Personnel Practices (PPP)

**Report Government Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

Violation of Law, Rule, or Regulation

Gross Mismanagement

Gross Waste of Funds

Abuse of Authority

Danger to Public Health

Danger to Public Safety

Censorship Related to Scientific Research

**Attachments**

Consent

Certification

Submission

b. What action did they take?

Hiding behind my office door, stating orally I'm performance deficient but refusing to provide written counseling of performance deficiency

c. When did this action occur? 01/23/2023

d. How did you discover this action?

visually and oral communication

e. What additional facts support your allegation of a violation of law, rule, or regulation?

Exhibit 1, Performance Appraisals, Refusal to provide Record of Counseling and co-workers will corroborate my allegations of hostile work environment should an investigation be granted.

**Add Another Violation of Law, Rule, or Regulation Claim**

1. What action would you like OSC to take?

Remove and Demote all managers who violated my rights

## PART 4: WHERE ELSE DID YOU REPORT THIS MATTER?

2. I have also disclosed this information to (complete all that apply):

☑ None or not applicable

☐ Inspector General of department / agency involved          Date: _____

a. Who did you contact?

First Name: _____          Last Name: _____

Title: _____

Address: _____

Email Address: _____

Telephone Number: _____

Case ID #: _____

b. What is the status of the matter?

_____

☐ Other office of department / agency involved (please specify):

_____          Date: _____

☐ Department of Justice          Date: _____

☐ Other Executive Branch / department / agency (please specify):



# REPORT GOVERNMENT WRONGDOING (DISCLOSURE)

Do not use this form to submit classified information.
For instructions or questions, call the Disclosure Unit at (202) 804-7000.

**Navigation Bar**

◀ **Add / Delete a Complaint**

Prohibited Personnel Practices (PPP)

**Report Government Wrongdoing (Disclosure)**

About Filing a Disclosure

Biographical Information

Details of Your Disclosure

Select Your Disclosures

Your Disclosure

  Violation of Law, Rule, or Regulation

  Gross Mismanagement

  Gross Waste of Funds

  Abuse of Authority

  Danger to Public Health

  Danger to Public Safety

  Censorship Related to Scientific Research

**Attachments**

Consent

Certification

Submission

---

_____  Date: _____

☐ General Accounting Office (GAO)  Date: _____

☐ Congress or congressional committee *(please specify member or committee)*:

_____  Date: _____

☐ Press / media (newspaper, television, other) *(please specify)*:

_____  Date: _____

☑ Other *(please specify)*:  Management of local office

**NOTE: MATTERS INVESTIGATED BY AN OFFICE OF INSPECTOR GENERAL**
It is the general policy of OSC not to transmit allegations of wrongdoing to the head of the agency involved if the agency's Office of Inspector General has fully investigated, or is currently investigating, the same allegations.

## ATTACHMENTS

☑ The attachments I added in the Prohibited Personnel Practices (PPP) section also apply to my disclosure.

☐ I would like to add attachments specific to my disclosure.

Please note that the space available for attachments is limited. Therefore, DO NOT attach every document and email that may be relevant to your claim. You will have an opportunity to make additional submissions at a later date. We recommend limiting attachments to official forms and correspondence that document the action(s) at issue in your disclosure **if these documents are relevant to your allegations.**

To see the attachments that have been successfully added to your form, click on the paperclip icon 📎 in the dark gray panel on the far left side of your screen. Please note that, if you print a copy of your form, the attachments will not print with it. However, any documents that appear in the paperclip panel 📎 will be transmitted to OSC.

## CONSENT

\* Denotes Required Fields

Do you consent to the disclosure of your identify to others outside OSC if it becomes necessary in taking further action on this matter?\*

☑ I consent to disclosure of my identity.

☐ I do not consent to disclosure of my identity. (Even if you do not consent, OSC may disclose your identity if necessary due to an imminent danger to public health or safety or imminent violation of any criminal law. See 5 U.S.C. § 1213(h).)

---

OSC Form-14
DISCLOSURE OF INFORMATION
Page 17 of 18

OMB No. 3255-0005
Expires 02/29/2020



# U.S. Office of Special Counsel

**Navigation Bar**

◀ Add / Delete a Complaint

Prohibited Personnel Practices (PPP)

Report Government Wrongdoing (Disclosure)

**Certification**

Submission

## CERTIFICATION

* Denotes Required Fields

☑ I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine, imprisonment, or both 18 U.S.C. § 1001

BURDEN: The burden for this collection of information (including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form) is estimated to be an average of one hour to submit a disclosure of information alleging agency wrongdoing, one hour and fifteen minutes to submit a complaint alleging a prohibited personnel practice or other prohibited activity, or 30 minutes to submit a complaint alleging prohibited political activity. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the U.S. Office of Special Counsel, General Counsel's Office, 1730 M Street, NW, Suite 218, Washington, DC 20036-4505.

OTHER INFORMATION: An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

> ### *PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUMENTATION, AND ANY ADDITIONAL ALLEGATIONS THAT YOU SEND TO OSC NOW OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING.*
>
> *REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.*

If you would like to print and mail your complaint, please address it to:

U.S. Office of Special Counsel
1730 M Street, NW
Suite 218
Washington, DC 20036

# EXHIBIT 2



# MERIT SYSTEMS PROTECTION BOARD

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*                                    OMB No.   3124-0009

| | |
|---|---|
| 1. Name (last, first, middle initial) | |

Jackson, Richard, C.

**2.** Present Address (number and street, city, state, and zip code)

Address:                    1023 25th Ave

City, State, Zip Code:      Bellwood, Illinois, 60104, United States of America

**3.** Telephone numbers (include area code) and E-Mail Address
You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

Home:                                          Work: (312) 239-5444

Fax:                                           Cell: (312) 285-6390

E-mail Address: rcjackson83@outlook.com        Other Phone Type: Mobile

**4.** Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

☐ Yes                                          ☑ No

**5.** Name, address, and telephone number of the agency that took the action or made the decisions you are appealing (include bureau or division, street address, city, State and Zip code)

Agency Name:        Department of Homeland Security
Bureau:             Citizenship and Immigration Services
Address:

City, State, Zip code:    United States of America
Agency Phone:

**6.** Your Federal employment status at the time of the decision or action you are appealing:

☐ Temporary   ☑ Permanent   ☐ Applicant
☐ Term        ☐ Retired     ☐ Seasonal
☐ None

**7.** Type of appointment (if applicable):

☑ Competitive   ☐ SES     ☐ Excepted
☐ Postal Service   ☐ Other

**8.** Your occupational series, position title, grade, and duty station at the time of the decision or action you are appealing (if applicable):

Occupational Series   1801         Position Title: Immigration Services
or Cluster:
Grade or Pay Band:   12            Duty Station: Chicago, IL

**9.** Are you entitled to veteran's preference? See 5 U.S.C. 2108.

☑ Yes     ☐ No

**10.** Length of Government Service (if applicable):

18   Years    6    Months

**11.** Were you serving a probationary, trial, or initial service period at the time of the action or decision you are appealing?

☐ Yes     ☑ No

Appeal Number:   **202302437**

Pleading Number : 2023026123     Submission date : 2023-05-19 11:12:29     Submission Date:  **5/19/2023 11:12:29 PM**     MSPB Form 185-1, Page 1 (i/13/201:
Confirmation Number:   **219109**     5 CFR Parts 1201, 1208, and 1209



# MERIT SYSTEMS PROTECTION BOARD

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

**HEARING: You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?**

12. Do you want a hearing?     ☐ Yes     ☑ No

**E-Filing: Registration as an e-filer enables you to file any or all of your pleadings with the Board in electronic form. Registration also means you consent to accept service of all pleadings filed by other registered e-filers and all documents issued by the Board in electronic form. You will receive these as PDF documents at the e-mail address you provided the Board. If registered as an e-filer, you may file any pleading, or portion of a pleading, by non-electronic means. You can withdraw your registration as an e-filer at any time.**

13. Do you wish to register as an E-Filer in this appeal?

☑ I elect to E-File          ☐ I decline to E-File

14. **I certify that all of the statements made in this form and all attached forms are true, complete, and correct to the best of my knowledge and belief.**

**Richard Cornelius Jackson, Appellant**                              **Date:**

Appeal Number:  **202302437**

Submission Date: **5/19/2023 11:12:29 PM**

MSPB Form 185-1, Page 2 (5/13/201:)
5 CFR Parts 1201, 1208, and 1209
page 41 of 163

Pleading Number : 2023026123     Submission date : 2023-07-06 10:23:58     Confirmation Number: 411191697
Confirmation Number: **219109**



# MERIT SYSTEMS PROTECTION BOARD

## Appeal of Agency Personnel Action or Decision (Non-retirement)

**Complete this form and attach it to MSPB Form 185-1 if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule, or regulation. If the personnel See 5 CFR 1201.3(a) for a list of appealable personnel actions and action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.**

*Please type or print legibly.*                                               OMB No.  3124-0009

**Please submit only the attachments requested in this form at this time.** You will be afforded the opportunity to submit detailed evidence in support of your appeal later in the proceeding.

**Name** *(last, first, middle initial)*   Jackson, Richard, C.

1. Check the box that best describes the personnel action or decision taken by the agency you named in MSPB Form 185-1 that you are appealing. (If you are appealing more than one action or decision, check each box applies.)

   ☐ Veterans Administration Senior Executive Service Removal from civil service
   ☐ Veterans Administration Senior Executive Service Transfer to general schedule
   ☐ Removal (Termination after completion of probationary or initial service period)
   ☐ Involuntary Resignation
   ☐ Termination during probationary or initial service period
   ☐ Involuntary Retirement
   ☐ Reduction in grade or pay     ☐ Suspension for more than 14 days
   ☐ Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)     ☐ Furlough of 30 days or less
   ☐ Denial of within-grade increase     ☐ Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
   ☐ Negative suitability determination
   ☑ Other action or decision (describe): Describe other action        Violation of VEOA

2. Date you received the agency's final decision letter (if any) (month, day, year) (Attach a copy)

   05/10/2023

3. Effective date (if any) of the agency action or decision (month, day, year)

   05/04/2023

4. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

   ☐ Yes          ☑ No

5. Explain briefly why you think the agency was wrong in taking this action. In challenging such an action, you may choose to allege that the agency engaged in harmful procedural error, committed a prohibited personnel practice, or engaged in one of the other claims listed in Appendix A. Attach the agency's proposal letter, decision letter, and SF-50, if available.

   See Continuation Sheet for Response.



# MERIT SYSTEMS PROTECTION BOARD

## Appeal of Agency Personnel Action or Decision (Non-retirement)

*Please type or print legibly.*

| | |
|---|---|
| **6.** | With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement? |

☐ Yes          ☑ No

| | |
|---|---|
| **7.** | If your answer to question 6 is "Yes," on what date was the grievance filed (month, day, year)? |

NOT APPLICABLE

| | |
|---|---|
| **8.** | If your answer to question 6 was "Yes," has a decision on the grievance been issued? |

NOT APPLICABLE

| | |
|---|---|
| **9.** | Did you file a whistleblowing complaint with the Office of Special Counsel (OSC)? |

☐ Yes          ☑ No

| | |
|---|---|
| **10.** | Have you received written notice that the Office of Special Counsel made a decision or terminated its investigation? |

NOT APPLICABLE

| | |
|---|---|
| **11.** | Did you file a complaint on this matter with the Department of Labor (DOL)? |

☑ Yes          ☐ No

On what date (month, day, year) did you file your USERRA or VEOA complaint on this matter with the Department of Labor?

03/14/2023

| | |
|---|---|
| **12.** | Has the Department of Labor notified you that your USERRA or VEOA complaint could not be resolved? |

☑ Yes          ☐ No

If "Yes", on what date did you receive the Secretary's note (month, day, year)?

05/10/2023

Appeal Number: **202302437**

Submission Date: **5/19/2023 11:12:29 PM**

Pleading Number : 2023026123    Submission date : 2023-07-06 02:23:58    Confirmation Number : 411191697    Page 93 of 363

Confirmation Number: **219109**

MSPB Form 185-2, Page 2 (5/13/2013)

5 CFR Parts 1201, 1208 and 1209



# Merit Systems Protection Board Form 185-2
## Appeal of Agency Personnel Action or Decision (Non-retirement)

### Continuation Sheet

5. Explain briefly why you think the agency was wrong in taking this action. In challenging such an action, you may choose to allege that the agency engaged in harmful procedural error, committed a prohibited personnel practice, or engaged in one of the other claims listed in Appendix A. Attach the agency's proposal letter, decision letter, and SF-50, if available.

Pro Se Appellant, RICHARD CORNELIUS JACKSON, hereby submits the Appellant's second VEOA Appeal. His initial Appeal under CH-3330-23-0216-I-1 is as of now, pending the Administrative Judge's review of Appellant's Motions to Compel Discovery Responses and to Sanction.

The Board has jurisdiction over this appeal. The Appellant exhausted the afforded Department of Labor (DOL) remedy with a timely filed complaint. He also made a non-frivolous allegation that (i) he is a preference eligible within the meaning of the VEOA, (ii) the actions at issue occurred on or after the October 30, 1998, enactment date of the VEOA, and (iii) the agency violated his rights under a statute or regulation related to veterans' preference. See Cruz v. Dep't of Homeland Security, 98 M.S.P.R. 492, 495 (2005).

The Appellant surmises that the Agency has not complied with the requirements pursuant to 5 U.S.C. § 3312 and 5 U.S.C. § 3318. If the Board accepts the Appellant's Appeal, the Appellant will be afforded an opportunity via discovery to prove that the Board has jurisdiction over his Appeal.

On September 23, 2022, Appellant applied to the position under USCIS Job Announcement ESC-2022-0044. On February 23, 2023, he learned that he had not been selected for the position, although he was rated as Best Qualified-Referred. This position was the 7th of 11 jobs since 2021, in which the Appellant had been rated as such by the Human Resources Specialist(s). It is clear to the Appellant that his right to compete for jobs in accordance with 5 U.S.C. 3304(f)(1), is being obstructed within the agency. Appellant contends that he is more than qualified for all the positions to which he has applied.

The Appellant is entitled to know the reason he was not selected for yet another position in which he was found to be Best Qualified, and if that non-selection comports with the law. The Agency must support its reason for Appellant's non-selection with "clear and specific" admissible evidence. See Burnside v. DHHS, 01831501 (1985). The reason proffered must be legally sufficient to justify judgment for the Agency. Roseboro v. USPS, 01831308 (1983).

# e-Appeal Attachment Transmittal

**Appeal Number:**     202302437
**Appellant Name:**    Richard Cornelius Jackson
**Agency Name:**       Department of Homeland Security

Please check the box for each document included with this transmittal.

| ☒ | Name of Attachment | Attachment Processing Status | File Name/Delivery Method |
|---|---|---|---|
| ☒ | SF-50, Notification of Personnel Action | Upload with e-Appeal | 2023 SF50.pdf |
| ☒ | Department of Labor (DOL) Complaint | Upload with e-Appeal | VETS-Form-E1010-4673 (1).pdf |
| ☒ | Notice from Department of Labor (DOL) | Upload with e-Appeal | DOL Closing Letter for ESC-2022-0044.pdf |
| ☒ | Agency Proposal Letter | Document not available or not applicable | N/A |
| ☒ | Agency Decision Letter | Document not available or not applicable | N/A |

2 copies must be submitted of all documents submitted in hardcopy.
Send documents to be submitted in paper form to:
Central Regional Office
230 South Dearborn Street Room 3100
Chicago, Illinois 60604
United States of America

Phone: (312) 353-2923
Fax: (312) 886-4231

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle)  JACKSON, RICHARD C | 2. Social Security Number  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 | 3. Date of Birth  01/12/1983 | 4. Effective Date  01/15/2023 |
|---|---|---|---|

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code  893 | 5–B. Nature of Action  REG WRI | 6–A. Code | 6–B. Nature of Action |
| 5–C. Code  Q7M | 5–D. Legal Authority  REG 531.404 | 6–C. Code | 6–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number  IMMIGRATN SVCS OFFCR  02002596  OFS009 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate  03 | 12. Total Salary  98,431.00 | 13. Pay Basis  PA | 16. Pay Plan  GS | 17. Occ. Code  1801 | 18. Grade or Level  12 | 19.Step or Rate  04 | 20. Total Salary/Award  101,507.00 | 21. Pay Basis  PA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay  75,839.00 | 12B. Locality Adj.  22,592.00 | 12C. Adj. Basic Pay  98,431.00 | 12D. Other Pay  .00 | | | 20A. Basic Pay  78,209.00 | 20B. Locality Adj.  23,298.00 | 20C. Adj. Basic Pay  101,507.00 | 20D. Other Pay  .00 | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization  CITIZENSHIP AND IMMIGRATION SERVICES  FIELD OPERATIONS DIRECTORATE  OFFICE OF FIELD OPERATIONS  DISTRICT 34  HS CI1740046501000000    PP 02 2023 |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference  6 | 1 – None          3 – 10-Point/Disability          5 – 10-Point/Other  2 – 5-Point     4 – 10-Point/Compensable     6 – 10-Point/Compensable/30% | 24. Tenure  1 | 0 – None          2 – Conditional  1 – Permanent     3 – Indefinite | 25. Agency Use | 26. Veterans Preference for RIF  X  YES     NO |
|---|---|---|---|---|---|
| 27. FEGLI  K0 | BASIC-2X ADDITIONAL | 28. Annuitant Indicator  9 | NOT APPLICABLE | | 29. Pay Rate Determinant  0     NOT APPLICABLE |
| 30. Retirement Plan  KF | FERS (FRAE) | 31. Service Comp. Date (Leave)  10/26/2004 | 32. Work Schedule  F     FULL TIME | | 33. Part–Time Hours Per  Biweekly  Pay Period |

## POSITION DATA

| 34. Position Occupied  1 | 1 – Competitive Service     3 – SES General  2 – Excepted Service     4 – SES Career Reserved | 35. FLSA Category  N | E – Exempt  N – Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status  3443 |
|---|---|---|---|---|---|
| 38. Duty Station Code  17-1670-031 | | 39. Duty Station (City – County – State or Overseas Location)  CHICAGO  COOK  IL | | | |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Remarks |
|---|
| WORK PERFORMANCE IS AT AN ACCEPTABLE LEVEL OF COMPETENCE. |

| 46. Employing Department or Agency  HOMELAND SECURITY | 50. Signature/Authentication and Title of Approving Official  ELECTRONICALLY SIGNED BY:  BERNADINA REYES  CHIEF,HUMAN RESOURCES OPERATIONS CTR |
|---|---|
| 47. Agency Code  HSAB | 48. Personnel Office ID  1699 | 49. Approval Date  01/14/2023 | |

5–Part 50–316

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

OMB NO. 1293-0002 (EXP 04/30/2023)
VETS/USERRA/VP Form 1010 (REV 12/2013)

**ELIGIBILITY DATA FORM**: For claims under the Uniformed Services Employment and Reemployment Rights Act (USERRA) and/or claims under the Veterans' Preference (VP) provisions of the Veterans Employment Opportunities Act of 1998
**U.S. Department of Labor, Veterans' Employment and Training Service**

**Mail (or FAX) to:**

| | |
|---|---|
| **Veterans' Employment and Training Service** | **Phone:** (866) 4-USA-DOL ((866)-487-2365)) |
| **U.S. Department of Labor** | **FAX:** (404) 562-2313 |
| **ATTENTION:  Form 1010** | |
| **61 Forsyth Street, S.W., Room 6T85** | |
| **Atlanta, Georgia 30303** | |

*PLEASE TYPE OR PRINT*

**Section I:  Claimant Information**

1. Name:   Jackson                    Richard                         C
   Last Name              First Name                    M.I.

2. Address:   1023 25th Ave              Bellwood          IL          60104
   Street                    City               State          ZIP

3. Social Security No:  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     4. Home Phone:  312-285-6390     5. Cell Phone:  312-285-6390

6. Email Address:  rcjackson83@outlook.com     7. Do you have a military service-connected disability?  ■ Yes  ☐ No

**Section II:  Uniformed Service Information**

8. Serve(d) In:   ☐ Air National Guard   ☐ Army National Guard   ☐ Army Reserve   ☐ Air Force Reserve   ☐ Naval Reserve
   ☐ Marine Corps Reserve   ☐ Coast Guard Reserve   ☐ Army   ☐ Air Force   ■ Navy   ☐ Marine Corps   ☐ Coast Guard
   ☐ Public Health Service   ☐ Other (Explain in "Comments")   ☐ None (Retaliation Claim – Explain in "Comments")

9. If Reserve/National Guard:

   (a)   Name of Unit: _____

   (b)   Unit Address: _____

   (c)   Unit Phone: _____

10. Dates of Service (If applicable):   (a) From:  8/21/2001      To:  7/14/2012

   **OR**   (b) Date of Examination/Rejection for Service: _____

11. Type of Discharge or Separation:   ■ Honorable Conditions   ☐ Entry Level   ☐ Uncharacterized   ☐ Medical   ☐ Other than Honorable
   ☐ Other (Explain in "Comments")   ☐ Not Applicable

**Section III:  Employer Information**

12. Employer or Prospective Employer's Name:   USCIS

13. Address:  101 W Ida B Wells Dr              Chicago          IL          60605
   Street                    City               State          ZIP

14. Principal Employer Contact (PEC):
   (a) PEC Name/Title: _____     (b) PEC Phone: _____

15. Employment Dates (If applicable):   From:  10/31/2016      To: _____

16. Since beginning work with this employer, has your cumulative uniformed service exceeded 5 years?   ☐ Yes   ☐ No
   If **YES**, explain in Comments box at end of this claim form.

17. Name of Union(s) That Represent You: _____

18. Title of the Position or Occupation that is related to your claim (the job that you either now hold, or used to hold, or applied for, with this employer):
   Immigration Services Officer

**Section IV:  Claim Information**

19. Was the Employer Support of the Guard and Reserve (ESGR) involved in handling your claim initially?  ☐ Yes  ■ No

**Use items #20 and #21 to identify the program(s).**  *(NOTE: Most claims – but not all – apply to only one program.)*
- **For this claim to apply only to Veterans' Preference (VP) in Federal Employment:  Complete item #20, and skip #21.**
- **For this claim to apply only to USERRA: ………………………………………….  Skip item #20, and complete #21.**
- **For this claim to apply to both VP and USERRA: …………………………………  Complete both items #20 and #21.**

20. Veterans' Preference Issue (Check One): ■ Hiring  ☐ Reduction-in-Force (RIF)

21. USERRA Issue(s): ☐ Military Obligations Discrimination  ☐ Reinstatement  ☐ Initial Hiring Discrimination
☐ Discrimination as Retaliation for any Action  ☐ Status  ☐ Pay Rate  ☐ Seniority  ☐ Other Non-Seniority Benefits
☐ Pension  ☐ Layoff  ☐ Promotion  ☐ Vacation  ☐ Health Benefits  ☐ Special Protected Period Discharge
☐ Reasonable Accommodations/Retraining for Disabled  ☐ Reasonable Accommodations/Retraining for Non-Qualified/Non-Disabled  ☐ Other

**If Claim Concerns Hiring, Promotion, RIF or Termination**

22. Title of Position Held or Applied For:  Immigration Services Officer

23. Pay Rate:  GS-12

24. Date of Application Employment/Promotion:
    (a) Vacancy Announcement Number:  ESC-2022-0044
    (b) Date Vacancy Opened:  9/23/2022    (c) Date Vacancy Closed:  10/3/2022

**If Claim Concerns Reemployment Following Service**

25. Was Prior Notice of Service Provided to Employer?  ☐ Yes  ☐ No (If "No," Explain in Comments)

26. (a)  Who Provided Notice of Service to Employer?  ☐ Self  ☐ Other (name): _____
    (b)  Was the Notice of Service:  ☐ Written  ☐ Oral  ☐ Both
    (c)  Date Notice of Service was given to Employer: _____

27. Name/Title of Person to Whom Notice of Service was Provided: _____

28. Date Applied for Reemployment: _____  **OR**  Date Returned to Work: _____

29. Reemployment Application Made To:    Name: _____    Title: _____

30. Reemployed or Reinstated?  ☐ Yes (date): _____  ☐ No
    (a)  If **YES**, what position? _____  at what pay rate? _____
    (b)  If **NO**, Date denied: _____  Reason(s) given: _____
    (c)  Who denied (Name and Title): _____

**PUNISHMENT FOR UNLAWFUL STATEMENTS**
The information provided in this complaint will be utilized by the U.S. Department of Labor, Veterans' Employment and Training Service (VETS) to initiate an investigation of alleged violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA) Title 38, U.S.C., Sections 4301-4335; and/or the Veterans' Preference (VP), provisions of the Veterans Employment Opportunities Act of 1998 (VEOA), 5 U.S.C. §3330a-3330c.  Potential claimants should keep in mind that it is unlawful to "knowingly and willfully" make any "materially false, fictitious, or fraudulent statements or representation" to a federal agency.  Violations can be punished under Section 2 of the False Statements Accountability Act of 1996 by a fine and/or imprisonment of not more than 5 years.  18 U.S.C. § 1001.

I certify that the above information is true and correct to the best of my knowledge and belief.  I authorize the U.S. Department of Labor to contact my employer or any other person for information concerning this claim.  I further authorize my employer or any other person to release such information to the U.S. Department of Labor.  Pursuant to 5 U.S.C., Section 552a(b) of the Privacy Act, I authorize the U.S. Department of Labor and the U.S. Department of Defense to release information and records necessary for the investigation and prosecution of my claim.

**SIGNATURE:** _____    **DATE:**  3/14/2023

Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.  Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Veterans' Employment and Training Service, Room-S1316, 200 Constitution Avenue, N.W., Washington, DC 20210.

**NOTIFICATION OF USERRA CLAIMANT'S RIGHTS**
For claims arising under USERRA, a person has a right to commence an action for relief directly against the employer in the appropriate federal district court (in the case of a complaint against a State or private employer), pursuant to 38 U.S.C. § 4323(a)(3), or the Merit Systems Protection Board (in the case of a complaint against a Federal executive agency or the Office of Personnel Management), pursuant to 38 U.S.C. § 4324(b).

**PRIVACY ACT STATEMENT**
The primary use of this information is by staff of the Veterans' Employment and Training Service in investigating cases under USERRA or laws/regulations relating to veterans' preference in Federal employment.  Disclosure of this information may be made to:  a Federal, state or local agency for appropriate reasons; in connection with litigation; and to an individual or contractor performing a Federal function.  Furnishing the information on this form, including your Social Security Number, is voluntary.  However, failure to provide this information may jeopardize the Department of Labor's ability to provide assistance on your claim.
**Continue in Comments box &/or use additional sheet(s) to explain items if needed – Sign and date form (above)**

OMB NO. 1293-0002 (EXP 01/31/2020)
VETS/USERRA/VP Form 1010 (REV 12/2013) – Page 2

## Explain your claim in detail – List all remedies you seek
### Use additional sheet(s) if needed – Initial & date each page at bottom

**Comments:**

I believe my employer, USCIS, has violated the Veterans Preference Act and I request an investigation. I've applied for over 16 jobs within USCIS going back to at least 2021, that I am qualified for and should have been offered (with Veterans Preference), but didn't even receive an interview for most. It appears that based on my downloaded applications, the agency was removing my SF-15's and VA disability letters to ensure I would not get veterans preference. Note that all of the jobs are missing the SF-15 and VA letters, but for some of the jobs, I was rated as Best-Qualified-Referred. This is a clear indication that the removal of the documents was done after the fact. The last complaint I filed (IL-2023-003-VPH), I was outside of the required 60 days to file.

On February 23, 2023, I learned I had not been selected for the most recent position. Note that other non-veterans from the Chicago Field Office were selected. It is clear that I am being obstructed from competing for jobs within the agency that I am more than qualified for. The other 16 positions that I was not selected for, I've filed an Appeal with the Merit Systems and Protections Board. The Administrative Judge is reviewing whether my complaint may be equitably tolled due to being outside the 60-day requirement. The agency engaged in deception when it removed my SF-15's and VA letters from the job announcements. Note that the documents did NOT vanish from this job announcement. Nonetheless, I believe I was not selected because the supervisor who is the subject of my EEO complaint gave me a negative reference. She has only been my assigned supervisor since January 3, 2023. I have an outstanding performance record and the required experience for all the jobs I applied to.

Please investigate the agency for violation of Veterans Preference

INITIALS: **RCJ**       DATE: **3/14/2023**

**Mail (or FAX) to:**

**Veterans' Employment and Training Service**          **Phone:**  **(866) 4-USA-DOL ((866)-487-2365))**
**U.S. Department of Labor**                            **FAX:**    **(404) 562-2313**
**ATTENTION:  Form 1010**
**61 Forsyth Street, S.W., Room 6T85**
**Atlanta, Georgia 30303**

**OMB NO. 1293-0002 (EXP 01/31/2020)**
**VETS/USERRA/VP Form 1010 (REV 12/2013) – Page 3**

**Instructions for filing claims under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) and/or the Veterans' Preference (VP) provisions of the Veterans Employment Opportunities Act of 1998**

**Section I**
- **Questions 1-7** - Self-explanatory. (**Note:** Social Security number is optional, but desired; or, you may instead just give "000-00-" and then the last four digits of your Social Security number.)

**Section II**
For this section please use the branch of service that you were, are or will be in when the allegations that lead you to file this claim occurred. For each question, answer to the best of your ability only the questions that apply to you. This information must eventually be supported with documentation in order for the Veterans' Employment and Training Service (VETS) to establish your eligibility under the law.
- **Question 8** – Mark the appropriate box to indicate the branch of service that you are, have been, or will be a member of. (May skip if filing a VP claim).
- **Question 9** - Fill in the specific information you have of your unit including name, address and phone number.
- **Question 10** -
  a. Fill in the dates that you served in, the date that you began your service, the date that you will begin your service. OR
  b. Fill in the date of examination/rejection for service.
- **Question 11** - Mark the appropriate box that best describes how you were discharged or separated. (If you have not yet been discharged, mark "Not Applicable.")

**Section III**
Please report the information of the employer(s) that your claim involves as accurately as possible. This information will be used to establish a point of contact within the company or agency.
- **Question 12** - Fill in the name of your employer or the employer that you applied for a position with.
- **Question 13** - Fill in the employer's or potential employer's mailing address.
- **Question 14** -
  a. Fill in the name and, if possible the title of the person you are or have been in contact with regarding the position employed or applied for. (Often a human resource specialist or supervisor.)
  b. Fill in their phone number.
- **Question 15** - Fill in the dates that you have been employed with this employer; or, if still employed there, fill in just the "From" date that you started working for this employer; or, if you have not yet started working there, fill in just the "From" date that you will start working for this employer.
- **Question 16** – USERRA)  Mark the "no" box if you have not exceeded five cumulative years of uniformed service since beginning work with this employer. Mark the "yes" box if you have exceeded five cumulative years of uniformed service since beginning work with this employer and explain in the "Comments" section below.
- **Question 17** - Fill in the name of any Union(s) that may represent you. (May leave this question blank if filing a VP claim)
- **Question 18** - Fill in the title of the position you have now, or that you previously had, or that you applied for, with this employer.

**Section IV**
- **Question 19** – (USERRA only) Indicate if the Employer Support of the Guard and Reserve (ESGR) was involved in handling your complaint before filing this Form 1010 claim with VETS.
- **Use Question #20 and/or #21 in this section to identify the program(s) for which you are filing this claim. (NOTE:** Most claims – but not all – apply to only one program.)  To complete Question #20 and/or #21, please fill in the issue that best describes your claim.
  - For this claim to apply only to Veterans' Preference (VP) in **Federal Employment**:  Complete Question **#20**, and skip **#21.**
  - For this claim to apply only to USERRA: Skip **#20** and complete **#21.**
  - For this claim to apply to both VP and USERRA: Complete both **#20** and **#21.**

**If Claim Concerns Hiring, RIF, Promotion or Termination**
- **Question 22 -** Fill in the title of the position that relates to this claim.
- **Question 23 –** (USERRA only) Fill in the rate of pay for the position that relates to this claim.
- **Question 24 –** (USERRA only) Fill in the date you applied for the position or promotion that relates to this claim.
  a. Fill in the Vacancy Announcement Number.
  b. Fill in the date the vacancy opened.
  c. Fill in the date the vacancy closed.

**If Claim Concerns Reemployment Following Service**
- **Question 25 –** (USERRA only) Fill in yes if you provided notice of your service to your employer before you began your military service. If not, mark "no" and explain in the "Comments" section and continue to question 28.
- **Question 26 –** (USERRA only)
  a. Mark the "self" box if you provided the notice or the name of the person that provided the notice to your employer on your behalf.
  b. Indicate how the notice was given and mark the appropriate box or boxes.
  c. Fill in the date that the notice of service was provided to the employer.
- **Question 27 –** (USERRA only) Fill in the name and title of the person to whom you provided the notice of service.
- **Question 28 –** (USERRA only) Fill in the date you applied for reemployment or the date you returned to work.
- **Question 29 –** Fill in the name and title of the person to whom you applied for reemployment.
- **Question 30 -** If you have been reemployed or reinstated, mark the "yes" box and enter the date that you were reemployed or have been reinstated with your employer and complete 30 (a). If you have not been reemployed or reinstated, mark the "no" box, skip 30 (a) and complete 30 (b) and (c).
  a. Fill in your position and pay rate.
  b. Fill in the date that your reemployment was denied and state the reason that was given. (If additional space is needed, you may explain in "Comments" section).
  c. Fill in the name and title of the individual within your employer who denied your reemployment.

**Comments**
Please explain in detail and be sure to include any relevant facts as to why you are filing this claim. Please be sure to also explain in detail what remedies (for example: employment, reemployment rights, lost wages, seniority benefits, etc.) you seek by filing this claim.

**U.S. Department of Labor**     Veterans' Employment and Training Service
230 N. Dearborn St., rm 1060
Chicago, IL 60604
Phone: 312-353-0970
Fax: 312-886-1184



May 4, 2023

Richard Jackson
1023 25th Ave
Bellwood, IL 60104
rcjackson83@outlook.com                    IL-2023-004-VPH

Dear Richard Jackson:

This letter is to advise you that the Veterans' Employment and Training Service (VETS) has completed its investigation of your veterans' preference complaint filed under the Veterans Employment Opportunities Act of 1998 (VEOA), 5 U.S.C. 3330a. Your complaint was timely filed on March 14, 2023.

Based on VETS' investigation of your complaint, we determined that the evidence does not support your allegation that the U.S. Citizenship and Immigration Services violated your veterans' preference/VEOA rights.

Although we have made this determination, you have the right to appeal your case to the Merit Systems Protection Board (MSPB) within 15 calendar days from the date of receipt of this letter.  In accordance with the MSPB regulations, you must file your appeal with the MSPB regional or field office that has responsibility for the geographic area in which you were employed when your complaint arose. In your case, your appeal must be sent to:

230 South Dearborn Street, 31st Floor
Chicago, IL 60604-1669
(312)353-2923 - telephone
(312) 886-4231 - fax
chicago@mspb.gov

A copy of the MSPB Appeal Form is enclosed for your convenience. If you prefer, you may file your MSPB appeal electronically at https://e-appeal.mspb.gov.

If you have any questions concerning the appeal process, you may go to the MSPB website, https://e-appeal.mspb.gov/faq.aspx, which includes "frequently asked questions" concerning appeals.

Sincerely,

*Adriane Easte*

Adriane Easte
Regional Investigator

Enclosure:  MSPB Appeal Form

# EXHIBIT 3



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

# IMPORTANT INFORMATION ABOUT FILING A DISCLOSURE

## OSC WHISTLEBLOWER DISCLOSURE CHANNEL

Under 5 U.S.C. § 1213 and related provisions, the Office of Special Counsel (OSC) serves as a secure channel for federal employees, former federal employees, and applicants for federal employment with reliable knowledge of the wrongdoing to disclose:

- a violation of law, rule or regulation;
- gross mismanagement;
- gross waste of funds;
- an abuse of authority;
- a substantial and specific danger to public health or safety; and/or
- censorship related to scientific research.

## OSC JURISDICTION

OSC has no jurisdiction over disclosures filed by:

- employees of the U.S. Postal Service and the Postal Regulatory Commission;
- members of the armed forces of the United States (*i.e.*, non-civilian military employees);
- state employees operating under federal grants;
- employees of federal contractors;
- other employees or federal agencies that are exempt under federal law; and
- Congressional or judicial branch employees.

## ANONYMOUS SOURCES

While OSC will protect the identity of persons who make disclosures, it will not consider anonymous disclosures. If a disclosure is filed by an anonymous source, the disclosure will be referred to the Office of Inspector General in the appropriate agency. OSC will take no further action.

## RETALIATION

Do you believe you suffered retaliation by your agency for disclosing wrongdoing? If yes, you may file a complaint of retaliation by navigating back to "My Cases" and selecting "New Complaint."  Select Option 1 to complete and submit a Complaint of Prohibited Personnel Practice or other Prohibited Activity (PPPs). *If you have already completed the Complaint of Prohibited Personnel Practice or other Prohibited Activity above, please continue with this Disclosure.* PPPs are employment-related activities that are banned in the federal workforce.

OSC Online Filing Portal                                    OMB No. 3255-0005
DISCLOSURE OF INFORMATION                                   Expires 03/31/2023
Date Received by OSC:   6/2/2023                            Page 1 of 7
Pleading Number : 2023026123    Submission date : 2023-07-06 10:23:58    Confirmation Number: 411191697    page 53 of 163



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

PPPs generally involve some type of personnel decision or action and may result in personal relief for people who have been subject to a PPP. For example, if we find that you were removed from federal service in retaliation for whistleblowing, OSC may act to get your job back. PPPs can also include allegations of harassment, failure to issue appraisals, and improper hiring. Do not file a disclosure to report retaliation or other PPPs.

# CONTACT INFORMATION

**Title:** Mr
**First Name:*** Richard                    **Middle Initial:** C
**Last Name:*** Jackson

**International Address?:** No
**Address:***
1023 25th Ave
Bellwood, IL 60104

**Cell Phone Number:**                        **Home Phone Number:**
**Office Phone Number:** (312) 239-5444       **Ext.**
**Email Address:*** rcjackson83@outlook.com

Preferred means of contact:
**Email:** Yes                                **Cell phone:** Yes
**Home phone:** No                            **Office phone:** No

# REPRESENTATIVE INFORMATION

**Do you have representation?** No

Information about representative, if applicable.
**First Name:***                              **Middle Initial:**
**Last Name:***

**International Address?:**
**Address: ***

OSC Online Filing Portal                                          OMB No. 3255-0005
DISCLOSURE OF INFORMATION                                         Expires 03/31/2023
Date Received by OSC:   6/2/2023                                  Page 2 of 7
Pleading Number : 2023026123     Submission date : 2023-07-06 10:23:58     Confirmation Number: 411191697     page 54 of 163



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

**Office Phone Number:**                          **Ext.**
**Cell Phone Number:**                       **Home Phone Number:**
**Email Address:**

# EMPLOYMENT INFORMATION

Name of Department/Agency about which you are making a disclosure.
**Department:*** Homeland Security
**Agency:*** Citizenship And Immigration Services
**Agency subcomponent:** Field Office Directorate
**Street Address:** 101 W. Ida B. Wells Drive
**City:** Chicago               **State:** IL
**Zip Code:** 60104

**Employment Status:***       Current Federal Employee

| Title | Series | Grade |
|---|---|---|
| Immigration Services Officer | 1801 | GS-12 |

**Please provide your dates of employment in this position.**
10/31/2016 - present

| Employment Service Type | Employment Service Subtype | If Other (specify) |
|---|---|---|
| Competitive Service | Career or career-conditional appointment | |

**Are you covered by a collective bargaining agreement?**
Yes

# DETAILS OF YOUR DISCLOSURES

OSC Online Filing Portal                                      OMB No. 3255-0005
DISCLOSURE OF INFORMATION                              Expires 03/31/2023
Date Received by OSC:   6/2/2023                                Page 3 of 7
Pleading Number : 2023026123      Submission date : 2023-07-06 10:23:58      Confirmation Number: 411191697      page 55 of 163



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

Please identify the type of wrongdoing that you are alleging.  You can make multiple disclosures, but you MUST choose one option. If you check "violation of law, rule, or regulation," specify, if you can, the particular law, rule or regulation violated (by name, subject, and/or legal citation).  For each allegation, please answer the following questions (be as specific as possible). Please keep in mind that you will have an opportunity to provide more information and someone from OSC will contact you.

If OSC determines there is a substantial likelihood of wrongdoing, OSC will refer your disclosures to the involved agency for an investigation and report. To meet the substantial likelihood standard, there must be a significant probability that the information reveals wrongdoing that falls within one or more of the categories above. In its evaluation, OSC considers the strength, reliability, and credibility of the disclosures. If the substantial likelihood determination cannot be made, OSC will determine whether there is sufficient information to exercise its discretion to refer the allegations.

## DISCLOSURES

| Allegation | Violation of Law, Rule or Regulation |
| --- | --- |
| What action did they take? | Altered previously certified timecards |
| When did this occur? | I am not sure of the date, but I observed a "pending" leave request from July 2022 (last year) when I was preparing to certify my timecard for current pay period |
| How did you discover this action? | I observed a "pending" leave request from July 2022 (last year) when I was preparing to certify my timecard for current pay period on June 2, 2023 |
| What additional facts support your allegation? | The fact that management was aware of a pending complaint to the FLRA regarding its violations of the Collective Bargaining Agreement, and what appears to be tampering with my previously certified timecards, supports my suspicion that the agency has violated the law. |

## DISCLOSURE SUBJECTS

Name of individual you believe is responsible for the wrongdoing disclosed.

OSC Online Filing Portal
DISCLOSURE OF INFORMATION
Date Received by OSC:   6/2/2023
Pleading Number : 2023026123          Submission date : 2023-07-06 10:23:58          Confirmation Number: 411191697          page 56 of 163

OMB No. 3255-0005
Expires 03/31/2023
Page 4 of 7



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

| First Name | Last Name | Title | Chain of Command |
|------------|-----------|-------|------------------|
|            |           |       |                  |

## REQUESTED OSC ACTION

**What action would you like OSC to take?**
Investigate the agency's timekeeping records in order to determine what previously certified timecards have been altered other than the one I observed on June 2, 2023.

## WHERE ELSE DID YOU REPORT THIS MATTER?

I have also disclosed this information to:

| Other Action Type | Action Taken Date |
|-------------------|-------------------|
| Inspector General of department / agency involved | 6/2/2023 |

Additional information about reports to Inspectors General, if applicable.

**First Name:**                **Last Name:**
**Title:**
**Address:**
**Email Address:**
**Telephone Number:** 8003238603
**Case ID #:**
   a. **What is the status of the matter?**
     Not sure

**NOTE: MATTERS INVESTIGATED BY AN OFFICE OF INSPECTOR GENERAL**
**It is the general policy of OSC not to transmit allegations of wrongdoing to the head of the agency involved if the agency's Office of Inspector General has fully investigated, or is currently investigating, the same allegations.**

## ATTACHMENTS

OSC Online Filing Portal                                                                 OMB No. 3255-0005
DISCLOSURE OF INFORMATION                                                    Expires 03/31/2023
Date Received by OSC:   6/2/2023                                                  Page 5 of 7
Pleading Number: 2023026123          Submission date : 2023-07-06 10:23:58          Confirmation Number: 411191697          page 57 of 163



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

Please note that the space available for attachments is limited. Therefore, DO NOT attach every document and email that may be relevant to your claim. You will have an opportunity to make additional submissions at a later date. We recommend limiting attachments to official forms and correspondence that document the action(s) at issue in your disclosure if these documents are relevant to your allegations.

**I have attached the following documents to my filing:**

| File Name |
|---|
| Leave Request History A.pdf |
| Leave Request History B.pdf |
| WebTA Sup Certification.pdf |
| Cerified Time Sheet PP15 - 2022.pdf |
| Unknown Leave Submission.pdf |
| Email to timekeeper and mgt.pdf |
| Official Time Request to File FLRA Complaint.pdf |
| FLRA complaint.pdf |

# CONSENT

**Do you consent to the disclosure of your identify to others outside OSC if it becomes necessary in taking further action on this matter?***

I consent to disclosure of my identity.
**Yes**

I do not consent to disclosure of my identity. (Even if you do not consent, OSC may disclose your identity if necessary due to an imminent danger to public health or safety or imminent violation of any criminal law. See 5 U.S.C. § 1213(h).)
**No**

# CERTIFICATION

OSC Online Filing Portal                                      OMB No. 3255-0005
DISCLOSURE OF INFORMATION                                     Expires 03/31/2023
Date Received by OSC:   6/2/2023                              Page 6 of 7
Pleading Number : 2023026123      Submission date : 2023-07-06 10:23:58      Confirmation Number: 411191697      page 58 of 163



**REPORT GOVERNMENT WRONGDOING (DISCLOSURE)**
Do not use this form to submit classified information.
For instructions or questions, call the Case Review Division at (202) 804-7000.
*Denotes required fields.

**I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine, imprisonment, or both. 18 U.S.C. § 1001.***
Yes

BURDEN: The burden for this collection of information (including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form) is estimated to be an average of one hour to submit a disclosure of information alleging agency wrongdoing, one hour and fifteen minutes to submit a complaint alleging a prohibited personnel practice or other prohibited activity, or 30 minutes to submit a complaint alleging prohibited political activity. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the U.S. Office of Special Counsel, General Counsel's Office, 1730 M Street, NW, Suite 218, Washington, DC 20036-4505.

**This Disclosure of Information was Received by OSC on:**  6/2/2023

*PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUMENTATION, AND ANY ADDITIONAL ALLEGATIONS THAT YOU SEND TO OSC NOW OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING.*
*REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.*

OSC Online Filing Portal                                    OMB No. 3255-0005
DISCLOSURE OF INFORMATION                          Expires 03/31/2023
Date Received by OSC:   6/2/2023                        Page 7 of 7
Pleading Number : 2023026123        Submission date : 2023-07-06 10:23:58        Confirmation Number: 411191697        page 59 of 163

# EXHIBIT 4



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

June 30, 2023

Mr. Richard Jackson
1023 25th Avenue
Bellwood, IL, 60104

*Sent via email to:* rcjackson83@outlook.com

Re: OSC File No. DI-23-000802

Dear Mr. Jackson:

The U.S. Office of Special Counsel (OSC) has completed its review of the information you referred to the Disclosure Unit. You alleged that a violation of law, rule, or regulation by employees of the Department of Homeland Security (DHS), Citizen and Immigration Services, Field Office Directorate, Chicago, Illinois.

OSC is authorized by law to determine whether a disclosure should be referred to the involved agency for investigation or review, and a report. However, OSC does not have the authority to investigate disclosures. OSC may refer allegations of violations of law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; a substantial and specific danger to public health or safety; or censorship related to scientific research. Disclosures referred to the agency for investigation and a report must include information sufficient for OSC to determine whether there is a substantial likelihood of wrongdoing.

You alleged that when you were certifying your timecard you noticed a pending leave request for three hours of leave on July 28, 2022, which you stated you did not submit. When you checked your WebTA account, pay period 15 of 2022 did not reflect the leave request, however, you later received an email from WebTA that your request for leave had been approved. Thereafter, you informed your supervisors of your intent to file a complaint with the Federal Labor Relations Authority (FLRA) because you believed that you were being set up for altering your timecard. In response to your concerns, your timekeeper, Shawnice Robinson, explained that system reflects that you made the correction in the timekeeping system and no one else could access your time records and request leave. Nevertheless, you maintain that you did not submit the request for July 28, 2022 and that if others can tamper with your timecard, then it is illegal. Further, you noted in a telephone conversation with Catherine McMullen, Chief, Disclosure Unit, on June 9, 2023, that you were going to provide

Mr. Richard Jackson
Page 2

additional documentation in support of your allegation. To date, we have not received any documentation.

After review and consideration of the information provided, we have determined that we are unable to refer your allegations to the Secretary of Homeland Security. In determining whether there is a substantial likelihood that wrongdoing has occurred, OSC considers a number of factors, including the sufficiency and specificity of the information provided and whether the whistleblower has reliable information that supports his or her allegations. Information based on assumptions or speculation does not provide OSC with a sufficient basis for a referral. In this case, while you remain concerned that someone tampered with your timecard, there is no information supporting the allegation. As noted above, your belief that your time and attendance records were tampered with is not sufficient to establish a substantial likelihood of a violation of law, rule, or regulation or any other wrongdoing we could refer for investigation. Therefore, we will not take any further action on this matter.

Should you wish to pursue this matter further, you may also contact the DHS Office of the Inspector General, 245 Murray Lane SW, Washington, D.C.; telephone number: (202) 981-6000; hotline number: (800)-323-8603.

Accordingly, we are closing our file. If you wish to discuss this matter further, please contact me at (202) 804-7020.

Sincerely,

Tracy Biggs
Deputy Chief, Disclosure Unit

# EXHIBIT 5



# Charge Against an Agency

## eFiling No. eOGC014735

Revision: REV-11-18-2018

Case No: CH-CA-23-0388

## Filing Party

**Filing Representative Email Address**
rcjackson83@outlook.com

| | |
|---|---|
| **First Name** | **Last Name** |
| Richard | Jackson |
| **Street Address** | **Street Address 2** |
| 101 W. Ida B. Wells Drive | Empty |
| **City** | **State** |
| Chicago | IL |
| **ZIP Code** | |
| 60605 | |
| **Title** | **Organization** |
| Immigration Services Officer | USCIS |
| **Phone** | |
| 3122856390 | |

## Agency Against Which Charge is Brought

**Search or write-in Charged Party information?**
Search

| **Name of Charged Agency** | **Activity/Local** |
|---|---|
| USCIS/DHS | Head Quarters |
| **City** | **State** |
| Washington | DC |

# Agency Representative Information

**Email Address**

Andrew.J.Davidson@uscis.dhs.gov

| **First Name** | **Last Name** | **Title** |
| --- | --- | --- |
| Andrew | Davidson | Acting Deputy Director |

**Street Address**

5900 Capital Gateway Dr

**Street Address 2**

Empty

| **City** | **State** | **ZIP Code** |
| --- | --- | --- |
| Camp Springs | MD | 20746 |

| **Phone** | **Fax** |
| --- | --- |
| (202) 256-3761 | Empty |

# Charging Party Information

**Search or write-in Charging Party information?**

Write-in

**Name of Charging Party Organization or Individual**

Richard C. Jackson

| **Party Type of Charging Party Organization or Individual** | **Local Name of Charging Party Organization or Individual** |
| --- | --- |
| Individual | Richard C. Jackson |

| **City of Charging Party Organization or Individual** | **State of Charging Party Organization or Individual** |
| --- | --- |
| Chicago | IL |

# Charging Party Representative Information

**Email Address**

rcjackson83@outlook.com

| **First Name** | **Last Name** | **Title** |
| --- | --- | --- |
| Richard | Jackson | Immigration Services Officer |

**Street Address**

101 W. Ida B. Wells Drive

**Street Address 2**

Empty

| **City** | **State** | **ZIP Code** |
| --- | --- | --- |
| Chicago | IL | 60605 |

| **Phone** | **Fax** |
| --- | --- |
| 3122856390 | Empty |

# Basis of the Charge

**OGC Regional Office**

OGC-CH - Chicago Regional Office

**Set forth a clear and concise statement of the facts constituting the alleged unfair labor practice, including date and location of the particular acts:**

Pro Se Complainant, Richard Cornelius Jackson, hereby submits in the above-captioned matter, the Complainant's filing seeking redress and reprieve from the Department of Homeland Security, USCIS, for its retaliatory acts due to my having engaged in protected activity. The agency has committed unlawful retaliation against me in response to the protected activity I engaged in, which began in January of 2023. The agency has also violated my rights pursuant to the 2022 Collective Bargaining Agreement. On January 25, 2023, I informed respondeat superiors of my supervisor, Concepcion RAZO (RAZO), spying on me by hiding behind my office door on two occasions (Attachment A, at 49). I later came to realize that this was done because I informed her that I had a job interview and she was more than likely seeking a basis to provide negative information to the prospective hiring office. I filed a complaint with Office of Special Counsel (OSC) on January 28, 2023 (Attachment B). Unfortunately, OSC determined her actions did not violate my rights although I was not offered the position. On March 8, 2023, I filed an Appeal with the Merit Systems Protection Board alleging the agency had violated my rights under the Veterans Employment Opportunities Act, due to the non-selection of 10 jobs, and what appeared to be unlawful tampering with my job applications on USAJOBS. The Appeal is currently pending the Judge's review of my Motions to Sanction and Compel Discovery Responses. On March 20, 2023, I filed a formal complaint against the agency (Attachments C,D,E). March 21, 2023, the agency unlawfully procured my TransUnion Consumer Report in violation of the Fair Credit Reporting Act (Attachment A, at 53). I believe the agency unlawfully procured my TransUnion report because it was seeking a basis to retaliate against me for filing a formal complaint. The agency's reply to my inquiry contradicts its own policies from its website (Attachment F). On March 30, 2023, I filed a retaliation complaint with OSC (Attachment G) to address the unlawful act of illegally procuring my credit report. On April 30, 2023, I filed a grievance (Attachment A, at 10) in accordance with the agency's 2022 Collective Bargaining Agreement (CBA). On May 10, 2023, the District Director did not sustain my grievance against RAZO (Attachment A, at 12). I was then notified by the Field Office Director that he was proposing a 5-day Suspension (Attachment A, at 15). I filed a rebuttal to the suspension (Attachment A, at 1). Due to the fact that my rebuttal was grounded in law and facts, the Deciding Official appears to have decided against the suspension but there has been nothing received officially. I filed a new retaliation complaint with OSC on May 12, 2022 (Attachment H), after I was threatened with suspension after filing a grievance. However, shortly thereafter, RAZO retaliated against me by alleging I abused my right to take leave (Attachment I) after I submitted my response to the grievance. When I requested RAZO provide evidence that supported her accusation (Attachment I), she ignored it and then threatened me with termination after I opposed her instructions to fill out a new AWS (Attachment J). RAZO did not copy management or the Union on her threatening e-mail so I forwarded it (Attachment K). RAZO would then go on to terminate my Alternative Work Schedule (AWS) without following the 2022 CBA (Attachment L). According to the USCIS "Helpdesk", only a supervisor can terminate an AWS agreement. Article 27 (5) of the CBA requires that I be notified at least 2 weeks prior when changing tours or shifts. I e-mailed RAZO requesting her response

(Attachment M). Of note, RAZO claiming I have a "recurring pattern" of "not requesting leave in advance" (Attachment I) is pretextual for future retaliation as there is no record of her requiring I be placed on Leave Restriction or issuing me a Record of Counseling. The only leave I have ever requested on an emergency basis was this year when I was seeking treatment for a bladder tumor that was discovered (Exhibit N). Unfortunately, I was diagnosed with bladder cancer in April 2023, and that required me exhausting my leave balance and utilizing the Leave Without Pay per Article 26 (d)(2)(A) of the CBA. RAZO also claimed that I was using leave at the end of the pay period to ensure 80 hours was abusive, but many employees in the Chicago Field Office do this regularly. RAZO's claims are I contradiction to Article 24 (a)(1) of the CBA. This is unhinged retaliation and pretext for future harassment because of the 5-day suspension failing. RAZO, 1) terminating my AWS, 2) accusing me of leave abuse, violated 7116(a)(7) of the Statute. The Field Office Director threatening a retaliatory 5-day suspension after I filed a grievance violated Article 47 (a)(4), Article 47 (2)(D) and Article 47(e)(6) of the CBA and 7116(a)(4) of the Statute. The agency has exemplified what retaliatory and discriminatory animus looks like in the work place. I do not doubt this retaliatory and discriminatory animus would be occurring if I were Caucasian. The behavior of officials at the Chicago Field Office has racial overtones that should be addressed by enforcement agencies.

# Attachments

Please attach any available supporting documents.

**Description**
Attachment A
**Attachment**
 Response to Agency 5-day Suspension Proposal.pdf

**Description**
Attachment B
**Attachment**
 OSC Form-14.pdf

**Description**
Exhibit C
**Attachment**
Formal Complaint 1of3.pdf

**Description**
Exhibit D
**Attachment**
Formal Complaint 2of3.pdf

**Description**
Exhibit E
**Attachment**
Formal Complaint 3of3.pdf

**Description**
Attachment F
**Attachment**
Unlawful Procurement of Credit Report.pdf

**Description**
Attachment G
**Attachment**
[OSCFiling-JacksonRichardC-MA-03302023106.pdf](OSCFiling-JacksonRichardC-MA-03302023106.pdf)

**Description**
Attachment H
**Attachment**
[OSCFiling-JacksonRichardC-DI-05122023243.pdf](OSCFiling-JacksonRichardC-DI-05122023243.pdf)

**Description**
Attachment I
**Attachment**
[Response to Leave Abuse Requesting Proof.pdf](Response to Leave Abuse Requesting Proof.pdf)

**Description**
Attachment J
**Attachment**
[Removal From Service Threat.pdf](Removal From Service Threat.pdf)

**Description**

Attachment K

**Attachment**

Email Threat Fwd to MGT.pdf

**Description**

Attachment L

**Attachment**

Schedule Termination.pdf

**Description**

Attachment M

**Attachment**

SISO Terminated AWS.pdf

**Description**

Attachment N

**Attachment**

VA decision_letter_Redacted.pdf

**Identify which one or more of the following subsections of 5 U.S.C. § 7116(a) has or have allegedly been violated. Please note that a violation of (2) through (8) is an automatic violation of (1). For the purpose of this chapter, it shall be an unfair labor practice for an agency:**

☐ (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

☑ (4) to discipline or otherwise discriminate against an employee because the employee has filed a complaint, affidavit, or petition, or has given any information or testimony under this chapter;

☑ (7) to enforce any rule or regulation (other than a rule or regulation implementing section 2302 of this title) which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed; or

**Have you or anyone else raised this matter in any other procedure?**

Yes

> **If yes, where?**
> ☑ Office of Special Counsel
> ☑ Other
>
> > **If Other, where?**
> > Agency's Office of Equal Opportunity and Inclusion and Anti-Harassment Program Manager

# Declaration

☑ **I declare that I have read this charge and that the statements in it are true to the best of my knowledge and belief. I understand that making willfully false statements can be punished by fine and imprisonment, 18 U.S.C. 1001.**

**Your Name (this will act as your signature)**     **Date**

Richard C. Jackson                                               06/01/2023

You are required to serve your charge on the Charged Party in accordance with 5 C.F.R. § 2423.6(d). **The filing of a document using the FLRA's eFiling System does _not_ constitute service of the document on any party. The filing party must independently accomplish service by one of the following methods.**

This charge was served on the Charged Party Representative identified above by the following method(s):

**Serving Method(s)**

☑ First-class mail

REV-11-18-2018
Filed: 06/01/2023 11:09 PM EDT

# EXHIBIT 6


U.S. Citizenship
and Immigration
Services

## MANAGEMENT DIRECTIVE

## MERIT PROMOTION AND INTERNAL PLACEMENT PLAN

**Effective Date: March 5, 2012**

**Management Directive 255-001**

# I. Purpose

This management directive (MD) establishes the U.S. Citizenship and Immigration Services (USCIS) policy, procedures, and key responsibilities for managing and administering the USCIS Merit Promotion and Internal Placement Plan. USCIS merit promotion and internal placement procedures:

    A. Provide for an open, systematic, and equitable assignment system that ensures positions are filled according to merit factors;

    B. Ensure that actions taken in the identification, qualification, evaluation, or selection of candidates are made without regard to political, religious, or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, physical handicap, or age, and will be based solely on job-related criteria;

    C. Adhere to Office of Personnel Management (OPM) and Department of Homeland Security (DHS) requirements for establishing competitive merit selection procedures to fill competitive service positions; and

    D. Facilitate the establishment of a fair and equitable merit promotion program that employees, managers, and supervisors understand.

# II. Scope

This plan applies to competitive selections for USCIS positions in the General Schedule and Federal Wage pay systems, except where positions are filled using the USCIS delegated examining authority. Senior Executive Service (SES) positions are not covered by this plan. If the provisions of this MD conflict with those of the current USCIS Collective Bargaining Agreement (CBA), the provisions of the CBA will take precedence as it affects bargaining unit positions.

USCIS MD 255-001

# III. Authority and Supersedence Information

A. This MD is governed by numerous laws, such as the following laws, regulations, orders, policies, directives, and guidance:

1. 5 U.S.C. § 105, "Executive Agency";

2. 5 U.S.C. § 2108, "Veteran; disabled veteran; preference eligible";

3. 5 U.S.C. Chapter 23, "Merit System Principles";

4. 5 U.S.C. Chapter 33, "Examination, Selection, and Placement";

5. 38 U.S.C. Chapter 42, "Employment and Training of Veterans";

6. 38 U.S.C. Chapter 43, "Uniformed Services Employment and Reemployment Rights Act (USERRA) of 1994";

7. 5 CFR 4, "Prohibited Practices (Rule IV)";

8. 5 CFR 6.7, "Movement of persons between the civil service system and other merit systems";

9. 5 CFR 210, "Basic Concepts and Definitions (General)";

10. 5 CFR 212, "Competitive Service and Competitive Status";

11. 5 CFR 307, "Veterans Recruitment Appointments";

12. 5 CFR 315, "Career and Career Conditional Employment";

13. 5 CFR 319, "Employment in Senior–Level and Scientific and Professional Positions";

14. 5 CFR 330, Subpart B, "Reemployment Priority List (RPL)";[1]

15. 5 CFR 330, Subpart F, "Agency Career Transition Assistance Plans (CTAP) for Local Surplus and Displaced Employees";

16. 5 CFR 330, Subpart G, "Interagency Career Transition Assistance Plan [ICTAP] for Displaced Employees";

17. 5 CFR 332, "Recruitment and Selection through Competitive Examination";

18. 5 CFR 335, "Promotion and Internal Placement";

19. 5 CFR 351, "Reduction in Force [RIF]";

20. 5 CFR 412, "Supervisory, Management, and Executive Development";

21. 5 CFR 432, "Performance Based Reduction in Grade and Removal Actions";

22. 5 CFR 752, "Adverse Actions";

23. 5 CFR 771, "Agency Administrative Grievance System";

24. 29 CFR 1614, "Federal Sector Equal Employment Opportunity";

25. DHS Directive 255-05, "Merit Staffing" dated  May 31, 2007;

26. USCIS MD 251-003, "Position Classification" dated July 13, 2011;

27. USCIS MD 256-001, "Administrative Grievance System" dated June 28, 2010; and

28. USCIS Equal Employment Opportunity and Diversity Policy dated December 17, 2010.

---

[1]  At 75 FR 67593, November 3, 2010, 5 CFR 330 was revised, effective March 3, 2011 and this MD relies upon the revised Part 330 regulations in the 2011 CFR volume which also contains the immediate former version of the Part 330 regulations.

USCIS MD 255-001

B. This MD supersedes the Tri-Bureau Merit Promotion Plan, dated February 25, 2005 (for USCIS only).

# IV. Definitions

A. ***Accretion of Duties:*** Phrase used to describe a noncompetitive promotion in those unique instances where an employee's position is reclassified because of the performance of additional duties and responsibilities.

B. ***Agency:*** For purposes of merit promotion, the term agency means the USCIS.

C. ***Area of Consideration (AOC):*** The AOC is the organizational and/or geographic limit within which a search is made for eligible candidates to be considered for a specific merit promotion action.

D. ***Bargaining Unit Position:*** A position in a unit for which a union has been certified as the exclusive representative.

E. ***Best-Qualified:*** Applicants who are rated above the established "cut-off" score (see Appendix C) and who, in comparison to other well-qualified candidates, demonstrate better overall key competencies, knowledge, skills, and abilities.

F. ***Career Ladder:*** The grade range within an occupational series that represents increasing levels of difficulty and responsibility.

G. ***Career Ladder Promotion:*** The noncompetitive promotion of an employee when the competition was held at an earlier stage (i.e., selection from either an OPM or Delegated Examining Unit (DEU) certificate of eligibles, or under internal merit promotion procedures), and the fact that the initial selection could lead to further career advancement was made known to all candidates.

H. ***Career Transition Assistance Program (CTAP):*** An agency plan to actively assist its surplus and displaced employees by implementing policies to provide career transition services to those affected by downsizing, restructuring, or directed geographical reassignments. This includes providing special selection priority to well-qualified surplus and/or displaced DHS employees who apply for departmental vacancies in the local commuting area, before selecting any other candidate from either within or outside DHS.

I. ***Certificate of Eligibles:*** A document given to the selecting official that contains the names of the best-qualified candidates for a competitive position vacancy.

J. ***Competencies:*** The knowledge, skills, and abilities and other characteristics an individual needs to perform the duties of a position.

K. ***Competitive Status:*** One's basic eligibility for noncompetitive assignment to a competitive position. Competitive status is acquired by career-conditional or career appointment through

USCIS MD 255-001

open competitive examination and upon satisfactory completion of a probationary period. Competitive status may also be granted by statute, executive order, or Civil Service rules without competitive examination. A person with competitive status may be promoted, transferred, reassigned, reinstated, or demoted without taking an open competitive examination.

L. ***Crediting Plan:*** The instrument designated for the evaluation of candidates for a specific position prepared in advance of a vacancy announcement. Rating criteria are developed based on a thorough job analysis to identify the requisite knowledge, skills, abilities, and training required for successful job performance.

M. ***Demotion:*** The change of an employee to a lower grade when both the old and the new positions are in the General Schedule or under the same type of graded wage schedule, or to a position with a lower rate of pay when both the old and the new positions are under the same type of ungraded wage schedule or are in different pay method categories.

N. ***Detail:*** The temporary assignment of an employee to different duties or to a different position for a specified period of time. For pay purposes, the employee continues to occupy his or her permanent position of record.

O. ***Exceptions to Competitive Procedures:*** Those promotion or placement actions that do not require competitive procedures and are therefore not covered under the requirements of this plan.

P. ***Federal Equal Opportunity Recruitment Program (FEORP):*** A recruiting initiative established by the Civil Service Reform Act and administered by OPM. The program is designed to eliminate under-representation of minorities and women in the Federal service.

Q. ***Full Performance Level:*** The highest grade level achievable within a career ladder or in association with a position's established promotion potential.

R. ***Highly Qualified Candidates:*** Those eligible candidates who have been determined to substantially exceed the basic knowledge, skills, abilities, and other characteristics described by the evaluation criteria as necessary to perform the duties of the position successfully.

S. ***Interagency Career Transition Assistance Program (ICTAP):*** A program that provides eligible displaced competitive status employees, who have been involuntarily separated, selection priority for jobs in agencies other than the one where they were previously employed.

T. ***Interchange Agreement:*** OPM and Federal agencies having an established merit system in the excepted service may enter into an agreement prescribing conditions under which employees may be moved from the Civil Service system and other merit systems to another system through noncompetitive appointments. Eligible employees must meet all of the requirements for appointment under the specific interchange agreement.

U. ***Intergovernmental Personnel Act:*** Mobility Program that provides for the temporary assignment of personnel between the Federal government and state and local governments,

USCIS MD 255-001

colleges and universities, Indian tribal governments, federally-funded research and development centers, and other eligible organizations.

V. **_Job Analysis:_**  The process of systematically identifying the basic duties and responsibilities, competencies, and knowledge, skills, and abilities (KSAs) necessary for successful job performance in order to provide a job-related basis for evaluation and selection of candidates for positions.

W. **_Knowledge, Skill, and Ability (KSA):_**  The attributes required to perform a job that are generally demonstrated through qualified experience, education, and training.  Knowledge is a body of information applied directly to the successful performance of a position's function.  Skill is observable competence or a behavior that results in an observable product.  Ability is competence to perform an observable behavior.

X. **_Local Commuting Area:_**  The geographic locality that constitutes one geographic area for employment purposes, as determined by USCIS.  It includes any population center and the surrounding localities within which people live and can reasonably be expected to travel back and forth daily to their usual place of employment.

Y. **_Noncompetitive Action:_**  A promotion, demotion, reassignment, transfer, reinstatement, or appointment that does not require competition through the merit promotion or competitive examining process.

Z. **_Noncompetitive Applicant Referral:_**  Applicants who are eligible and qualified but are not required to compete under merit promotion procedures.  These applicants are neither rated nor ranked, but are referred to the selecting official under a separate heading to distinguish them from competitive applicants.

AA. **_Position Change:_**  A promotion, demotion, or reassignment during an employee's continuous service under the same appointment within the same agency.

BB. **_Priority Consideration:_**  An instance when competitive procedures are temporarily suspended for the purpose of correcting or minimizing an error or other issue in the past resulting from a procedural, program, or regulatory violation.

CC. **_Promotion:_**  The change of an employee to a higher grade when both the old and the new positions are under the General Schedule, or under the same type of graded wage schedule, or to a position with a higher rate of pay when both the old and new positions are under the same type of ungraded wage schedule or in a different pay system.

DD. **_Qualification Standards:_**  The knowledge, experience, education, training, or other criteria contained in OPM's Qualification Standards that set the basic eligibility requirements for each occupational series and grade level.

EE. **_Qualified Candidates:_**  Those candidates who meet the minimum qualification standards and requirements established by OPM, as well as any Agency-established selective placement factors critical to successful performance in the position.

USCIS MD 255-001

- 5 -

FF. ***Rating Panel:*** Those Agency employees tasked with rating and ranking candidates for a specific merit promotion vacancy.

GG. ***Reasonable Accommodation:*** An adjustment or alteration that enables qualified individuals with disabilities to apply for jobs, to gain access to the work environment, to perform job duties, and/or to enjoy the benefits and privileges of employment.

HH. ***Reassignment:*** The change of an employee from one position to another within DHS without promotion or demotion.

II. ***Reemployment Priority List (RPL):*** A list maintained by DHS to give re-employment priority to any career or career-conditional competitive service employee separated through reduction-in-force or fully recovered from a compensable injury after more than one year. OPM regulations generally require that DHS establish an RPL for each local commuting area. Eligible employees may register through the Office of Human Capital & Training (HCT), USCIS.

JJ. ***Re-promotion Eligible List (REL):*** An exception to competitive procedures whereby an employee is re-promoted to the grade level previously held or its Federal Wage System equivalent when qualified for a position. An employee becomes eligible for re-promotion if he or she is changed to lower grade without cause or for performance deficiencies without his or her consent, and if he or she is not covered by grade or pay retention provisions.

KK. ***Selective Placement Factors (SPFs):*** Specific knowledge, skills, and abilities that are not prescribed by OPM's qualification standards, but are essential to successful job performance as determined by USCIS. The necessity for the particular factor must be documented in the position description and identified through job analysis.

LL. ***Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA):*** The Federal law intended to ensure that persons who serve or have served in the Armed Forces, Reserves, National Guard or other "uniformed services:" (1) are not disadvantaged in their civilian careers because of their service; (2) are promptly reemployed in their civilian jobs upon their return from duty; and (3) are not discriminated against in employment based on past, present, or future military service. The Federal government is to be a "model employer" under USERRA.

MM. ***USAJobs:*** Is the official job site for the U.S. Federal Government. It is a one-stop source for Federal jobs and employment information. USAJobs is located at: www.usajobs.gov.

NN. ***USAStaffing:*** An online tool, separate from USAJobs, aimed at effectively attracting the best-qualified candidates from the public sector using the federal staffing process. This web-enabled system automates and integrates the recruitment, assessment, referral and notification processes. This system enables applicants to complete, submit and track their application packages and guides applicants through completing assessments.

OO. ***Vacancy Announcement:*** An announcement, generally posted on OPM's website at www.usajobs.gov, describing vacant positions within USCIS, including title, location, rate of pay, and application prerequisites.

USCIS MD 255-001

PP. ***Veterans Employment Opportunity Act (VEOA) of 1998:*** An act that allows preference eligibles or veterans to compete for vacancies under merit promotion procedures when DHS is accepting applications from individuals outside of its own workforce. A candidate eligible for a VEOA appointment must be a preference eligible or a veteran who has been separated under honorable conditions with three or more years of continuous active service.

QQ. ***Veterans Recruitment Appointment (VRA):*** A special appointment authority that allows noncompetitive placement of eligible veterans up to the GS-11 or equivalent level. Such positions may have promotion potential. Veterans are hired under excepted appointments to positions in the competitive service. After two years of satisfactory service, the veteran must be noncompetitively converted to a career or career-conditional appointment.

RR. ***Well-Qualified Employee:*** An eligible employee who possesses the knowledge, skills, and abilities that clearly exceed the minimum qualification requirements for the position. A well-qualified employee will not necessarily meet the definition of "best-qualified," when evaluated against other candidates who apply for a particular vacancy.

## V. Policy, Procedures, and Requirements

A. ***Policy:*** It is USCIS policy that all selections will be made in compliance with merit system principles and without violation of prohibited personnel practices or regard to any non-merit factor. It is USCIS policy to ensure that all applicants receive a fair and equal opportunity for consideration for positions, and that selection procedures are based solely on the relative ability, knowledge, skills, and other merit factors of each applicant after fair and open competition. The major provisions of the USCIS merit promotion policy are to:

1. Ensure that all personnel actions are affected without regard to political, religious, or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, non-disqualifying physical handicap, age and without regard to criteria unrelated to the position, such as personal friendship or patronage, and that selections are made based solely on job-related criteria;

2. Provide all applicants and employees equal opportunity – selection will be based solely on the relative ability, knowledge, and skill of each applicant after fair and open competition;

3. Keep employees informed of available promotional and developmental opportunities;

4. Ensure the contents of negotiated agreements with bargaining units are incorporated in this Plan and changes resulting from negotiations are implemented within agreed upon timeframes;

5. Provide employees and applicants the opportunity for career growth through promotion and internal placement opportunities;

6. Implement a fair, consistent, and equitable means to evaluate and assess employment and promotional candidates for USCIS; and

7. Develop USCIS employees to the maximum extent possible consistent with the goals and objectives of USCIS.

USCIS MD 255-001

- 7 -

B. **_Procedures:_**  A summary of the USCIS Merit Promotion and Internal Placement Plan procedures follows with a detailed description of the process included in Appendix A, "Merit Promotion Procedures."

1. *Determining Need for Competition:*  This is made jointly by the hiring managers and HCT Specialists, considering the factors listed in Sections I and II of Appendix A.

2. *Other Merit Promotion Program Provisions:*  This addresses limitations on temporary promotions and details to higher graded positions and exclusions of non-status candidates from competition under the USCIS Merit Promotion and Internal Placement Plan.

3. *Area of Consideration (AOC) Determination:*  The AOC will be sufficiently broad to ensure the availability of high quality candidates for the position(s) to be filled and will be set in a manner to promote fair and open competition and recruitment of a diverse workforce.  It must also indicate that preference eligibles and veterans who have been separated from the armed forces under honorable conditions after three years or more of active service are eligible to apply.

4. *Posting Vacancy Announcements:*  Vacancy announcements will normally be open for a minimum of ten calendar days and have sufficient publicity so that eligible employees in the AOC have an opportunity to learn of the vacancy and apply.  Announcements must be clearly written with sufficient information for applicants to understand the duties, qualifications, evaluation method to be used, and application procedures.

5. *Applicant Eligibility:*  To be eligible for consideration under merit promotion procedures, applicants must be:
   a. Serving in a career or career conditional appointment in the competitive service;
   b. Eligible under an OPM interchange agreement;
   c. A reinstatement eligible;
   d. Eligible under VEOA; or
   e. Eligible for an Excepted Appointment, such as VRA, Schedule A (persons with disabilities), etc.

6. *Application Process:*  Competitive applicants wishing to be considered should apply online during the vacancy announcement opening period, through USAJobs.  All application materials must be received by the closing date of the announcement.  Non-competitive applicants are encouraged to apply on-line during the opening period, but may request consideration after the announcement has closed before selection is made due to unique circumstances, such as extended military service, serving on an Intergovernmental Personnel Act assignment, hospitalization, or overseas service with a Federal agency or an appropriate international organization.  Applicants unable to apply online should contact the HCT point of contact listed on the vacancy announcement.

7. *Application Evaluation:*  Minimally qualified candidates are evaluated against job related competences identified through job analysis as critical for successful performance.

8. *Application Referrals:*  Applicants will be considered for selection based on the rating received in the evaluation process.
   a. Competitive applicants will be referred to the selecting official based on their ranking and listed in alphabetical order.
   b. Noncompetitive applicants will be referred on a separate list provided they meet the basic qualification and eligibility requirements.

USCIS MD 255-001

- 8 -

c. A sufficient number of best-qualified applicants will be referred. Generally, the top 15 qualified applicants will be referred for one vacancy, with three additional applicants for each additional vacancy.

9. *Order of Selection:* See Appendix A.

10. *Selection and Interviews:* Selecting officials may interview and select any candidate on the best-qualified list or any candidate from any other appropriate source as described in numbers 8 and 9 above.

11. *Notification to Candidates:* At a minimum, applicants will be notified of application receipt and the final status of their applications in writing or electronically.

12. *Release Dates:* To the extent possible, an employee will be released for promotion no later than one complete pay period following an official request. A longer period may be allowed for employees being reassigned, changed to lower grade, or in cases of relocation.

13. *Grievances:* Employees have the right to file a grievance relating to a promotion action. They may also pursue an Equal Employment Opportunity (EEO) or Office of Special Counsel (OSC) complaint.

14. *Review and Evaluation:* HCT will conduct an annual review of its operation of the merit promotion program.

15. *Maintenance of Records:* In accordance with 5 CFR 335.103(b)(5), all merit promotion files will be maintained by HCT. Documents allowing reconstruction of the promotion action, including documentation on how candidates were rated and ranked and interview records, will be maintained by the selecting and recommending office until all litigation (EEO, MSPB, grievances, etc.) related to selection are completed. Contact the Office of the Chief Counsel if you have any questions about the pendency of any litigation.

16. *Release of Information:* Generally, information about an applicant's qualification status and referral will only be released to authorized officials who are conducting formal investigations, if those officials are not exempted by the Freedom of Information Act or Privacy Act. Information that may intrude upon the privacy of other applicants, that would compromise the fairness of the examination or evaluation process, or regarding confidential examination materials, will not be released under this MD. Information may be released under other circumstances to authorized parties conducting any type of formal investigations, such as, an EEO complaint initiated by a non-selected applicant.

C. **_Requirements:_** There are no established reporting requirements for this program. The process outlined in this MD must be followed in regards to all USCIS merit promotion selections.

USCIS MD 255-001

## VI. Responsibilities

A. The USCIS Director, or designee, is responsible for:

1. Providing overall policy direction and guidance in the implementation of the Merit Promotion and Internal Placement Plan and ensuring that all selections and promotions are made in compliance with merit system principles and without violation of prohibited personnel practices or regard to any non-merit factor;

2. Fulfilling USCIS's responsibilities under labor relations statutes and union agreements;

3. Providing an open, systematic, and equitable assignment system that ensures positions are filled according to merit factors; and

4. Ensuring that all barriers to equal employment opportunity are aggressively addressed.

B. The HCT Chief, or designee, is responsible for:

1. Managing, administering, and evaluating the Merit Promotion and Internal Placement Plan by issuing policy and providing guidance to USCIS supervisors, managers, and supporting HCT staff;

2. Ensuring the efficient and effective administration of the Merit Promotion and Internal Placement Plan within USCIS;

3. Monitoring operations through annual evaluations of the Merit Promotion and Internal Placement Plan;

4. Providing oversight of the Merit Promotion and Internal Placement Plan;

5. Adhering to merit system principles and all applicable rules, laws, and regulations without violation of any prohibited personnel practices or any non-merit factor;

6. Establishing procedures that ensure barriers to equal employment opportunity are addressed and eliminated, and that the USCIS workforce is inclusive;

7. Ensuring that procedures are in place to grant appropriate consideration for promotion and internal placement to eligible employees;

8. Providing advisory services and technical guidance to selecting officials on recruitment strategies, processes, and procedures;

9. Ensuring the maintenance, coordination and development of standard operating procedures within USCIS for the Merit Promotion and Internal Placement Plan;

10. Ensuring the staff assigned to administer the Merit Promotion and Internal Placement Plan have the required knowledge, skills and abilities to do so;

11. Ensuring that all candidates evaluated under this Plan meet the minimum qualification standards as prescribed by the OPM;

12. Providing employees with information on the basic merit promotion principles and explaining the processes to be followed to be considered for positions;

13. Implementing procedures that allow USCIS employees who are absent from the workplace for legitimate reasons (i.e., on detail, approved leave, in training, on military service, or serving on an Intergovernmental Personnel Act assignment) to still receive consideration for vacancies after the announcements close;

USCIS MD 255-001

14. Maintaining required records of all promotion and placement actions, while ensuring that individual rights to privacy are protected;

15. Counseling employees regarding merit promotion procedures, promotion opportunities, qualification requirements and the results of merit promotion actions; and

16. Providing assistance in the resolution of merit promotion complaints and grievances.

C. Managers, supervisors, and selecting officials, are responsible for:

1. Acting in accordance with the merit system provisions set out in the policy section of this MD;

2. Applying existing policies in the recruitment, selection, and advancement of candidates for positions, as outlined by applicable Civil Service laws and regulations, and any relevant policies and procedures developed by the DHS Chief Human Capital Officer (CHCO);

3. Fulfilling affirmative action responsibilities in accordance with existing affirmative action plans and recruitment strategies, and any relevant policies and procedures developed by the DHS CHCO;

4. Participating in the development and validation of job-related rating and ranking criteria for the position for which they are recruiting;

5. Ensuring that selecting officials and Subject Matter Experts (SMEs) provide human resources representatives with thorough position information and requisite resources for proper recruitment, evaluation, and selection of candidates;

6. Serving on rating panels as needed;

7. Evaluating employees fairly, objectively, consistently, and in a timely manner;

8. Ensuring all USCIS employees have access to the USCIS Merit Promotion and Internal Placement Plan's procedures and are fully informed of promotional opportunities as they arise;

9. Making a reasonable effort to communicate merit promotion opportunities to their subordinate employees who are absent from the workplace for legitimate reasons (i.e., on detail, approved leave, in training, on military service, serving on an Intergovernmental Personnel Act assignment, hospitalization, or overseas service with a Federal agency or an appropriate international organization) during the opening period of vacancy announcements for which they may qualify;

10. Encouraging the development of employees under their supervision and providing training and development opportunities consistent with merit system principles and the provisions of this MD;  and

11. Making selections or recommending selections for appropriate vacancies from among the best-qualified candidates.

D. USCIS employees are responsible for:

1. Managing their career progressions and self-developments;

2. Becoming familiar with the provisions and requirements of the USCIS Merit Promotion and Internal Placement Plan;

3. Applying for those promotion and placement opportunities for which they wish to be considered;

USCIS MD 255-001

- 11 -

4. Providing current and accurate information regarding their knowledge, skills, abilities, work experience, training, education, and awards as required by vacancy announcements upon application for USCIS employment opportunities; and

5. Participating on rating panels or serving as SMEs, as needed.

## VII. Questions, Comments, and Suggestions

Please address any questions, comments, or suggestions to the Office of Human Capital and Training.

**Note:** This USCIS Management Directive (MD), issued in accordance with established USCIS guidance, establishes mandatory agency-wide policy that without compromise is effective for USCIS operations as stated hereafter and shall be observed by all USCIS employees. USCIS MDs are not intended to and shall not provide a basis for any policy or practice that contravenes or supersedes any currently effective federal or Department of Homeland Security policy or practice. Neither the proponent office for this MD nor any USCIS official other than the Deputy Director or Director may issue qualifications or revisions to this MD. All revisions to this MD shall become effective only upon satisfaction of the USCIS MD process and approval of the Deputy Director or Director.

## VIII. Appendices

**Appendix A:**     Merit Promotion Procedures

**Appendix B:**     Personnel Actions Competitive Coverage Guide

**Appendix C:**     Best-Qualified List Preparation Guide

**Appendix D:**     Merit System Principles

**Appendix E:**     Prohibited Personnel Practices

USCIS MD 255-001

**U.S. Citizenship and Immigration Services**
**Merit Promotion and Internal Placement Plan**
**Merit Promotion Procedures**

## I. Determining Need for Competition.

A. Competitive procedures apply to the following actions:
1. Time-limited (temporary) promotions to higher graded positions for more than 120 days.
   a. Prior service while noncompetitively promoted or detailed to a higher graded position that occurred during the 12 month period immediately preceding the temporary promotion counts toward this 120 day limitation.
   b. A formal personnel action must be used to document all temporary promotions, including their terminations.
2. Details for more than 120 days to a higher graded position or to a position with higher promotion potential.  As with temporary promotions, prior service while noncompetitively promoted or detailed to a higher graded position that occurred during the 12 month period immediately preceding the temporary promotion count toward this 120 day limitation.
3. Selection for training that is part of an authorized training agreement, part of a promotion program or required before an employee may be considered for a promotion.
4. Reassignment or demotion to a position with more promotion potential than a position previously held on a permanent basis in the competitive service, except as permitted by reduction-in-force (RIF) regulations.
5. Transfer to a position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service.
6. Reinstatement to a permanent or temporary position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service.
7. Promotion of an employee based on the assignment of supervisory or work leader duties and responsibilities.
8. All other promotions, except those listed below.

B. Exceptions to Competitive Procedures (Noncompetitive Actions)
1. A promotion resulting from the upgrading of a position with no significant change in the duties and responsibilities due to the issuance of a new classification standard, an updated classification policy, or the correction of an initial classification error.
2. A position change permitted by RIF procedures.
3. Career Ladder Promotions.  Career ladder promotions are permitted when an employee is appointed or assigned to any grade level below the established full performance level of the position (i.e., the position has a documented career ladder and promotion potential).  These promotions may be made noncompetitively for any employee who entered the career ladder by:
   a. A promotion without current competition of an employee who was appointed to the competitive service from a civil service register, by direct hire, by noncompetitive appointment or noncompetitive conversion, or under competitive promotion procedures for an assignment intended to prepare the employee for the position being filled;

USCIS MD 255-001

    b.  Noncompetitive appointments under a special appointment authority, i.e. conversion from student hiring programs, appointment of former Peace Corps personnel (must clear Interagency Career Transition Assistance Program (ICTAP) through an announcement), conversion of a Veterans Recruitment Appointment (VRA) appointee.

4.  A promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities where all of the following provisions are met:

    a.  There are no other employees at the same grade in the unit performing duties substantially the same as those performed by the employee prior to the addition of the new duties and responsibilities.

    b.  The employee continues to perform the same basic functions as in the former position and the duties of the former position are administratively absorbed into the new position.

    c.  The addition of the duties and responsibilities does not result in an adverse impact on another encumbered position, such as abolishing or reducing the known promotion potential of another position.

    d.  The accretion is supported by a written analysis of the position, which may involve an audit with the employee and/or the employee's supervisor, or other fact gathering method.

    e.  The employee meets all minimum eligibility requirements for the position.

5.  Promotion to a grade previously held on a permanent basis in the competitive service from which the employee was separated or demoted for reasons other than performance or conduct.

6.  Promotion, reassignment, demotion, transfer, reinstatement, or detail to a position having promotion potential no greater than the potential of a position that an employee currently holds or previously held on a permanent basis in the competitive service and did not lose because of performance or conduct reasons.

7.  Placement as a result of Priority Consideration when the referral is a remedy for candidates not given proper consideration in a competitive promotion action.

8.  Appointments of career Senior Executive Service appointees with competitive service reinstatement eligibility to any position for which they qualify in the competitive service at any grade level.

9.  A temporary promotion made permanent, provided that the action was originally made under competitive procedures and the announcement indicated it may lead to a permanent assignment without further competition.

10.  Temporary promotion, or detail to a higher graded position, for less than one hundred twenty (120) days; or for more than one hundred twenty (120) days to a grade level previously held on a permanent basis, unless the employee was demoted for reasons related to performance or misconduct.

11.  Promotion resulting from successful completion of a training program for which the employee was competitively selected.

12.  Selection(s) from the re-employment priority list at the same or lower grade level than the position from which separated.

13.  Promotion as a legal remedy as ordered or agreed upon in a legal or administrative proceeding.

USCIS MD 255-001

**II. Other Merit Promotion Plan Provisions**

  A.  Temporary Promotions and Details to Higher Graded Positions
    1.  Employees will not be detailed or temporarily promoted to higher graded positions for more than a cumulative total of 120 calendar days during any 12 month period without the use of competitive procedures.
    2.  Temporary promotions for qualified bargaining unit employees will take effect on the 31st day that an employee is assigned to the higher graded bargaining unit position.
    3.  A temporary promotion may be made permanent without further competition provided the temporary promotion was originally made under competitive procedures and all competitors were made aware that the temporary promotion might lead to a permanent promotion.  USCIS must give the employee advance written notice of the conditions under which the time-limited promotion is given.  These conditions include the:
      a.  Time limit of the promotion;
      b.  Requirement for competition beyond 120 days, where applicable; and
      c.  Provision that the employee may be returned at any time to the position from which temporarily promoted, or to a different position of equivalent grade and pay, when the return is not subject to the procedures in:
        i.   5 CFR 351, Reduction-in-Force;
        ii.  5 CFR 432, Performance Based Reduction in Grade and Removal Actions;
        iii. 5 CFR 752, Adverse Actions; or
        iv.  5 CFR 771, Agency Administrative Grievance System.
    4.  A temporarily promoted employee may not be reassigned or demoted to a position with a higher grade or with promotion potential higher than his or her permanent position without the use of competitive procedures.
    5.  Temporary promotions are made for a period of one year with possible extensions of 120 day increments up to a total of five years.  In accordance with 5 CFR 335.102(f), temporary promotions cannot exceed five years unless authorized by Office of Personnel Management (OPM).  Extensions are subject to written approval by the Chief, Human Capital and Training, or designee based on the statement indicated in the vacancy announcement.

  B.  Exclusion of Non-Status Candidates from Competition under the USCIS Merit Promotion and Internal Placement Plan
    1.  Candidates outside the competitive service (candidates without current competitive status or reinstatement eligibility to the competitive service) are excluded from consideration for competitive positions under this plan.  Non-status candidates must be considered under competitive examining procedures.
    2.  This exclusion does not apply to:
      a.  Veterans Employment Opportunity Act (VEOA) appointees;
      b.  Those applying for positions at GS-11 and below (or Federal Wage System equivalents) under the Veterans Recruitment Appointment (VRA) Authority; or
      c.  Employees covered by an interchange agreement with OPM to career or career-conditional appointments in the competitive service.

USCIS MD 255-001

### III. Minimum Area of Consideration (AOC)

A. The area of consideration (AOC) for each vacancy announcement is determined by management in consultation with the servicing HCT Specialist by considering a variety of factors, such as the ability to attract a sufficient number of qualified applicants and Federal Equal Opportunity Recruitment Program (FEORP) data.  In addition:
   1. The AOC should be sufficiently broad to ensure:
      a. The availability of a reasonable number of high quality candidates for the position to be filled, taking into consideration the nature and level of the positions covered;
      b. Be set in a manner to promote fair and open competition, and a diverse work force.
      c. Be determined through consultation between the HCT Specialist and the selecting official or other appropriate management official.
   2. The AOC must indicate that preference eligibles and veterans, who have been separated from the armed forces under honorable conditions after three years or more of active service, are eligible to apply.
   3. AOC determinations must be made prior to announcing the position(s), documented in the promotion file, and clearly specified in the vacancy announcement.
      a. The minimum AOC may be limited to USCIS status employees within the commuting area where the vacancy exists;
      b. If requested by the hiring manager or supervisor, HCT may approve a more restrictive AOC;
      c. The commuting area is the geographic area that constitutes one area for employment purposes.  To be considered, applicants must live within the predefined commuting area of the position to be filled.  For applicants who are unemployed, the definition of local commuting area applies to their place of residence.
   4. Expanding the AOC.  Normally, the selecting official should be able to select from among at least three best-qualified candidates.  If less than three candidates are certified, and the selecting official is willing to select one of them, then expanding the AOC is not necessary.  If the selecting official does not wish to make a selection, he or she may request that HCT extend the AOC.  The selecting official may then select a best-qualified candidate from any individual source of eligibles provided by HCT.

### IV. Posting Vacancy/Job Opportunity Announcements

A. Job Opportunity Announcements (JOAs) will be open for a minimum of ten (10) calendar days.  Postings must receive sufficient publicity so that all eligible employees within the AOC have an opportunity to learn of the vacancy and apply for consideration.

B. JOAs soliciting applications from outside DHS must include a statement for consideration under the VEOA.

C. If a vacancy announcement has been posted and any information is later found to be in error or subsequently changed, i.e., area of consideration, duty station, grade, career ladder of the position, or if there is a change in the factors by which the candidates will be evaluated, the announcement must be re-posted.  The re-posting must identify the change(s) and indicate if

USCIS MD 255-001

Pleading Number : 2023026123          Submission date : 2023-07-06 10:23:58          Confirmation Number : 411191697          page 91 of 163

applicants who applied under the original announcement need to re-apply to be considered. Posting time and distribution shall be the same as the original vacancy announcement.

D. At a minimum, internal merit promotion vacancy announcements will be posted on the USCIS intranet and on the USAJobs internet site.  Cancelled vacancy announcements will be posted in the same areas as the original announcement(s).

E. Vacancy announcements must be clearly written with sufficient information for applicants to understand the AOC, the duties of the position, the qualifications requirements (including any selective placement factors), the evaluation method to be used and what the employee must do to be considered.

F. The JOA must contain the following, if applicable:
   1. The name of the Department and Agency (DHS/USCIS);
   2. JOA Identification Number/Announcement Number;
   3. The number of vacancies;
   4. Position title, series, and grade (or equivalent);
   5. Salary range;
   6. Promotion potential/full performance level;
   7. Opening and closing dates, including any cut-off dates;
   8. Organizational or duty location(s);
   9. Area of consideration;
   10. Statement concerning payment of relocation expenses;
   11. Description of major job duties;
   12. Minimum qualification requirements (including knowledge, skills and abilities or competencies) and any selective placement factors;
   13. How applicants will be evaluated;
   14. Relevant Special Hiring Authority information (i.e., eligibility under Interchange Agreements);
   15. Whether the position is in the bargaining unit or non-bargaining unit;
   16. If a drug test is required;
   17. How to apply, including a point of contact with a telephone number and email address;
   18. Required application materials, such as a resume or transcripts must be submitted;
   19. USCIS's definition of "well-qualified," for Career Transition Assistance Plan (CTAP) and Interagency Career Transition Assistant Plan (ICTAP) purposes, including information on who may apply and what proof of eligibility is required;
   20. Equal Employment Opportunity statement that reads as follows:  "The United States Citizenship & Immigration Services (USCIS) does not discriminate in employment on the basis of race, color, religion, sex, national origin, political affiliation, sexual orientation, marital status, disability, age, membership in an employee organization, protected genetic information, prior EEO activity, or other non-merit factor";
   21. Reasonable Accommodation Statement that reads as follows:  "This Agency seeks to provide reasonable accommodation to applicants with disabilities.  If you need a reasonable accommodation for any part of the application and hiring process, please notify the HCT point of contact listed on the vacancy announcement.  The decision on granting reasonable accommodation will be made on a case-by-case basis;"

USCIS MD 255-001

- 17 -

22. For supervisory or managerial positions, a statement that notifies employees of the 12 month probationary requirement.  For example, "You may be required to serve a twelve-month probationary period upon appointment to this position.  You may also be required to complete an appropriate supervisory training course within one year of assignment to this position;"

23. Privacy Act notice that describes the purposes and uses of the personal information being collected;

24. Whether or not the incumbent is subject to submitting a Financial Disclosure Statement as a requirement of the position; and

25. Other essential information, such as tour of duty, benefits offered, hazardous conditions, travel required, shift work or need for a security clearance.

NOTE:  Before announcing positions outside the Department (i.e., DHS-wide), please refer to the "Order of Selection" in clearing the appropriate reemployment priority list(s).

G. Vacancy announcements may be issued to establish a pool of applicants so that certificates may be issued up to four months from the issue date of the first certificate.

H. OPM requires that when USCIS is accepting applications for merit promotion from outside the Department, the vacancy announcement must be posted on OPM's USAJobs website.  In addition to the items listed above, the job announcement must include a statement that under the VEOA, preference eligibles or veterans who have been honorably discharged from the armed forces after three or more years of active service may compete for vacant positions under merit promotion procedures.

## V.  Applicant Eligibility

To be eligible for consideration under merit promotion procedures, applicants must meet at last one of the requirements specified below:

- Be on a career or career-conditional appointment in the competitive service;
- Be eligible under an OPM interchange agreement as prescribed in 5 CFR 6.7;
- Be a reinstatement eligible;
- Be eligible under VEOA; or
- Be eligible for an excepted service appointment, such as VRA or Schedule A (persons with disabilities).

## VI.  Application Process

A. Candidates wishing to be considered for positions announced under the provisions of this Plan must apply on-line under USAJobs in accordance with the application procedures explained in the vacancy announcement.

B. Applications should reflect an accurate record of work experience, training, education and awards as indicated in the announcement.

USCIS MD 255-001

- 18 -

C. The current or most recent performance appraisal may be required, as applicable. (A most recent performance appraisal is not currently considered in the application procedures, utilizing USAJobs.) The performance appraisal may be obtained during the interview process.

D. Failure to submit the required forms (including a resume if requested) will result in loss of consideration.

E. Employees within the AOC who are absent for legitimate reasons, i.e., on detail, on leave, on extended military service, extended hospitalization, at training courses, serving in public international organizations or on Intergovernmental Personnel Act assignments, will receive appropriate consideration for those positions to which they apply.

F. All application materials must be received by the closing date specified in the vacancy announcement.

G. Exceptions may be granted to employees who are unable to apply to a vacancy announcement by the closing date due to unique circumstances, such as extended military service and the other examples provided above. In these situations, HCT may allow an employee to apply and receive consideration after the closing date of an announcement, provided no selection has been made.

H. Applicants applying under the CTAP or the ICTAP must provide their most recent performance rating of record that indicates at least "fully successful" or equivalent performance , or provide one of the other documents referenced in 5 CFR 330.612 (CTAP) or 5 CFR 330.710 (ICTAP), except for those eligible under 5 CFR 330.703. This includes those who have been separated because of a compensable injury, whose compensation has been terminated, and whose former Agency is unable to place the individual; a former career or career-conditional employee who retired with a disability, and whose disability has been terminated; and a former Military Reserve Technician or National Guard Technician who is receiving a special disability retirement annuity from OPM. The CTAP or ICTAP individuals may also submit a copy of the RIF notice with an offer of another position, accompanied by the signed declination of that offer. The RIF notice must state that declination of the offer will result in separation under RIF procedures.

I. Potential applicants within the stated AOC who need additional assistance in applying online, i.e., those with no reasonable access to the Internet, may contact HCT before the closing date for assistance. HCT Specialists can provide options and approval for submitting the required application via facsimile.

J. Rejection of Applications. Applicants may not be considered when they fail to comply with the terms of the vacancy announcement if the application is:
   1. Received after the closing date (unless the late submission is due to unique circumstances as described above);
   2. Lacks sufficient information to make an eligibility and/or qualifications determination;
   3. Submitted by a non-status candidate and concurrent consideration was not extended; or
   4. Submitted by a candidate outside the area of consideration and concurrent consideration was not extended.

USCIS MD 255-001

- 19 -

K. Employees who apply to multiple vacancies will receive full consideration for each vacancy for which an application is submitted.


## VII. Application Evaluation

A. HCT Specialists are responsible for determining basic eligibility of those candidates who apply and are systematically found eligible for merit promotion opportunities advertised by the USCIS. Candidates must meet minimum qualification requirements (general and specialized experience, professional education requirements, etc.) under the applicable OPM, DHS, and/or USCIS Qualification Standards. Minimum qualification requirements are intended to ensure that the best-qualified applicants apply for each position. Minimum qualification requirements also reduce the processing of unqualified applicants by screening out those who are unlikely to succeed in the job.

B. In addition to meeting the basic eligibility requirements, candidates must satisfy all legal and regulatory requirements for the JOA and any selective placement factors by the closing date of the vacancy announcement in order to receive consideration.

C. Ineligible applicants must be notified in writing of the determination of ineligibility prior to submission of the referral list to the selecting official.
   1. A minimum score of 70 or equivalent rating is required for basic eligibility and referral.
   2. In addition, employees appointed through open examination for a JOA must serve at least 90 calendar days before the effective date of any move, such as promotion or reassignment.

D. HCT Specialist(s) will determine whether applicants meet the minimum qualification standards as prescribed or approved by OPM and eligibility requirements.

E. The same process must be applied uniformly in the rating and ranking process during which determinations of best-qualified candidates to be referred to selecting officials are made. The uniform criteria must be based on the degree to which each minimally qualified applicant possesses the competencies, knowledge, skills, and abilities for the position. Except where otherwise mandated by the USCIS Collective Bargaining Agreement (CBA), rating and ranking may be conducted by an HCT Specialist, a Subject Matter Expert (SME) at or above the full performance grade level of the position to be filled, USAStaffing or a panel of SMEs.

F. When a job is announced at multiple grade levels, different evaluation criteria are required for each grade level. Candidates being considered for the same grade level must be evaluated against the criteria established for that grade.

G. Candidates will be evaluated for positions and receive a rating based on job-related competencies. This evaluation may be based on one or more evaluation methods as described below. The evaluation of applicants under these methods must be against criteria developed through appropriate job analysis procedures prior to issuance of a JOA. The competencies identified through job analysis must be critical for successful performance. These factors must

USCIS MD 255-001

- 20 -

measure the extent and/or degree the applicant possesses the competencies and must be fairly and consistently applied in order to distinguish potential job performance among the applicants.

1. *Responses to job-related questions.* Applicants may be evaluated under USAStaffing based on responses to job-related questions, using a rating method determined through an appropriate job analysis.

2. *Crediting plans* will include definitions of all job elements used to rate and rank candidates. These elements will be identified through job analysis, and will be defined in terms of the required knowledge, skills and abilities (KSAs) and other competencies required for successful performance of the position. In coordination with the selecting official or SME, the crediting plan will be developed and approved by HCT. The method used for evaluation may include assessment of education, job-related training, paid and unpaid experience and job-related outside activities. HCT will ensure the rating criteria is reliable and valid, and the KSAs address the requirements of the position being filled. Any weighing of the evaluation factors in ranking candidates must be clearly documented for each merit promotion action and must include an explanation of the assignment of factor weights in terms of evaluating candidates and determining the best-qualified.

3. *Responses to competency requirements.*

   a. Applicants may be evaluated based on responses to questions related to the required competencies and/or information provided in the employment application/resume. Typically, these are multiple choice questions. This evaluation may be performed by one or more individuals (i.e., SMEs) familiar with the position to be filled. The information provided by the applicant must be reviewed and compared to the required competencies identified for successful job performance. Applicants will be evaluated based on their competency or task base level of experience, respectively.

   b. If an applicant shows no evidence of possessing a particular competency or if there is insufficient information on which to base a rating, no credit will be assigned. (See "Merit Promotion and Internal Placement Plan," Appendix C, for an explanation on scoring.)

4. *Structured interviews.* Applicants may be evaluated based on responses to standard questions under a structured interview method. This assessment is used in conjunction with other assessments. The result of the interview may be scored and applied to an applicant's overall rating or used on a pass/fail basis. Records and scoring criteria obtained during the interview process are maintained until all litigation (EEO, MSPB, grievances, etc.) related to selection are completed. Contact the Office of Chief Counsel if you have any questions about the pendency of any litigation.

5. *Other approved assessment instruments.* Any other approved assessment method or process may be used provided it is based on a relevant job analysis designed to measure an applicant's job-related competency requirements and can be fairly and consistently applied to all candidates.

H. Assessment tools must be developed prior to announcing the job and maintained in merit promotion files and generally will not be released as a means of providing information about job requirements, as release would undermine the fairness and validity of the selection process.

I. Information on performance appraisals and awards documented in the application package may be given consideration during the evaluation/rating review and/or at time of final selection.

USCIS MD 255-001

Awards and appraisals may be considered as additional sources of information only. Mere possession of a specific number of awards or a specific appraisal level will not, in and of themselves, be factors in the evaluation process and will not be used to mechanically increase ratings.

J.    Ratings will be transmuted based on a total possible score of 100 points or equivalent rating. The minimum qualifying score for consideration is 70 points or equivalent rating.

## VIII. Application Referrals

A.    Applicants will be considered for selection based on the rating received from the evaluation process. The final rating is a reflection of his/her overall education, training, and/or experience for a particular position and will determine further selection consideration. Those applicants who meet the basic eligibility requirements and are determined best-qualified may be referred for selection consideration accordingly:
1.    Competitive applicants will be evaluated and referred to the selecting official based on their ranking and listed in alphabetical order on the certificate of eligibles. Certificates will be valid for 30 calendar days with 30 calendar day extensions upon request, up to a total of four months (120 calendar days) from the date of issuance.
2.    Applicant scores will not be shown on selection certificates.
3.    Noncompetitive applicants (i.e., reinstatement, reassignment, re-promotion eligibles, Veterans Recruitment Authority, or appropriate interchange agreements) will be referred in alphabetical order on a separate certificate of eligibles, provided they meet the basic qualification and eligibility requirements.
4.    Outside candidates may not be appointed by transfer or reinstatement to a higher graded position or one with higher promotion potential above the highest grade held in a non-temporary Federal position, unless evaluated under competitive promotion procedures and found to be best-qualified.
5.    Certificates held for 120 calendar days without action, will be cancelled. Certificates returned within 120 calendar days may be reissued, to fill like positions, up to 120 calendar days from the issuance date of the first certificate.

B.    A sufficient number of best-qualified applicants will be referred based on the following:
1.    Fifteen (15) applicants will be referred for one vacancy with three additional applicants for each additional vacancy.
2.    Within the applicant referral ranges, all applicants with tied scores will be referred.
3.    Refer to Appendix C for the specific steps in preparing and completing a best-qualified list.
4.    The rating panel member(s) or the HCT Specialist may refer fewer applicants if it is determined that a significant difference exists in the applicants eligible for referral, or a natural break occurs. In this case, all applicants within this group will be deemed best-qualified, regardless of the number of applicants being referred, and any individual(s) may be selected.
5.    If the best-qualified list contains the names of less or more than the 15 applicants normally referred, the case file must be clearly documented as to the reason(s) why the list was reduced or expanded.

USCIS MD 255-001

- 22 -

C.  If category rating is used, all applicants in the highest quality category are referred as best-qualified or, if fewer than three applicants are available, from a merged category consisting of the highest and second highest quality levels.

D.  HCT Specialists will refer for consideration the names of those employees who become eligible under the following conditions should they request such consideration:
1.  Absent due to compensable injury or in military service, in accordance with 5 CFR 353.106(c);
2.  Granted reemployment rights under a letter of authority from OPM or through legislation; or
3.  On an Intergovernmental Personnel Act Mobility Agreement in accordance with applicable law.

## IX.  Order of Selection

A.  Selection made from within the DHS workforce:
1.  Employees entitled to reemployment priority consideration by means of a Reemployment Priority List (RPL) pursuant to 5 CFR 330.210, unless one of the exceptions in 5 CFR 330.211, are applicable.
    a.  Employees entitled to and eligible for reemployment priority consideration or placement will be referred to the selecting official prior to other candidates, and if possible, before a vacancy announcement is issued; and
    b.  HCT must ensure that management officials afford priority candidates appropriate consideration, maintain documentation and, upon request, provide the appropriate documentation of consideration to priority candidates.
2.  Pursuant to an action taken by the Director, USCIS, or designee, to settle a formal complaint, grievance, appeal, or other litigation, in accordance with 5 CFR 330.607 and .609.
    a.  Employees entitled to and eligible for reemployment priority consideration or placement under A(1) and (2) of this Section will be referred to the selecting official prior to other candidates, and if possible, before a vacancy announcement is issued; and
    b.  HCT must ensure that management officials afford priority candidates appropriate consideration, maintain documentation and, upon request, provide the appropriate documentation of consideration to priority candidates.
3.  Applicants who have applied under the CTAP and who have been evaluated as "well-qualified" and are deemed eligible, or otherwise appear on the DHS RPL.  These candidates will be referred to the selecting official for priority selection before any additional action may be taken to fill the vacancy.
4.  Employees entitled to priority consideration as determined by HCT, due to a regulatory program or procedural violation from a previous merit promotion action, will receive a one-time consideration in advance of the other referred applicants listed in Paragraphs (A)(5) and (6) of this Section.
5.  Applicants referred as re-promotion eligibles on a Repromotion Eligible List (REL) who are certified on properly issued merit promotion certificates.
6.  All other applicants certified on a merit promotion certificate of eligibles.

USCIS MD 255-001

B.  Selections made from outside the DHS workforce:

1.  Employees on a Reemployment Priority List (RPL) who are exercising regulatory or statutory reemployment rights pursuant to 5 CFR 330.210, unless one of the exceptions in 5 CFR 330.211, are applicable.

2.  Pursuant to an action taken by an Agency head or his designee to settle a formal complaint, grievance, appeal, or other litigation, in accordance with 5 CFR 330.705 and .707.

    a.  Employees entitled to and eligible for priority consideration or placement under B (1) and (2) of this Section will be referred to the selecting official prior to other candidates, and if possible, before a vacancy announcement is issued; and

    b.  HCT must ensure that management officials afford priority candidates appropriate consideration, maintain documentation and, upon request, provide the appropriate documentation of consideration to priority candidates.

3.  Applicants who have applied under the ICTAP and who have been deemed eligible and are evaluated as "well-qualified." These candidates will be referred to the selecting official for priority selection before any additional action may be taken to fill the vacancy.

4.  Employees entitled to priority consideration as determined by HCT due to a regulatory, program, or procedural violation from a previous merit promotion action will receive a one-time consideration in advance of the other referred applicants listed in B(5) and (6) of this Section.

5.  Applicants referred as re-promotion eligibles on a Repromotion Eligible List (REL) who are certified on properly issued merit promotion certificates.

6.  All other applicants certified on a merit promotion certificate of eligibles.

## X.  Selection & Interviews

A.  Selecting officials may choose, or not choose, any applicant referred on the best-qualified list. However, in cases where fewer vacancies are filled than initially identified, selections must be within the allowable number of referrals for each vacancy as outlined in Appendix C.

B.  At their discretion, selecting officials (or their designees) or recommending officials may interview applicants referred as best-qualified. Interviews may be conducted in person or by telephone.

1.  Selecting officials may select from those referred as best-qualified and/or alternate staffing. Alternate staffing candidates, or candidates from any other appropriate source, may be selected at any time in the process of filling a position.

2.  The selecting official has the right to select or not select any candidate referred on a merit promotion certificate. The selecting official is required to provide written justification if no selection is made when it is the selecting official's intent to re-advertise or cancel the position.

3.  Selection commitments will not be made to any candidate by anyone involved in the selection process other than the HCT Specialist after all necessary approvals and clearances have been obtained.

4.  Selecting officials are encouraged to make selections in a timely manner. Normally, selections for other than long-term vacancy announcements should be made within 30 calendar days from the issue date of the selection certificate. Each certificate issued must indicate the date the certificate expires. HCT may approve extensions with a goal toward

USCIS MD 255-001

- 24 -

completing the selection process within 45 calendar days.  Except in unusual circumstances, extensions should not exceed 120 calendar days from the issuance date.

5. If, within 120 calendar days of the issuance of the initial selection list, additional vacancies covered by the same official position description or like position, location, and organization occur, applications from the previous announcement may be used for certification for these positions.

6. Once a candidate has been selected and has accepted the position, the candidate will not receive further consideration under that vacancy announcement.

7. Supervisory and managerial positions are subject to the provisions of this MD.  A candidate who is selected for his or her first Federal supervisory position is required under 5 CFR 412.202(b) to complete a period of initial supervisory training.  Additionally, if the employee's appointment is to his or her first Federal supervisory or managerial position, then a one-year supervisory probationary period must be served.

## XI. Notification to Candidates

At a minimum, applicants will be notified in writing or electronically of application receipt and the final status of their application.  To the extent possible, the announcement status will be made available to applicants.  An applicant may request and receive the name, title, organization, and geographic location of the person who was selected for the position.  In addition, an applicant may request and receive information regarding his or her qualifications relative to the rating and ranking criteria.  An applicant may not receive the crediting plan or category rating levels.

## XII. Release Dates

To the extent possible, an employee will be released for promotion no later than one complete pay period following an official request by HCT to the losing office for a release date.  A longer period may be allowed for employees being reassigned, changed to lower grade, or in cases of relocation.  In these cases, the employee will be released as of the effective date established through mutual agreement between the losing and receiving offices and the employee.  This should normally be no later than two complete pay periods following an official request to the losing office for a release date.  It is recommended that employees of USCIS be released accordingly.

## XIII. Grievances and Other Complaints

A. Non-bargaining unit employees have the right to file a grievance relating to a promotion action, subject to USCIS MD 256-001, "Administrative Grievance System" dated June 28, 2010, and the specified timeframes in the procedure.

B. The following actions are excluded from the Agency's Grievance System for non-bargaining unit employees:

1. Non-selection for promotion from a group of properly ranked and certified candidates;

2. A promotion for which competition was previously held; and

3. The termination or expiration of a time-limited promotion, such as to a higher level position, on the date originally specified or at any other time, provided the employee was returned to his or her prior position or a position of equivalent grade and pay.

USCIS MD 255-001

Pleading Number : 2023026123        Submission date : 2023-07-06 10:23:58        Confirmation Number: 411191697        page 100 of 163

C.  If a candidate believes that he/she has been discriminated against in the merit process on the basis of race, color, religion, sex, national origin, age, sexual orientation, protected genetic information, prior protected EEO activity, status as a parent, or physical or mental disability, he or she may elect to pursue a complaint through the EEO procedures in 29 CFR Part 1614.  To do so, the candidate must first contact an agency EEO Specialist in the Office of Equal Opportunity and Inclusion (OEOI) Complaints Resolution Division within forty-five (45) calendar days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

D.  If a candidate feels that he/she has been subjected to unfair treatment in the merit process on the basis of race, color, religion, sex, national origin, age, sexual orientation, lawful political affiliation, marital status, physical or mental disability (if not a job factor), whistleblower reprisal or any prohibited personnel practice in 5 USC 2302(b), he or she may initiate a complaint with the U.S. Office of Special Counsel, an independent Federal agency that has the authority to investigate and prosecute prohibited personnel actions.

E.  Candidates may file a complaint about the merit process with any other applicable complaint procedure or forum.

F.  HCT shall respond promptly to initial questions or concerns about the procedures used to identify and rank qualified candidates.

## XIV. Review and Evaluation

HCT will conduct an annual review and evaluation of its operation of the merit promotion procedures.  The review will include input from supervisors, managers and employees.  Topics will include, at a minimum:

A.  Assessment of the effectiveness and usefulness of the promotion plan.

B.  Review of personnel actions processed during the evaluation period to determine actions were taken in compliance with pertinent laws, regulations, and the provisions of this MD.

C.  Review of the adequacy and timeliness of response to employees' complaints relative to merit promotion actions and procedures.

D.  Review of the extent to which employees, managers and supervisors are fully informed of the provisions of this directive.

NOTE: The results of these reviews will be used to determine if changes to this policy are needed.

## XV. Maintenance of Records

All merit promotion files will be maintained by HCT and the recommendating and selecting official offices until all litigation (EEO, MSPB, grievances, etc.) related to selection are completed. Contact the Office of Chief Counsel if you have any questions about the pendency of any litigation.

USCIS MD 255-001

- 26 -

Merit staffing case files should contain sufficient documentation to permit reconstruction of each merit staffing action, i.e., how the candidates were rated and ranked. A temporary record of each action taken under the provisions of this plan will be maintained for a period of at least two years from the date of selection or until the action/case file has been formally evaluated by OPM, whichever occurs first. Merit promotion files that are related to EEO complaints or grievances will be maintained in accordance with the National Archives and Records Administration, General Records Schedule for Civilian Personnel Records, provided that HCT was timely notified by the appropriate office of such actions prior to the end of the normal retention period. At a minimum, the following information must be retained in the merit promotion file:

- Copy of the vacancy announcement;
- Signed position description;
- Signed crediting plan, including the signed job analysis method used to develop the rating and ranking factors;
- Resumes or Optional Applications for Federal Employment, Form 612, of all persons who applied for the position;
- Certificates with names of those who have been certified as "best-qualified;"
- Merit promotion checklist; and
- Rating Panel List that includes the names of applicants and their scores or any applicable composite scores.

## XVI. Release of Information

A. The following information may be released to an applicant or his/her designee (with written authorization) when requested:
1. Whether the requesting applicant was qualified and/or referred for selection;
2. If not qualified, the reason(s);
3. Name of selectee(s);
4. Cut-off score (lowest score referred); and
5. Ratings/scores of best-qualified candidates.

B. The following information generally may NOT be released:
1. Confidential examining materials (i.e., answer keys, rating schedules and crediting plans, rating sheets, test booklets, etc.);
2. Any information that may intrude upon the privacy of other individuals;
3. Any other materials that would compromise the objectivity or fairness of the examination and evaluation process; and
4. An employee's promotion eligibility, application, rating or performance appraisal will not be available for review by other employees. Such records, however, will be available to promotion rating panels, selecting officials and in the case of a grievance or complaint concerning a promotion action, to appropriate officials connected with, advising on, or adjudicating the grievance.

USCIS MD 255-001

Appendix B

**U.S. Citizenship and Immigration Services**
**Merit Promotion and Internal Placement Plan**
**Personnel Actions Competitive Coverage Guide**

| Proposed Action | Proposed Position | And | Competition Required |
|---|---|---|---|
| Promotion, Reassignment, Change to Lower Grade | Is one with known promotion potential greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | | Yes |
| | Is not one with known promotion potential or promotion potential is no greater than the potential of a position previously held on a permanent basis | Employee was not separated or demoted because of performance or conduct reasons | No |
| Promotion | To a grade previously held on a permanent basis in the competitive service | Employee was separated or demoted for other than performance or conduct reasons | No |
| | To a position to which employee was detailed for training or evaluation | The employee was selected for detail under competitive procedures and all competitors were informed that the detail could lead to promotion without further competition | No |
| | To a higher grade in the employee's career ladder position* | | No |
| Promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities | | | No |
| Temporary Promotion | Is for more than 120 days | The position is one with known promotion potential greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | Yes |
| | | The position is one with known promotion potential no greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | No |
| | Is for 120 days or less | The employee has not served on a noncompetitive temporary promotion for an aggregate of 120 days in the last 12 months | No |

*Promotions for employees in career ladder positions will be processed as follows:
All employees in career ladder positions will be promoted on the first pay period after a period of 52 weeks, or whatever lesser period may be applicable, provided the supervisor has determined that the employee has demonstrated the ability to perform at the higher grade level, all qualification and administrative requirements have been met, the employee's current overall performance appraisal rating is at least fully successful (or equivalent), and there is sufficient higher level work to be performed.

USCIS MD 255-001

| Proposed Action | Proposed Position | And | Competition Required |
|---|---|---|---|
| Reinstatement or Transfer | Is at a higher grade than previously held on a permanent basis or is one with known promotion potential greater than the potential of a position an employee currently holds or previously held on permanent basis in the competitive service | | Yes |
| | Is at the same or lower grade than previously held on a permanent basis or is one with no known promotion potential greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | | No |
| Selection for training leading to promotion | | Successful completion of training is a condition of eligibility for promotion | Yes |
| Conversion of temporary promotion to permanent promotion | | The employee was selected for a temporary promotion under full competitive procedures and all competitors were informed that the temporary promotion could lead to permanent without further competition | No |
| Detail | Same grade as employee's current position | Detail is for any length and the position is one with no known promotion potential greater than the potential of a position an employee currently holds or previously held on permanent basis in the competitive service | No |
| | Is to a higher-graded position | Detail is for more than 120 days (including extensions), and the position is one with known promotion potential greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | Yes |
| | | The position is one with known promotion potential no greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service | No |
| | Is to a higher-graded position | Detail is for 120 days or less (including extensions), and the employee has not served an aggregate of 120 days in such a position in the last 12 months | No |

USCIS MD 255-001

Appendix C

### U.S. Citizenship and Immigration Services
### Merit Promotion and Internal Placement Plan
### Best-Qualified List Preparation Guide

If using a scoring as the evaluation method for a merit promotion selection, as opposed to category rating for example, complete the following steps and grid to determine the best-qualified list, and refer to and incorporate the order of selection requirements as described in "Merit Promotion and Internal Placement Plan," Appendix A.

1. Prepare a ranked list of all qualified applicants (from highest score to lowest score).
2. Determine the number of vacancies.
3. Identify the number of applicants to be referred based on the number of vacancies: 15 for 1 vacancy, 18 for 2 vacancies, etc. (See Column B.1 and B.2 below). The scores in each KSA will be totaled to determine the raw score for all KSA's.
4. Using the ranked list, identify the cut off score based on the number of applicant referrals from column B. Enter this score on the appropriate vacancy line in column C.
5. Determine the number of applicants with the cut off score or higher. Enter this number in column D. Note that all candidates with tied scores will be referred.
6. Prepare the best-qualified list from the number of applicants identified in column D.

| (A) Number of Vacancies | (B.1) Number of Applicants Normally Referred – Non-bargaining Unit Positions | (B.2) Number of Applicants Normally Referred – Bargaining Unit Positions | (C) Cut off Score (from the ranked list of qualified applicants) | (D) Actual Number of Applicants to be Referred* |
|---|---|---|---|---|
| 1 | 15 | 15 | | |
| 2 | 18 | 18 | | |
| 3 | 21 | 21 | | |
| 4 | 24 | 24 | | |
| 5 | 27 | 27 | | |
| (continue in increments of 1) | (continue in increments of 3) | | | |

**\***Note: This number may be higher than the number of applicants identified in Column B due to ties.

USCIS MD 255-001

### U.S. Citizenship and Immigration Services
### Merit Promotion and Internal Placement Plan
### Merit System Principles

The Merit System Principles are the foundation upon which Federal human resource management rests. Codified in section 2301 of Title 5 of the U.S. Code, the Merit Principles apply to all Executive branch agencies. It is especially important that USCIS managers, supervisors and HR Specialists be cognizant of these nine principles:

(1) Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge and skills, after fair and open competition which assures that all receive equal opportunity.

(2) All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

(3) Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance.

(4) All employees should maintain high standards of integrity, conduct, and concern for the public interest.

(5) The Federal work force should be used efficiently and effectively.

(6) Employees should be retained on the basis of adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

(7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

(8) Employees should be--

    (A) Protected against arbitrary action, personal favoritism, or coercion for partisan political purposes; and

    (B) Prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.

(9) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences--

USCIS MD 255-001

(A) A violation of any law, rule, or regulation; or

(B) Mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

USCIS MD 255-001

**Appendix E**

### U.S. Citizenship and Immigration Services
### Merit Promotion and Internal Placement Plan
### Prohibited Personnel Practices

Title 5 U.S.C. 2302 specifically prohibits any employee who has the authority to take, direct others to take, recommend, or approve from taking any of the following actions:

(1) Discriminate for or against any employee or applicant for employment--

    (A) On the basis of race, color, religion, sex or national origin as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16);

    (B) On the basis of age as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);

    (C) On the basis of sex as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d));

    (D) On the basis of handicapping condition as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or

    (E) On the basis of marital status or political affiliation as prohibited under any law, rule or regulation.

(2) Solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of either an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or an evaluation of the characters, loyalty, or suitability of such individual;

(3) Coerce the political activity of any person (including the providing of any political contribution or service), or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

(4) Deceive or willfully obstruct any person with respect to such person's right to compete for employment;

(5) Influence any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

(6) Grant any preference or advantage not authorized by law, rule or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

USCIS MD 255-001

- 33 -

(7) Appoint, employ, promote, advance or advocate for appointment, employment, promotion or advancement in or to a civilian position any individual who is a relative (as defined in 5 U.S.C. 3110(a)(3)) of such employee if such position is in the agency in which such employee is serving as a public official (as defined in section 5 USC 3110(a)(2)) or over which such employee exercises jurisdiction or control as such an official;

(8) Take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of:

   (A) Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences:

      (i)    A violation of any law, rule or regulation;

      (ii)   Gross mismanagement, a gross waste of funds, an abuse of authority or a substantial and specific danger to public health or safety; or

      (iii)  If such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs.

   (B) Any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences:

      (i) A violation of any law, rule, or regulation; or

      (ii) Gross mismanagement, a gross waste of funds, an abuse of authority or a substantial and specific danger to public health or safety.

(9) Take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of:

   (A) The exercise of any appeal, complaint or grievance right granted by any law, rule or regulation;

   (B) Testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A);

   (C) Cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law; or

   (D) For refusing to obey an order that would require the individual to violate a law.

(10) Discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of

USCIS MD 255-001

- 34 -

others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States;

(11)   Knowingly take or fail to take, recommend or approve any personnel action if the taking or failure to take would violate a veterans' preference requirement; or

 (12)   Take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule or regulation implementing or directly concerning, the merit system principles contained in 5 U.S.C. 2301.

Title 5 U.S.C. 2302(b) will not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress.

USCIS MD 255-001

# EXHIBIT 7

MERIT SYSTEMS PROTECTION BOARD
CENTRAL REGIONAL OFFICES

| | | |
|---|---|---|
| RICHARD CORNELIUS JACKSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | MSPB No. CH-3330-23-0328-I-1 |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | June 8, 2023 |
| | ) | |
| Agency | ) | |
| | ) | ADMINISTRATIVE JUDGE |
| | ) | DANIEL R. FINE |

## AGENCY'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS" or "Agency"), by and through its undersigned designated representative, hereby submits in the above-captioned matter the Agency's Motion to dismiss and respectfully requests that the subject appeal be dismissed for lack of jurisdiction. In the alternative, if the Board finds that it has jurisdiction, the Agency respectfully requests that the Board issue summary judgment in favor of the Agency, as a matter of law. The Agency contacted the Appellant on June 6, 2023, to make inquiry under 5 C.F.R. § 1201.55(a). Appellant indicated his objection to this Motion.

The Merit Systems Protection Board ("MSPB" or "Board") should dismiss this appeal because it lacks jurisdiction pursuant to 5 U.S.C. § 3330a(a)(1)(A) since Appellant cannot show that the Agency violated his rights under a veterans' preference statute or regulation.

## STATEMENT OF FACTS

1. Appellant, Richard Jackson, is a 10-point service-disabled veteran. *See* SF50, Block 23, attached to Appellant's appeal.

2. Appellant is an Immigrations Services Officer ("ISO"), GS-12, step 4, with USCIS. *See* SF50, Blocks 15-19, attached to Appellant's appeal.

1

3. At issue in Appellant's appeal is a single vacancy with USCIS: ESC-2022-0044. Appellant applied to ESC-2022-0044 on or about September 23, 2022. On or about February 2023, Appellant was notified that he had not been selected for the subject position. *See* Appellant's appeal.

4. The vacancy announcement for ESC-2022-0044 put applicants on notice that the job was a merit promotion opportunity limited to current USCIS employees and CTAP eligibles. The vacancy announcement for ESC-2022-0044 stated that the job was open to "Internal to an agency," defined as "Current federal employees of this agency." The job announcement provided further detail on the applicants eligible to apply for ESC-2022-0044 with the statement, "Clarification from the agency: Current USCIS employees with competitive status and CTAP eligible." *See* page 2 of Job Announcement No. ESC-2022-0044, a true and accurate copy of which is attached hereto as Agency Exhibit A.

5. Appellant applied for ESC-2022-0044 as a current USCIS employee. *See* pages 3-4 of Jackson ESC-2022-0044 Application Documents, a true and accurate copy of which is attached hereto as Agency Exhibit B.

6. Appellant became aware that he was not selected under vacancy announcement ESC-2022-0044 on or about February 23, 2023. *See* Appellant's appeal.

7. Appellant filed a complaint with the United States Department of Labor ("USDOL") Veteran's Employment and Training Service ("VETS") regarding his non-selection under vacancy announcement ESC-2022-0044 on March 14, 2023. USDOL VETS closed Appellant's case on May 4, 2023. *See* Appellant's appeal.

8. Appellant filed the instant appeal to MSPB on May 19, 2023. He did not attach vacancy announcement ESC-2022-0044 to his appeal or otherwise disclose to the Board that vacancy announcement ESC-2022-0044 was a merit promotion opportunity restricted to current USCIS employees. *See* Appellant's Appeal.

## DISCUSSION

### A. The Board Lacks Jurisdiction over Appellant's Appeal

Appellant claims that his veteran's preference rights under the Veterans Employment Opportunities Act of 1998 ("VEOA") were violated when the Agency did not select him for the position advertised under vacancy announcement ESC-2022-0044, posted by USCIS. To sustain his claim, Appellant carries the burden of establishing that the Board has jurisdiction to hear his appeal. 5 C.F.R. § 1201.56(a)(2)(i); see also Holloman v. Dep't of Navy, 31 M.S.P.R. 107, 110 (1986). Mere speculative allegations are insufficient to satisfy the Board's non-

2

frivolous standard.  See Marcino v. U.S. Postal Serv., 344 F.3d 1199, 1204 (Fed. Cir. 2003) (non-frivolous allegations require "affidavits or other evidence" and cannot be supported by unsubstantiated speculation); Dorrall v. Dep't of the Army, 301 F.3d 1375, 1380-81 (Fed. Cir. 2002).

1. The Board Lacks Jurisdiction Under 5 U.S.C. § 3330a(a)(1)(A) Because Appellant Cannot Show that the Agency Violated His Rights Under a Veterans' Preference Statute or Regulation.

An appellant may establish VEOA Board jurisdiction under 5 U.S.C. § 3330a(a)(1)(A).  To do so, he must: (1) exhaust his DOL remedy; and (2) make non-frivolous allegations that (i) he is a preference eligible within the meaning of the VEOA, (ii) the actions at issue occurred on or after the October 30, 1998 enactment date of the VEOA, and (iii) the agency violated his rights under a statute or regulation related to veterans' preference.  Cruz v. Dep't of Homeland Security, 98 M.S.P.R. 492, 495 (2005).

There is no statute or regulation that requires veterans' preference to be given for vacancy announcements limited to internal agency hiring actions.  Further, the Board has specifically held that the VEOA is inapplicable to a preference eligible's non-selection for vacancy announcements  limited to internal candidates and where an agency does not conduct competitive examinations.  Brown v. Dep't of Veterans Affairs, 247 F.3d 1222, 1224 (Fed. Cir. 2001); Williamson v. U.S. Postal Serv., 106 M.S.P.R. 506 (Aug. 27, 2007); Joseph v. Federal Trade Comm'n, 103 M.S.P.R. 684, 687-888 (2006); Perkins v. United States Postal Serv., 100 M.S.P.R. 48, 51 (2005) ("an employee is not entitled to veterans' preference in the merit promotion process").

The vacancy announcement at issue in the Appeal placed applicants on specific notice that it was limited  to applicants "Internal to an agency" for "current USCIS employees," and CTAP eligibles.  Appellant applied in his capacity as a current USCIS employee, not as a veteran.  See Agency Exhibit B at pp. 3-4.

The Agency acted within its discretion to fill vacancy announcement ESC-2022-0044 by merit promotion procedures, which except veteran's preference.  See Perkins, 100 M.S.P.R. ¶ 9 (because the agency exercised it discretion to fill the vacancy under the merit promotion process, the ranking and selection rules that apply to the competitive-examination process, including veterans' preference, do not apply).

Even where Appellant made non-frivolous allegations that he is a veteran under the appropriate authority and that the action took place on or after December 10, 2004, he cannot non-frivolously allege that the Agency violated his rights under a statute or regulation related to veterans' preference.  Appellant cites to 5 U.S.C. §§3304(f)(1), 3312 and 3318 as statutes which the Appellant "surmises" the Agency has violated in making his claim under 5 U.S.C. § 3330a(a)(1)(A).  *See* Appellant's appeal.  This is mere speculation by Appellant and does not constitute a non-frivolous allegation sufficient to establish Board jurisdiction.  Marcino; Dorrall, *supra*.  Section 3304(f)(1) addresses competitive service examinations and states that preference eligible veterans may not be denied the opportunity to compete under merit promotion procedures *if* the agency is accepting applications from individuals outside its own workforce for a vacancy announcement issued as a merit promotion.  In fact, the full Board held on appeal that a current federal employee, such as the Appellant, is not entitled to recovery on a claim that he was denied an opportunity to compete under 5 U.S.C. §§3304(f)(1), *as a matter of law*.  Oram v. Dep't of the Navy, 2022 M.S.P.B. 30, 122 LRP 29285 (2022), *citing* Davis v. Dep't of Defense, 105 M.S.P.R. 604 (2007).  Section 3312 addresses physical qualifications for preference eligible veterans under a vacancy announcement issued under the competitive service examination and directs an agency to waive same.  Section 3318 similarly addresses competitive service examinations and outlines the rights of preference eligible veterans to receive preference in that process.  Not only has Appellant failed to make a non-frivolous allegation of how these statutes were violated by the Agency, review of the statutes cited by Appellant demonstrate the opposite: not one of these statutes address purely internal merit promotions processes, as is the case with vacancy announcement ESC-2022-0044, a merit promotion opportunity in which the Agency did not accept applicants outside of its own USCIS workforce and CTAP eligibles.

A VEOA claim is not viable if it is based on a merit promotion job vacancy or a violation of laws not related to veterans' preference, because the VEOA does not apply to such claims.  Haasz v. Dep't of Veterans Affairs, 108 M.S.P.R. 349 (2008).  Appellant cannot make his *prima facie* case of a VEOA violation under 5 U.S.C. § 3330a(a)(1)(A) because he cannot identify a statute or regulation that conferred him veteran's preference regarding merit promotion vacancy announcement ESC-2022-0044 and non-frivolously allege that the Agency violated such legal authority.

2.  <u>The Board Lacks Jurisdiction over the Claim that Appellant was Improperly Non-Selected under Vacancy Announcement ESC-2022-0044.</u>

Appellant cites the VEOA requirements regarding veterans' preference as support for his claim that under VEOA, "The Appellant is entitled to know the reason he was not selected for yet another position in which he was found to be Best Qualified, and if that non-selection comports with the law." *See* Appellant's appeal.  It is worth repeating: the instant case on appeal *does not* rest upon a competitive service examination process or a merit promotion procedure for a vacant position for which the Agency accepted applications from individuals outside its own workforce (with the exception of CTAP eligibles).  Further, even if that were the case, the VEOA simply does not ensure any such application will be successful.  <u>Abell v. Dep't of the Navy</u>, 343 F. 3d. 1378, 1383 (Fed. Cir. 2003); <u>Jones v. Dep't of Veterans Affairs</u>, 113 M.S.P.R. 385, 390 (2010).  A VEOA violation is not established where an agency arguably hired someone less qualified than the appellant.  <u>Gingery v. Dep't of the Army</u>, 111 LRP 52022 (MSPB 2011), *aff'd*, <u>Gingery v Merit Systems Protection Board</u>, 482 F.App'x 543 (Fed. Cir. 2012) (the VEOA prohibits an agency from denying a preference eligible applicant the opportunity to compete for a position, but it does not guarantee that the preference eligible applicant must be selected for the position).  VEOA does not authorize the Board to adjudicate the merits of a veteran's non-selection; instead, it authorizes the Board only to determine, in connection with the action appealed, whether the agency violated a statutory or regulatory provision relating to veterans' preference.  5 U.S.C. § 3330(a); <u>Ruffin v. Dep't of the Treas.</u>, 93 M.S.P.R. 369, 372 (2003), <u>vacated on other grounds</u>, 83 Fed. Appx. 324 (Fed. Cir. 2003).

Appellant was given the opportunity to both apply to and compete for the subject vacancy, in his capacity as a federal employee currently employed by USCIS.  Appellant's non-selection under ESC-2022-0044 does not present a viable claim under the VEOA.  His non-selection does not defeat the fact that he was given a full opportunity to compete in the merit selection process, and in no case can Appellant's demand that the Agency is bound to justify his non-selection under ESC-2022-0044 state a claim under the VEOA.  <u>Scharein v. Dep't. of the Army</u>, 91 M.S.P.R. 329, ¶¶ 9-10 (2002) (emphasizing that VEOA does not guarantee a preference eligible a position of employment).   Appellant has failed to establish that the Board has jurisdiction on these grounds.  Finally, to the extent that Appellant is raising discrimination claims in his appeal, the Board has repeatedly held that discrimination claims may not be raised before the Board in

5

conjunction with a VEOA claim.  *See* <u>Piirainen v. Dep't. of the Army</u>, 122 M.S.P.R. 194, ¶ 12 (2015).

        B.      *If the Board Finds Jurisdiction over Appellant's Claims, the VEOA*
               *Appeal Alternatively May Be Dismissed by Summary Judgment.*

       If the Administrative Judge should find that Appellant has established that the Board has jurisdiction over the above-captioned appeal, the Agency contends that the appeal may be dismissed at this stage of the proceedings without a hearing on summary judgment.  5 C.F.R. § 1208.23(b).  The Board has the authority to decide a VEOA appeal on the merits, without a hearing, where there is no genuine dispute of material fact and one party must prevail as a matter of law.  <u>Haasz v. Dep't of Veterans Affairs</u>, 108 M.S.P.R. 349 (2008); <u>Kirkendall v. Dep't of the Army</u>, 479 F.3d 830 (Fed. Cir. 2007), *cert. denied*, 128 S.Ct. 375 (2007).

       The applicable legal authorities do not require that a hearing be held on VEOA appeals. Disposing of a claim in favor of a defending party, without an evidentiary hearing, and based on matters beyond the appellant's allegations (the documentary evidence) is summary judgment, and not dismissal for failing to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); <u>Carter v. Stanton</u>, 405 U.S. 669, 671 (1972); <u>Colvin Cattle Co. v. United States</u>, 468 F.3d 803, 806 (Fed. Cir. 2006); <u>Amoco Oil Co. v. United States</u>, 234 F.3d 1374, 1376 (Fed. Cir. 2000); <u>Dunkin' Donuts of America v. Metallurgical Exoproducts Corp.</u>, 840 F.2d 917, 919 (Fed. Cir. 1988); <u>Sherwood v. Dep't of Veterans Affairs</u>, 88 M.S.P.R. 208, 212-23 (2001).

       It is undisputable that the vacancy announcement at issue was open only to USCIS internal candidates and CTAP eligibles, and that veteran's preference did not apply.   It is also undisputable that Appellant applied for the vacancy in his capacity as a current USCIS employee.  The Agency did not violate the Veterans Employment Opportunities Act of 1998; summary judgment on the above-captioned appeal should be entered in its favor.

## CONCLUSION

The Agency respectfully requests that the Administrative Judge dismiss the appeal for lack of Board jurisdiction, or in the alternative, grant summary judgment in favor of the Agency.

Respectfully submitted,

LYNN N DONLEY
Digitally signed by LYNN N DONLEY
Date: 2023.06.08 15:19:14 -05'00'

Lynn N. Donley

Associate Counsel

US Citizenship and Immigration Services
US Department of Homeland Security
Office of the Chief Counsel
Commercial and Administrative Law Division
312.833.3414 (iPhone)
Lynn.N.Donley@uscis.dhs.gov

7

# EXHIBIT 8

**1. Vacancy Information**

**Vacancy Announcement:** ESC-2022-0044
**Position Title:** IMMIGRATION SERVICES OFFICER
**Series:** 1801
**Grade:** 12
**Location(s):** Location Negotiable After Selection, US
**Veterans' Preference:** CPS VET

## 2. Personal Information

**Name:** RICHARD JACKSON
**Email:** rcjackson83@outlook.com
**Telephone 1:** Mobile -  3122856390

## 3. Veterans' Preference and Military Service

**Veterans' Preference:** 30% or more compensably disabled veteran.

## Military Service

> **1. Period of Service**
> **Entry Date:** 08/21/2001
> **Separation Date:** 07/14/2012

## 4. Eligibility Questions

### Resume page limit

1.I acknowledge the following conditions if I choose to submit my resume through the USAJOBS Resume Builder:

- I understand that resumes submitted through USAJOBS Resume Builder are converted to a PDF format when they are transmitted to U.S. Citizenship and Immigration Services (USCIS) from the USAJOBS applicant interface and additional spaces/page gaps are added to resumes during the Resume Builder conversion process;
- Based on the above conditions, I understand that USCIS strongly encourages me to save my resume to a **PDF** document and upload the **PDF** document instead of submitting my resume created through Resume Builder;
- I understand that USCIS' human resources will only review the first 5 pages of my resume to determine eligibility/qualifications for this position;
- By answering YES to this question, I am indicating that I have met this requirement for consideration.

(**Note:** Additional guidance regarding this requirement is available on the uscis.gov/Careers page.)

Answer: Yes

### Residency Requirement

2.There is a residency requirement for all applicants not currently employed by U.S. Citizenship and Immigration Services. This residency requirement states that candidates must have, for three of the last five years immediately prior to applying for this position(s); (1) resided in the United States; OR (2) worked for the United States Government as an employee overseas in a Federal or Military capacity; OR (3) been a dependent of a U.S. Federal or Military employee serving overseas. Do you meet one of these requirements?

Answer: The residency requirement does not apply to me because I am currently a U.S. Citizenship and Immigration Services employee.

### Veterans

3.Are you a Veteran?

Answer: Yes

3.1.Are you eligible under the **Veterans Employment Opportunity Act (VEOA)** because you meet **one** of the following criteria?

• Are a preference eligible
• Are a veteran separated from the armed forces after three or more years of continuous active service performed under honorable conditions.

Answer: Yes

3.2.Are you eligible under the **Veterans Recruitment Appointment (VRA)** authority because you were separated from active duty under honorable conditions and meet **one** of the following criteria?

• Are a disabled veteran
• Are a veteran who served on active duty in the Armed Forces during a war, or in a campaign or expedition for which a campaign badge has been authorized
• Are a veteran who, while serving on active duty in the Armed Forces, participated in a United States military operation for which an Armed Forces Service Medal was awarded
• Are a recently separated veteran (have been separated within the past three years)

Answer: Yes

**Note:** Veterans claiming eligibility on the basis of service in a campaign or expedition for which a medal was awarded must be in receipt of the campaign badge or medal.
**Note:** Individuals can only be appointed at the GS-11 level and below.
**Proof is required. You must submit the following documentation to support your claim:**

• DD-214 showing character of service
• If applying based on your preference as a disabled veteran, you must submit your letter from the Department of Veterans Affairs (VA) showing the combined service-connected disability rating, or other acceptable documentation.

See OPM's Vet Guide or SF-15 for more information.

**Current or former Federal Employee**

4.Are you a current **- or -** former Federal Employee?

Answer: Yes

## **Federal Non-Competitive Reinstatement (Fed NC Reinstate)**

4.1.Were you **formerly employed** as a **Federal employee** in the civilian service on a permanent appointment in the competitive service in a position with the same or higher promotion potential as this position and are eligible to be reinstated? (See block #34 on your SF-50 for your position type)

Answer: No

**Note:** If your position referenced above is not on the GS pay scale, your pay must be at or above the representative rate (step 04) of the full performance level of this position.

**Proof is required. You <u>must</u> submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
    - If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment. It is also recommended that you submit the SF-50 showing your separation.

## **Federal Reinstatement**

4.2.Were you **formerly employed** as a **Federal employee** in the civilian service on a permanent appointment in the competitive service and are eligible to be reinstated? (See block #34 on your SF-50 for your position type)

Answer: No

More information about the eligibility requirements for reinstatement can be found <u>here</u>.

**Proof is required. You <u>must</u> submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
  - If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment. It is also recommended that you submit the SF-50 showing your separation.

### Career Transition Assistance Plan (CTAP)

4.3. Are you eligible under the **Career Transition Assistance Plan (CTAP)** because you are a current DHS employee who has received an official notice stating that your position is no longer needed, or that you will be separated by reduction in force (RIF) and meet <u>**all**</u> of the following criteria?

- Occupy a position in the same local commuting area of the vacancy
- Occupy a position at or above the grade of the announced position and with no greater promotion potential
- Have a current performance rating of at least "fully successful" or equivalent

Answer: No

For more information about CTAP eligibility, visit <u>The Employee's Guide to Career Transition</u>.

**Proof is required. You <u>must</u> submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
  - If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment
- Documentation of your Reduction in Force (RIF) separation notice or a

proposed removal/separation notice
- Your latest performance rating of record

## **Interagency Career Transition Assistance Plan (ICTAP)**

4.4.Are you eligible under the **Interagency Career Transition Assistance Plan (ICTAP)** because you are a current or former Federal employee displaced from a position in a federal agency other than the agency hiring for this position and meet **all** of the following criteria?

- Occupy a position in the same local commuting area of the vacancy
- Occupy a position at or above the grade of the announced position and with no greater promotion potential
- Have a current performance rating of at least "fully successful" or equivalent

Answer: No

For more information about ICTAP eligibility, visit The Employee's Guide to Career Transition.
**Proof is required. You must submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
    - If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment
- Documentation of your Reduction in Force (RIF) separation notice or a proposed removal/separation notice
- Your latest performance rating of record

## **Current Federal Employee**

5.Are you a **current** Federal Employee?

Answer: Yes

**<u>Current Federal Employee</u>**
**Proof is required. You <u>must</u> submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
  - If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment

5.1.Are in a permanent position that is in the competitive service (see block #34 on your SF-50 for your position type)?

Answer: Yes

5.2.Are in an excepted service agency but can be hired into the competitive service because you meet the criteria of an Interchange Agreement. Additional information about current Interchange Agreements can be found <u>here</u>.

Answer: No

**<u>Federal Non-Competitive Employee</u>**

5.3.Have you held, or currently hold, a permanent position in the competitive service (see block #34 of your SF-50) with the same or higher promotion potential of the position being advertised?

Answer: Yes

**Note:** If your position referenced above is not on the GS pay scale, your pay must be at or above the representative rate (step 04) of the full performance level of this position.

5.4.Have you held, or currently hold a position with the same or higher promotion potential as this position in an excepted service agency but can be hired into the

competitive service because you meet the criteria of an **Interchange Agreement.** Additional information about current Interchange Agreements can be found <u>here</u>.

Answer: No

  **Note:** If your position referenced above is not on the GS pay scale, your pay must be at or above the representative rate (step 04) of the full performance level of this position.

### **Current Agency Employment**

5.5.Identify the bureau/agency you are currently employed?

Answer: U.S. Citizenship and Immigration Services (USCIS)

### **Non-Competitive/Special Appointing Authorities**

6.Are you interested in applying with eligibility under a non-competitive eligible or Schedule A disability appointment?

Answer: No

**5.Vacancy Questions**

**Grade 12 responses**

1.Which of the following statements best describes your experience?

Answer: I possess one (1) year of specialized experience equivalent to at least the GS-11 grade level in the Federal service performing work related to the duties of the position described in the vacancy announcement.

2.You must provide the position title(s) and dates of employment referenced in your resume that demonstrates the specialized experience described in the vacancy announcement that is related to your response.

Answer: Immigration Services Officer, October 31, 2016 - Present

3.This position has a time-in-grade (TIG) requirement to qualify at the **GS-12**. Have you completed 52 weeks in a position at or above the **GS-11** grade level or equivalent?

Answer: Yes. I have completed 52 weeks in a position at or above the GS-11 grade level or equivalent.

4.Select the activities you have completed to communicate with applicants and petitioners applying for immigration benefits.

Answer: I independently communicated highly technical immigration laws to customers seeking immigration benefits.
Answer: I developed Standard Operating Procedures on how to appropriately adjudicate applications and petitions for immigration benefits.
Answer: I followed-up with applicants and petitioners to ensure there were no new/remaining issues.

5.Select the resources you have used to complete research on an individual's eligibility for immigration benefits.

Answer: Immigration and Nationality Act
Answer: Violence Against Women Act (VAWA)
Answer: Case Precedents
Answer: Documentary Evidence
Answer: Law enforcement data bases and records
Answer: Agency's policy and procedures manual

6.Which activities have you performed pertaining to the prevention of immigration fraud?

Answer: Analyzed anti☐fraud and law enforcement check policies, procedures, and systems.
Answer: Accessed data systems to extract information pertinent to background check protocols.
Answer: Participated in inter-agency and/or intra-agency task forces to enhance U.S. national security and the integrity of the legal immigration system.
Answer: Detected red-flags pertaining to immigration fraud while reviewing case files.

7.Which statement best describes your highest level of experience processing immigration benefits?

Answer: I adjudicated and wrote final determinations on applicants seeking immigration benefits.

8.I applied prescribed anti-fraud measures in response to issues identified from trend analysis, tipoffs, leads, and regular case reviews.

Answer: True

9.Which statement best describes your highest level of experience responding to an issue or situation in which the resolution was not obvious?

Answer: I developed a recommended solution based on my research of the situation and guidelines and sought confirmation/approval from my supervisor before proceeding.

10.When guidance is ambiguous or not straight forward, which course of action do you take?

Answer: Research all available guidance and make an independent, logical decision.

11.Which statement best describes your highest level of experience using fact-finding methods and techniques to gather investigative information from various sources?

Answer: I have independently regularly used fact-finding methods and techniques to gather investigative information from various sources.

12. Which statement best describes your highest level of experience analyzing investigative reports?

Answer: I independently analyzed investigative reports by identifying the issues in the investigation and providing a written report detailing the issues.

**All grades responses**

1.

## Career Transition Assistance Plan (CTAP)

Do you wish to be considered under the **Career Transition Assistance Plan (CTAP)** because you are a current DHS employee who has received an official notice stating that your position is no longer needed, or that you will be separated by reduction in force (RIF) and meet **all** of the following criteria?

- Occupy a position in the same local commuting area of the vacancy, and
- Occupy a position at or above the grade of the announced position and with no greater promotion potential, and
- Have a current performance rating of at least "fully successful" or equivalent

For more information about CTAP eligibility, visit <u>The Employee's Guide to Career Transition</u>.

Answer: 2. No, I am not applying under CTAP.

2.

## Current USCIS Federal Employee

Do you wish to be considered as a **current** USCIS Federal Employee?

- U.S. Citizenship and Immigration Services (USCIS)

**Proof is required. You <u>must</u> submit the following documentation to support your claim:**

- Your SF-50 (Notification of Personnel Action), or equivalent, as stated in the job announcement. It is recommended that you submit your most recent SF-50 that shows your position occupied (block #34 of your SF-50); tenure; grade and step; salary; and, full performance level.
- If your position occupied is "2 - Excepted Service" (block #34 of your SF-50), it is recommended that you also include the initial SF-50, or other official Notification of Personnel Action, for that appointment.

Answer: 2. Yes, I wish to apply as a current USCIS Federal Employee as I have

held, or currently hold, a permanent position in the competitive service (see block #34 of your SF-50) with the same or higher promotion potential of the position being advertised. Note: If your position referenced above is not on the GS pay scale, your pay must be at or above the representative rate (step 04) of the full performance level of this position.

3.If you are a Federal employee, is your most recent performance rating equivalent to a "pass," "satisfactory," or better?

Answer: Yes

4.

Your ratings in this Occupational Questionnaire are subject to evaluation and verification based on the documents and references you submit. Later steps in the selection process are specifically designed to verify your ratings. Deliberate attempts to falsify information may be grounds for not selecting you or for dismissing you from the position/agency.

It is your responsibility to provide the responses, information, and documentation regarding your work history for us to determine your eligibility and qualifications for this position.

By agreeing to the statement below, you are confirming that you: 1) understand this warning, 2) have reviewed your responses to this questionnaire for accuracy, 3) verify that your responses accurately describe your current level of experience and capability, and 4) that you have provided all of the information and documentation needed for us to determine your eligibility and qualifications for this position.

Answer: Yes, I verify that all of my responses to this questionnaire are true and accurate and that I have provided the information and documentation needed for you to determine my eligibility and qualifications for this position. I accept that if my supporting documentation and/or later steps in the selection process do not support one or more of my responses to the questionnaire, my eligibility, and/or qualifications, that I may be removed from consideration.

**6.The following documents are requested for this vacancy.**

| Document Type | Description | Filename | Submission Type | Date Received (MM/DD/YYYY) |
|---|---|---|---|---|
| Additional Supporting Resume | No document Submitted | | | |
| Cover Letter | No document Submitted | | | |
| DD-214 | No document Submitted | | | |
| Disability Letter (VA) | Benefit Summary Letter | Benefit Summary Letter.pdf | USAJOBS | 09/23/2022 01:02:35 PM |
| Letters of Recommendation | No document Submitted | | | |
| Other | No document Submitted | | | |
| Other-2 | No document Submitted | | | |
| Other-3 | FY21 PPA | FY21 PPA.pdf | USAJOBS | 09/23/2022 01:03:30 PM |
| Other-4 | No document Submitted | | | |
| Other-5 | No document Submitted | | | |
| PCS Orders | No document Submitted | | | |
| Performance Appraisal | No document Submitted | | | |
| Professional Certification | No document Submitted | | | |
| Proof of Enrollment | No document Submitted | | | |
| Proof of Marriage Status | No document Submitted | | | |
| Separation Notice (RIF) | No document Submitted | | | |
| SF-15 | SF15 | SF15.pdf | USAJOBS | 09/23/2022 01:01:50 PM |
| SF-50 | 2022 SF50 | 2022 SF50.pdf | USAJOBS | 09/23/2022 01:03:51 PM |
| SF-50 (2) | No document Submitted | | | |
| SF-50 (3) | No document Submitted | | | |
| SF-50 (4) | No document Submitted | | | |
| SF-50 (5) | No document Submitted | | | |
| Statement of Service | No document Submitted | | | |
| Transcript | No document Submitted | | | |
| Transcript-2 | No document Submitted | | | |

| Transcript-3 | No document Submitted | | | |
|---|---|---|---|---|
| Transcript-4 | No document Submitted | | | |
| Transcript-5 | No document Submitted | | | |
| DD-214 (US Military Separation) | DD-214 | DD-214.pdf | USAJOBS | 01/21/2021 07:50:32 PM |
| Transcript | Transcript | Transcript.pdf | USAJOBS | 01/21/2021 07:52:20 PM |

**7.Resume**

Resume from USAJOBS: Resume

## 8.Vacancy Announcement

| | |
|---|---|
| Announcement Number: | ESC-2022-0044 |
| Position Title: | IMMIGRATION SERVICES OFFICER |
| Open Period (MM/DD/YYYY): | 09/23/2022 - 10/03/2022 |
| Series/Grade: | GS - 1801 11/12 |
| Salary: | USD $56,983 – USD $104,437 |
| Work Schedule: | Full-time - This announcement can be used to fill positions on any shift; shift differential may apply. |
| Promotion Potential: | GS-12 |
| Hiring Agency: | U.S. Citizenship and Immigration Services |
| Duty Locations: | Many Vacancies in Essex Junction, VT, US and Location Negotiable After Selection, US |
| Telework Eligible: | Yes |
| For More Info: | HROC Staffing Help Desk 952-697-8380 hrocstaffinghelpdesk@uscis.dhs.gov |
| Hiring Path: | • Internal to an agency (search) • Career transition (CTAP, ICTAP, RPL) |
| Who May Apply/Clarification From the Agency: | Current USCIS employees with competitive status and CTAP eligible. |
| Security Clearance Required: | Not Required |
| Appointment Type: | Permanent |
| Marketing Statement: | The Department of Homeland Security (DHS) is calling on those who want to help protect American interests and secure our Nation. DHS Components work collectively to prevent terrorism; secure borders and our transportation systems; protect the President and other dignitaries; enforce and administer immigration laws; safeguard cyberspace; and ensure resilience to disasters. We achieve these vital missions through a diverse workforce spanning hundreds of occupations. Make an impact; Join DHS.

U.S. Citizenship and Immigration Services (USCIS) is the government agency that oversees lawful immigration to the United States. We |

| | |
|---|---|
| | uphold America's promise as a nation of welcome and possibility with fairness, integrity, and respect for all we serve. Visit uscis.gov/careers for more information. |
| Job Summary: | This position is located in **SERVICE CENTER OPERATIONS DIRECTORATE, VERMONT SERVICE CENTER.**<br><br>As an **IMMIGRATION SERVICES OFFICER** you will grant or deny complex and highly sensitive applications and petitions for immigration benefits and assist with fraud detection and/or other federal agencies in identifying individuals who pose a threat to national security and public safety. |
| Supervisory Position: | No |
| Relocation Expenses Reimbursed: | No |
| Travel Required: | Occasional Travel<br>You may be required to travel for this position. |
| Responsibilities: | • The responsibilities described are for the full performance level. At developmental grade levels, assignments will be of more limited scope performed with less independence, and limited complexity.<br>• Plans and conducts independent research concerning the eligibility and entitlement of persons seeking benefits, employment, and/or legal status under the Immigration and Nationality Act as amended.<br>• Adjudicate applications and petitions for benefits under the Immigration and Nationality Act.<br>• Conducts preliminary fact-finding and initiates further action where information indicates fraud has been detected.<br>• Independently researches, interprets, and analyzes an extensive spectrum of sources including pertinent sections of the law and regulations.<br>• Grants or denies complex applications and petitions for |

| | |
|---|---|
| | immigration benefits based on electronic or paper applications/petitions. |
| Requirements: | The qualifications for this position must be met by 11:59 PM (Eastern Time) on the closing date of this announcement. Current Federal employees must have served 52 weeks at the lower grade or equivalent grade band in the Federal service. The Time-in-Grade requirement must be met by 11:59 PM (Eastern Time) on the closing date of this announcement. This position is in the bargaining unit. This position is not considered "essential" for purposes of reporting to work when the facility might otherwise be closed. Residency Requirement : There is a residency requirement for all applicants not currently employed by U.S. Citizenship and Immigration Services. This residency requirement states that candidates must have, for three of the last five years immediately prior to applying for this position; (1) resided in the United States; OR (2) worked for the United States Government as an employee overseas in a Federal or Military capacity, OR (3) been a dependent of a U.S. Federal or Military employee serving overseas. Background Investigation: To ensure the accomplishment of our mission, DHS requires every employee to be reliable and trustworthy. To meet those standards, all selected applicants must undergo and successfully pass a background investigation. This may include a review of financial issues such as delinquency in the payment of debts, child support and/or tax obligations, as well as certain criminal offenses and illegal use or possession of drugs. The background investigation process is initiated after a selection is made. For more information visit the OPM Mythbuster Page . If a SECRET or TOP SECRET clearance is needed or the position is designated a Sensitive National Security position, all selected candidates must meet the requirements for these clearances or Sensitive National Security position |

| | prior to placement AND maintain that level of clearance or national security eligibility while encumbering the position. Probationary Period: You may be required to serve a probationary period of 1 year. |
|---|---|
| Key Requirements | • You must be a U.S. Citizen or U.S. National to apply for this position<br>• Successfully pass a Background Investigation including financial disclosure<br>• You must pass a drug screening<br>• You must submit resume and supporting documentation<br>• Males born after 12/31/1959 must be registered with the Selective Service<br>• Political appointees may require OPM approval before on-boarding |
| Education Requirements: | **COMBINING QUALIFYING EXPERIENCE AND EDUCATION:** If you do not qualify based on experience or education alone, you may be able to qualify based on a combination of your experience and education. For more information on combining education and experience, visit the following website: <u>General Schedule Qualification Standards</u>.<br><br>**Transcript required:** If you don't submit a transcript, we will not use your education when deciding if you're qualified for the job. For verification purposes, the transcript submitted must include your name and educational institution. |
| Evaluations: | You will be evaluated for this position based upon information reflected in your resume. Your resume must support your responses to the job specific assessment questionnaire, level of education claimed, experience, and/or training. To remain in consideration for this position, please ensure your resume covers this requirement and that your resume has been successfully submitted as part of your on-line application package. |

Creation of this package includes completing the on-line assessment(s), uploading your resume, and uploading any required supporting documents. (See the "How To Apply" section of this announcement.)

**NOTE:** Your resume and supporting documentation will be verified. If you rated yourself higher than what is supported by your application material, you may be excluded from consideration for this job. Please follow all instructions carefully. Errors or omissions may affect your rating or consideration for employment.

If you are found best qualified, you may be referred to the hiring manager for consideration and may be called for an interview.

**<u>Agency Career Transition Assistance Program (CTAP) Eligible:</u>** If you have never worked for the federal government, you are not CTAP eligible. View information about <u>CTAP eligibility</u> on OPM's Career Transition Resources website. To be considered well qualified under CTAP, you must be placed in the Well-Qualified category for this position, as described above. In addition, you must submit the supporting documents listed under the required documents section of this job announcement.

**Note**: Applicants who are referred to the hiring office for selection consideration may be required to complete a writing sample and/or other writing exercise as part of the interview/selection process. If the hiring office decides to request a writing sample and/or other writing exercise as part of its selection process, a designated contractor or Agency representative will contact you to: (1) inform you of this requirement; and (2) provide further instructions.

**Conditions of Employment**

| | |
|---|---|
| | **Reminder:** If you fail to meet the conditions of employment or any other pre-employment requirements, such as missing any of the scheduled appointments, the hiring agency may rescind their tentative offer of employment.<br><br>To ensure compliance with an applicable preliminary nationwide injunction, which may be supplemented, modified, or vacated, depending on the course of ongoing litigation, the Federal Government will take no action to implement or enforce the COVID-19 vaccination requirement pursuant to Executive Order 14043 on Requiring Coronavirus Disease 2019 Vaccination for Federal Employees. Therefore, to the extent a Federal job announcement includes the requirement that applicants must be fully vaccinated against COVID-19 pursuant to E.O. 14043, that requirement does not currently apply. Federal agencies may request information regarding the vaccination status of selected applicants for the purposes of implementing other workplace safety protocols, such as protocols related to masking, physical distancing, testing, travel, and quarantine.<br><br>Guidance from the Task Force is available at: Protecting the Federal Workforce. |
| Qualifications: | **Training Requirements:** If you have not already done so, you will be required to attend a 6 week residential USCIS Officer training course. This technical training must be successfully completed according to the standards of the agency. Failure to do so will be grounds for mandatory removal from the position. Such failure will result in either reassignment to a different position, demotion, or separation by appropriate procedures. * This course may require travel to a USCIS training |

facility based on your duty station location.

**GS-11:** You qualify at the GS-11 level if you possess one (1) year of specialized experience, which is equivalent to at least the GS-09 level in the federal government, that equipped you with the skills needed to successfully perform the duties of the position. You must have experience performing the following duties:

- Making final determinations on non-sensitive, routine immigration matters related to the Immigration and Nationality Act, or representing applicants on non-sensitive, routine hearing or appeal requests involving immigration matters, that included determining applicant credibility, analyzing evidence, and applying statutory requirements, regulations, judicial and administrative precedents.
- Researching and writing well-organized, complex legal decisions consistent with adjudicative standards and legislation.
- Making final adjudication determinations on complex applications and petitions for immigration benefits.
- Deciding on motions to reopen or reconsider cases.
- Conducting quality assurance reviews of work completed during the adjudication process to ensure productivity, efficiency, and integrity.

**OR**

- You may substitute a doctoral degree (PhD or equivalent degree) or three full years of progressively higher-level graduate education leading to such a degree in any field, or L.L.M. if related for experience at

the GS-11 grade level or such education must have been obtained in an accredited college or university and demonstrate the knowledge, skills, and abilities necessary to do the work of this position. Check with your school to determine how many credit hours comprise three years of graduate study. If that information is not available, use 54 semester or 81 quarter hours.

**GS-12:** In addition to the requirements at the lower grade level(s), to qualify at the GS-12 level if you possess one (1) year of specialized experience, which is equivalent to at least the GS-11 level in the federal government, that equipped you with the skills needed to successfully perform the duties of the position. You must have experience performing the following duties:

- Independently analyzing immigration laws, policies, and precedent decisions;
- Analyzing information and documents to determine credibility and eligibility for immigration benefits.
- Raising new or novel issues for further clarification.
- Making final determinations on sensitive, complex immigration cases involving eligibility for citizenship and immigration benefits, or preparing legal briefs or other written memoranda that advocate for a determination in complex hearing or appeal cases;
- Writing final determinations with legal analysis to support decisions;
- Researching and analyzing laws and regulations independently to determine the eligibility and entitlement of immigration benefits.
- Reviewing the adjudication process to ensure it is performed correctly and actively analyze

process improvement to enhance the efficiency.
- Resolving technical, complex and sensitive adjudicative issues of a problem or highly visible nature.

**The assessment for this job will measure the following competencies:**

- Technical Competence
- Decisiveness
- Analytical Skills

**Please read the following important information to ensure you submit everything we need to consider your application:** It is your responsibility to ensure that you submit your responses and appropriate documentation prior to the closing date. Your resume will be used to determine your qualifications for the position advertised in this announcement. Therefore, your resume must highlight your most relevant, significant experience related to the requirements found in the qualification section of this announcement, as well as any applicable education. **USCIS will only review the first 5 pages of your resume to determine your initial eligibility/qualifications for a position. As such, please be sure to include content to support your eligibility/qualifications for this position within the first 5 pages. Please note that your full resume will be made available to the hiring manager if you are referred.** Be clear and specific when describing your work history since Human Resources cannot make assumptions regarding your experience. Your application will be rated and ranked based on your responses to the online questions.

**Please ensure EACH work history includes ALL of the following information:**

- Job Title (include series and

grade if Federal Job)
- Duties (be specific in describing your duties)
- Employer's name and address
- Supervisor name and phone number
- Start and end dates including month, day and year (e.g. June 18 2007 to April 05 2008)
- Start and end dates for each grade/pay level if you've held a federal position.
- Full-time or part-time status (include hours worked per week)
- Salary

**Determining length of General or Specialized Experience is dependent on the above information and failure to provide the above information may result in a finding of ineligible.**

**Note:** Overstating your qualifications and/or experience in your application materials or application questionnaire may result in your removal from consideration.

<u>**Federal Experience:**</u> If you are using current or prior federal experience as a basis for qualifying for this position, the grade levels and length of employment (mm/dd/year) at each grade level must be listed in your work history. This information will be further validated if selected for this position.

**The Office of Personnel Management (OPM) must authorize employment offers made to current or former political appointees. If you are currently, or have been within the last 5 years, a political Schedule A, Schedule C, Non-career SES or Presidential Appointee employee in the Executive Branch, you must disclose this information to the Human Resources Office**

<u>**National Service Experience (i.e., volunteer experience):**</u> Experience refers to paid and unpaid experience,

| | |
|---|---|
| | including volunteer work done through National Service programs (e.g., Peace Corps, AmeriCorps) and other organizations (e.g., professional; philanthropic; religious; spiritual; community, student, social). Volunteer work helps build criteria competencies, knowledge, and skills and can provide valuable training and experience that translates directly to paid employment. You will receive credit for all qualifying experience, including volunteer service. Please provide the dates and amount of time/hours worked earning this experience. |
| How to Apply: | **Please read the entire announcement and all instructions before you begin an application.**<br><br>To apply for this position, you must complete the initial online application, to include submission of the documentation specified in the Required Documents section above. The complete application package must be submitted by 11:59 PM (ET) on the closing date of the announcement to receive consideration. The application process is as follows:<br><br>1. To begin the application process, click the Apply Online<br>2. Answer the questions presented in the application and attach all necessary supporting documentation.<br>3. Click the Submit Application button prior to 11:59 PM (ET) on the announcement closing date.<br><br>To update your application, excluding External Assessment responses, at any time during the announcement open period, return to your USAJOBS account. There you will find a record of your application, the application status, and an option to Update Application. This option will no longer be available once the announcement has closed. |

| | |
|---|---|
| | To verify the status of your application both during and after the announcement open period, log into your USAJOBS account (https://my.usajobs.gov/Account/Login). All of your applications will appear on the Welcome page. The application record in your USAJOBS account provides the Announcement Status and a "You applied on" date. This information does not confirm the agency application status. Use the "Track this Application" link for additional information regarding the agency application status, the documentation you submitted and any correspondence we have sent related to this application. The Announcement Status will appear along with the date your application was last updated. For information on what each Announcement Status means, visit: https://www.usajobs.gov/Help/how-to/application/status/. <br><br> We strongly encourage you to apply online. If you cannot apply online, you must contact the Human Resource Office listed below at least one business day prior to the closing date for instructions. Applications will not be accepted by mail. |
| Required Documents: | **Resume:** You must submit a resume that clearly demonstrates you have experience that meets the requirements of this position as outlined in the "Qualifications" section. USCIS' Human Resources Office will only review the first 5 pages of your resume to determine your eligibility/qualifications. <br><br> In order to ensure that you include all necessary information within the first 5 pages of your resume, you are highly encouraged to save and submit your resume as a PDF instead of submitting it through Resume Builder or a word- |

processing program such as Word or Google Docs.

Your responses to the job questionnaire, which are submitted through the on-line application process in USAJOBS, DO NOT need to be attached as an additional document to your application.

**Are you qualifying based on education?** Submit a copy of your college transcript (unofficial is acceptable) from an accredited institution. Once selected and prior to appointment, applicants must provide an official college transcript. Education completed in foreign colleges or universities may be used to meet Federal qualification requirements if you can show that your foreign education is comparable to education received in accredited educational institutions in the United States. For example, specific courses accepted for college-level credit by an accredited U.S. college or university, or foreign education evaluated by an organization recognized for accreditation by the Department of Education as education equivalent to that gained in an accredited U.S. college or university. It is your responsibility to provide such evidence with your application. See Recognition of Foreign Qualifications for more information.

**Are you a veteran?** You must provide acceptable documentation of your preference or appointment eligibility. The member 4 copy of your DD214, "Certificate of Release or Discharge from Active Duty," is preferable. If claiming 10 point preference, you will need to submit a Standard Form (SF-15), "Application for 10-point Veterans' Preference." If applying based on eligibility under the Veterans Opportunity to Work (VOW) Act, you must submit certification from the Armed Forces that you will be discharged or released from active

duty within 120 days from the date on the certification. This must indicate your dates of service, your rank, and confirm that you will be separated under honorable conditions. View more veterans' information.

**Are you a current or former Federal employee?** Submit a copy of your official SF-50 (no text version) or other official "Notification of Personnel Action" document that shows the following information:

- your appointment in the competitive service
- tenure
- grade and step
- full performance level

If your SF-50(s) does not provide the information needed to make a final determination for qualification, you will be found ineligible for the position. SF-50B print screens from NFC are not official documents and are not acceptable. This includes USCIS employees as well. All current DHS employees can print their own SF-50's by accessing the DHS eOPF website. If you have forgotten your user name or password, eOPF offers a self-service feature to assist you.

If you are a current CIS employee and need access information to eOPF, contact USCIS.EOPF@uscis.dhs.gov. For all other agencies please see your servicing Human Resources Office.

**You may be asked to provide a copy of your recent performance appraisal and or incentive awards.** If you are a Federal employee and have received a current performance rating, it is strongly encouraged that a copy accompanies your application submission. Doing so allows the selecting official access to all information surrounding your potential to fulfill the duties and responsibilities commensurate of the position being

|  | considered for. Failure to provide may impede the selecting official's understanding of the qualifications and experience that you possess.<br><br>**Are you claiming special priority selection rights under the Agency Career Transition Assistance Program (CTAP) or the Interagency Career Transition Assistance Program (ICTAP)?** Submit:<br><br>• a copy of your agency notice,<br>• a copy of your most recent performance rating, and<br>• a copy of your most recent SF-50, Notification of Personnel Action, noting your current position, grade level, and duty location.<br><br>**Are you a current or former political Schedule A, Schedule C, Non-career SES or Presidential Appointee employee?** Submit a copy of your applicable SF-50, along with a statement that provides the following information regarding your most recent appointment:<br><br>• Position title<br>• Type of appointment (Schedule A, Schedule C, Non-career SES, or Presidential Appointee)<br>• Agency<br>• Beginning and ending dates of appointment |
| Next Step: | Once you submit your application, we will assess your experience and training, identify the best qualified applicants, and refer those applications to the selecting official for further consideration and a possible interview. Your status will be updated on USAJOBS throughout the process. To check your status, log on to your USAJOBS account, click on "Track this Application." We expect to make a final job offer within 90 days after the deadline for applications. If you are |

| | |
|---|---|
| | selected, we will conduct a suitability/security background investigation.<br><br>**Telework**: USCIS provides voluntary telework opportunities for eligible employees serving in positions conducive to working at an alternate work site in accordance with agency policy. Please Note: You may be required to telework from your personal residence or another location due to the needs of an office or an emergency situation such as severe weather, natural or manmade disasters or for public health, safety or emergency preparedness measures.<br><br>USCIS may fill one or more positions using this vacancy.<br><br>Additional information pertaining to your interest and availability for this position may be needed after the closing date of the job opportunity announcement; therefore, a timely response to these requests must be adhered to in order to remain in consideration.<br><br>USCIS may fill one or more positions using this vacancy.<br><br>Additional information pertaining to your interest and availability for this position may be needed after the closing date of the job opportunity announcement; therefore, a timely response to these requests must be adhered to in order to remain in consideration. |
| Benefits URL: | https://www.dhs.gov/homeland-security-careers/benefits |
| Agency Benefits: | DHS offers competitive salaries and an attractive benefits package, including: health, dental, vision, life, and long-term care insurance; retirement plan; Thrift Savings Plan [similar to a 401(k)]; Flexible Spending Account; Employee Assistance Program; personal leave days; and paid federal holidays. Other benefits may include: flexible work |

<table>
<tr>
<td></td>
<td>schedules; telework; tuition reimbursement; transportation subsidies; uniform allowance; health and wellness programs; and fitness centers. DHS is committed to employee development and offers a variety of employee training and developmental opportunities. For more information, go to the DHS Careers website and select "Benefits." Disabled veteran leave will be available to any Federal employee hired on or after November 5, 2016, who is a veteran with a service-connected disability rating of 30 percent or more.</td>
</tr>
<tr>
<td>Other Information:</td>
<td>

**Multiple / Location Negotiable:** The actual salary will be set based on the grade, step, and location of the selectee(s) and/or position. You may be expected to report for work at a local USCIS facility based on the needs of the hiring office. View the 2022 Locality Pay Charts for more information. This position may allow for remote work.

Adjudication of humanitarian benefits may include victim related content that may entail graphic evidence contained in some humanitarian form type files describing and/or depicting abuse, trafficking, or victimization of individuals.

**Special Employment Consideration:** The Department of Homeland Security encourages persons with disabilities to apply, to include persons with intellectual, severe physical or psychiatric disabilities, as defined by 5 CFR § 213.3102(u), and/or Disabled Veterans with a compensable service-connected disability of 30 percent or more as defined by 5 CFR § 315.707. Veterans, Peace Corps, VISTA volunteers, and persons with disabilities possess a wealth of unique talents, experiences, and competencies that can be invaluable to the DHS mission. If you are a member of one of these groups, you may not have to compete with the

</td>
</tr>
</table>

public for federal jobs. To determine your eligibility for non-competitive appointment and to understand the required documentation, click on the links above or contact the Servicing Human Resources Office listed at the bottom of this announcement.

**Any offers of employment made pursuant to this announcement will be consistent with all applicable authorities, including Presidential Memoranda, Executive Orders, interpretive U.S. Office of Personnel Management guidance and U.S. Office of Management and Budget plans and policies concerning hiring. These authorities are subject to change.**

<u>Additional Information:</u>

USCIS uses E-Verify, an Internet-based system, to confirm the eligibility of all newly hired employees to work in the United States. Learn more about <u>E-Verify</u>, including your rights and responsibilities.

If you receive a conditional offer of employment for this position, you will be required to complete an <u>Optional Form 306, Declaration for Federal Employment</u>, and to sign and certify the accuracy of all information in your application, prior to entry on duty. False statements on any part of the application may result in withdrawal of offer of employment, dismissal after beginning work, fine, or imprisonment.

It is our responsibility to eliminate any risks to national security, public health, and public safety that could be posed by individuals who use illegal drugs. This position may be subject to random testing as a condition of employment. A positive drug test or refusal to be tested will result in disciplinary action, up to and including removal from Federal service.

| | |
|---|---|
| | **Note**: If you previously retired from the Federal service and are receiving an annuity, your salary may be offset by the amount of your annuity.<br><br>**Applying to this announcement certifies that you give permission for DHS to share your application with others in DHS for similar positions.**<br><br>Common definitions for hiring terms found in this announcement. |

**9.Demographic Information**

1. Sex:

Answer: Male

2. Ethnicity:

Answer: Not Hispanic or Latino

3. Race:

Answer: Black or African American - a person having origins in any of the black racial groups of Africa.

4. A. Do you have any of the following?

Answer: No answer

# EXHIBIT 9



# Charge Against a Labor Organization

## eFiling No. eOGC014752

Case No: CH-CO-23-0410

Revision: REV-11-18-2018

## Filing Party

**Filing Representative Email Address**

rcjackson83@outlook.com

| | |
|---|---|
| **First Name** | **Last Name** |
| Richard | Jackson |
| **Street Address** | **Street Address 2** |
| 101 W. Ida B. Wells Drive | Empty |
| **City** | **State** |
| Chicago | IL |
| **ZIP Code** | |
| 60605 | |
| **Title** | **Organization** |
| Immigration Services Officer | USCIS |
| **Phone** | |
| 3122856390 | |

## Charged Labor Organization Information

**Search or write-in Charged Labor Organization information?**

Write-in

| **Name of Charged Labor Organization** | **Activity Name of Charged Labor Organization** |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE) | NATIONAL CITIZENSHIP AND IMMIGRATION SERVICES COUNCIL (NCISC) - 119 |

| City of Charged Labor Organization | State of Charged Labor Organization |
|---|---|
| Lincoln | NE |

# Charged Labor Organization Representative Information

### Email Address
rdhotopp3928@yahoo.com

| First Name | Last Name | Title |
|---|---|---|
| Ruark | Hotopp | NATIONAL PRESIDENT, CITIZENSHIP AND IMMIGRATION SERVICES COUNCIL (NCISC) - 119 |

| Street Address | Street Address 2 |
|---|---|
| Nebraska Service Center | USCIS PO BOX 82521 |

| City | State | ZIP Code |
|---|---|---|
| Lincoln | NE | 68501-2521 |

| Phone | Fax |
|---|---|
| 402-560-1806 | Empty |

# Charging Party Information

**Search or write-in Charging Party information?**

Write-in

### Name of Charging Party Organization or Individual
NA

| Party Type of Charging Party Organization or Individual | Activity Name of Charging Party Organization or Individual |
|---|---|
| Individual | NA |

| City of Charging Party Organization or Individual | State of Charging Party Organization or Individual |
|---|---|
| Chicago | IL |

# Charging Party Representative Information

### Email Address
rcjackson83@outlook.com

| First Name | Last Name | Title |
|---|---|---|
| Richard | Jackson | Immigration Services Officer |

| Street Address | Street Address 2 |
|---|---|
| 1023 25th Ave | Empty |

| City | State | | ZIP Code |
| --- | --- | --- | --- |
| Bellwood | IL | | 60104 |
| **Phone** | | **Fax** | |
| (312)285-6390 | | Empty | |

# Basis of the Charge

**OGC Regional Office**

OGC-CH - Chicago Regional Office

**Set forth a clear and concise statement of the facts constituting the alleged unfair labor practice, including date and location of the particular acts:**

Pro Se Grievant, Richard C. Jackson (Grievant), hereby submits in the above-captioned matter, this filing seeking redress from the Federal Labor Relations Authority (FLRA) against the American Federation of Government Employees (AFGE), National Citizenship and Immigration Services Council (NCISC) – 119 (hereinafter "Union"), due to negligence. AFGE, NCISC – 119, is the "exclusive representative" of agency United States Citizenship and Immigration Services (USCIS) pursuant to 5 U.S.C. § 7114(a)(1). The Grievant alleges the Union has violated 5 U.S.C. § 7116(b)(2) of the Statute, in that it has caused USCIS to discriminate against him for his protected activity. The Union has failed in its obligation as the exclusive representative to ensure there is an elected local President. This failure and utter negligence of the Union, emboldened USCIS to unabashedly violate the rights of the Grievant by retaliating against him for his protected activity. The most prominent example is when on April 30, 2023, a grievance (Attachment A, at 10) was filed pursuant to Article 12(h)(2)(A) of the 2022 Collective Bargaining Agreement (CBA) (Attachment B). At the time of the grievance submission, the Grievant reasonably believed that the local Union President was an Officer from Immigration and Customs Enforcement, named Mayra REYNOSO, who was copied on the grievance (but did not respond). The Grievant would later be threatened with a retaliatory 5-day suspension as a result of his grievance (Attachment A, at 15). The Grievant was unsure why the Local Union President did not intervene on his behalf. As a result, he began researching and discovered the Local Union President no longer shared the same Union (Attachment C). The Grievant was forced to draft his own legally sufficient rebuttal to the retaliatory 5-day suspension proposal. The Grievant prays that the FLRA determines that the Union should be held liable for its negligent representation, because it caused USCIS to discriminate against him in violation of 5 U.S.C. § 7116(b)(2) of the Statute. The Grievant also prays that the Union be forced to execute its duties and obligations in accordance with 5 U.S.C. § 7114, by ensuring there is an elected Local President for USCIS Chicago Employees henceforth.

# Attachments

Please attach any available supporting documents.

**Description**
Attachment A
**Attachment**
[Response to Agency 5-day Suspension Proposal.pdf](#)

**Description**
Attachment B
**Attachment**
[2022 Collective Bargaining Agreement.pdf](#)

**Description**
Attachment C
**Attachment**
[AFGE Will Split from Its ICE Union Over Ideological Divide - Workforce - Government Executive.pdf](#)

**Which subsection(s) of 5 U.S.C. § 7116(b) and/or (c) do you believe the Labor Organization has violated?**
☑ 7116(b)(2)

**Have you or anyone else raised this matter in any other procedure?**
No

# Declaration

☑ **I declare that I have read this charge and that the statements in it are true to the best of my knowledge and belief. I understand that making willfully false statements can be punished by fine and imprisonment, 18 U.S.C. 1001.**

**Your Name (this will act as your signature)**          **Date**

Richard C. Jackson                                           06/12/2023

You are required to serve your charge on the Charged Party in accordance with 5 C.F.R. § 2423.6(d). **The filing of a document using the FLRA's eFiling System does _not_ constitute service of the document on any party. The filing party must independently accomplish service by one of the following methods.**

This charge was served on the Charged Party Representative identified above by the following method(s):

**Serving Method(s)**

☑ Commercial delivery

> **If commercial delivery, please specify type, e.g., FedEx, UPS, etc.**
> FedEx

REV-11-18-2018

Filed: 06/12/2023 12:09 PM EDT

# Certificate Of Service

e-Appeal has handled service of the assembled pleading to MSPB and all of the Parties.
Following is the list of the Parties in the case:

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Central Regional Office | Appellant's Jurisdictional Brief | e-Appeal / e-Mail |
| Lynn Donley<br>Agency Representative | Appellant's Jurisdictional Brief | e-Appeal / e-Mail |

Richard Cornelius Jackson v. Department of Homeland Security

Docket # CH-1221-24-0117-W-1

Response to 02 23 2024 Order to the Appellant

Summary Page

Case Title :       Richard Cornelius Jackson v. Department of Homeland

Docket Number :       CH-1221-24-0117-W-1

Pleading Title :       Response to 02 23 2024 Order to the Appellant

Filer's Name :       Richard Jackson

Filer's Pleading Role :       Appellant

Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|

Richard Cornelius Jackson v. Department of Homeland Security

Docket # CH-1221-24-0117-W-1

Response to 02 23 2024 Order to the Appellant

Table of Contents

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Interview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Body . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

Richard Cornelius Jackson v. Department of Homeland

Docket # CH-1221-24-0117-W-1

Response to 02 23 2024 Order to the Appellant

Online Interview

1. What is the title of the MSPB notice or order to which you are responding?

Order to the Appellant

2. What is the date of that notice or order?

02/15/2024

3. Does your pleading assert facts that you know from your personal knowledge?

Yes

4. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

UNITED STATES OF AMERICA
**MERIT SYSTEMS PROTECTION BOARD**
**CENTRAL REGIONAL OFFICE**

RICHARD CORNELIUS JACKSON,            DOCKET NUMBER
Appellant,                                              CH-1221-24-0117-W-1

v.

DEPARTMENT OF HOMELAND                    DATE: February 22, 2024
SECURITY,                                    ADMINISTRATIVE JUDGE
Agency.                                              DANIEL R. FINE

**STATEMENT DEMONSTRATING**

**MERIT SYSTEMS PROTECTION BOARD JURISDICTION**

**INTRODUCTION**

Pro Se Appellant, RICHARD CORNELIUS JACKSON, hereby submits in the above-captioned matter, the Appellant's statement demonstrating that the Merit Systems Protection Board ("MSPB" or "Board") has jurisdiction over this Individual Right of Action (IRA) Appeal.

The Administrative Judge (AJ) has denied the Appellant's motion to join this Appeal with his other IRA Appeal filed under MSPB Case No. CH-1221-23-0376-W-1[1] (the 0376 Appeal). The Appellant argued in his Motion for Joinder that he had already successfully met his jurisdictional burden[2]. *See* Initial Appeal File (IAF), Tab 7. The Appellant did not submit an additional jurisdiction brief because after analyzing the Board's case law, he reasonably believed since he has filed more than one complaint with OSC in support of an overall claim of reprisal for whistleblowing activity, the AJ should not take a piecemeal approach by adjudicating

---

[1] That Appeal was filed in June 2023. The Board, for unknown reasons, ceased processing of the Appeal after the Appellant filed a Motion to Certify Issue for Interlocutory Appeal, which sought disqualification of the AJ. For nearly 120 days, the motion remained pending until the AJ denied it.
[2] The Board has not ruled on jurisdiction for 8 months in the 0376 Appeal.

separate, but related, personnel actions in separate appeals. *McCarthy v. Int'l Boundary and Water Comm'n*, 116 MSPR 594 (2011).

Considering the Appellant does not enjoy the Agency's demonstrated option to ignore Board regulations and orders from the AJ – Appellant submits this brief as ordered. This brief will largely duplicate the jurisdiction arguments in the 0376 Appeal.

In order to determine the merits of an IRA appeal, the Board must examine whether the Appellant established by preponderant evidence each of the jurisdictional requirements; if he did, it must order corrective action unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of his protected activity. *Powers v. Dept. of Navy,* 97 MSPR 554 (2004).

Of note, prior to the enactment of the Whistleblower Protection Enhancement Act of 2012 (WPEA), an appellant could only file an IRA appeal with the Board based on allegations of whistleblower reprisal under section 2302(b)(8). *Wooten*, 54 M.S.P.R. at 146. Following the WPEA's enactment, however, an appellant also may file an IRA appeal with the Board concerning alleged reprisal based on certain other classes of protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). *See* 5 U.S.C. § 1221(a); *Hooker*, 120 M.S.P.R. 629, ¶ 9.

The Appellant will delineate below why the Board has jurisdiction over this IRA Appeal. Specifically, the Appellant will detail his: 1) protected disclosures or activities; 2) the dates he made the disclosures or engaged in the activities; 3) the individual(s) to whom he made any disclosures; 4) why his belief in the truth of any disclosures was reasonable; 5) the actions the Agency took or failed to take, or threatened to take or fail to take, against him because of his disclosures or activities; 6) why he believes the disclosures or activities, or a perception of such a disclosures or activities, was a contributing factor to the actions; and 7) the dates of his complaints to the U.S. Office of Special Counsel (OSC)[3], the matters he raised in it and any amendments, and the date that OSC notified him it was terminating its investigation of his complaint.

---

[3] *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62 (clarifying that, under 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OSC is protected, regardless of the content).

## APPELLANT'S PROTECTED ACTIVITY[4]

The U.S. Equal Employment Opportunity Commission (EEOC) details protected activity as:

- filing or being a witness in an EEO charge, complaint, investigation, or lawsuit;
- communicating with a supervisor or manager about employment discrimination, including harassment;
- answering questions during an employer investigation of alleged harassment;
- refusing to follow orders that would result in discrimination;
- resisting sexual advances, or intervening to protect others;
- requesting accommodation of a disability or for a religious practice; and,
- asking managers or co-workers about salary information to uncover potentially discriminatory wages.

### *Complaints to U.S. Department of Labor (USDOL)*

On July 25, 2022, because he suspected his veterans' preference rights had been violated, the Appellant filed a complaint with USDOL after he believed the Agency had not selected him for a 10th job under USCIS announcement PSC-2022-0035. The Appellant would request the case be closed due to fear of reprisal. (*See Exhibit* 6, at 163). On February 13, 2023, the Appellant filed a second complaint to USDOL alleging the same after deciding he would challenge the Agency on its 10th job non-selection. USDOL closed the complaint as untimely filed which led to the Appellant's first Appeal under MSPB Case No. CH-3330-23-0216-I-1[5]. On March 14, 2023, the Appellant filed a third USDOL complaint alleging his veterans' preference rights had been violated after non- selection for an 11th job announcement for the Vermont Service Center under USCIS Job Announcement ESC-2022-0044[6].

### *Complaint to Local Management\**

On January 25, 2023, the Appellant informed his supervisors, Concepcion RAZO (RAZO), Pauline WOODSON (WOODSON), Kevin RIDDLE ("FOD" or "Field Office Director") and Carissa SHEFFLER (SHEFFLER) via e-mail (Exhibit 5, at 97-100) of RAZO's behavior and how he perceived it to be unfair treatment and a possible prohibited personnel

---

[4]All complaints filed will be listed. Only the complaints with a "*" near the headline indicate the Appellant believes contributed to reprisal.
[5] This Appeal is now subject to a timey-filed Petition for Review.
[6] Appellant believes that only the third DOL complaint contributed to reprisal since USDOL contacted the Agency to investigate.

practice. The Appellant notified "management" (WOODSON, FOD and SHEFFLER), that he was accused of performance deficiency by RAZO (Exhibit 5, at 99) after he observed her hiding behind his office door on 2 occasions on January 24, 2023. The Appellant also informed management that he suspected RAZO's behavior was due to him informing her on January 13, 2023, that he was interviewing for another position soon (Exhibit 5, at 99 ¶ 3).

*First Complaint to OSC\**

The Appellant was unhappy with management's handling of RAZO's behavior, so he filed a complaint (See Pleading 2 of 2) with OSC on January 28, 2023, and filed a complaint pursuant to 5 U.S.C. § 2302(b)(4), alleging Abuse of Authority and Hostile Work Environment. The Appellant believed (and still does) that RAZO's behavior was done in order to have a pretext to provide a negative reference to officials from the Vermont Service Center under USCIS Job Announcement ESC-2022-0044. The Appellant would ultimately not be selected for the position. Unfortunately, the agency was successful in convincing OSC not to pursue his allegations, although he had informed the OSC attorney of his non-selection. The Appellant would eventually file a separate Appeal under MSPB Case No. CH-3330-23-0328-I-1.

*Complaints to Agency\**

On February 9, 2023, The Appellant filed a Harassment complaint (Exhibit 4, at 94) with the Agency's Anti-Harassment Hotline. On February 10, 2023, he submitted Form G-1476A, Request to Initiate Pre-Complaint Process (Exhibit 4, at 68-79) to the Agency's Office of Equal Opportunity and Inclusion (OEOI). He alleged the actions of RAZO were discriminatory in nature based on his race and disability status. The Appellant alleged further that RAZO's role in his non-selection for the USCIS job with the Vermont Service Center was discriminatory in nature and rooted in retaliation.

On March 19, 2023, the Appellant filed a formal complaint (Exhibit 4, at 45-155) with the Agency's OEOI alleging that it had violated Title VII of the Civil Rights Act of 1964, Uniformed Services Employment and Reemployment Rights Act, Vietnam Era Veterans' Readjustment Assistance Act of 1974, Americans with Disabilities Act of 1990, and Section 503 of the Rehabilitation Act of 1973.

On October 12, 2023, an additional complaint of harassment was submitted to the Agency. (See Pleading 2 of 2). The harassment complaint alleged WOODSON (and her protégé RAZO) continued the harassment by issuing a substandard performance appraisal, which is not in line with the Appellant's previous appraisals.

*Appeals Filed with the MSPB**

The aforementioned Appeals under case numbers CH-3330-23-0216-I-1 and CH-3330-23-0328-I-1 were filed with the Board because the Appellant reasonably believes the Agency has violated his veterans' preference rights. Appeal No. CH-3330-23-0216-I-1 (Exhibit 6, at 172-178) was filed on March 7, 2023. Appeal No. CH-3330-23-0328-I-1[7] was filed on May 19, 2023. The third Appeal was filed under MSPB Case No. CH-1221-23-0376-W-1 (the 0376 Appeal)[8]. The fourth case was under MSPB Case No. CH-3443-23-0408-I-1[9]. This jurisdiction brief is attached to the fifth MSPB Appeal.

*Grievance Submitted to District Director**

On April 30, 2023, a grievance (Exhibit 8, at 215-216) was submitted to the District Director, Mirash DEDVUKAJ (DEDVUKAJ). The Appellant alleged RAZO had denied his leave request due to his refusal to change his leave request and to sign the 2023 Mid-Cycle Review, along with his refusal to meet with her unless she consented to being recorded.

*Complaints Submitted to Agency EEO Director and Deputy**

On May 5, 2023, the Appellant e-mailed the Agency EEO Director (Exhibit 6, at 269). He contacted the EEO Director pursuant to Chapter 5 of the EEOC's Management Directive 110: Chapter IV, D(1), notifying of his dissatisfaction regarding the processing of his formal complaint. The Appellant would contact the EEO Director again on July 18, 2023, August 30, 2023, October 17, 2023 and January 5, 2023. (See Pleading 2 of 2).

---

[7] This Appeal was terminated at the request of the Appellant due to the Board failing to adjudicate prior to the 121st day. The Appellant now has the right to file in U.S. District Court.

[8] The first IRA Appeal was filed in June 2023, and languished for nearly 120 days after the Appellant filed a Motion to Certify in October 2023, linked with a Motion to Disqualify the AJ.

[9] The Appellant withdrew this Appeal because he opted to have the Federal Labor Relations Authority (FLRA) review the issue. The Agency denied the Appellant's reasonable accommodation seeking reassignment after he was diagnosed with cancer.

*Second, Third, Fourth and Fifth Complaints Filed with OSC\**

On March 21, 2023, the Agency unlawfully procured the TransUnion Consumer Report of the Appellant after he filed a formal complaint on March 20, 2023. On March 30, 2023, he filed a second complaint with OSC (Exhibit 2, at 32-40), requesting an investigation to determine who "ordered the procurement of my credit report without my express written consent". When the OSC attorney e-mailed him her preliminary decision (Exhibit 21, at 317), he responded and provided a more detailed rebuttal (Exhibit 21, at 316). On May 12, 2023 (Exhibit 7, at 197-204) the Appellant filed a third complaint with OSC alleging the Agency proposing a 5-day suspension was retaliatory for his grievance from April 30th against RAZO.

On June 2, 2023, the Appellant filed a fourth complaint with OSC (See Pleading 2 of 2)., alleging that the Agency was "backdating" a certified timecard from July of 2022 without any cause or notice to the Appellant. OSC closed the complaint and provided notification that it would not move forward with an investigation (See Pleading 2 of 2).

On November 16, 2023, the Appellant filed a fifth complaint with OSC (See Pleading 2 of 2). In that complaint the Appellant alleged that his FY23 Performance Appraisal was retaliatory in nature based on his previous protected activity.

*Complaints filed with the Federal Labor Relations Authority (FLRA)*

Finally, on June 1, 2023, the Appellant filed Unlawful Labor Charges with the FLRA against the Agency. A separate complaint was filed against the Union[10]. He alleged the retaliatory and discriminatory acts of the Agency violated his rights as a federal Bargaining Unit Employee. After the 0376 Appeal jurisdiction brief filing, the Appellant submitted a second reasonable accommodation (See Pleading 2 of 2). request seeking a transfer to a remote position due to his bladder cancer and depression diagnoses. The Agency would unlawfully changed the request and have a non-supervisory chain of command official deny the request (See Pleading 2 of 2)[11]. The FLRA dismissed the complaint but a timely filed appeal is pending before the FLRA's Office of General Counsel (See Pleading 2 of 2).

---

[10] The complaint against the Union was dismissed at the request of the Appellant.
[11] The Deciding Official is not in the Appellant's chain of command by her own admission.

**BELIEF IN THE TRUTH OF ANY DISCLOSURES WAS REASONABLE**

Per Board instruction, the Appellant is to detail "why his belief in the truth of any disclosures was reasonable". Respectfully, the Appellant will explain why he believes a statement for the aforementioned, contradicts the plain text of federal whistleblower statutes and neglects Congress's purpose and intent to provide broad IRA appeal rights against retaliation, both for making whistleblower disclosures as well as for engaging in activities related to whistleblowing. With that being said, the Appellant prays that the Board's analysis does not depart from well-established precedent that allegations of retaliation for engaging in protected activities are correctly analyzed under section 2302(b)(9).

The U.S. Court of Appeals for the Federal Circuit has held that § 2302(b)(8) covers "reprisal based on disclosure of information" and § 2302(b)(9) as covering "reprisal based upon exercising a right to complain." *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1575 (Fed. Cir. 1996) (quoting *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679.

The Appellant filed complaints with OSC alleging that the Agency unlawfully procured his TransUnion Consumer Report and later subjected him to an adverse action, a 5-day suspension, after he filed a grievance against RAZO for denying his leave request and threatening him with disciplinary action. He also filed a complaint with OSC regarding the Agency tampering with his already-certified timecard after learning he'd be filing a complaint with the FLRA, and a performance appraisal that was issued in retaliation for having engaged in protected activity. It should be noted that the Agency's retaliation, which started in January 2023, created a significant change in working conditions after making both protected disclosures and engaging in protected activities, including disclosing information to the following:

- DOL;
- Management at the Chicago Field Office;
- Agency's OEOI and Anti-Harassment Offices;
- Appeals to the MSPB;
- Filing with FLRA; and,
- OSC.

While many of the Appellant's disclosures were made in the context of his protected activities, he separately alleged retaliation both for making protected disclosures under section 2302(b)(8) and for engaging in protected activities under section 2302(b)(9). After OSC closed

the Appellant's complaints, he timely filed his IRA Appeals with the Board alleging the same theories of retaliation he raised in his complaints with OSC.

Congress explicitly created 14 distinct prohibited personnel practices, including two separately defined provisions prohibiting retaliation for making a protected disclosure or engaging in a protected activity. *See* 5 U.S.C. § 2302(b)(8) and (9). These statutory provisions offer protection for "distinctly different" actions. *Williams v. Dep't of Defense,* 46 M.S.P.R. 549, 553 (1991). The essential difference between the protections of sections 2302(b)(8) and (9) is between "reprisal based on disclosure of information and reprisal based upon exercising a right to complain." *Serrao v. Merit Sys. Prot. Bd.,* 95 F.3d 1569, 1575 (Fed. Cir. 1996) (*citing Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 690 (Fed. Cir. 1992)). Notably, while section 2302(b)(8) prohibits retaliation for making protected disclosures, section 2302(b)(9) prohibits retaliation for, among other things, disclosing information to OSC, exercising certain appeal, complaint, or grievance rights, and testifying or assisting in the exercise of certain appeal, complaint, or grievance rights.

In addition to offering statutory protection against retaliation for distinctly different actions, sections 2302(b)(8) and (9) have different legal standards. Claims under section 2302(b)(8) require complainants to have a reasonable belief that their disclosures evidence a violation of law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *S. Rep. No. 112-155 (2012 U.S.C.C.A.N. 589, 598-99; Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999). However, the statute imposes no such requirement for claims under section 2302(b)(9). Thus, even when an Appellant alleges retaliation for actions that could be protected under both sections 2302(b)(8) and (9), the analysis for a claim under each provision would necessarily be different.

Respectfully, given these distinctions, the Appellant prays that the Board separately analyzes whether he was retaliated against based on his protected activities under section 2302(b)(9). Respectfully, the Appellant believes that an analysis of "reasonable belief" is not required for the Board to conduct a substantive review of his disclosures. The statute contemplates that individuals may file IRA appeals under *either* statutory provision *or* both. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a) (individuals alleging retaliation for making protected disclosures *or* engaging in certain protected activities have IRA appeal rights and "may seek corrective

action from the Board … for a prohibited personnel practice described in section 2302(b)(8) *or* section 2302(b)(9)(A)(i), (B), (C), or (D) ….") (emphases added).

Respectfully, the Appellant argues that it would be axiomatic that a statute should not be interpreted to render one part superfluous. *Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 612 (1991), *recons. denied*, 52 M.S.P.R. 375 and aff'd, 981 F.2d 1237 (Fed. Cir. 1992); *see, e.g., Horner v. Merit Sys. Prot. Bd.*, 815 F.2d 668, 674 (Fed. Cir. 1987).

In similar cases, the Board has consistently recognized these statutory distinctions and held that such activities are protected under section 2302(b)(9), not section 2302(b)(8). *See, e.g., Miller v. Merit Sys. Prot. Bd.*, 626 F. App'x 261, 265 (Fed. Cir. 2015) (disclosures made during grievance process are allegations of prohibited personnel practices under section 2302(b)(9), not section 2302(b)(8)); *Luecht v. Dep't of the Navy*, 87 M.S.P.R. 297, 302 (2000) (finding EEO complaints, IRA appeals, and union grievances are section 2302(b)(9) activities, not section 2302(b)(8) disclosures).

Congress has made clear that section 2302(b)(9) protects certain *activities* separate and apart from the protection for disclosures under section 2302(b)(8). To the extent that the scope of these protections against retaliation may overlap, section 2302(b)(9)'s protection is aimed at the complainant's *activities*, not at the underlying disclosures or their reasonableness.

Since passing the CSRA in the late 1970s, Congress has protected federal employees from retaliation for engaging in a particular activity—exercising appeal rights. *See* Pub. L. No. 95-454 (1978) § 101(a). In 1989, with the passage of the WPA, Congress added statutory protections to section 2302(b)(9) for other activities, namely disclosing information to or cooperating with OSC or an Office of Inspector General, exercising complaint and grievance rights, testifying for or assisting an individual in the exercise of appeal, complaint, or grievance rights, and refusing to obey an order that violates a law[12]. *See* Pub. L. No. 101-12, 103 Stat. 16 (1989) § 4(b).

When Congress passed the WPEA in 2012, it further strengthened the protections against retaliation in section 2302(b)(9). Significantly, the WPEA provided complainants with IRA

---

[12] In 2017, Congress amended section 2302(b)(9) to include protections for employees who refuse to obey an order that would require that employee to violate a "rule, or regulation" in addition to a law.

appeal rights to the Board for many section 2302(b)(9) claims. *See* Pub. L. No. 112-199, 126 Stat. 1475 (2012) § 101(b). The expansion of these protections and the introduction of IRA appeal rights for certain section 2302(b)(9) claims, such as those at issue in this case, indicate that Congress intended for complainants, like the Appellant, to be able to bring IRA appeals for section 2302(b)(9) claims along with and independent from any related section 2302(b)(8) claims.

It is undisputed that based on the evidence, the Appellant 1) made disclosures to OSC, 2) complained to management at the Chicago Field Office, 3) filed Appeals with the MSPB, 4) complained to DOL, 5) filed complaints with the Agency's OEOI and Anti-Harassment Offices, 6) complained to the Agency EEO Director and Deputy, and 7) filed complaints with the FLRA. **_All_** of these activities have long been held to be protected under section 2302(b)(9). *See* 5 U.S.C. § 2302(b)(9).

The Appellant prays that upon a final Board analysis, it determines that the Appellant engaged in protected activity, further finding that it is immaterial as it relates to the Appellant's disclosures, as to whether or not he, or any person would "reasonably believe" evidenced a violation of law, rule, or regulation under section 2302(b)(9). *See, e.g., Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 612 (1991) (section 2302(b)(9) covers disclosures to OSC that do not meet the terms of section 2302(b)(8)), *recons. denied*, 52 M.S.P.R. 375, *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992).

### ACTIONS THE AGENCY TOOK OR FAILED TO TAKE, OR THREATENED TO TAKE OR FAIL TO TAKE, AGAINST APPELLANT BECAUSE OF HIS DISCLOSURES OR ACTIVITIES, AND CONTRIBUITNG FACTORS

The Appellant repeats each claim of protected activity here from pages 3 through 6. Although he only complained to OSC of the Agency obstructing his right to compete for employment, retaliating due to his filing a formal complaint by unlawfully procuring of his TransUnion Credit Report, suspending him for having filed a grievance and the punitively low

performance appraisal[13], the Appellant wishes to provide the Board a convincing mosaic of the Agency's retaliation - which has led to his IRA Appeals to the Board.

An Administrative Judge may find an Appellants evidence to be a "convincing mosaic" of retaliation for an appellant's prior Board appeal, protected EEO activity and grievances; reviewing the "ample evidence supporting the administrative judge's findings of retaliation for filing a Board appeal and grievances" and noting, in particular, "the suspicious timing of this treatment—immediately following [appellant's] reinstatement to duty following her prior Board appeal" and the agency's failure to investigate an allegation of reprisal made during the reply to proposed adverse action leading to the adverse action appealed to the Board. *Rhee v. Dept. of Treasury,* 117 MSPR 640 (2012) (involving a 5 USC § 2302(b)(9) claim.

Moreover, to prevail on the merits of an IRA appeal, an Appellant must meet his initial burden of proving by preponderant evidence that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D) and; (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

The Board has also rejected arguments from agency's that an appellant must prove that the influencing official had actual knowledge of the disclosure in order to establish contributing factor and has instead made clear that contributing factor can be established by a showing that the influencing official had actual or constructive knowledge of the disclosure, and that official influenced the official taking the retaliatory action. *See McClellan v. Department of Defense*, 53 M.S.P.R. 139, 146-47 (1992) (concluding that reprisal could be shown by establishing that a person with only constructive knowledge, as opposed to actual knowledge, of an appellant's disclosure influenced the official taking the action against the appellant, in the context of an IRA

---

[13] *See Ingram v. Dept. of Army*, 116 MSPR 525 (2011). An appellant may show by a preponderance of the evidence that a punitively low rating is due to his/her disclosures being a contributing factor where the Board analyzes an appellant's past appraisals. The past performance appraisals were submitted to the Board in the Appellant's Motion for Joinder.

appeal) (citing *Frazier v. Merit Systems Protection Board*, 672 F.2d 150, 166-68 (D.C. Cir. 1982)).

Furthermore, the Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences another agency official who is unaware of the improper animus when implementing a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012) (citing *Staub*, 562 U.S. 411). Henceforth, for the Appellant's arguments on contributing factors, he respectfully requests the Board reference the cat's paw analysis. The Board has explicitly adopted the approach set forth in *Staub* in the context of IRA appeals. *See Aquino*, 121 M.S.P.R. 35, ¶¶ 5, 19-24. Under the cat's paw theory, an appellant can establish that a prohibited animus toward a whistleblower was a contributing factor in a personnel action by showing by preponderant evidence that an individual with knowledge of the protected disclosure influenced the officials who are accused of taking the personnel actions.

## Complaints to Department of Labor

The Agency failed to inform the Appellant why he was not selected for any of the 11 jobs that he was qualified for, that subsequently led to 2 MSPB Appeals, although it is required to do so based on its own Merit Promotion and Internal Placement Plan (MD 255-001) (See Pleading 2 of 2)). Per the MD 255-001, section V(B)(16), the Agency must release the information if there is a Freedom of Information Act request (FOIA) or a complaint. The Appellant filed a FOIA request in July of 2022 and the Agency has unlawfully withheld evidence of its misconduct, despite an Active MSPB Appeal. The Appellant was forced to file a federal lawsuit in the U.S. District Court of Northern Illinois on July 3, 2023[14], in order to force the release of the documents. The Agency, here, demonstrates its propensity to violate the law and its own procedures in order to further a retaliatory and discriminatory animus.

## Contributing Factor

---

[14] The Agency would release FOIA records that were not dispositive to the Appellant's request. The case was eventually dismissed at the request of the Appellant due to his belief that future litigation would force the release of the evidence.

For the contributing factors delineated henceforth, "in order to satisfy the contributing factor IRA jurisdictional criterion, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way". *Kukoyi v. VA,* 111 MSPR 404 (2009). *See also Kalil v. USDA,* 96 MSPR 77 (2004).

Further, a 'contributing factor' means the disclosure affected the agency's decision to threaten, propose, take, or not take the personnel action regarding the appellant. *Ingram v. Dept. of Army*, 116 MSPR 525 (2011). The Board has also held that the respondent in a corrective action appeal is the agency, not its individual officials; therefore, a lack of actual knowledge by a single official is not dispositive to the issue of contributing factor. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014); *Dorney*, 117 M.S.P.R. 480, ¶ 12.

The Appellant believes that the third complaint to the USDOL regarding the Agency's alleged violation of his veterans' preference rights contributed to the Agency's decision to suspend the Appellant for 5 days without pay. The complaint was submitted to USDOL on March 14, 2023. Two months later, the Agency proposed to suspend the Appellant and a month later carried it out. Once an appellant's evidence establishes by preponderant evidence that the knowledge/timing test has been met, the administrative judge must find that the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue. *Mason v. DHS*, 116 MSPR 135 (2011).

As well, the Board may find that under the knowledge-timing test an appellant makes a nonfrivolous allegation that the alleged protected disclosure was a contributing factor in his non-selection where selecting officials were influenced by individuals who were in a position to adversely react to appellant's protected disclosures. *Cassidy v. DOJ,* 118 MSPR 74 (2012).

### *Complaint to Local Management*

Local management failed to adequately address the Appellant's concerns when he reported those concerns to them on January 25, 2023. The Appellant believes the Agency was complicit in the treatment he had received since he began his protected activities. He was not removed from RAZO's team prior to October 2023, because the Agency had no interest in mitigating conflict, as its intent was to ensure his working conditions were unbearable, imposing

a chilling effect on his whistleblowing and to ensure subjugation. *Covarrubias v. SSA,* 113 MSPR 583 (2010).

*Contributing Factor*

The Appellant promptly alerted management to RAZO's behavior on January 25, 2023, because he identified it as retaliation for seeking out an employment opportunity[15]. Since that day, the Agency has engaged in the retaliatory acts that caused this Appeal. The Appellant believes SHEFFLER attributed more weight to RAZO, WOODSON and FOD's defenses as it relates to his allegations of wrongdoing against them. In his reply to SHEFFLER regarding the proposed suspension (Exhibit 8, at 207-280), he alleged it was retaliatory in nature. Unfortunately, their influence overshadowed his disclosures. In *Mangano v. VA,* 109 MSPR 658 (2008), the Board noted the possibility of influence on a deciding official of other officials with potentially retaliatory motives. To make it to a Hearing, the knowledge of agency officials who took or influenced the taking of the prohibited action need only be alleged. *See Jessup v. DHS,* 107 MSPR 1 (2007).

The Appellant made his disclosure in January 2023 to the same officials who would later suspend him in June of 2023. The Board has held that evidence that the official taking the action knew of the disclosure and that the action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor meets the appellant's burden on that issue. *See Tatsch v. Dept. of Army,* 100 MSPR 460 (2005).

The Agency failed to act as it relates to ensuring the Appellant was free from a work environment that was incessantly retaliatory and discriminatory. A lengthy delay in taking a corrective action can constitute a "failure to take" a personnel action under 5 USC 2302(b) (citing *Special Counsel v. Brown*, 61 MSPR 559, 568–69 (1994)). *See Carson v. Dept. of Energy,* 109 MSPR 213 (2008).

*Complaints to OSC*

---

[15] Appellant also identified RAZO's behavior as having racial overtones – as she has not acted in such a way to other employees of non-African American descent, who sought out other employment opportunities.

The Agency failed to address the issues raised by the Appellant after it learned of those issues via OSC's preliminary reviews. If the appellant makes a disclosure outside the chain of command, the disclosure is protected even if the information disclosed is known to but remains uncorrected by management. *See Wadhwa v. VA,* 110 MSPR 615 (2009), overruled on other grounds, *Hau v. DHS,* 123 MSPR 620 (2016). As a result, the Agency failed to take corrective action.

Although the Agency was made aware of possible right to compete obstructions in one of its largest field offices, it took no action to inquire within. An employee that is subjected to retaliation because he seeks out alternate employment is subjected to a hostile work environment, because that act is a significant change in the working conditions. *Savage v. Dept. of Army*, 122 MSPR 612 (2015). A hostile environment was determined to be a form of covered personnel action in an IRA case; "The statute defines 'personnel action' to include, among other listed actions, 'any other significant change in duties, responsibilities, or working conditions.' 5 U.S.C. § 2302(a)(2)(A)(xii). The legislative history of the 1994 amendment to the WPA indicates that the term 'any other significant change in duties, responsibilities, or working conditions' should be interpreted broadly, to include 'any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system.' *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999) (quoting 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey)).").

The Agency demonstrated insentience when it learned that officials in its Chicago office initiated the suspension of an employee 11-days after a grievance was filed against his supervisor. As it relates to the unlawful procurement of the Appellant's TransUnion Consumer Report, the Agency failed to provide an explanation worthy of belief (See Attachment, at 307). The Agency's explanation contradicts the message it transmitted to employees on May 31, 2023 (See Attachment, at 314).

There's also the issue of RAZO altering a then-year certified timecard. On June 1, 2023, RAZO was informed via a request for official time, of the Appellant's intent to file a complaint against her with the FLRA. (See Attachment, at 291). RAZO would retaliate against him by altering a certified timecard from July 2022 (See Attachment, at 310). The Appellant has attempted to have the Agency review the breach, but it has refused to do so (See Attachment, at

311-312 and 294-305). The Appellant reasonably believes this was done by RAZO so she could have pretext to attack his credibility before the FLRA, and to later retaliate against him by alleging he violated the Fair Labor Standards Act by altering his certified timecard from nearly a year ago – essentially a time theft allegation that would give rise to a removal from service.

It must also be noted that for the issuance of a punitively low performance appraisal, (which is the Subject of this Appeal), WOODSON refused to be interviewed during the informal complaint stage of the pending EEO complaint. The assigned "Investigator" failed to detail for the record why she did not interview WOODSON. Nonetheless, her refusal to be interviewed was meant for her to deny future allegations of retaliation – in other words, for her to claim she had no knowledge of an EEO complaint filed against her protégé RAZO[16]. That way, when she and RAZO issued a punitively low performance rating and failed to justify the score, she would have what she believed to be plausible deniability. The Board has held that the lack of any other plausible explanation gives circumstantial evidence its probative effect. *Dogar v. DOD,* 95 MSPR 52 (2003).


## Contributing Factor

The Agency's Office of Security and Integrity (OSI) unlawfully procured the Appellant's TransUnion credit report one day after his formal complaint was transmitted to the Agency's OEOI. The Appellant alleging that the office within the Agency that purports to have "integrity", may actually be found wanting, no doubt ruffled some feathers – especially within OSI. The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate. *Simmons v. Dept. of Air Force, 99 MSPR 28 (2005). See* also *Mattil v. Department of State,* 118 M.S.P.R. 662, ¶ 21 (2012), with the Board holding that it is proper to consider evidence regarding an investigation if it is so closely related to a personnel action that it could have been a pretext for gathering information to retaliate for whistleblowing.

---

[16] RAZO has not been assigned to any other Branch Chief in the Chicago Field Office since 2019 besides WOODSON. RAZO's conduct towards subordinates is only tolerated by WOODSON as her supervisor – as none others would tolerate the behavior.

A constructive knowledge theory may be applied to determine whether a wrongful personnel action was taken. *Dorney v. Dept. of Army*, 117 MSPR 480 (2012).

The complaints to OSC blowing the whistle on the Agency's repeated violations of rules, laws and regulations contributed to the retaliation the Appellant has suffered for 13 months now. To show that a disclosure was a contributing factor in a personnel action, the Appellant need only demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Miller v. DHS,* 99 MSPR 175 (2005).

<u>*Complaints to Agency*</u>

The Appellant believes that the Agency's failure to process his EEO formal complaint in the "usual manner" constitutes a significant change in working conditions and rises to the level of a personnel action. *See Mattil v. Dept. of State*, 118 MSPR 662 (2012). The Agency has allowed interference during the EEO process by failing to address local management's attempts to perform investigatory duties in violation of EEOC's Management Directive 110: Chapter IV, D(1). The Appellant reported the interference (See Attachment, at 269), but the Agency failed to take action against local management because it is complicit in their unlawful acts toward the Appellant.

<u>*Contributing Factor*</u>

As with OSI, the Agency's OEOI being labeled as corrupt and possibly compromised by the Appellant, ruffled the feathers on the same bird. Local management official Shauna HARRIS (HARRIS), who is the District's Chief of Staff reporting to SHEFFLER, attempted to interfere with the EEO process by claiming she was assigned to be the Management Inquiry Officer (MIO) for the harassment complaint against RAZO. The Appellant respectfully notified her that she was ineligible to do so. The Appellant reported the breach to the Agency's Anti-Harassment Program Manager, Leah SUTHERLIN (SUTHERLIN), which only resulted in another attempt to interfere. The next attempt would come from a supervisor assigned in Detroit named Jovana GJELAJ (GJELAJ), (See Attachment, at 274-275). Note that this supervisor is also a District employee as is HARRIS. Likewise, the Appellant informed GJELAJ she was interfering with the EEO process.

When the Appellant filed his earlier grievance against RAZO to District Director DEDVUKAJ on April 30, 2023, the interference from HARRIS was reported the same day to SUTHERLIN. GJELAJ's interference was reported on May 5, 2023, to the Agency's EEO Director and Deputy (See Attachment, at 269). This no doubt influenced DEDVUKAJ's decision to retaliate against the Appellant for opposing the unlawful interference from his subordinates regarding his EEO complaint. As a result, on May 10, 2023, DEDVUKAJ's decision (See Attachment, at 217-219) finding no merit to the Appellant's grievance lends credence to the Appellant's theory that he ordered a suspension in retaliation for the grievance. Proof of reprisal includes timing and knowledge of the disclosures by decisionmakers. *Eluhu v. VA*, 801 Fed. Appx. 952 (6th Cir. 2020 NP). The Appellant's analysis is plausible because there is no other explanation. The Board has held that the lack of any other plausible explanation gives circumstantial evidence its probative effect. *See Dogar v. DOD, 95 MSPR 52 (2003).*

DEDVUKAJ has played a role in fostering the hostile work environment the Appellant has been subjected to, since he likely ordered a suspension due to the Appellant reporting his subordinates' interference with the EEO process to the Agency EEO Director. A constructive knowledge theory may be applied to determine whether a wrongful personnel action was taken. *Dorney v. Dept. of Army*, 117 MSPR 480 (2012).

As a result, the Appellant reasonably believes that the foregoing events were a contributing factor in the decision to suspend him. The 5-day suspension without pay is tainted with reprisal. The Board has no discretion to affirm a penalty tainted by illegal reprisal, even if the agency's penalty might otherwise have been reasonable. *See* 5 U.S.C. § 7701(c)(2)(B); *Sullivan v. Dep't of the Navy*, 720 F.2d 1266, 1278 (Fed. Cir. 1983) (Nies, J., concurring) ('In an adverse action proceeding,…the merits cannot be the determinative factor that there was no reprisal. A *meritorious adverse action must be set aside where there is reprisal*.' (emphasis added))."). *See Siler v. EPA*, 908 F.3d 1291 (Fed. Cir. 2018).

*Appeals Filed with MSPB*

The Agency failed to investigate the Appellant's claims of his veterans' preference rights being violated for the non-selection for 11 jobs within the Agency. It has sought to obstruct the Appellants right to inspect documents related to the selection of federal job applicants pursuant to the precedent set forth in *Core v. USPS*, which finds there is no "substantial invasion of

privacy in information identifying successful federal job applicants". The Agency would only submit a response to the Appellants FOIA request because he sued in U.S. District Court for the release. However, the documents the Agency submitted were not dispositive to the FOIA request. The Appellant opted to dismiss the lawsuit in December 2023.

The Appellant would like to highlight for the Board the Agency's willingness to submit fraudulent documents in order to advance its agenda. On June 8, 2023, the Agency submitted a Motion to Dismiss (See Pleading 2 of 2).  the Appellant's Appeal under Case No. CH-3333-23-0328-I-1. The Agency' Motion argued that "*The vacancy announcement for ESC-2022-0044 put applicants on notice that the job was a merit promotion opportunity limited to current USCIS employees and CTAP eligibles. The vacancy announcement for ESC-2022-0044 stated that the job was open to "Internal to an agency," defined as "Current federal employees of this agency." The job announcement provided further detail on the applicants eligible to apply for ESC-2022-0044 with the statement, "Clarification from the agency: Current USCIS employees with competitive status and CTAP eligible." See page 2 of Job Announcement No. ESC-2022- 0044, a true and accurate copy of which is attached hereto as Agency Exhibit A""*. *See* Exhibit 7, at 5, #4.

However, this was not completely…accurate. The Appellant would come to realize that the purported "true and correct" copy of the job announcement and application submitted by the Appellant that the Agency attached in support of its Motion was a fraudulent copy. The copies that the Agency submitted were missing the requisite statement regarding preference eligible veterans submitting their applications under the Veterans Employment Opportunities Act (VEOA). The Agency's fraudulent copy of the job announcement was submitted to the Board because the Agency failed to realize that the Appellant had already submitted a true and correct copy (See Pleading 2 of 2). with his initial Appeal under Case No. CH-3330-23-0216-I-1[17]. The amoral act of submitting fraudulent evidence to the Board demonstrates the Agency's resolve knows no bounds in its quest to retaliate against the Appellant.

In the 0376 Appeal (the other IRA Appeal), the Appellant argued that the Agency pilfering his private information when it unlawfully obtained his credit report from TransUnion,

---

[17] The Appellant submitted a copy of the announcement and application to the Board, because he was detailing what other complaints he had filed with other employee enforcement agencies.

which was one day after he filed a formal complaint with OEOI was retaliatory. He further particularized the Agency proposing, and later issuing a 5-day suspension 11 days after he filed a grievance was reprisal. He alleges that the performance appraisal issued to him by the same management officials was reprisal due to his protected activity. When the AJ ordered the Agency to provide its file and response in the Appeal's Acknowledgement Order, the Agency exercised its option to not comply.

The Appellant would have to motion for sanctions in order to draw the AJ's attention to the issue. The AJ would afford the agency more time to respond and deny the Appellant's motion due to it being "harsh". The Agency also continued its campaign to flout MSPB discovery regulations. The Appellant would bring that to the AJ's attention as well when he submitted a pleading informing the AJ of his intent to motion for a subpoena. When the Agency finally responded, **it failed to show by clear and convincing evidence that it would have taken the action absent the disclosure or activity**. 5 U.S.C. § 1221(e)(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).

Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), aff'd, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

In determining whether an agency has met this burden, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; see also Carr, 185 F.3d at 1323[18].

---

[18] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues. However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction. *See 5* U.S.C. § 7703(b)(1)(B). Therefore, the Board must consider these issues with the view that the appellant may seek review of decisions before any appropriate court of appeal.

The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Lu*, 122 M.S.P.R. 335, ¶ 7. The Board considers all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

As previously mentioned, the Agency failed to meet its burden under *Carr* because it provided no comparators (in the 0376 Appeal). The Agency bears the burden of proving that it would have taken the same action in the absence of the Appellant's protected activity. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). Because the agency bears the burden of proof, when it fails to introduce relevant comparator evidence, the third *Carr* factor is effectively removed from consideration, although it cannot weigh in the Agency's favor. *Soto*, 2022 MSPB 6, ¶ 18; *see also Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022). If the first two *Carr* factors either do not support a finding that the agency would have taken the same personnel action in the absence of the disclosure or protected activity, or support such a finding with respect to one of those *Carr* factors but not the other, the failure to present evidence of the third Carr factor may prevent the agency from carrying its overall burden. *Smith*, 2022 MSPB 4, ¶¶ 26-30; *see also Miller v. Department of Justice*, 842 F.3d 1252, 1259-63 (Fed. Cir. 2016). Due to the Agency failing to meet its burden under *Carr* in the 0376 Appeal, the Appellant believed that arguing jurisdiction for this IRA Appeal was not necessary.

### *Contributing Factor*

The Appellant's Appeals seek corrective action and Agency accountability before the Board. In his Pleadings, he has alleged that the Agency removed documents from at least ten of his job applications in order to deny him the right to compete as a 10-point preference eligible veteran[19]. This extraordinary claim, if true, would mean the Agency lacks any semblance of credibility before the Board. It would also indicate that the Agency's leadership would no doubt

---

[19] In the 0216 Appeal, the AJ did not address this argument although it was the crux of the case. Instead, he issued the Initial Decision, which resulted in one of the bases for the Appellant submitting a Petition for Review. The Agency had no rebuttal for the Appellant's allegation either and opted to not respond to the Petition for Review.

lose the confidence of the workforce if the Appellant is vindicated, along with the political ramifications of such illegality. Time will tell how the MSPB handles the issue on Petition for Review – as the Appellant has argued the AJ failed to address the issue.

The Agency is indefatigable in its efforts to silence the Appellant. So much so, it has resorted to unlawful retaliation and submitting forged evidence in the 0328 Appeal to the Board in order to do so. The Agency bears the burden of producing relevant, material, and credible evidence of its compliance. *See Sweet v. USPS, 89 MSPR 28 (2001).* The Appellant believes the Agency's conduct before the Board renders its evidentiary submissions unworthy of credence henceforth. The allegations of the Appellant are quite serious and the Agency has demonstrated it will stop at nothing to stifle the Appellant's ability to prove his claims. Due to the aforesaid conduct of the Agency, it is self-evident why his Board Appeals contributed to the retaliatory acts of the Agency.

The Agency failing to triumph against the Appellant's Appeals may damage its public perception, subject it to the political ramifications of its actions and impact employee morale. The Agency has pulled out all the tricks in its bag to defeat the Appellant because it is fully cognizant of what losing means. Fortunately, the Appellant is resolute in his pursuit to hold the Agency accountable and will exhaust all administrative and judicial remedies.

*Grievance Submitted to District Director*

After the Appellant reported the denial of leave and threats of disciplinary action from RAZO to DEDVUKAJ via a grievance (See Attachment, at 215-216), the Agency proposed a retaliatory 5- day suspension (See Attachment, at 220-225). "Reprisal for exercising a grievance right is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9), not 5 U.S.C. § 2302(b)(8)," and WPEA does not change that result. *See Mudd v. VA*, 120 MSPR 365 (2013). The Appellant believes DEDVUKAJ ordered the suspension that the Field Office Director initiated and SHEFFLER upheld. An appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking retaliatory action. *See Aquino v. DHS,* 121 MSPR 35 (2014).

The Agency proposed to suspend (See Attachment, at 220-225) the Appellant on May 11, 2023, due to his allegedly 1) Refusing to Follow Supervisory Instructions and 2) Disrespectful Conduct. The Appellant argues that the meeting was not mandatory based on RAZO's e-mail (See Attachment, at 260). RAZO clearly stated "Send me a reply if you are open to meeting with me and at what time". That indicates the meeting wasn't mandatory. The Appellant was not open to meeting with RAZO. In fact, he had submitted a Reasonable Accommodation request seeking a revision of supervisory methods (See Attachment, at 262-267) which was completely ignored by respondeat superiors and the Agency. The Appellant does not wish to be in her presence because of the discriminatory animus she harbors towards him, and the fact that she aggravates his service-connected mental disability. (See Attachment, at 264). The Agency did not remove the Appellant from RAZO's team until October 5, 2023.

Again, the Agency failed to meet its burden under *Carr* in the 0376 Appeal. To prove a charge of failure to follow instructions, an agency must establish that the employee: (1) was given proper instructions, and (2) failed to follow the instructions, without regard to whether the failure was intentional or unintentional. *Powell v. USPS*, 122 MSPR 60 (2014). The Appellant is confident he will prevail in the 0376 Appeal based on the Agency not meeting its burden.

The Appellant was the only employee required to meet with her and viewed it as further evidence of her discriminatory animus. He reasonably believed that RAZO and WOODSON were planning to threaten him for refusing to sign the Mid-Cycle Review (See Attachment, at 236) because initially she was opposed to a Union Representative attending. (See Attachment, at 235). The meeting only became mandatory because RAZO and WOODSON wanted to threaten the Appellant for refusing to sign the Mid-Cycle Review. Signing performance appraisals are not required by the Office of Personnel Management (OPM). The Appellant would agree to meet with RAZO if she agreed to being recorded.

The Appellant had a reasonable belief that RAZO and WOODSON were planning to subject him to threats. He informed RAZO that she had "been less than truthful when questioned regarding your behavior since January 2023". (See Attachment, at 236). RAZO denied hiding behind the Appellant's door when questioned by the EEO Counselor. (See Attachment, at 63). In light of the fact that RAZO had demonstrated a propensity to be dishonest, the Appellant informed her that he found her "morally deficient" and "untrustworthy". (See Attachment, at

236). The Appellant made the remarks to her only after she changed her mind and made the meeting mandatory, threatening him with "further action to include disciplinary action". He refused to meet with RAZO unless he had "documented proof of what is said during the meeting". WOODSON exuded desperation as she requested a Union Representative, Samuel LOPEZ (LOPEZ), speak with the Appellant regarding the meeting (See Attachment, at 210). The Appellant would decline the meeting. If the meeting were truly mandatory after initially not being so, WOODSON would not have needed to seek LOPEZ's assistance in convincing the Appellant to attend it.

RAZO affirmed the Appellant's analysis of her, which he details in the subsequently headlined "Complaints Filed with the FLRA" section. RAZO would be caught by the Appellant attempting to amend a certified timecard from July 2022, in an attempt to set up pretextual retaliation.

There is the issue of the Appellant's timely submitted leave request being denied by RAZO that contributed to the grievance. She requested that he "create two separate request since May 1st falls in a different pay period". (See Attachment, at 242). The Appellant opposed doing so because he believed it to be pretext for retaliation, in which she'd allege his leave requests were untimely (which she'd eventually do). When the Appellant requested RAZO "cite a reference or regulation that allows you to deny my leave request because the dates were in different pay periods", she ignored the request. Instead, WOODSON answered, demanding that he "follow the instructions" of RAZO. The Agency is required to meet its burden of proof as to unscheduled leave. *Sanders v. USPS,* No. 00-3004 (Fed. Cir. 2001 NP). The Agency failed to meet its burden under *Carr* and the 5-day suspension must be overturned as a result.

As if almost on cue, RAZO would send an e-mail (See Attachment, at 319-321) on May 23, 2023, alleging that the Appellant had "a recurring pattern of not properly requesting leave in advance". She'd go on to write *"Specifically, in the CBA, Agreement 2022, Article 24(a)(2) states that except in an emergency situation or in the event of an unanticipated absence, annual leave will be requested in advance utilizing WebTA. Agreement 2022 also states that leave preferences that span more than one week (regardless of duration), shall be submitted as soon as possible, but no later than 45 days in advance of the scheduled leave. Due to your continued unanticipated leave requests, management is unable to sufficiently predict your work schedule,*

*which adversely affects the office requirements and productivity"*. For the Appellant, opposing RAZO's request that he change his leave request was validated, as the e-mail she sent revealed her pretextual ambition. When the Appellant requested RAZO provide proof to support her allegations, she ignored him.

Protected activity includes "participating" in an EEO process or "opposing" discrimination. These two types of protected activity arise directly from two distinct statutory retaliation clauses that differ in scope. Participation in an EEO process is more narrowly defined to refer specifically to raising a claim, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under the EEO laws, but it is very broadly protected. By contrast, opposition activity encompasses a broader range of activity by which an individual opposes any practice made unlawful by the EEO statutes. The protection for opposition is limited, however, to those individuals who act with a reasonably good faith belief that a potential EEO violation exists and who act in a reasonable manner to oppose it.

## *Contributing Factor*

As previously stated, the Agency is complicit in RAZO's unlawful conduct to such a degree that it is willing to manufacture claims of misconduct against the Appellant to protect her. Rather than mitigate the conflict between RAZO and the Appellant, it wished to subjugate him to her animus. Her denying his leave request for a reason that not even she could articulate, which only later was revealed to be clearly pretextual, is used to charge the Appellant as "insolent". The Agency would then allege that RAZO's meeting was mandatory although her e-mail solicited team members' "interest" in meeting with her, which resulted in charges the Agency used to substantiate a retaliatory 5-days suspension without pay. The Appellant has alleged from the very beginning in his formal complaint that he is languishing in a hostile work environment.

In *Savage v. Dept. of Army*, 122 MSPR 612 (2015), the Board held that a hostile environment was determined to be a form of covered personnel action in an IRA case; "The statute defines 'personnel action' to include, among other listed actions, 'any other significant change in duties, responsibilities, or working conditions.' 5 U.S.C. § 2302(a)(2)(A)(xii). The legislative history of the 1994 amendment to the WPA indicates that the term 'any other significant change in duties, responsibilities, or working conditions' should be interpreted broadly, to include 'any harassment or discrimination that could have a chilling effect on

whistleblowing or otherwise undermine the merit system.' *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999) (quoting 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey)).")

The Agency has created a hostile work environment and seeks to impose a "chill" to those who dare complain (me). The actions of the Agency are tainted with reprisal. As a result, the Appellant reasonably believes that the foregoing events were a contributing factor in the decision to suspend him. The 5-day suspension without pay is tainted with reprisal. The Board has no discretion to affirm a penalty tainted by illegal reprisal, even if the agency's penalty might otherwise have been reasonable. *See* 5 U.S.C. § 7701(c)(2)(B); *Sullivan v. Dep't of the Navy*, 720 F.2d 1266, 1278 (Fed. Cir. 1983) (Nies, J., concurring) ('In an adverse action proceeding,…the merits cannot be the determinative factor that there was no reprisal. A *meritorious adverse action must be set aside where there is reprisal*.' (emphasis added))."). *See Siler v. EPA*, 908 F.3d 1291 (Fed. Cir. 2018).

### *Complaint Submitted to Agency EEO Director and Deputy*

The Appellant e-mailed the Agency EEO Director (See Attachment, at 269) on May 5, 2023. He contacted the EEO Director pursuant to Chapter 5 of the EEOC's Management Directive 110: Chapter IV, D(1), notifying of his dissatisfaction regarding the processing of his formal complaint. Neither the Director nor her Deputy responded to the Appellant. The Agency failing to respond to the Appellant's complaint was its response; that it is complicit in the interference. He then sent another complaint to the Agency's EEO Director in October 2023. (See Pleading 2 of 2).

### *Contributing Factor*

Respectfully, in order to prevent being repetitive, the Appellant requests the Board's leave for p.17, ¶3 and p.18, ¶¶ 1-3 to be referenced as the contributing factors here. *See* "Complaints to Agency, Contributing Factor".

### *Complaints Filed with the FLRA*

On June 1, 2023, RAZO was informed via e-mail that the Appellant intended to file a complaint. RAZO would retaliate against him by altering a certified timecard from July 2022

(See Attachment, at 310). The Appellant has attempted to have the Agency review the breach, but it has refused to do so (See Attachment, at 300-305). The Appellant reasonably believes this was done by RAZO so she could have pretext to attack his credibility before the FLRA, and to later retaliate against him by alleging he violated the Fair Labor Standards Act by altering his certified timecard from nearly a year ago. The Appellant also filed a complaint against the Union but dismissed the charge. The Appellant believes this represents the depravity of RAZO *and* the Agency because instead of investigating his concerns, it asserts nonsensically that he caused the action when the record clearly indicates she initiated it.

The Appellant believes RAZO's alteration of a certified timecard was reprisal for filing a complaint with the FLRA. "[U]nder the WPEA an aggrieved employee now has the right, under certain circumstances, to seek corrective action from the Board when he or she suffers reprisal as a result of filing an EEO complaint. *See* 5 U.S.C. § 2302(b)(9)(A)(i) (prohibiting an agency from retaliating against an employee for 'the exercise of any appeal, complaint, or grievance right" related to whistleblowing.'"). *Gray v. MSPB*, 650 Fed. Appx. 775 (Fed. Cir. 2016 NP). The Board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate. *Simmons v. Dept. of Air Force*, 99 MSPR 28 (2005).

Later in June 2023, the Appellant submitted a reasonable accommodation[20] request. (See Pleading 2 of 2). due to RAZO and WOODSON alleging his right to take leave was "unanticipated" and "interfered with the productivity of the office". (See Pleading 2 of 2). The Agency unlawfully ***changed*** the accommodation request and had a non-supervisory[21] official deny the request after the Appellant decline to provide medical evidence (See Pleading 2 of 2).

*Contributing Factor*

The Agency is complicit in RAZO's behavior because it sought to avoid an Unfair Labor Charge from the FLRA, as its actions thus far against the Appellant left it no recourse but to set up a hit job. The Appellant has previously detailed how this Agency is willing to break the law in

---

[20] After being diagnosed with cancer, and the Agency accusing the Appellant of leave abuse in an e-mail, he submitted a request for reassignment to a remote position.

[21] The Deciding Official, by her own admission, indicated she is not in the Appellant's chain of command. See Pleading 2 of 2.

order to further its retaliatory and discriminatory ambitions and does not wish to repeat it here. The Appellant catching the Agency yet again attempting to manufacture evidence to fuel it retaliatory motives was not only a contributing factor but was pretextual. The FLRA dismissed the complaint in December 2023, but a timely appeal was filed by the Appellant. (See Pleading 2 of 2). To date, the appeal is pending review. Similar to the MSPB, the FLRA did not address the Appellant's allegations in the decision letter dismissing the complaint.

In *Kohler v. Dept. of Navy,* 108 MSPR 510 (2008)*,* the Board noted that to establish retaliation using circumstantial evidence, an appellant must provide evidence establishing a "convincing mosaic" of retaliation; "As a general rule, this mosaic has been defined to include three general types of evidence: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that employees similarly situated to the appellant have been better treated; and (3) evidence that the employer's stated reason for its actions is pretextual. Where an employer's motives or state of mind are relevant, the record must be carefully be scrutinized for circumstantial evidence that would support an inference of retaliatory *animus*."

### DATES OF COMPLAINTS TO THE OSC AND THE MATTERS RAISED

The Board has jurisdiction over an IRA appeal if the appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that he made a protected disclosure that was a contributing factor in the agency's decision to take a personnel action. In an IRA appeal, the Board lacks jurisdiction to also adjudicate the merits of the agency's personnel action. *Johnson v. DOJ,* 104 MSPR 624 (2007).

Additionally, in cases involving multiple alleged protected disclosures, the Board has jurisdiction where the appellant has exhausted his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken for at least one alleged protected disclosure. *Tullis v. Dept. of Navy*, 117 MSPR 236 (2012). *See also Harvey v. Dept. of Navy,* 92 MSPR 51 (2002) (pursuant to *Yunus v. VA,* 242 F.3d 1367).

On January 28, 2023, he filed a complaint pursuant to 5 U.S.C. § 2302(b)(4), alleging Abuse of Authority and Hostile Work Environment. (*See* Pleading 2 of 2). On March 21, 2023,

the Agency unlawfully procured the TransUnion Consumer Report of the Appellant after he filed a formal complaint on March 20, 2023. On March 30, 2023, he filed a second complaint with OSC. The Appellant requested an investigation to determine who "ordered the procurement of my credit report without my express written consent". When the OSC attorney e-mailed him her preliminary decision, he responded and provided a more detailed rebuttal.

On May 12, 2023, the Appellant filed a third complaint with OSC alleging the Agency proposing a 5-day suspension was retaliatory for his grievance from April 30th against RAZO. On June 2, 2023, the Appellant filed a fourth complaint with OSC. He alleged that the Agency was "backdating" a certified timecard from July of 2022 without any cause or notice to him. OSC closed the complaint and provided notification that it would not move forward with an investigation.

The Appellant met his exhaustion burden with OSC although it decided not to investigate *any* of the four complaints he filed. Exhaustion is determined based on the complaint or other written materials submitted to OSC. *Abou-Hussein v. MSPB*, 557 Fed. Appx. 979 (Fed. Cir. 2014 NP). The Appellant is cognizant that only 2 of 4 claims are reviewable to the Board (the March 30 and May 12, 2023, complaints). For all of his claims however, the Appellant provided specific allegations to OSC before presenting this IRA Appeal to the Board. *McCarthy v. MSPB*, 809 F.3d 1365 (Fed. Cir. 2016).

OSC was given the precise nature of the Appellants claimed reprisal accusations, which gave OSC an opportunity to investigate and respond as appropriate. *Baney v. MSPB,* 349 Fed. Appx. 545 (Fed. Cir. 2009 NP). For reasons unbeknownst to the Appellant, OSC decided none of his complaints warranted an investigation, which left him at the mercy of the Agency. His complaints to OSC contained the core of his retaliation claims and gave it sufficient basis to pursue an investigation, satisfying the exhaustion requirement. *Briley v. NARA,* 236 F.3d 1373 (Fed. Cir. 2001).

## CONCLUSION

WHEREFORE, the Appellant respectfully requests the Merit Systems Protection Board GRANT jurisdiction over his IRA Appeal, thereby ordering corrective action and all relief that the Board deems fit.

Respectfully Submitted,

Richard. C. Jackson

# EXHIBIT 2

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

\* Denotes Required Fields

# IMPORTANT INFORMATION ABOUT FILING A PPP COMPLAINT

## REQUIRED COMPLAINT FORM

Complaints alleging a prohibited personnel practice or a prohibited activity must be submitted using the Online Filing Portal or emailing OSC Form 14 to our office. Information not submitted on or accompanied by this form may be returned by OSC to the filer. The complaint will be considered filed on the date on which OSC receives the completed form. 5 C.F.R. § 1800.1, as amended.

## NO OSC JURISDICTION

OSC cannot take any action on complaints filed by employees of –

- the FBI, CIA, DIA, NSA, National Geospatial-Intelligence Agency, ODNI, National Reconnaissance Office or other intelligence agencies excluded from coverage by the President;
- the Government Accountability Office;
- the Postal Rate Commission; and
- the uniformed services of the United States (*i.e.*, uniformed military employees). OSC does have jurisdiction over civilian employees of the armed forces.

## LIMITED OSC JURISDICTION

For employees of some federal agencies or entities, OSC's jurisdiction is limited to certain types of complaints, as follows –

- FAA employees only for allegations of retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8) and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302(b)(9).
- Employees of government corporations listed at 31 U.S.C. § 9101 only for allegations of retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8) and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302 (b)(9).
- U.S. Postal Service employees only for allegations of nepotism.
- TSA employees only for allegations of discrimination under § 2302(b)(1), retaliation for whistleblowing under 5 U.S.C. § 2302(b)(8), and most allegations of retaliation for engaging in protected activities under 5 U.S.C. § 2302(b)(9).

## ELECTION OF REMEDIES

You may choose only one of three possible methods to pursue your prohibited personnel practice complaint: (a) a complaint to OSC; (b) an appeal to the Merit Systems Protection Board (MSPB) (if the action is appealable under law or regulation); or (c) a grievance under a collective bargaining agreement. If you have already filed an appeal about your prohibited

OSC Online Filing Portal

Document Number: 031402                     Generated on: 02/23/2024 12:49 AM ET

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE

Date Received by OSC : 3/30/2023

OMB No. 3255-0005

Expires 03/31/2023 332

Page 1 of 9

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER
PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

personnel practice allegations with the MSPB, or a grievance about those allegations under
the collective bargaining agreement (if the action is grievable under the agreement), OSC
may lack jurisdiction over your complaint.5 U.S.C. § 7121(g).

## COMPLAINTS INVOLVING DISCRIMINATION

- Race, Color, Religion, Sex, National Origin, Age, and Disability (or Handicapping
  Condition): OSC is authorized to investigate discrimination based upon race, color,
  religion, sex, national origin, age, or disability (or handicapping condition), as well as
  retaliation related to EEO activity. 5 U.S.C. § 2302(b)(1). However, OSC generally
  defers such allegations to agency procedures established under regulations issued by
  the Equal Employment Opportunity Commission (EEOC). 5 C.F.R. § 1810.1. If you wish
  to report allegations of discrimination based on these bases, you should contact your
  agency's EEO office immediately. There are specific time limits for filing such
  complaints. Filing a complaint with OSC will not relieve you of the obligation to file a
  complaint with the agency's EEO office within the time prescribed by EEOC
  regulations (at 29 C.F.R. Part 1614).
- Marital Status and Political Affiliation: OSC is authorized to investigate discrimination
  based on marital status or political affiliation. 5 U.S.C. § 2302(b)(1).
- Sexual Orientation and Gender Identity: OSC is authorized to investigate
  discrimination based on sexual orientation and gender identity. 5 U.S.C. §§ 2302(b)(1)
  and (b)(10). EEOC also may have jurisdiction over complaints of discrimination on
  these bases.

## COMPLAINTS INVOLVING VETERANS' RIGHTS

By law, all complaints alleging denial of veterans' preference requirements or USERRA
must be filed with the Veterans Employment and Training Service (VETS) at the
Department of Labor (DOL). 38 U.S.C. § 4301, *et seq.*, and 5 U.S.C. § 3330a(a).

## CONTACT INFORMATION

**Title:** Mr
**First Name:*** Richard
**Last Name:*** Jackson
**Middle Initial:** C

**International Address?:** No
**Address:***

OSC Online Filing Portal
COMPLAINT OF PROHIBITED PERSONNEL PRACTICE
Date Received by OSC : 3/30/2023

OMB No. 3255-0005
Expires 03/31/2023
Page 2 of 9

# COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

\* Denotes Required Fields

1023 25th Ave
Bellwood, IL 60104

**Cell Phone Number:**                                    **Home Phone Number:**
**Office Phone Number:** (312) 239-5444        **Ext.**
**Email Address:\*** rcjackson83@outlook.com

Preferred means of contact:
**Email:** Yes                                                    **Cell phone:** Yes
**Home phone:** No                                        **Office phone:** No

## REPRESENTATIVE INFORMATION

**Do you have representation?\*** No

Information about representative, if           **Last Name:\***
applicable.                                                    **Middle Initial:**
**First Name:\***

**International Address?**:
**Address:\***

**Office Phone Number:**                                **Ext.**
**Cell Phone Number:**                                    **Home Phone Number:**
**Email Address:\***

## EMPLOYMENT INFORMATION

Name of Department/Agency about which you are filing this complaint.
**Department:\*** Homeland Security
**Agency:\*** Citizenship And Immigration Services
**Agency subcomponent:**
**Street Address:** 101 W. Ida B. Wells Dr
**City:** Chicago                          **State:** IL
**Zip Code:** 60104

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

**Employment Status:*** Current Federal Employee

| Title | Series | Grade |
|-------|--------|-------|
| Officer | GS-1801 | GS-12 |

**Please provide your dates of employment in this position.**
10/31/2016

**Are you covered by a collective bargaining agreement?** Yes

| Employment Service Type | Employment Service Subtype | If Other (specify) |
|--------------------------|-----------------------------|---------------------|
| Competitive Service | Career or career-conditional appointment | |

# DETAILS OF YOUR COMPLAINT

Use this section to identify the type of Prohibited Personnel Practice (PPP) that you are alleging. You can enter more than one PPP, but you MUST choose one option. A customized series of questions will appear following your selection that you should use to provide detailed information about your complaint. You can return to this part at any time prior to submitting your complaint if you would like to add or remove allegations.

## PPPs ALLEGED

| Allegation | Retaliation for Protected Activity - (b)(9) |
|------------|---------------------------------------------|
| In what protected activity did you engage? | |
| Filed a complaint, appeal, or grievance | |
| Testified for or lawfully assisted an individual in the exercise of their right to file a complaint, appeal, or grievance | |
| Cooperated with or disclosed info to an | |

OSC Online Filing Portal

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE

Date Received by OSC : 3/30/2023

OMB No. 3255-0005

Expires 03/31/2023

Page 4 of 9

Document Upload Confirmation: 02/23/2024 12:49 AM ET

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

| | |
|---|---|
| Inspector General, OSC, or other investigator | |
| Refused to obey an order that would require you to violate a law, rule, or regulation | |
| Other | |
| When did you engage in the protected activity? | |
| Please briefly describe the nature of your protected activity. | |
| What action did the agency take in response to your protected activity? (For example, did the agency investigate or otherwise look into what you disclosed or was disciplinary action taken against responsible agency officials?) | |
| When and how did agency officials learn about your protected activity? | |
| Description of personnel action(s), if applicable. | |
| When was the personnel action(s) taken? By whom? | |
| What was the agency's stated reason for taking the personnel action(s)? | |
| What facts demonstrate that the personnel action(s) is retaliatory? (For example, were comments made that suggest that agency officials were angry | |

OSC Online Filing Portal

OMB No. 3255-0005

Document: MSPB-540-1    Date of Submission: 02/23/2024 12:49 AM ET    Expires 03/31/2023    332

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE

Date Received by OSC : 3/30/2023

Page 5 of 9

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

| | |
|---|---|
| because of your disclosure or did your relationships cool following your disclosure?) | |
| Why do you believe agency officials would retaliate against you? (For example, did agency officials suffer some adverse impact or embarrassment because of your disclosure?) | |
| Were the agency officials involved in taking the personnel actions against you accused of wrongdoing in your disclosures? If yes, which ones? | |

## PPP SUBJECTS

Agency official(s) responsible for the PPP(s) alleged:

| First Name | Last Name | Title | Chain of Command | Allegation |
|---|---|---|---|---|

## PERSONNEL ACTIONS

What personnel action(s) do you believe was taken, not taken, or threatened as part of the prohibited personnel practice(s) alleged?

| Personnel Actions |
|---|

## REQUESTED OSC ACTION

### What action would you like OSC to take?

Investigate who ordered the procurement of my credit report without my express written consent

OSC Online Filing Portal

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE

Document Number: OSC-4049    Date of Submission: 02/23/2024 12:49 AM ET

Date Received by OSC : 3/30/2023

OMB No. 3255-0005

Expires 03/31/2023

MSPB Page 2023-332

Page 6 of 9

## WHERE ELSE DID YOU REPORT THIS MATTER?

I have also reported this information to:

| Other Report Type | Action Taken Date |
|---|---|
| Appeal with Merit Systems Protection Board (MSPB) | 3/26/2023 |
| Discrimination complaint filed with agency | 3/26/2023 |

## ATTACHMENTS

Please note that the space available for attachments is limited. Therefore, DO NOT attach every document and email that may be relevant to your claim. You will have an opportunity to make additional submissions at a later date. We recommend limiting attachments to official forms and correspondence that document the action(s) at issue in your disclosure if these documents are relevant to your allegations.

**I have attached the following documents to my filing:**

| File Name |
|---|
| Leadership Guidance 2-20.eml |
| Pages - Reinvestigation Process.pdf |
| Pages - Continuous Evaluation.pdf |
| SEAD-6-continuous evaluation-U.pdf |
| DHS_Form_11000-9.pdf |
| Email to OSI.pdf |
| Motion for Protective Order Pleading.pdf |

## CONSENT

**OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. Please: (a) select and check one of the Consent Statements below; and (b) keep a copy for your own records.***

OSC Online Filing Portal
COMPLAINT OF PROHIBITED PERSONNEL PRACTICE
Date Received by OSC : 3/30/2023

OMB No. 3255-0005
Expires 03/31/2023

Page 7 of 9



COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

If you initially select a Consent Statement that restricts OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act and other applicable federal laws allow information in OSC case files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. Information about certain circumstances under which OSC can use or disclose information under the Privacy Act appears in the Form Submission part of this form.

**Consent Statement 1**

I consent to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity and information about my complaint if OSC decides that such disclosure is needed to investigate my complaint (for example, to request information from the agency or seek a possible resolution).

**Yes**

**Consent Statement 2**

I consent to OSC's communication with the agency involved in my complaint, but I do not agree to allow OSC to disclose my identity to that agency. I agree to allow OSC to disclose only information about my complaint, without disclosing my name or other identifying information, if OSC decides that such disclosure is needed to investigate my complaint (for example, to request information from the agency, or seek a possible resolution). I understand that in some circumstances, OSC could not maintain my anonymity while communicating with the agency involved about a specific personnel action. In such cases, I understand that my request for confidentiality may prevent OSC from taking further action on the complaint.

**No**

**Consent Statement 3**

I do not consent to OSC's communication with the agency involved in my complaint. I understand that if OSC decides that it cannot investigate my complaint without communicating with that agency, my lack of consent will probably prevent OSC from taking further action on the complaint.

**No**

OSC Online Filing Portal
Document Number: COMPLAINT OF PROHIBITED PERSONNEL PRACTICE    Last Date Submission: 02/23/2024 12:49 AM ET
Date Received by OSC : 3/30/2023

OMB No. 3255-0005
Expires 03/31/2023    MSPB Appendix 332
Page 8 of 9

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE OR OTHER PROHIBITED ACTIVITY

For instructions or questions, call the Case Review Division at (202) 804-7000.

* Denotes Required Fields

# CERTIFICATION

**I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine, imprisonment, or both. 18 U.S.C. § 1001.***

Yes

BURDEN: The burden for this collection of information (including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form) is estimated to be an average of one hour to submit a disclosure of information alleging agency wrongdoing, one hour and fifteen minutes to submit a complaint alleging a prohibited personnel practice or other prohibited activity, or 30 minutes to submit a complaint alleging prohibited political activity. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the U.S. Office of Special Counsel, General Counsel's Office, 1730 M Street, NW, Suite 218, Washington, DC 20036-4505.

**This complaint of Prohibited Personnel Practice(s) was received by OSC on:**

3/30/2023

> *PLEASE KEEP A COPY OF YOUR COMPLAINT, ANY SUPPORTING DOCUMENTATION, AND ANY ADDITIONAL ALLEGATIONS THAT YOU SEND TO OSC NOW OR AT ANY TIME WHILE YOUR COMPLAINT IS PENDING.* REPRODUCTION CHARGES UNDER THE FREEDOM OF INFORMATION ACT MAY APPLY TO ANY REQUEST YOU MAKE FOR COPIES OF MATERIALS THAT YOU PROVIDED TO OSC.

OSC Online Filing Portal

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE

Date Received by OSC : 3/30/2023

OMB No. 3255-0005

Expires 03/31/2023

Page 9 of 9

Document Last Updated on: 02/23/2024 12:49 AM ET

# EXHIBIT 3

03/21/2023

US GOVT

Location

ICCB-CENTRUM 4C-101
WASHINGTON, DC 20511

Phone

(301) 243-0620

TransUnion LLC
Employment Decisions
PO Box 605
Woodlyn, PA 19094



PHOERG00100013-102771182

RICHARD CORNELUIS JACKSON
1023 25TH AVE
BELLWOOD IL 60104-2403

March 22, 2023

Dear RICHARD CORNELUIS JACKSON:

TransUnion LLC is a leading consumer credit reporting agency. Our records indicate there has been an inquiry made on your credit file by the company listed below:

> US GOVT
> ICCB-CENTRUM 4C-101
> WASHINGTON, DC 20511

The inquiry was made in connection with an employment background investigation being processed by their office. The file we found, based on the identification they provided, contains public record information. The reverse side of this sheet contains the public record information contained on your credit file and provided to the company listed above as a result of their inquiry.

This notice is being sent to you in compliance with the Federal Fair Credit Reporting Act. If you would like more information on the public record(s), please contact our Consumer Relations Department at the address and phone number below:

> TRANSUNION
> 2 BALDWIN PLACE, P. O. BOX 1000
> CHESTER, PA. 19016
> 800-888-4213

We maintain and safeguard one of the nation's largest databases of consumer credit information. If you would like to obtain a copy of your TransUnion personal credit report, please visit our website at: http://www.transunion.com/direct.

Sincerely,

TransUnion LLC

# EXHIBIT 4

OMB No. 1610-0001 Expiration Date: 8/31/14

| DEPARTMENT OF HOMELAND SECURITY | FOR OFFICIAL USE ONLY |
|---|---|
| **INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION** | DEPARTMENT CASE NUMBER<br>C 15-00922-2023 |
| *(Use this form for original complaints and amendments.)* | FILING DATE<br>3-19-2023 |

## PART I COMPLAINANT IDENTIFICATION

**1. NAME** *(Last, First, Middle Initial)*
JACKSON   RICHARD   C

**2. TELEPHONE/FAX** *(Include Area Code)*

| Home<br>312 285 6390 | Fax |
|---|---|
| Work<br>312 239 5444 | Fax |

**3. HOME ADDRESS** *(You must notify the Department of any change of address while complaint is pending, or your complaint may be dismissed.)*

**4. IF YOU ARE A CURRENT OR FORMER EMPLOYEE OF THE FEDERAL GOVERNMENT, LIST YOUR RECENT TITLE, SERIES, AND GRADE.**

Title IMMIGRATION SERVICES OFFICER

Series 1801     Grade 12

**5. NAME AND ADDRESS OF ORGANIZATION WHERE YOU WORK** *(If a Department of Homeland Security Employee)*

Bureau or Component   USCIS

Office and Organizational Unit

Street Address   101 W. IDA B. WELLS DR.

City CHICAGO   State IL   Zip Code 60605

**6. EMPLOYMENT STATUS IN RELATION TO THIS COMPLAINT**

- [ ] Applicant
- [ ] Probationary
- [x] Career/Career Conditional
- [ ] Uniformed Service Member
- [ ] Former Employee/Member
- [ ] Retired     Date Left Department
- [ ] Other *(Specify)*     Date of Retirement

**7.** I certify that **all** statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.

SIGNATURE OF COMPLAINANT OR ATTORNEY REPRESENTATIVE     DATE 3-19-2023

## PART II DESIGNATION OF REPRESENTATIVE

**8.** YOU MAY REPRESENT YOURSELF IN THIS COMPLAINT OR YOU MAY CHOOSE SOMEONE TO REPRESENT YOU. YOUR REPRESENTATIVE DOES NOT HAVE TO BE AN ATTORNEY. YOU MAY CHANGE YOUR DESIGNATION OF A REPRESENTATIVE AT A LATER DATE, BUT YOU MUST NOTIFY THE DEPARTMENT IMMEDIATELY IN WRITING OF ANY CHANGE, AND YOU MUST INCLUDE THE SAME INFORMATION REQUESTED IN THIS PART.

"I hereby designate *(Please Print Name)* _____ to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

Is the representative an attorney?     [ ] YES   [ ] NO

| 9. REPRESENTATIVE'S MAILING ADDRESS<br>FIRM/ORGANIZATION | 10. REPRESENTATIVE'S EMPLOYER *(If Federal Agency)* |
|---|---|
| STREET ADDRESS | 11. REPRESENTATIVE'S TELEPHONE/FAX *(Include Area Code)*<br>Telephone     Fax |
| CITY, STATE, & ZIP CODE | 12a. COMPLAINANT'S SIGNATURE | 12b. DATE |

DHS Form 3090-1 (9/11)

## PART III ALLEGED DISCRIMINATORY ACTIONS

**13.** NAME OF PERSON OR DHS COMPONENT WHO TOOK THE ACTION AT ISSUE. CONCEPCION RAZO

FIRM/ORGANIZATION
USCIS

STREET ADDRESS
101 W. IDA B. WELLS DRIVE

CITY, STATE, & ZIP CODE
CHICAGO IL 60605

**14.** ARE YOU WILLING TO PARTICIPATE IN MEDIATION OR OTHER AVAILABLE TYPES OF ALTERNATIVE DISPUTE RESOLUTION TO RESOLVE YOUR COMPLAINT?

☑ YES    ☐ NO

**15. A.** Describe the action taken against you that you believe was discriminatory. See ATTACHED

**B.** Give the date when the action occurred, and the name of each person responsible for the action.

**C.** Describe how you were treated differently from other employees, applicants, or members for any of the reasons listed in Item 16.

**D.** Indicate what harm, if any, came to you in your work situation as a result of this action. (You may, but are not required to, attach extra sheets.)

**E.** If the basis of your complaint is parental status or sexual orientation, use this form, but your complaint is not statutorily based and will follow separate, parallel process.

**16.** Mark below **ONLY** the bases you believe were relied on to take the actions described in Item 15.

☑ RACE (Specify)

☐ COLOR (Specify)

☐ RELIGION (Specify)

☐ NATIONAL ORIGIN (Specify)

☐ SEX (Specify)
  ☐ pregnancy

☐ AGE (Date of Birth)

☑ PHYSICAL OR MENTAL DISABILITY (Describe) See ATTACHED

☐ RETALIATION/REPRISAL (Dates of Prior EEO Activity)

☐ GENETIC INFORMATION

☐ SEXUAL ORIENTATION
☐ PARENTAL STATUS

**17.** WHAT REMEDIAL OR CORRECTIVE ACTION ARE YOU SEEKING TO RESOLVE THIS MATTER

COMPENSATORY AND NON-PECUNIARY DAMAGES, RE-ASSIGNMENT

**18.** ON THIS SAME MATTER, HAVE YOU FILED A GRIEVANCE OR APPEAL UNDER:

Negotiated grievance procedure                               ☐ YES    ☑ NO

Agency grievance procedure                                   ☐ YES    ☑ NO

Merit Systems Protection Board appeal procedure              ☐ YES    ☑ NO

If you filed a grievance or appeal, provide date filed, case number, and present status.

## PART IV CONTACT

**EEO/EO Counseling is not required if you are requesting amendment of an existing, open complaint.**
**Complete items 24 and 25, even if you did not contact a counselor.**

**19.** DATE YOU CONTACTED AN EEO COUNSELOR
02/08/2023

**20.** NAME AND TELEPHONE NUMBER OF EEO COUNSELOR
Name  REBECCA (BECKI) SPECK    Phone 866-860-8885

**21.** DID YOU DISCUSS ALL ACTIONS RAISED IN ITEM 15 WITH AN EEO COUNSELOR? (If NO, explain on attached sheet)
☑ YES    ☐ NO

**22.** DATE YOU RECEIVED YOUR "NOTICE OF RIGHT TO FILE"
3-17-2023

**23.** IF YOU ARE REQUESTING AMENDMENT OF AN EXISTING, OPEN, FORMAL COMPLAINT (OR PROVIDING ADDITIONAL EVIDENCE), INDICATE THE COMPLAINT CASE NUMBER OF THAT COMPLAINT.

**24.** DATE OF MOST RECENT DISCRIMINATORY EVENT

**25.** DATE YOU FIRST BECAME AWARE OF THE ALLEGED DISCRIMINATION 01-24-2023

DHS Form 3090-1 (9/11)

OMB No. 1610-0001 Expiration Date: 8/31/14

### DEPARTMENT OF HOMELAND SECURITY

### DHS FORM 3090-1, INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION FORM INSTRUCTIONS

**(Read the following instructions carefully before you complete this form.)**
**(Please complete all items on the complaint form.)**

**GENERAL:** This form should be used only if you, as an applicant for employment with the Department of Homeland Security (DHS), or as a present or former Department of Homeland Security employee:

1.  believe you have been discriminated against because of your **race, color, religion, sex, national origin, age** (40 years or older at the time of the event giving rise to your claim), **physical or mental disability, genetic information** or in **reprisal** for opposition to activities protected by civil rights statutes, or participation in proceedings to enforce those statutes; **or**

2.  believe you have been discriminated against because of your **parental status or sexual orientation.** Your claim is not covered under statutory basis, but will be processed under a parallel procedure, **and**

3.  have presented the matter for informal resolution to an Equal Employment Opportunity (EEO) Counselor within **45 days** of the event giving rise to your claim, or within **45 days** of first becoming aware of the alleged discrimination. If you are amending or providing additional evidence to an existing open complaint, the form should be used, but EEO counseling is not required.

**IMPORTANT NOTE:** In certain situations, the information provided in Part III of the attached complaint form may be used in lieu of an affidavit in the investigation of your complaint. Accordingly, the information you provide in this part should be brief, clear, and complete.

**WHEN TO FILE:** In accordance with 29 CFR 1614.106, your formal complaint must be filed within **15 calendar days** of the date you received the "Notice of Right to File a Discrimination Complaint" from your EEO Counselor. You must sign and date your complaint. If you are represented **by an attorney**, the attorney may sign the complaint on your behalf

These time limits may be extended:

1)  if you show that you were not notified of the time limits and were not otherwise aware of them, **or**

2)  if you were prevented by circumstances beyond your control from submitting the matter within the time limits, **or**

3)  for other reasons considered sufficient by the Department.

**REPRESENTATION:** You may have a representative of your own choosing at all stages of the processing of your complaint. However, your representative will be disqualified if such representation would conflict with the official or collateral duties of the representative. No EEO Counselor, EEO Investigator or EEO Officer may serve as a representative. (Your representative need not be an attorney, but only an attorney representative may sign the complaint on your behalf.)

**WHERE TO FILE:** In accordance with 29 CFR 1614.106(c), your written complaint must be signed by you or your attorney. The complaint should be filed with the EEO Director of the Department of Homeland Security component where the alleged discrimination occurred. (Filing instructions are contained in the "Right to File" form, which was provided by your Counselor.) Keep a copy of the completed complaint form for your records.

# PRIVACY ACT STATEMENT

1.  **FORM/TITLE/DATE:** Department of Homeland Security (DHS) DHS Form 3090-1, **Individual Complaint of Employment Discrimination** with the Department of Homeland Security.

2.  **AUTHORITY:** 42 USC 2000e; 29 USC 633a; 5 USC 1303 and 1304; 5 CFR 5.2 and 5.3; 29 CFR 1614.105 and 1614.107; and Executive Order 11478, as amended.

3.  **PRINCIPAL PURPOSES:** The purpose of this complaint form, whether recorded initially on the form or taken from a letter from the Complainant, is to record the filing of a formal written complaint of employment discrimination with the Department of Homeland Security on the grounds of race, color, religion, sex, national origin, age, physical or mental disability, protected genetic information, or retaliation. Information provided on this form will be used by DHS to determine whether the complaint was timely filed and whether the allegations in the complaint are within the purview of 29 CFR Part 1614, to provide a factual basis for investigation of the complaint, and to reach a decision on the complaint. It also records an amendment or additional evidence to an open, pending complaint.

4.  **ROUTINE USES:** Other disclosures may be:

    a.  to respond to a request form from a Member of Congress regarding the status of the complaint or appeal;

    b.  to respond to a court subpoena and/or to refer to a district court in connection with a civil suit;

    c.  to disclose information to authorized officials or personnel to adjudicate a complaint or appeal; or

    d.  to disclose information to another Federal agency or to a court or third party in litigation when the Government is party to a suit before the court.

5.  **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY, AND EFFECT OF NOT PROVIDING INFORMATION:** Formal complaints of employment discrimination must be in writing, signed by the Complainant (or attorney representative), and must identify the parties and action or policy at issue. Failure to comply may result in the Department of Homeland Security dismissing the complaint. It is not mandatory that this form be used to provide the requested information.

# OMB STATEMENT

In accordance with the Paperwork Reduction Act, no persons are required to respond to a collection of information unless it displays a valid OMB Control Number. The valid OMB Control Number for this information collection is 1610-0001. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

March 19, 2023

### Case CIS-00922-2023

Richard Cornelius Jackson

Immigration Services Officer, GS-1801-12

1023 25th Ave.,

Bellwood, IL 60104

Rcjackson83@outlook.com

(312) 285-6390

in re: Formal Complaint of Harassment/Hostile Work Environment and Discrimination

### Counseling Report is Deficient and Lacks Substantive Value

The agency Equal Employment Opportunity Counselor, Rebecca (Becki) Speck, shall be referred to as "Counselor" throughout this Formal Complaint. On March 17, 2023, the Counselor provided Complainant a copy of the Counseling Report (CR) via e-mail. The direct supervisor of the Complainant is Concepcion RAZO (RAZO). The following paragraphs under this title outline what Complainant perceives to be deficiencies in the CR. Pauline WOODSON (WOODSON) is the second line supervisor.

**CR Page 2** – Date of alleged discriminatory event incorrect. Complainant has been consistent that the discriminatory event was on January 24, 2023, when RAZO was observed hiding behind his office door.

**CR Page 3, Matters Complained** – Counselor left off the key phrase "reasonable care" in allegation #4. Management officials failed to address Complainant concerns about the behavior of RAZO.

**CR Page 4 ¶ 3** – Counselor fails to question RAZO to see if she had been contacted by officials from the Vermont Service Center requesting a reference check. Counselor was notified Complainant was not selected for the position on February 23, 2023 (Exhibit A, at 1) via e-mail.

**CR** – For reasons that are her own, the Counselor failed to interview WOODSON, who has direct knowledge of the issue. This is an indication that WOODSON refused to participate for reasons that should have been documented. After years of observance, Complainant has perceived WOODSON to have a "hands-on" management style, so the Complainant is curious why she would fail to participate in the interviews for this complaint.

**CR Page 3 (footer)** – Counselor states Complainant did not provide a response to the questions about who removed his SF-15's and VA Disability letters from the job applications. This is a misrepresentation because she never asked verbally or in writing. She also failed to state why Complainant declined a Final Interview. She missed both of her scheduled meetings with him. The first time, she claimed to have had technical issues (Exhibit B) with her computer, but eventually spoke to Complainant on March 6, 2023. The second time, she claimed she thought

Page 1 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

the 11:00 am meeting was at 1:00 pm (Exhibit C, at 1). This discombobulated effort indicated a lack of professionalism, and that she was not taking the complaint seriously.

**CR Page 6 ¶ 5** – Counselor indicates that Complainant's medical conditions were factors when "these" incidents occurred, noting his service-connected depression. Notably omitted from this statement is why. The Counselor was informed via phone on March 6, 2023, that Complainant believed RAZO and WOODSON may have an animus against him because he is a disabled veteran with higher retention rights than themselves. In 2020, the agency issued furlough notices, but certain disabled veterans in the office did not receive those letters. RAZO and WOODSON were assigned to the Chicago Field Office at that time.

**CR Page 6 ¶ 8** – Counselor failed to ask RAZO:
- Who "notified" her Complainant only completed 2 cases;
- What the other production numbers of her team members were at the time she belittled Complainant;
- Why she accused Complainant of performance deficiency when she was aware the I-485 cases had "issues";
- Since she knew Officers were not given credit for review of cases that required an interview or lacked the required documents for adjudication, why did she belittle Complainant for "only completing 2" cases; and,
- Did she accuse other team members of performance deficiency in the same manner she did to Complainant.

**CR Page 7 ¶ 1** – RAZO denies hiding behind Complainant's office door despite her being observed by a witness doing so. Counselor fails to ask RAZO why she believes Complainant would make that claim if it were not true. Complainant noted her behavior on the January 25, 2023 email (CR, at 42 ¶3), and at no time has she asked him why he would make such a statement (if it was a lie).

**CR Page 7 ¶ 2** – RAZO fails to inform Counselor that her supervision was temporary and was for less than 1 month. The year was 2018 not 2019.

**CR Page 7 ¶ 3** - RAZO never stated she would help Complainant "get approvable cases". The fact that the cases he was assigned were not eligible for the "Interview Waiver" in the first place as stated under the agency's Comprehensive Interview Strategy, contradicts her statement and is unworthy of belief. It is well known in the office that she lacks the people skills needed to be a successful supervisor and comes off to her subordinates as abusive and disrespectful. She further claims Complainant did not request her assertions be put in writing, but this is not true. She was told in Complainant's office to issue a counseling and he also mentioned to management in the email from January 25, 2023 (CR, at 42 ¶4) to do so. Management has not been able or willing to do so because RAZO and management's assertions are wholly and entirely without merit and thus, are unenforceable.

Page 2 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

**CR Page 7 ¶ 4** – RAZO again provides false statements. At the time of her belittling Complainant, he did not have access to the Officer Snapshot system known as Tableau (Exhibit E).

**CR Page 8 ¶ 1** – RAZO, nor other management officials were entitled to know Complainant's medical condition(s) unless there was a need to know. Despite his medical disabilities/impairments, he has a record of sustained superior performance since onboarding in 2016. RAZO, and other management officials were aware that Complainant is a a disabled veteran at the time of her belittling him.

**CR Page 8 ¶ 5** – Counselor failed to question Mr. Kevin RIDDLE (RIDDLE) why he refused to provide the requested training for adjustment of status area of law as requested in FY2019, FY2020 and FY2021. The Counselor was advised of this fact on March 6, 2023. The 2 supervisors the Complainant was assigned to at the time were told he was not approved to be trained on adjustment of status when he had requested it. Note that this was mentioned in the email to management on January 25, 2023 (CR, at 3 ¶2).

**Page 9 Results Section** – Counselor implies that Complainant sought for RAZO to discipline her superiors. This further demonstrates the report is deficient and nonsensical.

**CR Page 9, Results Section** – Counselor states RIDDLE "avers there were no fulltime remote positions". This is baffling because it fails to adequately describe what she is referring to or state it's relevancy. The statement is vague and appears incoherent.

The investigation must remedy the above deficiencies and provide all required additional evidence and testimony. If the agency fails to do so, it should be aware the Equal Employment Opportunity Commission (Commission) has sanctioned agency's that fail to follow the regulations. Under the Commission's regulations at **29 CFR 1614.108(b)**, an agency must "develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint.". Complainant will cite non-compliance of regulation on appeal to Commission if necessary.

### Timeline of Relevant Events

On October 31, 2016, Complainant reported to the USCIS Chicago Field Office to begin his assignment as an Immigration Services Officer (ISO), Level One. In April 2019, Complainant was promoted to ISO, Level II. Thereafter, Complainant would go on to excel at the position and earn "Achieved Excellence" performance ratings for FY2019 (Exhibit D), FY2020 (Exhibit E) and FY2021 (Exhibit F). For FY2022, Complainant would fall short of a fourth consecutive Achieved Excellence rating by a mere .01 (Exhibit G).

On January 3, 2023, Complainant was assigned to RAZO's team. On January 13, 2023, Complainant informed RAZO, via Microsoft TEAMS that he had an interview scheduled for January 28th for another position. He informed her that she may be contacted for reference purposes. Later that same day, RAZO stopped by his office to check in with him about his

Richard C. Jackson v. USCIS, Case CIS-00922-2023

production on the I- 485 Interview Waiver (IW) cases that are being assigned under USCIS' Comprehensive Interview Strategy. Complainant was informed that management had an expectation that cases assigned are to be completed the same day. Complainant was already aware of this fact after the recent FOD Town Hall. Complainant informed RAZO that since the most recently assigned cases were ELIS-based, he'd need to refresh his training on processing these ELIS-based cases since that training was held way back in October 2022.

Complainant also reminded RAZO that he was on leave January 11th and 12th, so obviously that slowed his processing of assigned cases down drastically as well. He was advised by RAZO that the cases he was assigned would need to be completed by close of business. Nonetheless, he was able to complete the processing of all but 2 of the cases assigned earlier that week and he notified RAZO via e-mail. On January 17, 2023, he notified RAZO via email that he'd completed the last 2 cases from the previous week. On January 18, 2023, he e-mailed RAZO that 7/10 of the I-485 (IW) cases assigned on January 17, 2023, had been completed and that his N-400 interviews for the day were anticipated as being closed out as well (and they were).

The next visits from RAZO occurred on January 24, 2023. On two occasions, Complainant noticed she was hiding behind his officer door to catch him doing what – he is not sure. Complainant felt very uncomfortable after realizing she was spying on him. On the third visit, she stopped by his office to inform him that his production was unsatisfactory so far for the month, and that she'd need to assign him additional cases to ensure he met the target for the month. RAZO also mentioned to Complainant how newer Officers were meeting the expectation, but he wasn't. He had not at that time been advised of what the "target" is for assigned cases to be completed for the month and he informed RAZO of the fact. He also informed her that he was not sure why she was stating his production was not meeting the requirement for the month, considering he barely had any unworked cases in his office (I-485's and N-400's). Complainant asked her if the production target for the I-485's (IW) was determined if the Officer approved the case(s), or if it was still considered complete even if the Officer scheduled the case for an interview after review. Unfortunately, she did not provide an answer to that question. Complainant notes a great majority of the I-485 (IW) cases he has been assigned could not be adjudicated for various reasons such as missing required forms, inadmissibility concerns, fraud indicators etc. Other Officers have shared the same with Complainant after reviewing their own cases.

Complainant decided that RAZO's behavior needed to be reported to upper management. On January 25, 2023, he notified the following individuals via e-mail (Exhibit C, at 1) of her behavior:

- Pauline WOODSON – Branch Chief;
- Kevin RIDDLE – Field Office Director; and,
- Carissa SHEFFLER (SHEFFLER) – Deputy District Director.
- Shauna HARRISON[1] – Chief of Staff

---

[1] Complainant mentioned HARRISON in the e-mail headline but forgot to copy her on the email.

Page 4 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

SHEFFLER was the first to respond, asking for an opportunity to handle the issue at the local level and he obliged. However, he was adamant with RIDDLE that he did not want RAZO and WOODSON to attend. After not getting a response from RIDDLE, Complainant decided to file his complaints formally.

### Complaints Submitted Seeking Redress

*Office of Special Counsel*

On January 28, 2023, Complainant contacted the U.S. Office of Special Counsel (OSC) and filed a complaint against RAZO, alleging a violation of a Prohibited Personnel Practice under **5 U.S.C. § 2302(b)(4), Abuse of Authority and Hostile Work Environment.** Complainant believed that RAZO's actions were done to have pretext to provide a negative reference to officials from the Vermont Service Center under USCIS Job Announcement ESC-2022-0044 (Exhibit H). On February 27, 2023, the OSC determined that it could not pursue the allegations brought by Complainant (Exhibit I, at ¶1). OSC confirmed that a complaint of harassment would not interfere with OSC's investigation (Exhibit J, at 1).

*Agency*

On February 9, 2023, Complainant filed a **Harassment** complaint with the agency Anti-Harassment Hotline (CR, at 38). On February 10, 2023, Complainant submitted Form G-1476A, Request to Initiate Pre-Complaint Process (CR, at 12) via e-mail to the agency Office of Equal Opportunity and Inclusion. Complainant alleged the actions of RAZO were discriminatory in nature based on his **race and disability** status. He also alleged that he was not selected for USCIS Job Announcement ESC-2022-0044 based on **discrimination and retaliation.** No resolution was reached between the agency and the Complainant, resulting in the agency submitting the CR indicating the same (CR, at 9). Note that Complainant finds the agency's CR deficient and believes it lacks any substantive value (Jackson Formal Complaint, 2023, at 1-3).

*Department of Labor*

On July 25, 2022, Complainant filed a complaint with the Department of Labor (DOL), Veterans' Employment & Training Service. He alleged the agency had violated his **veterans' preference rights** for job announcements due to non-selection. However, he requested the case be closed to avoid being retaliated against (Exhibit K). The DOL closed the case as requested (Exhibit L). On February 13, 2023, Complainant filed a second complaint with DOL. He alleged the same and requested an investigation. The DOL determined he was outside of the required 60-day timeframe, and on February 23, 2023, DOL closed the complaint (Exhibit M). On March 14, 2023, Complainant filed a third complaint with DOL after learning he was not selected for the most recent position under USCIS Job Announcement ESC-2022-0044. On February 23, 2023, Complainant received an email (Exhibit N, at 1) from the hiring office stating that selections had been made. The case is pending review.

*Merit Systems Protections Board*

Page 5 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

On March 7, 2023, Complainant filed an Appeal with the Merit Systems Protections Board (MSPB). He alleged the agency violated his **veterans' preference rights**, appealing the DOL decision from February 23, 2023 (Exhibit O, at 5). Complainant has submitted Pleadings per the Administrative Judge's (AJ) Orders. While preparing his Pleadings to the AJ, he noticed that 16/18 of his job applications within USCIS had the Form SF-15, Application for 10-point Veteran Preference and disability letters from the Department of Veterans Affairs were removed from his applications. Complainant reviewed the applications thoroughly and verified that he did in fact indicate he was a 10-point preference eligible veteran. He also reviewed the decisions of the agency Human Resource Specialists, which indicated that 6 of the 16 job applications he was rated as Best Qualified-Referred (Exhibit P). An applicant who is rated as Best Qualified-Referred, would not have been rated such if the application was incomplete to begin with. This is an indication that the agency removed the SF-15 and VA disability letters when the job announcement had closed. As of the date of this complaint, the agency has not responded.

### Agency has Jurisdiction Over its Own Discriminatory Acts

This Formal Complaint is submitted to the agency in accordance with **29 C.F.R. § 1614.106**. This complaint is timely filed. The Complainant asserts that the agency is **vicariously liable** for the discriminatory harassment he received from his supervisor (CR, at 14), citing **Vance v. Ball State University, 133 S. Ct. 2434 (2013).**

The Complainant alleges the agency violated **Title VII of the Civil Rights Act of 1964; Uniformed Services Employment and Reemployment Rights Acts(USERRA); Vietnam Era Veterans' Readjustment Assistance Act of 1974, American with Disabilities Act of 1990 (ADA) and Section 503 of the Rehabilitation Act of 1973** (CR, at 52).

*Denial of Reasonable Accommodation*

At all relevant periods, Complainant was a 10-point preference disabled veteran and identifies his race as African American. Agency violated the Complainants rights when it failed to **initiate the interactive process** for his Reasonable Accommodation request (CR, at 52). Also see **29 C.F.R. § 1630.2(o)(3).**

Per the **ADA** and **Rehabilitation Act**, an employer cannot ask for documentation when the individual has already provided the employer with sufficient information to substantiate that he has an ADA-recognized disability and needs the reasonable accommodation requested. The agency unnecessarily delayed my request out of malice. The Commission finds an agency liable when assessing:

- the reason(s) for the delay,
- the length of the delay,
- how much the individual with a disability and the employer each contributed to the delay,
- what the employer was doing during the delay, and
- whether the required accommodation was simple or complex to provide.

Page 6 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

On February 15, 2023, he submitted his Reasonable Accommodation to the agency, where it languished for 7 days. After Complainant sent an e-mail (CR, at 34) to the agency specialists requesting an update, he was informed the assigned specialist was out for the week. He was further informed to send his supervisor documents he deemed sensitive and to complete an additional Reasonable Accommodation form (CR, at 32) Complainant considered this request for additional information unreasonable and treated it as a denial of his Reasonable Accommodation due to his belief that he had already given the agency a request for an accommodation (Exhibit Q). He'd also submitted sufficient information with the request to indicate he had a disability and that it was diagnosed as such (Exhibit R).

*Hiring Discrimination*

The agency violated **Title I of the ADA, 29 CFR Part 1630** and **29 CFR Part 1614**, when it **discriminated** against the Complainant by denying him jobs via the competitive process. He alleged that the agency discriminated against him based on his race and disability status (CR, at 30) as it relates to his job applications. While  preparing his response to the MSPB AJ's Orders, learned his submitted job applications were altered after all job announcements closed. He raised the issue with the Counselor, but her handling of his complaint lead him to lose faith in her ability to provide adequate counseling. As a result, he decided to terminate the counseling period (Jackson Formal Complaint, 2023, at 1-3).

*Retaliation*

Complainant alleges the agency retaliated against him for having filed complaints (CR, at 53). He also alleges retaliation as it relates to not being offered the position under USCIS Job Announcement ESC-2022-0044.

*Hostile Work Environment*

The agency created a hostile work environment when it failed to exercise **reasonable care**, after a complaint was submitted to upper management officials on January 25, 2023, Regarding RAZO's discriminatory acts (CR, at 52).

Due to these **discriminatory acts**, the agency has **sole jurisdiction** over **this** complaint. The agency is prohibited from fragmenting this complaint by deferring to other agencies. See Complainant v. Inter-American Foundation, EEOC Appeal No. 0120132968. The agency has jurisdiction over its own discriminatory practices for the stated claims and the Commission has review authority of its decisions. For example, the MSPB will review whether the agency violated the **Veterans Employment Opportunity Act (VEOA)** by unlawfully altering my job applications so that I would not be entitled to veterans' preference, and whatever other punishment it deems necessary.

Complainant will exercise his right to appeal any dismissal, final action or decision of this complaint. He will exercise his right to a Hearing immediately should the complaint not be completed at 180 days.

Page 7 of 8

Richard C. Jackson v. USCIS, Case CIS-00922-2023

Best Regards,

Richard C. Jackson

Page **8** of **8**



**U.S. Department of Homeland Security**
U.S. Citizenship & Immigration Services
*Office of Equal Opportunity and Inclusion*
9360 Ensign Ave S, Suite 151
Bloomington, MN  55438

## REPORT OF EQUAL EMPLOYMENT OPPORTUNITY (EEO) COUNSELING
## CASE NUMBER: HS-CIS-00922-2023

| | |
|---|---|
| **Aggrieved Person:** | Richard C. Jackson |
| **Home Address:** | 1023 25th Avenue<br>Bellwood, IL 60104 |
| **Organizational Unit:** | Chicago Field Office<br>101 West Ida B. Wells Drive<br>Chicago, IL 60605 |
| **Aggrieved's Representative (if any):** | None |
| **Submitted By:** | Becki Speck, EEO Counselor |
| **Organizational Unit:** | OEOI<br>9360 Ensign Ave S, Suite 151<br>Bloomington, MN 55438 |
| **Telephone Number:** | 1-866-860-8885 |

### INSTRUCTIONS FOR THE USE OF THIS FORM

*If the individual does not allege discrimination because of race, color, sex, national origin, sexual orientation, religion, age or mental or physical disability in connection to the matter complained of, complete only the above portion of this page; items 1, 2, and 9 of Part A and items 1, 2, and 3 of Part B before submitting the Report of EEO Counseling. Note under Item 3 of Part B any corrective action the individual received.*

*If discrimination because of one of the above factors is alleged, complete ALL items before submitting the Report of EEO Counseling and use item 8 of Part B to report any corrective action received. Attach supplemental sheets referencing item numbers if additional space is required.*

## PART A: KEY DATES

**Chronology of EEO Counseling**

| | |
|---|---|
| **Date of initial contact:** | 02/08/2023 |
| **Date of initial interview:** | 03/06/2023 |
| **Dates of alleged discriminatory event:** | January 14 to February 22, 2023, and unspecified dates |
| **Reason for delayed contact beyond 45 days:** | N/A |
| **Date of counseling extension:** | 03/01/2023 |
| **Date notice of right to file sent to complaint:** | 03/16/2023 |
| **Date of offer of assistance in completing DHS-3090-1:** | 03/16/2023 |
| **Date counseling report submitted:** | 03/16/2023 |

# PART B

**Bases for alleged discrimination:**

Race, Disability, and Reprisal

**Matters complained of:**

Richard Jackson (hereinafter referred to as "The Aggrieved") alleges he was discriminated against and harassed based on race (African American/Black), disability (physical and mental), and reprisal (complaints of harassment) when:

1. On January 13, 2023, his supervisor spoke to him about production expectations;
2. On January 24, 2023, his supervisor spied on him twice through his office window;
3. On January 24, 2023, his supervisor claimed he was not meeting production expectations;
4. Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment;
5. Since February 15, 2023, management has failed to engage in the interactive process for his request for reasonable accommodation; and
6. On February 22, 2023, he was assigned a Level II interview bundle and directed to sit in on interviews with a new ISO.
7. On unspecified dates, documents were removed from his applications for positions within the Agency. [1]

**Corrective action sought:**

The Aggrieved requests the following:

(1) Management accountability.
(2) Disciplinary actions for management in the Chicago Field Office, to include Concepcion Razo, Pauline Woodson, and Kevin Riddle.
(3) Position outside of the Chicago Field Office, to include remote work.
(4) Compensatory damages.
(5) Non-Pecuniary damages.

---

[1] The Aggrieved reported applying for 10 positions within the Agency, but was not selected. He stated he is pursuing those non-selections through the Merit Systems Protection Board (MSPB). He reported that when pursing that action, he learned the Agency removed his SF-15 and VA Disability letters from all 10 of his applications. Complainant was asked whether he knew who removed the forms, and if those actions were taken by HR or by his direct management. He did not respond to those questions, and declined to engage in a final interview.

**Summary of inquiry:**

*Includes documents reviewed during the inquiry, summaries of interviews conducted, and a summarization of the informal attempt.*

Complainant contacted USCIS Office of Equal Opportunity and Inclusion (OEOI) Complaint Resolution Division (CRD) on February 8, 2023, initially alleging discrimination and harassment on the bases of race (African American/Black) and Disability (mental and physical) when (1) on January 13, 2023, his supervisor spoke to him about production expectations; (2) on January 24, 2023, his supervisor spied on him twice through his office window; (3) on January 24, 2023, his supervisor claimed he was not meeting production expectations; and (4) since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment. Complainant spoke with an intake counselor and chose to participate in traditional EEO counseling. Complainant received his rights and responsibilities on January 10, 2023.

**Summary of interview with the Aggrieved:**

**The Aggrieved** states he has been employed as an Immigration Services Officer (ISO) II, GS-1801-12, at the Chicago Field Office for five years. He identifies his race as African American/Black, and reports suffering from both physical and mental disabilities. He reports he engaged in protected activity when he complained of disparate treatment and a hostile work environment on January 25, 2023.

The Aggrieved states he began working on Supervisory ISO Concepcion Razo's team on January 3, 2023. He reports soon thereafter, he told Ms. Razo he had applied for a position at the Vermont Service Center. He avers from that time onward, he noticed a change in Ms. Razo's behavior towards him.

<u>On January 13, 2023, his supervisor spoke to him about production expectations.</u>

The Aggrieved states that on January 13, 2023, Ms. Razo came to his office to discuss production expectations. He recalls she told him that management expected all ISOs to complete cases in one day. He reports he already knew of management's expectations because Field Office Director Kevin Riddle relayed that information during a town hall meeting. He avers no one completed cases in one day. He states he believed Ms. Razo likely spoke with everyone on the team about Mr. Riddle's expectations.

<u>On January 24, 2023, his supervisor spied on him twice through his office window.</u>

The Aggrieved reports that on January 24, 2023, he observed Ms. Razo spying on him through a window next to his office. He notes this occurred on two separate occasions on January 24, 2023. He states Ms. Razo was trying to see what he was working on, and notes one of his co-workers also saw Ms. Razo watching him (the Aggrieved). He avers he did not observe Ms. Razo watching any of his colleagues while they worked.

<u>On January 24, 2023, his supervisor claimed he was not meeting production expectations.</u>

The Aggrieved reports that on January 24, 2023, Ms. Razo came to his office to speak with him about his production. He states Ms. Razo claimed his production numbers were below what was expected of him. He recalls she also told him that newer ISOs were more productive than he was. He reports questioning Ms. Razo about her claims, and asked whether the newer ISOs were completing the work properly or just rushing through cases. He avers Ms. Razo was unable to provide him with specific examples or numbers to prove his production was low. He states he also asked Ms. Razo to put her claims in writing, but she did not.

<u>Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment.</u>

The Aggrieved states that on January 25, 2023, he sent an email to Mr. Riddle, Ms. Razo, Chicago Deputy District Director Carissa Sheffler, Branch Chief Pauline Woodson, and Union Representatives Kurt Ketavong and Samuel Lopez expressing he had been treated unfairly and subjected to prohibited employment practices. He reports informing management that Ms. Razo claimed his production was lacking and also that she had been spying on him from the hallway. He recalls Ms. Sheffler responded by saying she wanted to handle his concerns at the local level. He reports trying to set up a meeting with Mr. Riddle on February 2, 2023, but he (Mr. Riddle) planned to have Ms. Razo and/or Ms. Woodson in attendance. He states he did not want Ms. Razo or Ms. Woodson there because he felt they were responsible for the hostile work environment. He reports cancelling the meeting with Mr. Riddle as he planned to initiate an EEO complaint.

<u>Since February 15, 2023, management has failed to engage in the interactive process for his request for reasonable accommodation.</u>

The Aggrieved reports he submitted a request for reasonable accommodation on February 15, 2022, asking to have all instructions from Ms. Razo be provided to him in writing. He states he followed-up his request on February 16, 2022, and provided documentation of his service-connected status for Depression. He states he did not receive a response to his request for reasonable accommodation.

The Aggrieved states that on February 22, 2022, he emailed Agency Headquarters Reasonable Accommodation Specialists asking for an update on his request. He reports he was told he needed to submit medically sensitive information to Ms. Razo, which he believed violated HIPAA. He states he would not provide medical documentation to Ms. Razo, and assumed that information should be submitted to Headquarters. He avers the Agency failed to engage in the interactive process, and he understood the lack of action to be a denial of his request for reasonable accommodation.

<u>On February 22, 2023, he was assigned a Level II interview bundle and directed to sit in on interviews with a new ISO.</u>

The Aggrieved reports that on February 22, 2022, management assigned what he believed was a Level III interview bundle, which was the most difficult bundle. He states he was

also tasked with sitting in on interviews with a new ISO.  He reports ISOs were never assigned a Level III bundle <u>and</u> assigned to mentor a new ISO on the same day.  He avers these assignments were retaliation for his complaints of Ms. Razo discriminating against him and creating a hostile work environment.

The Aggrieved notes he had been an ISO II since April 2018 and had never been assigned a Level III bundle and told to sit in with another ISO.  He avers that workload causes a stressful and unbearable workday.

The Aggrieved states he sent an email to management about the assignment, and noting he would not tolerate their disparate treatment or retaliation.  He reports Ms. Razo canceled the tasking to have him sit in on interviews.  He recalls Ms. Woodson told him the interview bundle was a Level II, and not a Level III.  He notes even if that was true, the cases required more time and testimony, and that would make it so he could not sit in on interviews with the ISO.

The Aggrieved states his race was a factor when these incidents occurred.  He explains almost immediately after being assigned to Ms. Razo's team, she began to excessively monitor him.  He notes she was not treating anyone else that way.

The Aggrieved reports his medical conditions were factors when these incidents occurred, noting he had service-connected Depression.

The Aggrieved states he was assigned the Level II bundle and tasked to sit in on interviews with a new ISO only after he complained of discrimination and harassment. He avers these assignments were retaliation for protected activity.

**Summary of interview with RMOs:**

**RMO Concepcion Razo** has been employed as a Supervisory ISO, GS-13, at the Chicago Field Office for five years.  She reports her race is Hispanic.  She identifies her direct supervisor as Ms. Woodson, and notes she is the Aggrieved's direct supervisor. She reports she is aware of the Aggrieved's race, but has no knowledge of his medical condition or a disabling illness.

<u>On January 13, 2023, his supervisor spoke to him about production expectations.</u>

Ms. Razo states that on January 10, 2023, she spoke with everyone on her team about management's expectations for signing interview waivers and I-45s.  She explains all ISOs had been assigned 10 cases, and it was brought to her attention that of the 10 assigned, the Aggrieved completed only two cases.  She states she knew there were problems with some cases being completed as they were missing medical information or other documents.  She avers she spoke with everyone on her team, and the Aggrieved was in no way singled out for this conversation.  She notes she needed to know the work status for everyone on her team.

On January 24, 2023, his supervisor spied on him twice through his office window.

Ms. Razo denies spying on the Aggrieved through his office window.

On January 24, 2023, his supervisor claimed he was not meeting production expectations.

Ms. Razo reports she spoke with the Aggrieved on January 24, 2023, about his production. She explains the week prior, she noticed the Aggrieved completed only six cases. She states that was concerning to her so she went to his office to find out why his production was low that week. She notes the Aggrieved was a very good officer and she supervised him previously in 2019.

Ms. Razo states she asked the Aggrieved about his low production for the week at issue, noting her concern. She reports telling the Aggrieved she would help him get cases that would be approvable. She maintains she did not approach the Aggrieved to reprimand or threaten him. She states the Aggrieved did not ask her to put anything in writing.

Ms. Razo states all officers have access to a the Officer Snapshot, a tool that provides the officer with an overall picture of their production. She states she told he Aggrieved he could review his production himself, noting how many cases he completed and what the office expected him to complete.

Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment.

Ms. Razo states she was copied on email correspondence in which Mr. Riddle agreed to meet with the Aggrieved about his concerns. She reports the Aggrieved cancelled the meeting and it was not rescheduled.

Since February 15, 2023, management has failed to engage in the interactive process for his request for reasonable accommodation.

Ms. Razo states she was copied on email correspondence indicating the Aggrieved requested reasonable accommodation, but denies having any knowledge of the type of accommodation he sought or any additional information about it. She notes she was not responsible for any action following receipt of the email.

On February 22, 2023, he was assigned a Level II interview bundle and directed to sit in on interviews with a new ISO.

Ms. Razo reports the Aggrieved was assigned to observe an ISO I conduct interviews. He states when the Aggrieved reviewed the interview bundle, he learned it was a Level II. She states there was no intent to assign a difficult bundle on this occasion. She explains they have no control over how the system generates interviews.

Ms. Razo denies the Aggrieved's race, disability, or protected activity were factors for an of the events that occurred.

**RMO Kevin Riddle** has been employed as Field Office Director, GS-15, since December 2019. He identifies his race as Caucasian. He reports his direct supervisor is Ms. Sheffler, and notes he is the Aggrieved's third-line supervisor. He states he is aware of the Aggrieved's race, but not his medical condition or disabling illness.

Mr. Riddle reports he first learned of the Aggrieved's concerns with Ms. Razo via email on January 25, 2023. He states Ms. Sheffler responded to the email within approximately 45 minutes and stated she hoped the matter could be resolved at the local level, but noted she respected the Aggrieved's right to engage in the EEO process. He states he provided his own response to the Aggrieved approximately four hours later and proposed meeting to discuss his concerns.

On January 13, 2023, his supervisor spoke to him about production expectations.

Mr. Riddle reports he put out a message during a town hall meeting that officers were to have the same urgency on all cases, whether or not they had a family seated in front of them. He states Ms. Razo was repeating the message he sent. He avers the Aggrieved was not singled out for this information, noting he made this statement at a town hall meeting.

On January 24, 2023, his supervisor spied on him twice through his office window.

Mr. Riddle states he had never observed Ms. Razo spying on anyone or sneaking around the office. He reports supervisors were expected to supervise and monitor their teams.

On January 24, 2023, his supervisor claimed he was not meeting production expectations.

Mr. Riddle reports expressing concerns to those he supervised about productivity within the office. He states they had an obligation to ensure their officers were productive. He notes they underwent a restructuring in January 2023, and many officers were still acclimating to new processes.

Mr. Riddle states they monitored the efficiency of all officers in the Chicago Field Office. He states supervisors have been instructed to speak with individuals not meeting their thresholds. He recalls the Aggrieved claimed there was no evidence his production was lower than expected. He states he sent the Aggrieved a copy of the Officer Snapshot showing the standard and efficiency levels and where his production was. He notes the Aggrieved was below expected production and his conversation with Ms. Razo was just to bring his awareness to that.

Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment.

Mr. Riddle states he planned to meet with the Aggrieved on February 2, 2023, to discuss the concerns he brought forward in his January 25, 2023, email. He recalls the Aggrieved told him that he did not want Ms. Razo or Ms. Woodson to attend the meeting. He notes Ms. Razo and Ms. Woodson were relevant parties, and states he consulted with LER to determine whether the Aggrieved's request was appropriate. He states he informed the Aggrieved that he noted his concern about who should attendance the meeting and would take that into consideration as they attempted to resolve the matter at the lowest level. He reports soon thereafter, the Aggrieved informed him that he no longer wished to proceed with the meeting and planned to move forward with initiating a complaint.

<u>From February 15 through February 22, 2022, management failed to act on his request for reasonable accommodation.</u>

Mr. Riddle states they received the Aggrieved's request for reasonable accommodation and tried to follow up with OEOI. He notes he was still waiting to hear back from them. He avers some requests for reasonable accommodation are straightforward and can be acted upon, and others are more complicated. He states he was still within a normal response time for a request for reasonable accommodation. He states reasonable accommodation is a legal decision and he was waiting on OEOI.[2]

<u>On February 22, 2022, he was assigned a Level III interview bundle and directed to sit in on interviews with a new ISO.</u>

Mr. Riddle reports the cases were not as advanced as the Aggrieved initially thought. He denies this assignment was retaliation.

Mr. Riddle states the Aggrieved's race, disability, and protected activity were not factors in the events that occurred.

**Results:**

Resolution was not achieved.

Ms. Razo reports she has no authority to issue disciplinary actions to management or approve remote work.

Mr. Riddle states he did not believe disciplinary action was appropriate as he did not view management's action as misconduct. He avers there were no fulltime remote positions.

**Attachments:**

    a. Complaint intake form.
    b. Email communication, informal complaint.

---

[2] Derek Pace, the individual assigned to Complainant's request for reasonable accommodation, was contacted for information during EEO Counseling. He did not respond to a request for information.

   c.  Addendum Statement
   d.  Extension Agreement
   e.  Notice of right to file a formal complaint of discrimination.
   f.  Formal Complaint form.

Intake Form

# Request to Initiate EEO Pre-Complaint Process



**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form G-1476A**
For Internal Use

---

## Part 1. Personal Information

1. First Name
   `Richard`
   Middle Initial
   `C`
   Last Name
   `Jackson`

2. Home: Street Address and Apartment Number (no P.O. Boxes)
   `1023 25th Ave`

   City or Town
   `Bellwood`
   State
   `IL`
   Territory
   ZIP Code
   `60104`

   Country
   `USA`

3. Your Contact Information

   Home Telephone Number
   Your Cell Telephone Number
   `(312) 285-6390`

   Your Email Address
   `rcjackson83@outlook.com`

## Part 2. Employment Information

1.a. Your Physical Work Location
   `101 W Ida B Wells Drive`
   b. Work Zip Code
   `60605`

2. Office for Which You Work
   `USCIS Chicago Field Office`

3.a. Position
   `Immigration Services Officer II`
   b. Series
   `1801`
   c. Grade
   `12`

   d. Work Email Address
   `richard.c.jackson@uscis.dhs.gov`
   e. Work Phone Number
   `(312) 239-5444`

   f. Bargaining Unit Status
   `Yes`

4.a. Office Responsible for Alleged Discrimination
   `USCIS Chicago Field Office`

4.b. Office Where the Alleged Discrimination Occurred (if different than 4.a.)

---

| Richard | C | Jackson |
|---------|---|---------|

## Part 3.  The Protected Bases Upon Which You Believe You Were Discriminated Against

Bases:

1. ☒ Race

Black or African American

Specify:

2. ☐ National Origin

Specify:

3. ☐ Color

Specify:

4. ☐ Sex

Specify:

5. ☐ Religion

Specify:

6. ☐ Age (month/year of birth)

7. ☒ Physical Disability (please identify your disability)

Disabled Veteran Status

8. ☒ Mental Disability (please identify your disability)

Disabled Veteran Status

9. ☐ Reprisal (date of prior EEO activity) (mm/dd/yyyy)

10. ☐ Genetic Information (GINA)    11. ☐ Parental Status

## Part 4.  Non-Selection (Promotion or Hire)

Does your allegation of discrimination involve non-selection (promotion or hire)?    ☐ Yes    ☒ No

## Part 5.  Harassment

Does your allegation of discrimination involve harassment?    ☒ Yes    ☐ No

1. Date the Alleged Harassment Began  (mm/dd/yyyy)

01/24/2023

2. Date of the Most Recent Act of Alleged Harassment (mm/dd/yyyy)

01/24/2023

3. Identify the Management Official(s) Responsible for the Alleged Harassment

Concepcion RAZO

| Richard | C | Jackson |
|---------|---|---------|

## Part 5. Harassment (continued)

4. Briefly describe the incident or action taken that you believe was discriminatory.

Not even a full month after being assigned to Supervisor RAZO's team, she began to excessively supervise me by hiding behind my office door on 2 occasions in an attempt to catch me doing what - I'm not sure. I do note that she has not done this to any of the other members on my team to my knowledge. She has accused me of being deficient in performance orally, but has refused to provide me the requested written performance counseling to put the assertion on record. When management was made aware of the behavior of Supervisor RAZO, I was asked to allow the issue to be addressed at the local level by management and I obliged. However, I insisted on having a say on who would attend the meeting. After my objection to individuals I believe to be the cause of the harassment were not excluded from the meeting, I decided to file my complaints formally. While I can only speculate as to why Supervisor RAZO would feel the need to hide behind the office door of one of this office's most productive employees, I do believe it may be linked to some form of racial animus she may have. I also believe her behavior towards me may be due to my status as a disabled veteran. I am confident EEOC's investigation will corroborate my allegations, as there is no other reasonable explanation for Supervisor RAZO's behavior towards me. I have an outstanding performance record at USCIS and none of my previously assigned supervisors have treated me in the manner that she has. USCIS is liable for the conduct of its supervisors. See Vance v. Ball State University, 133 S. Ct. 2434 (2013). In addition to being a minority in the workplace, Disabled Veterans are also are a protected class. See Americans with Disabilities Act of 1990.

5. Did you report the harassment to management?    ☒ Yes    ☐ No

6.a. The Management Official(s) You Reported the Discrimination To

Carissa Sheffler, Kevin Riddle, Pauline Woodson

6.b. Date You Reported the Discrimination (mm/dd/yyyy)

01/24/2023

7. Did you report the harassment to the Anti-Harassment Hotline or Office of Investigations?    ☒ Yes    ☐ No

8. Date You Reported the Harassment to the Anti-Harassment Hotline or Office of Investigations (mm/dd/yyyy)

02/09/2023

## Part 6. Reasonable Accommodation

Does your allegation of discrimination involve a denied reasonable accommodation?    ☐ Yes    ☒ No

## Part 7. Performance Evaluation

Does your allegation of discrimination involve performance evaluations?    ☐ Yes    ☒ No

| Richard | C | Jackson |
|---------|---|---------|

## Part 8. Disciplinary Action

Does your allegation of discrimination involve any form of discipline or adverse action?    ☐ Yes  ☒ No

Includes: Written Reprimands, Suspensions, Terminations, or Reductions in Grade or Pay.

## Part 9. Other Issues

Does your complaint involve a discrete act of any of the following situations (Check any that apply; there is no need to complete this section if these issues occurred as part of a broader harassment complaint)    ☐ Yes  ☒ No

| Richard | C | Jackson |

## Part 10. Requested Resolution and Initial Contact Date Clarification

1.  **REQUESTED RESOLUTION:** What remedies are you seeking in order to resolve your EEO complaint?

    > I would like to leave the duty station that I am currently assigned to. It is well known that managers who are subject to complaints from their employees face reprisal. I also would like Supervisor RAZO to face disciplinary action. The upper management at the Chicago Field Office should also disciplined for failing to take actionable steps to remove me from Supervisor RAZO's team when notified of her behavior. If the requested resolution cannot be met, I will seek to be made whole by exercising my rights via civil action against this employer.

2.  For complaints initiated more than 45 days after the alleged discriminatory event or effective date of the personnel action, please explain the reason for your delay.

| Richard | | C | | Jackson | |

## Part 11. Notification of Rights and Responsibilities

**I am advised of the following:**

1. If I believe I have been discriminated against because of my race, color, religion, sex, national origin, sexual orientation, age, physical disability, mental disability, parental status, genetic information and/or subjected to reprisal in an employment matter subject to the control of the agency I may have the choice of more than one route to file a complaint and to have it resolved.

   a. **Option for employees outside of a bargaining unit.** If I am not a member of a bargaining unit covered by a union contract, I have the right to select one of the following options:

      i. I may pursue a discrimination complaint under the procedures covered by **MD-110** from the U.S. Equal Employment Opportunity Commission (EEOC). My first step under this procedure is to contact an Equal Employment Opportunity (EEO) intake counselor within 45 calendar days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of action. If the complaint is not resolved, I may file a formal EEO complaint.

      ii. I may pursue a discrimination complaint under the U.S. Merit System Protection Board (MSPB) appeal procedure. This procedure is available to me only if the alleged discriminatory action can be appealed to the MSPB. If I am subject to a personnel action that is appealable to the MSPB, I will be notified in writing of my right to appeal to the MSPB. Under such an appeal, I am entitled to a hearing by the MSPB. In addition, I may petition the EEOC to review the final decision of the MSPB on the allegation(s) of discrimination.

   b. **Option for employees within a bargaining unit.** If I am a member of a bargaining unit covered by a union contract, and if the negotiated grievance procedure in that contract does not specifically exclude discrimination issues, I have the right to select one of the following options:

      i. I may pursue a discrimination complaint under the procedures as described in paragraph 1.a.(i) above.

      ii. I may pursue a discrimination complaint under the MSPB appeal procedure as described in paragraph 1.a.(ii) above.

      iii. I may pursue a discrimination complaint under the negotiated grievance procedure. My union contract outlines the grievance steps including review by the (EEOC).

   c. **Option for contract employees.** If I am a contract employee, I may select from the following actions:

      i. I may make direct contact with my contract firm.

      ii. I may pursue a discrimination complaint under the procedures as described in paragraph 1.a.(i.) above; or

      iii. I may make direct contact with the appropriate EEOC office for guidance.

   d. **Allegations of discrimination or harassment based on parental status.** If I am alleging discrimination or harassment based parental status, I am advised that:

      i. I may pursue a discrimination complaint under the procedures as described in paragraph 1.a.(i) above.

      ii. I may pursue a discrimination complaint under the negotiated grievance procedure, if I am a member of the bargaining unit; or

      iii. Allegations of discrimination or harassment based on parental status, unlike other bases, is not subject to a hearing before an EEOC administrative judge or an appeal to EEOC or MSPB.

   e. **Allegations of discrimination based on age (40 and over).** In addition to filing an EEO complaint, a mixed-case appeal with MSPB (if applicable) or a negotiated grievance (if applicable) as described above, I may elect to bypass the administrative procedure and file a civil action directly in an appropriate U.S. District Court, after first filing a written notice of intent to file a civil action with the EEOC within 180 calendar days of the date of the alleged discriminatory action. Once a timely notice of intent to sue is filed with the EEOC, I must wait at least 30 calendar days before filing a civil action. I must also be aware that if I elect to file an administrative complaint rather than filing directly in U.S. District Court, I must exhaust my administrative remedies before I can file a civil action. I will have exhausted my administrative remedies if one of the following has occurred:

      i. Within 90 calendar days of receipt of final DHS decision on my complaint if no appeal has been filed;

      ii. Within 90 calendar days of receipt of the EEOC's final decision on my appeal;

| Richard | C | Jackson |
|---------|---|---------|

    iii. After 180 calendar days from the date I filed an appeal with the EEOC if there has been no final decision by the EEOC; or

    iv. After 180 calendar days from the date of the filing of the complaint if an appeal has not been filed and a final agency decision has not been issued.

Should I elect to bypass the administrative procedure in an age discrimination complaint set forth in section 1.e. above, I am responsible for providing the following information in my notice of intent to sue:

    v. The date prepared;

    vi. Statement of intent to file a civil action under Section 15(d) of the Age Discrimination in Employment Act of 1967 (ADEA), as amended;

    vii. My name, address, and telephone number of my designated representative, if any;

    viii. Name, address, and contact information of my designated representative, if any;

    ix. Name and location where the alleged discriminatory action(s) occurred.

Notices of Intent to Sue under the ADEA must be submitted to the EEOC at the following address:

Federal Sector Programs
U.S. Employment Opportunity Commission
131 M Street NE, 4th Floor
Washington, DC 20507

    **f.  Allegations of discrimination based upon sex-based wage discrimination.** If I am alleging sex-based wage discrimination under the Equal Pay Act (EPA) I have the right to go directly to the U.S. District Court even though such claims are also recognizable under Title VII. A civil action must be filed within two (2) years of the date of occurrence, or within three (3) years of the date of occurrence if the violation is alleged to be willful. I understand that the filing of an administrative complaint does not toll the time for the filing of a civil action.

2.  I have the right to a representative of my choice throughout the complaint process, provided that I do not choose as my representative a management official or agency counsel of the responding agency. I understand that it is my responsibility to notify the Chief, Office of Equal Opportunity and Inclusion (OEOI), Complaints Resolution Division (CRD) with the identity and contact information of my representative. I understand that if I later choose to have representation (attorney or non-attorney) I will immediately inform the Chief, OEOI CRD, of my change in representation and provide the contact information for my new representative. I understand that if my representative is an attorney all official correspondence, documents, and decisions will be served on my attorney and that any official time periods will be calculated from the date that individual receives such item(s). I understand that if my representative is not an attorney all official correspondence, documents, and decisions will be served on me.

3.  I may request reasonable accommodations in order to participate in the complaint process for any disability or religious obligation that I may have. I understand that I must submit all such requests to USCIS OEOI CRD at **CIS-OEOI-CRD@uscis.dhs.gov.**

4.  I understand that if I allege harassment or a hostile working environment my allegations will be directly referred to the USCIS Anti-Harassment program per the requirements MD-715 from the EEOC. I may obtain information regarding this program at the following link: **https://connect.uscis.dhs.gov/org/MGMT/OEOI/Pages/Anti-Harassment.aspx.**

I understand that I may contact the program directly by submitting an email to **anti-harassmenthotline@uscis.dhs.gov** or calling **1-877-445-9965.**

5.  During the pre-complaint processing period I have the right to choose between mediation and traditional EEO counseling. I understand that unless I enter into a settlement agreement with the agency or withdraw my complaint I will be issued a notice of right to file a formal complaint of discrimination at the conclusion of the pre-complaint period which terminates the pre-complaint period and initiates the formal complaint processing period. I understand that the overall goal of participating in either mediation or traditional EEO counseling is to settle all outstanding complaints or grievances against the agency. I understand that I need to be prepared to discuss all outstanding issues in order to resolve the complaint.

| Richard | | C | | Jackson | |
|---|---|---|---|---|---|

6. I am notified that if I participate in mediation the pre-complaint period is automatically extended by **60 calendar days**. I understand that if I participate in mediation and do not enter into a settlement agreement or withdraw my complaint I will receive, in writing, my notice of right to file a formal complaint of discrimination upon the completion of the pre-complaint period or **within 90 calendar days** of the date that I initially contacted the EEO office in order to file my complaint, whichever is earlier. I understand that I may file a formal complaint of discrimination 90 days after the date that I initially contacted the EEO office in order to file my complaint in the event that the agency does not provide the written notice of right to file a formal complaint of discrimination.

7. I am notified that if I participate in traditional EEO counseling and do not enter into a settlement agreement I will receive, in writing, my notice of right to file a formal complaint of discrimination upon the completion of the pre-complaint period or **within 30 calendar days** of the date that I initially contacted the EEO office in order to file my complaint, whichever is earlier, unless I have agreed to extend the pre-complaint period. I understand that I may agree to extend the pre-complaint period up to **60 calendar days** in order to complete traditional EEO counseling. I understand that I may file a formal complaint of discrimination 30 days after the date I initially contacted the EEO office in order to file my complaint in the event that the agency does not provide the written notice of right to file a formal complaint of discrimination and no extension is secured.

8. I have the right to remain anonymous during traditional EEO counseling. If I choose to remain anonymous the counselor will refrain from revealing my identity except by my authorization.

9. The notice of right to file a formal complaint of discrimination I receive will advise me of the following:

   a. The pre-complaint period has been terminated.

   b. The right to file a formal complaint of discrimination within **15 calendar days** of receipt of the notice.

   c. The appropriate official with whom to file a formal complaint.

   d. My duty to immediately inform the agency if I retain counsel or a representative.

10. I am responsible for filing a formal EEO complaint within **15 calendar days** of receipt of the notice of right to file a formal complaint of discrimination in the event that I wish to file a formal complaint after my complaint is not settled or otherwise resolved by either traditional EEO counseling or mediation.

11. I am responsible for informing the servicing EEO office of my election of redress. Whichever formal action I file first (a MSPB mixed-case appeal, a discrimination complaint under the EEO complaint procedure, or a written grievance under the negotiated grievance procedure) is considered to be an election to proceed in only that forum. Thus, I am aware that:

   a. An appeal to the MSPB will not be accepted if I first have filed a timely formal complaint in writing under the EEO complaint procedure or a timely written grievance under the negotiated grievance procedure.

   b. A discrimination complaint filed under the EEO complaint procedure will be dismissed if I first have filed a timely appeal to the MSPB or a timely-written grievance under the negotiated grievance procedure on the same matter.

12. I may not raise allegations of discrimination, which are subject to final administrative review by the EEOC, in administrative grievance procedures.

13. I may amend a pending EEO complaint by adding claims that are like or related to those claim(s) raised in the pending complaint at any time prior to the conclusion of the investigation by submitting a letter stating that I wish to amend the existing complaint and describing the new incident(s) to:

   U.S. Citizenship and Immigration Services
   Office of Equal Opportunity and Inclusion
   9360 Ensign Ave. South, Suite 151
   Bloomington, MN 55438
   (802) 860-6532 (Facsimile)
   CIS-OEOI-CRD@uscis.dhs.gov (Email)

14. I am advised that if I have filed two or more complaints the agency must consolidate them and provide me appropriate notice of the consolidation. When a complaint has been consolidated with one or more earlier complaints the agency shall complete its investigation within the earlier of 180 days after the filing of the last complaint or 360 days of the filing of the first complaint.

| Richard | | C | | Jackson |
|---|---|---|---|---|

15. I am advised that I may request a hearing before an EEOC Administrative Judge 180 calendar days after I have filed a formal complaint of discrimination pursuant to Title 29, Code of Federal Regulations (CFR), section 1614.108(g). I understand that my request should be made directly to the appropriate EEOC field office and that I must notify the responding agency of my hearing request. I understand that the website identifying the EEOC field office which has jurisdiction over my complaint can be found at: https://www.eeoc.gov/federal/directives/md-110_appendix_n.cfm.

I am also advised that I may submit my request for hearing before an EEOC Administrative Judge through EEOC's public portal located at https://publicportal.eeoc.gov within 30 calendar days of the receipt of the report of investigation.

I also understand that I must submit a copy of the request for the hearing to:

> U.S. Citizenship and Immigration Services
> Office of Equal Opportunity and Inclusion
> 9360 Ensign Ave. South, Suite 151
> Bloomington, MN 55438
> (802) 860-6532 (Facsimile)
> CIS-OEOI-CRD@uscis.dhs.gov (Email)

I understand that it is my duty to certify to the Administrative Judge that the agency was provided with a copy of the request for hearing.

16. I have the right to file a lawsuit in U.S. District Court **180 calendar days** after filing a formal complaint, **180 calendar days** after filing an appeal with the EEOC on which the EEOC has not reached a decision, or **90 calendar days** after I receive notice of an EEOC decision on an appeal. I understand that the EEOC will cease processing of my complaint if I file a lawsuit in U.S. District Court.

17. I have the right to file a lawsuit in U.S. District Court **90 calendar days** after I have received an agency decision on my complaint, provided that no appeal of that decision was filed.

18. I have a legal obligation to mitigate damages, regardless of whether it is later determined that I was a victim of unlawful discrimination. A successful complainant claiming back pay will be paid the amount I would have earned had it not been for discrimination, less any amount I actually earned or could have earned with due diligence, plus interest. I understand that interest on back-pay is not payable to federal employees or applicants who prevail on employment discrimination claims brought under the ADEA or EPA.

19. The rejection of an agency's offer of resolution made pursuant to Title 29 CFR 1614.109(c) may result in the limitation of the amount of attorney's fees or costs I can recover.

20. I am responsible for serving the Notice of Appeal and a copy of the brief (if any) on the agency should I elect to appeal an agency decision to the EEOC, Office of Federal Operations.

21. I am responsible for ensuring that the Chief, OEOI CRD, is advised in writing of my current mailing address at all times during the processing of my EEO complaint. Failure to keep the agency informed of my current address may result in dismissal of my complaint.

22. I understand that all correspondence for my complaint will be sent to my USCIS email address unless I specify that a different email address be used. I understand that USCIS OEOI CRD will send important information about my complaint to me via email and that I should regularly check my email to receive this information.

23. If I have any other questions on this matter, I may contact the EEO office. The address and phone number for USCIS OEOI CRD is:

> U.S. Citizenship and Immigration Services
> Office of Equal Opportunity and Inclusion
> 9360 Ensign Ave. South, Suite 151
> Bloomington, MN 55438
> (866) 860-8885 (Toll-Free Telephone Number)
> (802) 860-6532 (Facsimile)
> CIS-OEOI-CRD@uscis.dhs.gov (Email)

| Richard | C | Jackson |
|---------|---|---------|

## Notification of Choice Between Mediation and Traditional EEO Counseling

During the pre-complaint process you must choose to participate in either mediation or traditional EEO counseling. Your decision is important because it often takes between 1 and 5 years for a formal complaint of discrimination to conclude. The pre-complaint process is your first opportunity to make a positive change that addresses the issues raised in your complaint.

Mediation is a process during which you and a representative from management meet with a mediator in order to discuss the best way to resolve your complaint. The representative from management will not be a manager you allege is directly responsible for the discrimination against you. The mediator is a neutral party in the dispute. The mediation will occur within 90 days of the date that you initially filed the complaint.

Mediation can be very powerful when used early in a dispute and statistics show that an agreement can be reached more quickly through mediation than when pursuing the problem through the formal complaint process. Furthermore, you are far more likely to reach an agreement with the agency through mediation as opposed to traditional EEO counseling. At mediation, the emphasis is placed on how can the issues raised in the complaint be resolved and what are the steps to moving forward. By electing mediation you now have an opportunity to enter a forum that provides you a powerful added benefit to resolving your complaint at the lowest level.

Traditional EEO counseling is a process in which an EEO counselor conducts a limited inquiry into your allegations of discrimination. The counselor will interview you to fully understand your allegations of discrimination, obtain narratives from management that respond to the allegations that you raise, and collect limited documentation related to your claims. The counselor will then attempt to resolve your complaint by speaking with management officials in your chain-of-command. The information collected by the counselor will be provided to you in a report at the conclusion of the pre-complaint process.

If your complaint is not resolved through either mediation or traditional EEO counseling by the end of the pre-complaint processing period you will then be issued a notice of right to file a formal complaint of discrimination and be allowed to move on to the formal complaint process.

If you have any questions about mediation or traditional EEO counseling please call our phone number at **1-866-860-8885** or **952-697-8676**.

## Part 12.  Election of Choices

**Having been advised of my rights and responsibilities, I advise the Agency of the following:**

In regards to Mediation/Traditional EEO Counseling during the pre-complaint process:

☐ I request to participate in Mediation.

☒ I request to participate in Traditional EEO Counseling and waive anonymity

☐ I request to participate in Traditional EEO Counseling and request anonymity

In regards to any concurrent or pending complaint (if applicable):

☐ I have another active EEO complaint.

☐ I have filed a union grievance.

☐ I have filed an appeal with the Merit Systems Protection Board.

In regards to representation (**select only one**):

☒ I do not have a representative.

☐ I have a representative who is an attorney.

☐ I have a representative who is **NOT** an attorney.

| Richard | C | Jackson |
|---------|---|---------|

## Part 12.  Election of Choices (continued)

The name and contact information for my representative (if applicable):

Name:

Organization:

Address:

City/State/ZIP:

Telephone Number:                         Email Address:

I would like future correspondence to address me using the following pronouns (**select only one**):

☒ He/His/Him

☐ She/Hers/Her

☐ They/Theirs/Them

Reasonable Accommodation:

☐ I need a reasonable accommodation in order to participate in the EEO compliant process.

The accommodation(s) needed is/are:

_____

_____

_____

_____

Having been advised of my rights and responsibilities in the EEO complaint process I voluntarily submit this complaint of discrimination.

Signature (or type name)                          Date of Signature (mm/dd/yyyy)

02/10/2023

You should be contacted by an EEO Specialist within 2 weeks of returning the required documentation to our office.  Please call **1-866-860-8885.** if more than 2 weeks have passed and you have not been contacted by someone about your complaint.

Submit by Email

To be completed by OEOI personnel only

| Initial Contact Date |
|----------------------|
| 2/8/23 |

| Richard | | C | | Jackson |
|---------|--|---|--|---------|

## USCIS Privacy Act Statement

**AUTHORITIES:** The information requested on this form, and the associated evidence, is collected pursuant to The Equal Employment Opportunity Act of 1972; 42 U.S.C.2000e -6; Pl. 95-602 as amended; 5 USC 1303 and 1304; 5 CFR 5.2 and 5.3; 29 CFR 16 14the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. 633a; the Rehabilitation Act of 1973,as amended, 29 U.S.C 794a; and Executive Order 11478 ,as amended.

**PURPOSE:** The information will be used to resolve your EEO complaint and to obtain information to determine jurisdictional questions and information for settlement purposes.

**DISCLOSURE:** Failure to provide the requested information may result in dismissal of the complaint in whole or in part.

**ROUTINE USES:** The information you provide on this form may be shared with other Federal, state, local, and foreign government agencies and authorized organizations in accordance with approved routine uses, as described in the associated published system of records notices [EEOC/GOVT-1 EEO in the Federal Government Complaint and Appeal Records, which can be found at www.dhs.gov/privacy]. The information may also be made available, as appropriate for law enforcement purposes or in the interest of national security.

From:           Kozel, Leslie E
To:             Lindstrom, Michelle N
Subject:        FW: Request for Pre-Complaint Counseling
Date:           Wednesday, February 8, 2023 9:59:09 AM

Hi Michelle,

An intake for you.

Thanks.

**Leslie Ebert Kozel**
she/her/hers
**Equal Employment Specialist, Complaint Resolution Division**
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
9360 Ensign Ave. South | Bloomington, MN 55438
OEOI Satisfaction Survey (surveymonkey.com)
Mobile 952-456-2478

**From:** CIS-OEOI-CRD <CIS-OEOI-CRD@uscis.dhs.gov>
**Sent:** Wednesday, February 8, 2023 9:41 AM
**To:** Kozel, Leslie E <Leslie.E.Kozel@uscis.dhs.gov>
**Subject:** FW: Request for Pre-Complaint Counseling

Intake

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, February 8, 2023 9:17 AM
**To:** CIS-OEOI-CRD <CIS-OEOI-CRD@uscis.dhs.gov>
**Subject:** Request for Pre-Complaint Counseling

Good morning,

I'm writing to request pre-complaint EEO Counseling. I believe the conduct of my **newly assigned** supervisor **may** have been discriminatory in nature. I also believe management is complicit in the behavior due to its failure to properly address my concerns. USCIS is subject to the U.S. Supreme Court's decision in **Vance v. Ball State University, 133 S. Ct. 2434 (2013).** USCIS may also be liable for violating the **Americans with Disabilities Act of 1990,** as I am a 90% disabled veteran rated by the Department of Veterans Affairs**.** While I intend to resolve the issue with USCIS, I am fully prepared for legal action should my issue be addressed unsatisfactorily. Please also be advised I am simultaneously addressing other concerns with the Office of Special Counsel

I look forward to your response.

Respectfully Submitted,

## Richard Cornelius Jackson

Immigration Services Officer II | Great Lakes District Office C-34| CHI-DET-DSM-MIL-STL

101 West Ida B. Wells Drive

Chicago, IL 60605

312-239-5444 <u>Richard.c.jackson@uscis.dhs.gov</u>



WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.

From:     Lindstrom, Michelle N
To:         Jackson, Richard C
Subject:   Informal EEO Complaint Forms
Date:      Thursday, February 9, 2023 1:45:00 PM
Attachments: image001.png
              ADR Flyer 2021 Final.pdf
              G-1476A, Request to Initiate EEO Pre-Complaint Process.pdf

Please let me know if you have any questions. Thanks, Michelle

### Informal Complaint Notice

**You are receiving this email because you recently contacted an EEO Counselor about the process to file an informal EEO complaint.**

Please complete the attached PDF version of the G-1476A Request to Initiate the EEO Pre-Complaint Process. You must choose to participate in either mediation or traditional EEO counseling at Part 11 of this form. Once you select a forum of either mediation or traditional counseling, you will not be able to change the forum selected.

You may request official time from your office to work on your complaint if you are a current USCIS employee. Here is the link to the official time form. If you receive a message that adobe reader 8 or higher is required, save the document to your desktop and open the form from your desktop.

**Please return the form G-1476A Request to Initiate EEO Pre-Complaint Process within three (3) business days.**

#### Information about our Mediation Program

If you select mediation our office will assign a mediator, who has no vested interest in the outcome of the complaint, to act as a moderator in a meeting between you and a USCIS manager. The meeting will occur on a pre-appointed date, time and location that are mutually agreed upon by all parties. The goal of the discussion is to determine the best way to resolve the complaint. The mediation will take place within 90 days of the date that you first made your complaint. We recommend mediation as the most likely way to resolve your claims because you get to participate in your own resolution and the goal is to mutually come to a resolution.

#### Information about Traditional EEO Counseling

If you select traditional EEO counseling our office will assign an EEO counselor to your complaint. The counselor will conduct a limited inquiry into your complaint. The counselor will interview you and then interview the management official that you allege is responsible for discriminating against you. The counselor may also gather limited documentation related to the complaint if necessary. The counselor will speak with a manager with settlement authority and attempt to resolve your informal complaint based on your demands for resolution. You have the right to anonymity during traditional EEO counseling.

#### After you submit your documentation to our office:

You should be contacted by an EEO Specialist within 2 weeks of returning the required documentation to our office. Please call 952-697-8676 or email CIS-OEOI-CRD@uscis.dhs.gov if more than 2 weeks have passed and you have not been contacted by someone about your complaint.

You may either email the information to CIS-OEOI-CRD@uscis.dhs.gov or fax the information to 802-860-6532. Please be advised that any mail sent to our office address may be delayed.

Sincerely,

Michelle Lindstrom
She | Her | Hers
Equal Employment Opportunity Specialist | Complaint Resolution Division
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
Office Phone: (952) 697-8582  <u>michelle.n.lindstrom@uscis.dhs.gov</u>



Email correspondence

| From: | Lindstrom, Michelle N |
|---|---|
| To: | Jackson, Richard C |
| Cc: | Anti-HarassmentHotline |
| Subject: | Referral of Harassment Complaint |
| Date: | Monday, February 13, 2023 7:06:00 AM |
| Attachments: | image001.png |

Please be advised that because you alleged harassment or a hostile working environment, your allegation has been referred to the USCIS Anti-Harassment Program for further processing within that program as required by EEOC Management Directive 715.  Please refer to https://connect.uscis.dhs.gov/org/MGMT/OEOI/Pages/Anti-Harassment.aspx for further program information.

This referral does not affect the processing of your EEO complaint.  You will be contacted separately by our office for further processing of your EEO complaint.

Please use electronic methods to submit any documentation to our office.  You may email the information to CIS-OEOI-CRD@uscis.dhs.gov or fax the information to 802-860-6532.

Michelle Lindstrom
She | Her | Hers
Equal Employment Opportunity Specialist | Complaint Resolution Division
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
Office Phone: (952) 697-8582  **michelle.n.lindstrom@uscis.dhs.gov**



## RE: Revised Demands

Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>

Sat 3/11/2023 1:08 PM

To: Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>

Cc: rcjackson83@outlook.com <rcjackson83@outlook.com>

Hello Rebecca,

Please be advised that while preparing to respond to the Administrative Judge regarding my MSPB complaint, I learned that the agency had removed my Form SF-15 and VA Disability letters from all 10 of the job announcements I wasn't selected for. In light of this fact, The discriminatory based harassment and hostile work environment nexus is now clear. I now demand compensatory and non-pecuniary damages from this agency. The amount will be determined by a later date.

---

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Wednesday, March 8, 2023 9:39 AM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Re: Rescheduled Interview

Harassment is included in your current complaint, and I am speaking to management about your allegations.  Can you let me know where and when you initiated a separate harassment complaint?

Thanks,

Becki

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Tuesday, March 7, 2023 1:12 PM
**To:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Subject:** RE: Rescheduled Interview

Good afternoon Rebecca,

I wanted to ask about the Harassment complaint that I submitted. It appears that the agency has failed to investigate the complaint. I would like to add that added to the list of violations, unless that is something that you are tasked with.

---

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Monday, March 6, 2023 1:22 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Re: Rescheduled Interview

One follow-up question - do you recall who you spoke with at HQ regarding your request for reasonable accommodation?  Or was it a generated email response?

Thanks,

Becki

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Monday, March 6, 2023 12:45 PM

**To:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Subject:** RE: Rescheduled Interview

Hello again Rebecca,

Thank you for reaching out today. I just wanted to send this document I typed up last night. I'd like to ensure my perspective is clear so that you have a good understanding of the perceived...complaints. Thank you again.

---

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Wednesday, March 1, 2023 12:25 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Re: Rescheduled Interview

Let's plan for Monday at 10am CDT.  I will give you a call then.

Glad I'm finally online!

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, March 1, 2023 1:24 PM
**To:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Subject:** RE: Rescheduled Interview

Great! Thank you for the update. Monday, March 6th 10 am would be ok, or anytime before 12 pm since I have an appointment at 1:00.

---

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Wednesday, March 1, 2023 12:03 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Rescheduled Interview

Hello Mr. Jackson,

Now that I'm back on my system, please let me know if any of the following days/times work for you.  I'm available today until 3pm CDT, as well as the following:

Thursday 3/2 - 10am to 3pm CDT
Monday 3/6 - 10am to 3pm CDT
Tuesday 3/7 - 10 am to 3pm CDT

Regards,

Becki Speck

Becki Speck
Contract EEO Investigator
Tel: (317) 764-0776

## FW: RAR0044080 Acknowledgment of Request for Reasonable Accommodation

Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>

Mon 3/6/2023 4:32 PM

To: Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>

Rebecca,

Please see Part 2 response attached below regarding response from HQ for Reasonable Accommodation.

---

**From:** Sutton, Sandra M (Sandi) <Sandra.M.Sutton@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 6:33 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Cc:** Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Pace, Derek K <derek.k.pace@uscis.dhs.gov>
**Subject:** FW: RAR0044080 Acknowledgment of Request for Reasonable Accommodation

Thank you for contacting the USCIS Disability Accommodations Program.  Your case has been assigned and the case/assigned specialist are noted below.

**Requesting Employee/Job Applicant**:    Richard Jackson

**Case Number:   RAR0044080**

**Assigned DAP Specialist:** Derek Pace: derek.k.pace@uscis.dhs.gov

Here is a brief overview of the Reasonable Accommodation Process.  The Disability Accommodation Program does not make the actual decision about whether the requested accommodations will be granted; rather they advise employees and managers/supervisors and coordinate the process.  The final decision about whether to grant the request or not, and responding to you accordingly, will be the responsibility of your manager/supervisor and will be communicated in writing (Form G-1473) within 20 days absent extenuating circumstances.  If the accommodation is approved, DAP may pay for any costs associated with the accommodation through the Central Accommodation Fund, provided there is sufficient medical documentation establishing that you are an individual with a disability and that the accommodation is medically necessary for you to perform the essential functions of your job or enjoy equal benefits and privileges of employment.

To proceed with your request, please provide the following information to your supervisor, with a copy to the DAP Specialist listed above.

1. If your disability is not obvious, we need a medical statement from your doctor which identifies your diagnosis (and prognosis, if your medical condition isn't permanent), restrictions, recommendations and a statement about why the accommodation is needed (you may provide a memo from your doctor or use Medical Inquiry Form G-1439);
2. Completed Request for Accommodation Form G-1437; and
3. Copy of your current position description.

Please provide the information requested above at your earliest opportunity.  If you have already provided the above referenced documentation, there is no need to resend it.

Sincerely,

Disability Accommodations Program
Disabilityaccommodations@uscis.dhs.gov

## FW: RAR0044080 has been assigned to your group

Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>

Mon 3/6/2023 4:33 PM

To: Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>

Rebecca,

Please see Part 1 response attached below regarding response from HQ for Reasonable Accommodation.

---

**From:** Sutton, Sandra M (Sandi) <Sandra.M.Sutton@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 6:25 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** RE: RAR0044080 has been assigned to your group

Good afternoon,
Your request is assigned to Derek Pace. He is out this week. Do you have any medical documentation stating what your restrictions and functional limitations are? We would also need some recommendations for accommodations that will assist you in performing your essential job functions. That information will be needed to address your current request.

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 5:46 PM
**To:** ITSERVICENOW <ITSERVICENOW@hq.dhs.gov>; Pace, Derek K <derek.k.pace@uscis.dhs.gov>; Marshall, Desiree <desiree.d.marshall@uscis.dhs.gov>; Allison, Lane X (Laney) <lane.x.allison@uscis.dhs.gov>; Sutton, Sandra M (Sandi) <Sandra.M.Sutton@uscis.dhs.gov>; Pace, Brandon <Brandon.Pace@HQ.DHS.GOV>; Brouillette, Jody A (She/Her) <Jody.A.Brouillette@uscis.dhs.gov>; Lemos, Ashley N <ashley.n.lemos@uscis.dhs.gov>; Patel, Chandresh G (Chris) <chandresh.g.patel@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>
**Subject:** RE: RAR0044080 has been assigned to your group

Good evening,

Please provide an update on my Reasonable Accommodation request. This was submitted last week and it appears that it is being…ignored. Thank you.

---

**From:** ITSERVICENOW <Accessibility@HQ.DHS.GOV>
**Sent:** Wednesday, February 15, 2023 8:17 PM
**To:** Pace, Derek K <derek.k.pace@uscis.dhs.gov>; Marshall, Desiree <desiree.d.marshall@uscis.dhs.gov>; Allison, Lane X (Laney) <lane.x.allison@uscis.dhs.gov>; Sutton, Sandra M (Sandi) <Sandra.M.Sutton@uscis.dhs.gov>; Pace, Brandon <Brandon.Pace@HQ.DHS.GOV>; Brouillette, Jody A (She/Her) <Jody.A.Brouillette@uscis.dhs.gov>; Lemos, Ashley N <ashley.n.lemos@uscis.dhs.gov>; Patel, Chandresh G (Chris) <chandresh.g.patel@uscis.dhs.gov>
**Cc:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>; Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>
**Subject:** RAR0044080 has been assigned to your group

| |
|---|
| # Office of the Chief Information Officer |
| ## OAST ACMS Notification |
| |

RAR0044080 has been assigned to your Component's reasonable accommodation specialist(s).

If you are the supervisor on record , no actions is needed at this time until the assigned RA specialist contact you.

| | |
|---|---|
| **Assigned To:** | DHS OAST - USCIS Reasonable Accommodation Admins |
| **Ticket Number:** | RAR0044080; Click https://dhs.servicenowservices.com/oast |
| **Requested for:** | JACKSON, RICHARD |
| **Date & Time:** | 2023-02-15 21:13:33 EST |

[This is an automated email generated by ACMS. This ticket has been created **or** updated by RICHARD JACKSON; email address is richard.c.jackson@uscis.dhs.gov on 2023-02-15 21:13:33 EST]

This is an official notification from the DHS Office of Accessible Systems & Technology (OAST). To unsubscribe from future notifications please access your Notification Preferences.

Ref:MSG33616882

## FW: Harassment

**Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>**

Wed 3/8/2023 10:46 AM

To: Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>

📎 2 attachments (608 KB)

Exhibit 1.pdf; Harassment Form.pdf;

Good morning Rebecca,

Please see below the forwarded email and the attached docs that were sent.

Also, please be aware that the MSPB has docketed my Appeal in which I allege USCIS has violated the **VEOA of 1998**, due to non-selection of <u>at least</u> 8 job announcements. I don't believe that will impact the EEO proceedings but since this is new to me, I wasn't sure if you should be notified.

---

**From:** Jackson, Richard C
**Sent:** Thursday, February 9, 2023 9:21 AM
**To:** Anti-HarassmentHotline <anti-harassmenthotline@uscis.dhs.gov>
**Subject:** RE: Harassment

Good morning,

Please see attached.

---

**From:** Anti-HarassmentHotline <<u>anti-harassmenthotline@uscis.dhs.gov</u>>
**Sent:** Thursday, February 9, 2023 8:56 AM
**To:** Jackson, Richard C <<u>richard.c.jackson@uscis.dhs.gov</u>>
**Subject:** Harassment

Good Morning,

Will you please fill out the questions below.

| | Response |
|---|---|
| **Information about you (the person alleged to have been harassed)** | |
| Name | |
| Job title | |
| Program Office or Directorate (FOD, SCOPS, RAIO, etc.) | |
| City & state where you work | |
| GS level | |
| **Information about the alleged harasser(s)/subject(s) (include all)** | |
| Name | |
| Job title | |
| Program Office or Directorate (FOD, SCOPS, RAIO, etc.) | |
| City & state where they work | |
| Relationship to you (supervisor, peer, contractor, etc.) | |

| Date of the incident(s) | |
|---|---|
| Description (be as thorough as possible) | |
| **Basis of harassment allegations** | |
| Do you believe the alleged harassment was based on a protected class or basis (see above)? | |
| If so, which basis (see above)? | |
| If you do <u>not</u> believe the alleged harassment was based on a protected class or basis, what do you believe it was attributed to? | |
| **Additional information** | |
| Include any relevant information | |

**Next steps:**
- Include pdf copies of any relevant documentation
- Provide your responses by the close of business on **MONDAY, February 13, 2023**.

**Questions?**
Contact the USCIS Anti-Harassment Program (AHP) at:
anti-harassmenthotline@uscis.dhs.gov
(877) 445-9965 or (952) 697-8678

Additionally, should you wish to speak with someone directly, please contact AHP to schedule a call.

**<u>Alternatively, the following resources are also available to you:</u>**
Employee Assistance Program (EAP) 800-222-0364

Workplace Violence Prevention Program (WVPP):
https://connect.uscis.dhs.gov/org/MGMT/HCT/Pages/Workplace-Violence-Prevention.aspx

Thank you.
## Anti-Harassment Program
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
Tollfree: **(877) 445-9965** | Local: **(952) 697-8678** | anti-harassmenthotline@uscis.dhs.gov
How did we do?  Take the OEOI Survey!



**Jackson, Richard C**

| | |
|---|---|
| **From:** | Anti-HarassmentHotline |
| **Sent:** | Thursday, February 9, 2023 8:56 AM |
| **To:** | Jackson, Richard C |
| **Subject:** | Harassment |

Good Morning,

Will you please fill out the questions below.

| | Response |
|---|---|
| **Information about you (the person alleged to have been harassed)** | |
| Name | Richard C. Jackson |
| Job title | IMMIGRATION SERVICES OFFICER 2 |
| Program Office or Directorate (FOD, SCOPS, RAIO, etc.) | FOD |
| City & state where you work | CHICAGO, IL |
| GS level | 12 |
| **Information about the alleged harasser(s)/subject(s) (include all)** | |
| Name | CONCEPCION RAZO |
| Job title | SUPERVISORY IMMIGRATION SERVICES OFFICER |
| Program Office or Directorate (FOD, SCOPS, RAIO, etc.) | FOD |
| City & state where they work | CHICAGO, IL |
| Relationship to you (supervisor, peer, contractor, etc.) | SUPERVISOR |
| **Date of the incident(s)** | |
| Description (be as thorough as possible) | See EXHIBIT 1 |
| **Basis of harassment allegations** | |
| Do you believe the alleged harassment was based on a protected class or basis (see above)? | YES - RACE, VETERAN STATUS |
| If so, which basis (see above)? | RACE, VETERAN STATUS |
| If you do not believe the alleged harassment was based on a protected class or basis, what do you believe it was attributed to? | |
| **Additional information** | |
| Include any relevant information | EXHIBIT 1 ATTACHMENT |

**Next steps:**
- Include pdf copies of any relevant documentation
- Provide your responses by the close of business on **MONDAY, February 13, 2023**.

**Questions?**
Contact the USCIS Anti-Harassment Program (AHP) at:

1

# EXHIBIT 5

anti-harassmenthotline@uscis.dhs.gov
(877) 445-9965 or (952) 697-8678

Additionally, should you wish to speak with someone directly, please contact AHP to schedule a call.

**Alternatively, the following resources are also available to you:**
Employee Assistance Program (EAP) 800-222-0364

Workplace Violence Prevention Program (WVPP):
https://connect.uscis.dhs.gov/org/MGMT/HCT/Pages/Workplace-Violence-Prevention.aspx

Thank you.
## Anti-Harassment Program
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
Tollfree: **(877) 445-9965** | Local: **(952) 697-8678** | anti-harassmenthotline@uscis.dhs.gov



2

## Jackson, Richard C

| | |
|---|---|
| **From:** | Riddle, Kevin J |
| **Sent:** | Thursday, January 26, 2023 11:05 AM |
| **To:** | Jackson, Richard C; Sheffler, Carissa L |
| **Cc:** | Ketavong, Kurt V; Lopez, Samuel J |
| **Subject:** | RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice |

Hi Richard,

I have noted your concerns about who should be in attendance, and I will take them into consideration when setting up this meeting intended to resolve this at the lowest level.

Thank you,

Kevin

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 5:04 PM
**To:** Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Cc:** Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Kevin,

I appreciate your email. The morning of February 2nd is fine. However, I do not wish for Connie or Pauline to attend. I do believe the issue I now have with Connie is at the point of no return.

---

**From:** Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 3:53 PM
**To:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>; Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Hi Richard,

Thank you for your email and sharing your concerns with us. We would be happy to meet with you to further discuss these issues. Would the morning of February 2nd work for you?

In the meantime and in response to your request for documentation, please see attached officer snapshot. One helpful data set this document shows are trends in Equivalent Units (EUs) over the last six months. The current expectation that has been set by FOD for EUs is 111 per officer per month. The dip that was seen in October can be attributed to cross-training that took much of the focus of our officer corps. As of today, your current EUs for January are 34.67.

1

I recognize that you have a history of solid performance in this office. In addition, I appreciate your sincere commitment to the important work we do here at USCIS. I look forward to further discussing your concerns and am confident we can resolve them.

Thank you,

Kevin

---

**From:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 12:44 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Good afternoon Richard,

Thank you for email and sharing your perceptions.  I do hope that this can be resolved at a local level, but I respect your right to engage the EEO process.

Thank you,
Carissa

---

**Carissa Sheffler |** Deputy District Director | USCIS District C34 | CHI-DET-DSM-MIL-STL | 312-239-5505

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 12:03 PM
**To:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Good afternoon Pauline, Kevin, Shauna and Carissa,

I've decided to submit this e-mail based on recent events that have occurred with my newly assigned supervisor, that have raised a level of concern. I intend for this e-mail to serve as my record of notification to my employer regarding perceived unfair treatment and a possible prohibited personnel practice.

On or about January 13, 2023, my supervisor stopped by my office to check in with me about my production on the I-485 (IW) cases that are being assigned under USCIS' Comprehensive Interview Strategy. I was informed that management had an expectation that cases assigned are to be completed the same day. I was already aware of this fact after the recent FOD Town Hall. I informed my supervisor that since the most recently assigned cases were ELIS-based, I'd need to refresh my training on processing these ELIS-based cases since the training was held way back in October 2022. I also reminded my supervisor that I was on leave January 11th and 12th, so obviously that slowed my processing of assigned cases down drastically as well. I was advised by my supervisor that the cases I was assigned would need to be completed by close of business. Nonetheless, I was able to complete the processing of all but 2 of the cases assigned earlier that week and I notified my supervisor via e-mail. On January 17, 2023, I notified my supervisor via email that I'd completed the last 2 cases from the previous week. On January 18, 2023, I e-mailed my supervisor that 7/10 of the I-485

2

(IW) cases assigned on January 17, 2023, had been completed and that my N-400 interviews for the day were anticipated as being closed out as well (and they were).

The next visit from my supervisor occurred on January 24, 2022. She stopped by to inform me that my production was unsatisfactory so far for the month, and that she'd need to assign me additional cases to ensure I met the target for the month. She also mentioned how newer Officers were meeting the expectation, but I wasn't. I do note that at no point in time have I ever been advised of what the target is for assigned cases to be completed for the month and I informed her of the fact. I also informed her that I was not sure why she was stating my production was not meeting the requirement for the month, considering I barely have any unworked cases in my office (I-485's and N-400's). I asked her if the production target for the I-485's (IW) was determined if the Officer approved the case(s), or if it was still considered complete even if the Officer scheduled the case for an interview after review. Unfortunately, she did not provide an answer to that question. I note a great majority of the I-485 (IW) cases I have been assigned could not be adjudicated for various reasons such as missing required forms, inadmissibility concerns, fraud indicators etc. Other Officers have shared the same with me after reviewing their own cases.

I also mentioned to my supervisor that in the 6.5 years that I've been employed by USCIS, I never had a supervisor inform me that my production was unsatisfactory. My performance record does speak for itself quite frankly. I informed her that on my most recent performance appraisal, my supervisor noted how my production was off the charts considering my "limited" experience, and how I was always willing to train junior officer's. In addition to that statement, I informed my supervisor that my N-400 cases are typically adjudicated on the same day barring any issues. Before she departed my office, I stated that should my targeted performance for the month not meet the still unstated requirements, that I would be more than willing to explain to management why that was the case either in person or in writing. I informed her that for FY19, FY20 and FY21, I practically begged management to allow me the opportunity to be trained on Adjustment of Status; but was summarily denied. I also made it a point to make her aware that the skillset I had asked to be trained on for 3 straight years, is now needed by management. Had I'd been cross-trained as requested, I would have been able to possibly complete the extremely complex I-485 cases at the pace expected by management, and I made it a point to make her aware of the irony. I pointedly noted that there were only a handful of officer's that had been requesting to be cross-trained at that time. An employee who voluntarily requests training for self-improvement but is denied by management, should not later be accused of failing to meet unstated performance requirements.

Overall, the accusations levied against me by my supervisor that I am not meeting production expectations is puzzling and deeply concerning. I take great pride in what I do and consider myself the ultimate professional. I received a 4.4 overall score on FY22's performance appraisal and for FY19, FY20 and FY21, I Achieved Excellence. I am extremely proud of my record here at USCIS, especially as an ISO2 - where the turnover rate is tremendous by the way. I also note that the my supervisor has at no time put in writing via e-mail or a Record of Counseling that I am not meeting expectations. Again, my office is not cluttered with files, so all work assigned has been and always will be completed TIMELY. I'll even go so far as to mention that I do believe the behavior of the supervisor is suspected due to me informing her that I had an interview for another position, and that she may be contacted for reference purposes. I also noticed that she has peaked into my office to see what I was doing even though I pretended not to acknowledge her (I noticed).

In essence, what I have been accused of by my supervisor does not pass the smell test when contrasted with my performance record at USCIS or at any other past employer for that matter. Unfounded and undocumented allegations of poor performance when less than 4 months ago, I nearly achieved excellence for a 4th year in a row will not go unchallenged. I have demonstrated sustained superior performance since joining USCIS and if anyone wishes to contradict my assertion, I want it in writing. It must be documented if my performance has become subpar after 6.5 years of surpassing all other previously assigned supervisors' expectations.

With that being said, based on the assertions of my newly assigned supervisor that I am not meeting performance requirements, please provide documentation to support the as of now, undocumented claims of my supervisor.

Please be advised that I have made my concerns known to local Union representatives and it is my intent to follow up with a complaint to USCIS' Office of Equal Employment Opportunity. I have taken the liberty of attaching my outstanding performance appraisals to this email for your immediate review. Thank you!

Respectfully Submitted,

*Richard Cornelius Jackson*

Immigration Services Officer II | Great Lakes District Office C-34| CHI-DET-DSM-MIL-STL

101 West Ida B. Wells Drive

Chicago, IL 60605

312-239-5444 Richard.c.jackson@uscis.dhs.gov



WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.

4

## FW: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>

Fri 3/10/2023 12:12 PM

To: Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Friday, January 27, 2023 7:50 AM
**To:** Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K
<Pauline.K.Woodson@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J
<samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Good morning Kevin,

I've informed my Union rep. that I no longer wish to proceed with a meeting. Please cancel the meeting request,
as I've decided to move forward with my original plans. Thank you.

---

**From:** Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 3:53 PM
**To:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>; Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K
<Pauline.K.Woodson@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J
<samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Hi Richard,

Thank you for your email and sharing your concerns with us. We would be happy to meet with you to further
discuss these issues. Would the morning of February 2nd work for you?

In the meantime and in response to your request for documentation, please see attached officer snapshot. One
helpful data set this document shows are trends in Equivalent Units (EUs) over the last six months. The current
expectation that has been set by FOD for EUs is 111 per officer per month. The dip that was seen in October can
be attributed to cross-training that took much of the focus of our officer corps. As of today, your current EUs for
January are 34.67.

I recognize that you have a history of solid performance in this office. In addition, I appreciate your sincere
commitment to the important work we do here at USCIS. I look forward to further discussing your concerns and
am confident we can resolve them.

Thank you,

Kevin

---

**From:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 12:44 PM

**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** RE: Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Good afternoon Richard,

Thank you for email and sharing your perceptions.  I do hope that this can be resolved at a local level, but I respect your right to engage the EEO process.

Thank you,
Carissa

---

**Carissa Sheffler |** Deputy District Director | USCIS District C34 | CHI-DET-DSM-MIL-STL | 312-239-5505

---

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, January 25, 2023 12:03 PM
**To:** Sheffler, Carissa L <Carissa.L.Sheffler@uscis.dhs.gov>
**Cc:** Razo, Concepcion (Connie) <Concepcion.Razo@uscis.dhs.gov>; Woodson, Pauline K <Pauline.K.Woodson@uscis.dhs.gov>; Riddle, Kevin J <Kevin.J.Riddle@uscis.dhs.gov>; Ketavong, Kurt V <kurt.v.ketavong@uscis.dhs.gov>; Lopez, Samuel J <samuel.j.lopez@uscis.dhs.gov>
**Subject:** Notice of Perceived Unfair Treatment and Possible Prohibited Personnel Practice

Good afternoon Pauline, Kevin, Shauna and Carissa,

I've decided to submit this e-mail based on recent events that have occurred with my newly assigned supervisor, that have raised a level of concern. I intend for this e-mail to serve as my record of notification to my employer regarding perceived unfair treatment and a possible prohibited personnel practice.

On or about January 13, 2023, my supervisor stopped by my office to check in with me about my production on the I-485 (IW) cases that are being assigned under USCIS' Comprehensive Interview Strategy. I was informed that management had an expectation that cases assigned are to be completed the same day. I was already aware of this fact after the recent FOD Town Hall. I informed my supervisor that since the most recently assigned cases were ELIS-based, I'd need to refresh my training on processing these ELIS-based cases since the training was held way back in October 2022. I also reminded my supervisor that I was on leave January 11th and 12th, so obviously that slowed my processing of assigned cases down drastically as well. I was advised by my supervisor that the cases I was assigned would need to be completed by close of business. Nonetheless, I was able to complete the processing of all but 2 of the cases assigned earlier that week and I notified my supervisor via e-mail. On January 17, 2023, I notified my supervisor via email that I'd completed the last 2 cases from the previous week. On January 18, 2023, I e-mailed my supervisor that 7/10 of the I-485 (IW) cases assigned on January 17, 2023, had been completed and that my N-400 interviews for the day were anticipated as being closed out as well (and they were).

The next visit from my supervisor occurred on January 24, 2022. She stopped by to inform me that my production was unsatisfactory so far for the month, and that she'd need to assign me additional cases to ensure I met the target for the month. She also mentioned how newer Officers were meeting the expectation, but I wasn't. I do note that at no point in time have I ever been advised of what the target is for assigned cases to be completed for the month and I informed her of that fact. I also informed her that I was not sure why she was stating my production was not meeting the requirement for the month, considering I barely have any unworked cases in my office (I-485's and N-400's). I asked her if the production target for the I-485's (IW) was determined if the Officer approved the case(s), or if it was still considered complete even if the Officer scheduled the case for an interview after review. Unfortunately, she did not provide an answer to that question. I note a great majority of the I-485

(IW) cases I have been assigned could not be adjudicated for various reasons such as missing required forms, inadmissibility concerns, fraud indicators etc. Other Officers have shared the same with me after reviewing their own cases.

I also mentioned to my supervisor that in the 6.5 years that I've been employed by USCIS, I never had a supervisor inform me that my production was unsatisfactory. My performance record does speak for itself quite frankly. I informed her that on my most recent performance appraisal, my supervisor noted how my production was off the charts considering my "limited" experience, and how I was always willing to train junior officer's. In addition to that statement, I informed my supervisor that my N-400 cases are typically adjudicated on the same day barring any issues. Before she departed my office, I stated that should my targeted performance for the month not meet the still unstated requirements, that I would be more than willing to explain to management why that was the case either in person or in writing. I informed her that for FY19, FY20 and FY21, I practically begged management to allow me the opportunity to be trained on Adjustment of Status; but was summarily denied. I also made it a point to make her aware that the skillset I had asked to be trained on for 3 straight years, is now needed by management. Had I'd been cross-trained as requested, I would have been able to possibly complete the extremely complex I-485 cases at the pace expected by management, and I made it a point to make her aware of the irony. I pointedly noted that there were only a handful of officer's that had been requesting to be cross-trained at that time. An employee who voluntarily requests training for self-improvement but is denied by management, should not later be accused of failing to meet unstated performance requirements.

Overall, the accusations levied against me by my supervisor that I am not meeting production expectations is puzzling and deeply concerning. I take great pride in what I do and consider myself the ultimate professional. I received a 4.4 overall score on FY22's performance appraisal and for FY19, FY20 and FY21, I Achieved Excellence. I am extremely proud of my record here at USCIS, especially as an ISO2 - where the turnover rate is tremendous by the way. I also note that the my supervisor has at no time put in writing via e-mail or a Record of Counseling that I am not meeting expectations. Again, my office is not cluttered with files, so all work assigned has been and always will be completed TIMELY. I'll even go so far as to mention that I do believe the behavior of the supervisor is suspected due to me informing her that I had an interview for another position, and that she may be contacted for reference purposes. I also noticed that she has peaked into my office to see what I was doing even though I pretended not to acknowledge her (I noticed).

In essence, what I have been accused of by my supervisor does not pass the smell test when contrasted with my performance record at USCIS or at any other past employer for that matter. Unfounded and undocumented allegations of poor performance when less than 4 months ago, I nearly achieved excellence for a 4th year in a row will not go unchallenged. I have demonstrated sustained superior performance since joining USCIS and if anyone wishes to contradict my assertion, I want it in writing. It must be documented if my performance has become subpar after 6.5 years of surpassing all other previously assigned supervisors' expectations.

With that being said, based on the assertions of my newly assigned supervisor that I am not meeting performance requirements, please provide documentation to support the as of now, undocumented claims of my supervisor.

Please be advised that I have made my concerns known to local Union representatives and it is my intent to follow up with a complaint to USCIS' Office of Equal Employment Opportunity. I have taken the liberty of attaching my outstanding performance appraisals to this email for your immediate review. Thank you!

Respectfully Submitted,

Richard Cornelius Jackson
Immigration Services Officer II | Great Lakes District Office C-34| CHI-DET-DSM-MIL-STL
101 West Ida B. Wells Drive
Chicago, IL 60605

312-239-5444 Richard.c.jackson@uscis.dhs.gov



WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.



| From: | Gardner, Daniel L |
|---|---|
| To: | CIS-OEOI-CRD |
| Subject: | RE: Additional Harassment |
| Date: | Wednesday, February 22, 2023 11:00:00 AM |

Will do

**Daniel** Gardner
Equal Employment Specialist, Complaints Resolution Division
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
9360 Ensign Ave. South | Bloomington, MN 55438
Phone: **(952) 683-0107**
**daniel.l.gardner@uscis.dhs.gov**

_How am I doing? Take this quick 30-second survey to let me know_.

**From:** CIS-OEOI-CRD <CIS-OEOI-CRD@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 10:59 AM
**To:** Gardner, Daniel L <Daniel.L.Gardner@uscis.dhs.gov>
**Subject:** FW: Additional Harassment

HI Dan, I believe this is  in counseling?  Can you provide to contractor for CR?

Thanks,
Stacey

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 10:48 AM
**To:** CIS-OEOI-CRD <CIS-OEOI-CRD@uscis.dhs.gov>
**Subject:** Additional Harassment

Good morning,

Attached is additional evidence of harassment from management at this office. Note, I have not yet been assigned to an EEO Counselor nor a case number. Please add the following evidence to my complaint of Harassment.

Respectfully Submitted,

_Richard Cornelius Jackson_
Immigration Services Officer II | Great Lakes District Office C-34| CHI-DET-DSM-MIL-STL
101 West Ida B. Wells Drive
Chicago, IL 60605
312-239-5444 Richard.c.jackson@uscis.dhs.gov



WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.

Addendum Statement

March 5, 2023

Richard C. Jackson

Immigration Services Officer

1023 25th Ave.

Bellwood, IL 60104

(312) 285-6390

rcjackson83@outlook.com; richard.c.jackson@uscis.dhs.gov


### Addendum to Case HS-CIS-00922-2023


#### Violation of the Uniformed Services Employment and Reemployment Rights Act, Vietnam Era Veterans' Readjustment Assistance Act of 1974, Americans with Disabilities Act of 1990 and Section 503 of the Rehabilitation Act of 1973

**Harassment** - Complainant is a disabled veteran and is party to the "protected" class of employees as enumerated by the laws above. Supervisor RAZO (RAZO) began her assignment as complainant's supervisor as of January 3, 2023. Almost immediately, she began to harass the complainant by excessively monitoring him. She was observed by the complainant hiding behind his office door on two separate occasions on January 24, 2023. RAZO would then falsely accuse complainant of performance deficiency but refused to document the assertion in writing as requested by complainant. RAZO violated the above laws by harassing complainant and concocting an unsubstantiated and unenforceable claim of performance deficiency to further the harassment. RAZO is an agent of the employer and thus, vicariously aware that complainant was a disabled veteran at the time she harassed me.

**Failure to Initiate the Interactive Process** - Complainant submitted a **Reasonable Accommodation** request on 2/15/2023, requesting RAZO provide written instruction for assignments due to service-connected mental disability. The agency failed to reach out to complainant, so an e-mail was sent on 2/22/2023 requesting an update. The response from the agency appears to indicate complainant is supposed to provide RAZO with medically sensitive information in violation of HIPAA. The agency has engaged in unlawful disability discrimination due to denying a disabled veteran a reasonable accommodation.

#### Violation of Title VII of the Civil Rights Act of 1964

**Race** – Complainant is African American. RAZO almost immediately began to harass complainant by excessively monitoring him. She was observed hiding behind the office door of complainant on two separate occasions on January 24, 2023. Afterwards, she would enter complainant's office and accuse him of performance deficiency but refused to document the assertion in writing as requested by complainant. She has not treated any other employees on

complainant's team in such a manner to his knowledge. RAZO discriminated against the complainant by treating him in a disparate manner because of his race.

**Hostile Work Environment –** RAZO's harassment of complainant created an unlawful hostile work environment. When made management officials at the Chicago Field Office were made aware of RAZO's behavior on January 25, 2023, via email, management officials failed to exercise **reasonable care** to address and correct the harassment. As a result, RAZO was not held accountable for the discriminatory treatment she subjected complainant to, and management is complicit and vicariously liable for RAZO's harassment and discrimination.

## Violation of EEOC Rules

**Punishment for Protected Activity -** Complainant alleges retaliation for engaging in protected activity. On 2/22/2023, complainant was assigned a Level 3 Bundle and tasked with observing a new employees afternoon interviews after interviewing the morning cases. Management does not assign senior Officers Level 3 Bundles on days it also tasks senior Officers with observing newer ones for training purposes. Complainant believes this was carried out by management to ensure complainant's workday was unduly stressful and unbearable.

Best Regards,

Richard C. Jackson

Extension Agreement

| | |
|---|---|
| From: | Jackson, Richard C |
| To: | Gardner, Daniel L |
| Subject: | RE: Request for Extension |
| Date: | Wednesday, March 1, 2023 11:37:13 AM |

Mr. Gardner,

I appreciate your call today. I approve the extension. Thank you.

**From:** Gardner, Daniel L <Daniel.L.Gardner@uscis.dhs.gov>
**Sent:** Wednesday, March 1, 2023 11:25 AM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Request for Extension
**Importance:** High

Richard Jackson

I am requesting a 30 day extension to the pre-complaint processing period in order to obtain the time necessary in order to complete my duties as the counselor in your complaint.

- If you agree to the extension please reply to this email and state that you approve the extension.

- If you do not agree to the extension please reply to this email and state that you deny the extension.

Please be advised that if you do not agree to the extension, or if you do not respond to this email, I will be compelled via regulation to issue your notice of right to file a formal complaint of discrimination no later than the 30th day after your date of initial contact with our office even if I have not been able to interview you, interview the management officials you allege are responsible for the discrimination against you, gather limited evidence, or attempt to resolve your complaint and obtain a written settlement agreement.

Thank you for your attention to this matter.

**Daniel Gardner**
Equal Employment Specialist, Complaints Resolution Division
Office of Equal Opportunity and Inclusion | **U.S. Citizenship and Immigration Services**
9360 Ensign Ave. South | Bloomington, MN 55438
Phone: **(952) 683-0107**
daniel.l.gardner@uscis.dhs.gov

How am I doing? Take this quick 30-second survey to let me know.

# Notice of Right to File a Formal Complaint of Discrimination



U.S. Department of Homeland Security
U.S. Citizenship & Immigration Services
*Office of Equal Opportunity and Inclusion*
9360 Ensign Ave S, Suite 151
Bloomington, MN  55438

**U.S. Citizenship
and Immigration
Services**

March 16, 2023

**Memorandum**

TO:       Richard Jackson

FROM:     Becki Speck
          EEO Counselor

SUBJECT: Notice of Right to File a Complaint of Discrimination
          Case No.: CIS-00922-2023

This is to inform you that because of the dispute you brought to my attention has not been resolved to your satisfaction, you are entitled to file a discrimination complaint. You initially contacted the Office of Equal Opportunity and Inclusion on February 8, 2023.

You alleged that you were subjected to discrimination and harassment based on race (African American/Black), disability (physical and mental), and reprisal (complaints of harassment) when:

1. On January 13, 2023, his supervisor spoke to him about production expectations;
2. On January 24, 2023, his supervisor spied on him twice through his office window;
3. On January 24, 2023, his supervisor claimed he was not meeting production expectations;
4. Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment;
5. Since February 15, 2023, management has failed to engage in the interactive process for his request for reasonable accommodation; and
6. On February 22, 2023, he was assigned a Level II interview bundle and directed to sit in on interviews with a new ISO.
7. On unspecified dates, documents were removed from his applications for positions within the Agency.

If you file a complaint, it must be filed on the attached DHS Form 3090-1, Individual Complaint of Employment Discrimination within fifteen (15) calendar days after receipt of this notice. Your complaint must be filed in person by you or your representative/attorney or by mail or facsimile to:

U.S. Citizenship and Immigration
Service Office of Equal Opportunity and
Inclusion 9360 Ensign Avenue
Bloomington, MN 55438

Facsimile: (802) 860-6532

A complaint shall be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within five days of the expiration of the filing period.

The complaint must be specific and contain only those issues either specifically discussed with the intake counselor or issues that are like or related to the issues that you discussed with them. It must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same claims.

If you retain an attorney or any other person to represent you, you or your representative must immediately notify the above office. You and/or your representative will receive a written acknowledgment of your discrimination complaint.

Becki Speck
EEO Counselor


Attachment: DHS Form 3090-1

Formal Complaint form

OMB No. 1610-0001 Expiration Date: 8/31/**14**

DEPARTMENT OF HOMELAND SECURITY

## INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION

*(Use this form for original complaints and amendments.)*

| FOR OFFICIAL USE ONLY |
|---|
| DEPARTMENT CASE NUMBER |
| FILING DATE |

### PART I COMPLAINANT IDENTIFICATION

1. NAME *(Last, First, Middle Initial)*

2. TELEPHONE/FAX *(Include Area Code)*

| Home | Fax |
|---|---|
| Work | Fax |

3. HOME ADDRESS *(You must notify the Department of any change of address while complaint is pending, or your complaint may be dismissed.)*

4. IF YOU ARE A CURRENT OR FORMER EMPLOYEE OF THE FEDERAL GOVERNMENT, LIST YOUR RECENT TITLE, SERIES, AND GRADE.

Title

| Series | Grade |
|---|---|

5. NAME AND ADDRESS OF ORGANIZATION WHERE YOU WORK *(If a Department of Homeland Security Employee)*

Bureau or Component

Office and Organizational Unit

Street Address

| City | State | Zip Code |
|---|---|---|

6. EMPLOYMENT STATUS IN RELATION TO THIS COMPLAINT

☐ Applicant   ☐ Probationary   ☐ Career/Career Conditional

☐ Uniformed Service Member

☐ Former Employee/Member

Date Left Department

☐ Retired

Date of Retirement

☐ Other *(Specify)*

7. I certify that <u>all</u> statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.

| SIGNATURE OF COMPLAINANT OR ATTORNEY REPRESENTATIVE | DATE |
|---|---|

### PART II DESIGNATION OF REPRESENTATIVE

8. YOU MAY REPRESENT YOURSELF IN THIS COMPLAINT OR YOU MAY CHOOSE SOMEONE TO REPRESENT YOU. YOUR REPRESENTATIVE DOES NOT HAVE TO BE AN ATTORNEY. YOU MAY CHANGE YOUR DESIGNATION OF A REPRESENTATIVE AT A LATER DATE, BUT YOU MUST NOTIFY THE DEPARTMENT IMMEDIATELY IN WRITING OF ANY CHANGE, AND YOU MUST INCLUDE THE SAME INFORMATION REQUESTED IN THIS PART.

"I hereby designate *(Please Print Name)* _____ to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

Is the representative an attorney?          ☐ YES    ☐ NO

9. REPRESENTATIVE'S MAILING ADDRESS
FIRM/ORGANIZATION

STREET ADDRESS

CITY, STATE, & ZIP CODE

10. REPRESENTATIVE'S EMPLOYER *(If Federal Agency)*

11. REPRESENTATIVE'S TELEPHONE/FAX *(include Area Code)*

| Telephone | Fax |
|---|---|

| 12a. COMPLAINANT'S SIGNATURE | 12b. DATE |
|---|---|

DHS Form 3090-1 (9/11)

## PART III ALLEGED DISCRIMINATORY ACTIONS

| 13. NAME OF PERSON OR DHS COMPONENT WHO TOOK THE ACTION AT ISSUE. | 14. ARE YOU WILLING TO PARTICIPATE IN MEDIATION OR OTHER AVAILABLE TYPES OF ALTERNATIVE DISPUTE RESOLUTION TO RESOLVE YOUR COMPLAINT? |
|---|---|
| FIRM/ORGANIZATION | |
| STREET ADDRESS | ☐ YES    ☐ NO |
| CITY, STATE, & ZIP CODE | |

15. **A.** Describe the action taken against you that you believe was discriminatory.

    **B.** Give the date when the action occurred, and the name of each person responsible for the action.

    **C.** Describe how you were treated differently from other employees, applicants, or members for any of the reasons listed in Item 16.

    **D.** Indicate what harm, if any, came to you in your work situation as a result of this action. (You may, but are not required to, attach extra sheets.)

    **E.** If the basis of your complaint is parental status or sexual orientation, use this form, but your complaint is not statutorily based and will follow separate, parallel process.

16. Mark below **ONLY** the bases you believe were relied on to take the actions described in Item 15.

| | |
|---|---|
| ☐ RACE (Specify) | ☐ AGE (Date of Birth) |
| ☐ COLOR (Specify) | ☐ PHYSICAL OR MENTAL DISABILITY (Describe) |
| ☐ RELIGION (Specify) | ☐ RETALIATION/REPRISAL (Dates of Prior EEO Activity) |
| ☐ NATIONAL ORIGIN (Specify) | ☐ GENETIC INFORMATION |
| ☐ SEX (Specify) | ☐ SEXUAL ORIENTATION |
|    ☐ pregnancy | ☐ PARENTAL STATUS |

17. WHAT REMEDIAL OR CORRECTIVE ACTION ARE YOU SEEKING TO RESOLVE THIS MATTER

18. ON THIS SAME MATTER, HAVE YOU FILED A GRIEVANCE OR APPEAL UNDER:

| | | |
|---|---|---|
| Negotiated grievance procedure | ☐ YES | ☐ NO |
| Agency grievance procedure | ☐ YES | ☐ NO |
| Merit Systems Protection Board appeal procedure | ☐ YES | ☐ NO |

If you filed a grievance or appeal, provide date filed, case number, and present status.

## PART IV CONTACT

**EEO/EO Counseling is not required if you are requesting amendment of an existing, open complaint.**
**Complete items 24 and 25, even if you did not contact a counselor.**

| 19. DATE YOU CONTACTED AN EEO COUNSELOR | 20. NAME AND TELEPHONE NUMBER OF EEO COUNSELOR |
|---|---|
| | Name                      Phone |
| 21. DID YOU DISCUSS ALL ACTIONS RAISED IN ITEM 15 WITH AN EEO COUNSELOR? (If NO, explain on attached sheet)<br>☐ YES    ☐ NO | 22. DATE YOU RECEIVED YOUR "NOTICE OF RIGHT TO FILE" |

23. IF YOU ARE REQUESTING AMENDMENT OF AN EXISTING, OPEN, FORMAL COMPLAINT (OR PROVIDING ADDITIONAL EVIDENCE), INDICATE THE COMPLAINT CASE NUMBER OF THAT COMPLAINT.

| 24. DATE OF MOST RECENT DISCRIMINATORY EVENT | 25. DATE YOU FIRST BECAME AWARE OF THE ALLEGED DISCRIMINATION |
|---|---|

DHS Form 3090-1 (9/11)

OMB No. 1610-0001 Expiration Date: 8/31/14

## DEPARTMENT OF HOMELAND SECURITY
## DHS FORM 3090-1, INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION FORM INSTRUCTIONS

### (Read the following instructions carefully before you complete this form.)
### (Please complete all items on the complaint form.)

**GENERAL:** This form should be used only if you, as an applicant for employment with the Department of Homeland Security (DHS), or as a present or former Department of Homeland Security employee:

1. believe you have been discriminated against because of your **race, color, religion, sex, national origin, age** (40 years or older at the time of the event giving rise to your claim), **physical or mental disability, genetic information** or in **reprisal** for opposition to activities protected by civil rights statutes, or participation in proceedings to enforce those statutes; **or**

2. believe you have been discriminated against because of your **parental status or sexual orientation.** Your claim is not covered under statutory basis, but will be processed under a parallel procedure, **and**

3. have presented the matter for informal resolution to an Equal Employment Opportunity (EEO) Counselor within **45 days** of the event giving rise to your claim, or within **45 days** of first becoming aware of the alleged discrimination. If you are amending or providing additional evidence to an existing open complaint, the form should be used, but EEO counseling is not required.

**IMPORTANT NOTE:** In certain situations, the information provided in Part III of the attached complaint form may be used in lieu of an affidavit in the investigation of your complaint. Accordingly, the information you provide in this part should be brief, clear, and complete.

**WHEN TO FILE:** In accordance with 29 CFR 1614.106, your formal complaint must be filed within **15 calendar days** of the date you received the "Notice of Right to File a Discrimination Complaint" from your EEO Counselor. You must sign and date your complaint. If you are represented **by an attorney**, the attorney may sign the complaint on your behalf.

These time limits may be extended:

1) if you show that you were not notified of the time limits and were not otherwise aware of them, **or**

2) if you were prevented by circumstances beyond your control from submitting the matter within the time limits, **or**

3) for other reasons considered sufficient by the Department.

**REPRESENTATION:** You may have a representative of your own choosing at all stages of the processing of your complaint. However, your representative will be disqualified if such representation would conflict with the official or collateral duties of the representative. No EEO Counselor, EEO Investigator or EEO Officer may serve as a representative. (Your representative need not be an attorney, but only an attorney representative may sign the complaint on your behalf.)

**WHERE TO FILE:** In accordance with 29 CFR 1614.106(c), your written complaint must be signed by you or your attorney. The complaint should be filed with the EEO Director of the Department of Homeland Security component where the alleged discrimination occurred. (Filing instructions are contained in the "Right to File" form, which was provided by your Counselor.) Keep a copy of the completed complaint form for your records.

# PRIVACY ACT STATEMENT

1. **FORM/TITLE/DATE:** Department of Homeland Security (DHS) DHS Form 3090-1, **Individual Complaint of Employment Discrimination** with the Department of Homeland Security.

2. **AUTHORITY:** 42 USC 2000e; 29 USC 633a; 5 USC 1303 and 1304; 5 CFR 5.2 and 5.3; 29 CFR 1614.105 and 1614.107; and Executive Order 11478, as amended.

3. **PRINCIPAL PURPOSES:** The purpose of this complaint form, whether recorded initially on the form or taken from a letter from the Complainant, is to record the filing of a formal written complaint of employment discrimination with the Department of Homeland Security on the grounds of race, color, religion, sex, national origin, age, physical or mental disability, protected genetic information, or retaliation. Information provided on this form will be used by DHS to determine whether the complaint was timely filed and whether the allegations in the complaint are within the purview of 29 CFR Part 1614, to provide a factual basis for investigation of the complaint, and to reach a decision on the complaint. It also records an amendment or additional evidence to an open, pending complaint.

4. **ROUTINE USES:** Other disclosures may be:

   a. to respond to a request form from a Member of Congress regarding the status of the complaint or appeal;

   b. to respond to a court subpoena and/or to refer to a district court in connection with a civil suit;

   c. to disclose information to authorized officials or personnel to adjudicate a complaint or appeal; or

   d. to disclose information to another Federal agency or to a court or third party in litigation when the Government is party to a suit before the court.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY, AND EFFECT OF NOT PROVIDING INFORMATION:** Formal complaints of employment discrimination must be in writing, signed by the Complainant (or attorney representative), and must identify the parties and action or policy at issue. Failure to comply may result in the Department of Homeland Security dismissing the complaint. It is not mandatory that this form be used to provide the requested information.

# OMB STATEMENT

In accordance with the Paperwork Reduction Act, no persons are required to respond to a collection of information unless it displays a valid OMB Control Number. The valid OMB Control Number for this information collection is 1610-0001. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

## Jackson, Richard C

| | |
|---|---|
| **From:** | Jackson, Richard C |
| **Sent:** | Thursday, February 23, 2023 11:52 AM |
| **To:** | Speck, Rebecca A (CTR) |
| **Subject:** | RE: EEO Complaint |

Good Afternoon,

It appears I was not selected for a position I was eligible for and I believe it is due to protected activity. Please add that to the list of complaints.

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 2:51 PM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Re: EEO Complaint

Hello,

Thanks for the swift response.  I'm only available until 3pm on Friday.  Would 2pm CST work for you?

Becki

**From:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 2:34 PM
**To:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Subject:** RE: EEO Complaint

Good afternoon,

Friday, February 24, 2023 at 3 pm is fine. Thank you

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Wednesday, February 22, 2023 11:52 AM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** EEO Complaint

Hello Mr. Jackson,

I am the EEO Counselor assigned to your complaint with USCIS and would like to schedule a time to speak with you over the telephone and discuss your allegations.  I have listed several days/times that I am available to conduct the initial interview.  Please let me know if any of these work for you.  I anticipate our conversation taking approximately 30 minutes to 1 hour, depending on the number of claims you have.

**Friday 2/24 -- 10am to 3pm CST**

**Monday 2/27 - 10am to 3pm CST**

**Tuesday 2/28 - 10am to 3pm CST**


Regards,


Becki Speck




Becki Speck
Contract EEO Investigator
Tel: (317) 764-0776

2

**Jackson, Richard C**

| | |
|---|---|
| **From:** | Speck, Rebecca A (CTR) |
| **Sent:** | Wednesday, March 1, 2023 11:00 AM |
| **To:** | Jackson, Richard C |
| **Subject:** | Counseling |

Mr. Jackson,

I've been working with IT all morning and am currently on my USCIS system.  A miracle!  I saw your email regarding filing a complaint.  There is still time left in the Counseling period - any change you are available for a telephone interview today?

Becki

Becki Speck
Contract EEO Investigator
Tel: (317) 764-0776

1

## Jackson, Richard C

**From:** Speck, Rebecca A (CTR)
**Sent:** Tuesday, March 14, 2023 1:05 PM
**To:** Jackson, Richard C
**Subject:** Re: Today's Interview

Hello Mr. Richard,

I am incredibly sorry - I documented our call as being today at 1pm CDT.  That was an error on my part in reading your email.  The claims noted are not in any way final or complete.  As I noted in my earlier email they are for our discussion during our call.  I can include the removal of your Form SF-15 and VA disability letters; however, I planned to speak with you a bit further about that today to ascertain whether you know who removed those forms?  Did it occur within HR?  Or by your direct management?

Regarding Ms. Razo spying on you and the Level II/III bundles, the write-up following the claims, which you will receive with the Counselor's report, all of that information is included.

Please be aware that claims are written in a way to be a bit general so that the EEO Investigator assigned to your complaint, should you file one, can obtain full and complete testimony.

Again, I apologize for missing our scheduled call.  Please let me know the time that works best for you, and I can accommodate your schedule.  If you prefer not to engage in a final discussion, please let me know that as well and I can provide you with the documentation necessary to initiate a formal complaint.

Becki Speck

---

**From:** Speck, Rebecca A (CTR) <rebecca.a.speck@uscis.dhs.gov>
**Sent:** Tuesday, March 14, 2023 11:31 AM
**To:** Jackson, Richard C <richard.c.jackson@uscis.dhs.gov>
**Subject:** Today's Interview

Hello Mr. Jackson,

I am sending these to you for our conversation later today.  These are the claims as I understand them, but we can go over them and tweak them if necessary:

1

Richard Jackson (hereinafter referred to as "The Aggrieved") alleges he was discriminated against and harassed based on race (African American/Black), disability (physical and mental), and reprisal (complaints of disparate treatment) when:

1. On January 13, 2023, his supervisor spoke to him about production expectations;
2. On January 24, 2023, his supervisor spied on him through his office window;
3. On January 24, 2023, his supervisor claimed he was not meeting production expectations;
4. Since January 25, 2023, management has failed to address his reports of discrimination and a hostile work environment;
5. Since February 15, 2023, management has failed to engage in the interactive process for his request for reasonable accommodation; and
6. On February 22, 2023, he was assigned a Level II interview bundle and directed to sit in on interviews with a new ISO.

Becki Speck
Contract EEO Investigator
Tel: (317) 764-0776

# USCIS Performance Management Ratings Calculator
## for Performance Plan & Appraisal



### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS
Form G-1258**
Internal Use

## USCIS Privacy Act Statement

**DISCLOSURE:** Voluntary.

**AUTHORITY:** 49 USC Section 114(n).

**PRINCIPAL PURPOSES:** This information will be used to document your performance appraisal and to certify that the rating official has discussed your performance appraisal with you.

**ROUTINE USES:** This information may be shared in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding, or for routine uses identified in the Office of Personnel Management's system of records, OPM/GOVT-2 Employee Performance File System Records.

## General Instructions

1. **Instructions to complete the Employee Information**
   A. **Complete the following fields:**
      (1) **Organization name**
      (2) **Employee First, Middle, Last Name**
      (3) **SSN Last 4**
      (4) **Employee Title**
      (5) **Employee Series**
      (6) **Employee Grade**
   B. Select ***Non-Supervisor*** or ***Supervisor*** checkbox in the section entitled *Information About the Employee*
   C. Enter the Rater and Reviewing Official's name on **Page 3.** of the form (the employee's information is entered automatically from the information contained on **Page 1.**)
2. Instructions to Properly Complete the Rating:
   A. Competencies and the associated weights will be auto-populated
   B. Enter a brief goal description and associated weight
   C. Select a rating for each Competency and Goal
3. Instructions for Entering Comments
   A. Rater enters their comments in the ***Rating Official Comments*** field
   B. Reviewing Official enters their comments in the ***Reviewing Official Comments*** field
   C. Employee may enter comments at or after the appraisal is conducted in the ***Employee Comments*** field
4. Steps to Check Spelling in the Document
   A. Click on the ***Edit*** button
   B. Select ***Check Spelling*** option from the list
   C. Click on the ***Comments***, ***Fields***, and ***Editable Text***...option
   D. Click the ***Start*** button in the Check Spelling dialog box
5. Signature Order
   A. Reviewing Official
   B. Rating Official
   C. Rated Employee

## Organization (Directorate or Program Office)

FOD D42 CHI

## Information About the Employee *(Required Fields)*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

| The Employee is a *(select only one)*: | ☐ Supervisor | ☒ Non-Supervisor |
|---|---|---|

| Employee's Title/Series/Grade | Employee's Last 4-digits of SSN |
|---|---|
| ISO 2/GS-1801/11 | 7357 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

### Performance Period

| Date PPA was Issued (mm/dd/yyyy) | Rating Cycle End Date (mm/dd/yyyy) |
|---|---|
| 10/30/2018 | 09/30/2019 |

| Employee's Rating (Auto-populated based on points earned) | National Finance Center Rating Code (Auto-populated based on rating) |
|---|---|
| Achieved Excellence | E5 |

### Competencies

| Competency Number | Brief Description | Weight | Performance Rating (Select from drop down list) | Points |
|---|---|---|---|---|
| 1 | Communication | 20% | 5-Achieved Excellence | 1.0 |
| 2 | Customer Service | 20% | 5-Achieved Excellence | 1.0 |
| 3 | Representing the Agency | 20% | 5-Achieved Excellence | 1.0 |
| 4 | Teamwork and Cooperation | 20% | 5-Achieved Excellence | 1.0 |
| 5 | Technical Proficiency | 20% | 4-Exceeded Expectations | 0.8 |
| 6 | | | | |
| 7 | | | | |
| | Competencies Evenly Weighted to Add Up to 100% Total => | 100% | < | 4.8 |

### Performance Goals

| Goal Number | Brief Description | Weight | Performance Rating (Select from drop down list) | Points |
|---|---|---|---|---|
| 1 | Quality | 35% | 4-Exceeded Expectations | 1.4 |
| 2 | Fraud Detection and National Security | 35% | 4-Exceeded Expectations | 1.4 |
| 3 | Contribution to USCIS Mission | 30% | 5-Achieved Excellence | 1.5 |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| | Weights Must Add Up to 100% Total => | 100% | | 4.3 |

### Rating Calculation

| Category | Points Earned | % of Rating | Points Toward Rating |
|---|---|---|---|
| Competencies | 4.8 | 40% | 1.9 |
| Performance Goals | 4.3 | 60% | 2.6 |
| The total will be rounded to the nearest one-tenth (for example, using standard rounding, 3.45 is rounded up to 3.5; 3.44 is rounded to 3.4) | Total | | 4.5 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

### Overall Rating

| Point Scale | Summary Rating Descriptions | Rating |
|---|---|---|
| 4.5 or more | Achieved Excellence | Achieved Excellence |
| 3.5 - 4.4 | Exceeded Expectations | |
| 3.0 - 3.4 | Achieved Expectations | |
| < 3.0 | Unacceptable | |

## Employee's Comments and Signature

*Employee's Comments/Self-Assessment Can Be Attached Using a Word Document*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

| Signature of Employee | Date |
|---|---|
| *[signature]* | 10-24-2019 |

Employee's Comments

## Rating Official's Comments and Signature

| Rating Official's Last Name | Rating Official's First Name | Rating Official's Middle Name |
|---|---|---|
| MENDOZA-ERDOGAN | Alicia | L |

| Signature of Rating Official | Date |
|---|---|
| *[signature]* | 10/24/2019 |

Rating Official's Comments

**CC1 – COMMUNICATION:**
Officer Jackson has excellent communication skills. He continues to write decisions that are exceptionally clear, concise and well organized. Officer Jackson seeks clarification when needed and makes informed contributions to discussions. He participates during team meetings and is receptive to necessary feedback during individual meetings. Officer Jackson demonstrates excellent perception of issues and communicates his position effectively. Also, he has the ability to communicate relevant information effectively to team members, customers and management. When assistance is needed or questions are asked relating to system usage, decision verbiage or office policy and procedures, Officer Jackson can be counted on to help answer questions in detail.

**CC2 – CUSTOMER SERVICE:**
Officer Jackson continues to complete his work in a timely fashion. He is a conscientious officer who works well with customers to understand their needs and responds to or relays their concerns. He is punctual, settles quickly to his daily tasks, begins his interviews promptly, and generally adheres to standard interview time frames. In one instant, another officer had taken Officer Jackson's bundle, instead of panicking, Officer Jackson pulled the A#'s from the Interview Check-in spreadsheet to ensure he was ready for his interviews despite not having the files. Officer Jackson does not allow complex cases to

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

accumulate but takes them on in good time.

**CC3 - REPRESENTING THE AGENCY:**
Officer Jackson continues to be consistently present a confident, articulate, professional image to the public. He had a friendly, pleasant and respectful demeanor in all of his interactions with others. Officer Jackson is patient and unruffled in his interviews. He understands the policies and procedures for conducting interviews. Officer Jackson enforces the law appropriately while at the same time he treats all customers with fairness and respect. Officer Jackson has actively sought volunteer opportunities and has participated in three special naturalization ceremonies.

**CC4 - TEAMWORK AND COOPERATION:**
Officer Jackson is friendly and engaging and contributes to achieving goals by working collaboratively with his colleagues and supervisors. He independently offers assistance and provides support to his fellow officers. Officer Jackson works and communicates effectively with a variety of personalities and across functional groups. He exert a positive influence on fellow officers. Officer Jackson is always available to assist by taking on an extra interview when the situation demands. He frequently assists when fellow officers who have fallen behind in their interviews, and readily accepts I-751's from officers who were not trained to interview these applications. Officer Jackson is willing to share his knowledge and answer questions on issues he sense others do not fully understand. He is always willing to take on trainees and observers, all who have reported that they enjoyed and profited from his example and the additional information and tips he has provided. Officer Jackson's previous supervisor remarked at how impressed he was with one of his newest employees, her decision writing and knowledge of the law was exceptional for an employee with no prior immigration knowledge. He later was informed by this new employee that all the credit should go to Officer Jackson, as he takes the time to assist her and answer any questions she may have anytime she needs help. Officer Jackson is approachable and knowledgeable and makes himself available to other officers. He is my "to go to" person when less experienced officers need assistance and guidance in interviewing and adjudicating cases; he removes uncertainty, drives up confidence and informs of what is expected.

**CC5 - TECHNICAL PROFICIENCY:**
Officer Jackson demonstrates and applies relevant knowledge and skills to perform work in accordance with applicable guidelines. He understands the technical difficulty and complexity of all systems used to undertake the work and is able to advise others accordingly. Officer Jackson is able to accomplish complex tasks with expertise and with minimal supervisory assistance. Officer Jackson is skilled at writing intricate decisions and working complex adjudication cases with minimal errors. He accomplishes tasks in a highly efficient and effective manner and makes high impact contributions to his team's efforts. For example, Officer Jackson has a high production rate and submits the most adjudications cases requiring supervisory review. Further, he remains alert to issues of inadmissibility or deportability. Officer Jackson works on producing decisions that are thorough and detailed thereby supporting the Service's stance on the decision. Officer Jackson continues to broaden and enhance his expertise by performing more complex work activities. For example, Officer Jackson infrequently misses identifying aggravated felons, even obscured ones. This is because he pays attention to detail and takes appropriate corrective measures. Officer Jackson does not repeats the same error on his decisions. Officer Jackson is experienced and accomplished in the use of applicable electronic systems. He has a clear understanding of the laws and regulations that apply to the various form types that he is trained on. Officer Jackson takes initiative to expand his knowledge and expertise, and can be depended on to self-manage his work

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

efficiently.  Officer Jackson has improved his skills in taking sworn statements and has assisted other officers in this area.  Officer Jackson is always timely in making decisions, updating his statistics, and other administrative tasks with minimal reminders.

PG1 - Quality:
Officer Jackson is a competent and productive adjudicating officer.  His decisions are generally well-reasoned, grounded on evidence, and nearly always correct. He has vastly improved in taking sworn statements of high quality. Officer Jackson's return rate for processing errors or omissions has been minimal and his backlog is well within reason.

PG2 - Fraud Detection and National Security:
Officer Jackson remains alert to indicators of fraud, inadmissibility, and national security concerns in accordance with established policy and procedure.  He is conscientious in his review of files and electronic databases for fraud indicators and National Security concerns.  Officer Jackson is aware of the importance of maintaining the integrity and security of the immigration system. Officer Jackson has made several fraud referrals which have been accepted by the FDNS section.

PG3 - Contribution to the USCIS Mission:
Officer Jackson is a reliable officer who exhibits a strong dedication to the mission. He contributes to the USCIS mission and assists in the achievement of goals through effective teamwork, collaboration and work production. Officer Jackson is competent, conscientious and a team player. Officer Jackson performs works of good quality, shares skills and knowledge with coworkers, and is sought as a resource by supervisors.  For example, information was needed urgently about FDNS-DS and its printing capabilities by this supervisor. An FDNS referral was submitted by one of Officer Jackson's teammates, who was out of the office, and her FDNS referral was not going to be accepted if a printout of the referral was not in the file. Several senior officers were asked but were not familiar with FDNS-DS printing. However, when asked, Officer Jackson was able to provide a step by step process for navigating FDNS-DS and its complicated printing capability. An FDNS referral was printed and inserted into the file; the case was accepted by FDNS.

## Reviewing Official's Comments and Signature

| Reviewing Official's Last Name | Reviewing Official's First Name | Reviewing Official's Middle Name |
|---|---|---|
| SUMMERS | Stacey | Lynn |

| Signature of Reviewing Official | | Date |
|---|---|---|
| STACEY L SUMMERS | Digitally signed by STACEY L SUMMERS Date: 2019.10.23 20:05:00 -05'00' | 10/23/2019 |
| Reviewing Official's Comments | | |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

## Next Steps

1. Save the document.
2. Submit the document to the Reviewing Official for comments and signature.
3. Conduct Annual Appraisal with Employee.
4. Attach the entire Ratings Calculator, Form G-1258, to the Employee's PPA.
5. Transmit all related documents per Year-end Closeout Procedures.
6. Email questions to the Performance Management team at **USCIS.PerformanceManagement@uscis.dhs.gov**.



# USCIS Performance Management Ratings Calculator
# for Performance Plan & Appraisal

**USCIS
Form G-1258**
Internal Use

### Department of Homeland Security
U.S. Citizenship and Immigration Services

---

## USCIS Privacy Act Statement

**DISCLOSURE:** Voluntary.

**AUTHORITY:** 49 USC Section 114(n).

**PRINCIPAL PURPOSES:** This information will be used to document your performance appraisal and to certify that the rating official has discussed your performance appraisal with you.

**ROUTINE USES:** This information may be shared in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding, or for routine uses identified in the Office of Personnel Management's system of records, OPM/GOVT-2 Employee Performance File System Records.

## General Instructions

1. **Instructions to complete the Employee Information**
   A. **Complete the following fields:**
      (1) **Organization name**
      (2) **Employee First, Middle, Last Name**
      (3) **SSN Last 4**
      (4) **Employee Title**
      (5) **Employee Series**
      (6) **Employee Grade**
   B. Select *Non-Supervisor* or *Supervisor* checkbox in the section entitled *Information About the Employee*
   C. Enter the Rater and Reviewing Official's name on *Page 3.* of the form (the employee's information is entered automatically from the information contained on *Page 1.*)
2. Instructions to Properly Complete the Rating:
   A. Competencies and the associated weights will be auto-populated
   B. Enter a brief goal description and associated weight
   C. Select a rating for each Competency and Goal
3. Instructions for Entering Comments
   A. Rater enters their comments in the *Rating Official Comments* field
   B. Reviewing Official enters their comments in the *Reviewing Official Comments* field
   C. Employee may enter comments at or after the appraisal is conducted in the *Employee Comments* field
4. Steps to Check Spelling in the Document
   A. Click on the *Edit* button
   B. Select *Check Spelling* option from the list
   C. Click on the *Comments*, *Fields*, and *Editable Text*...option
   D. Click the *Start* button in the Check Spelling dialog box
5. Signature Order
   A. Reviewing Official
   B. Rating Official
   C. Rated Employee

---

## Organization (Directorate or Program Office)

| FOD D42 CHI |
|---|

## Information About the Employee *(Required Fields)*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

| The Employee is a (*select only one*): | ☐ Supervisor | ☒ Non-Supervisor |
|---|---|---|

| Employee's Title/Series/Grade | Employee's Last 4-digits of SSN |
|---|---|
| ISO 2/GS-1801/12 | 7357 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

### Performance Period

| Date PPA was Issued *(mm/dd/yyyy)* | Rating Cycle End Date *(mm/dd/yyyy)* |
|---|---|
| 10/28/2019 | 09/30/2020 |

| Employee's Rating *(Auto-populated based on points earned)* | National Finance Center Rating Code *(Auto-populated based on rating)* |
|---|---|
| Achieved Excellence | E5 |

### Competencies

| Competency Number | Brief Description | Weight | Performance Rating *(Select from drop down list)* | Points |
|---|---|---|---|---|
| 1 | Communication | 20% | 5-Achieved Excellence | 1.0 |
| 2 | Customer Service | 20% | 4-Exceeded Expectations | 0.8 |
| 3 | Representing the Agency | 20% | 4-Exceeded Expectations | 0.8 |
| 4 | Teamwork and Cooperation | 20% | 5-Achieved Excellence | 1.0 |
| 5 | Technical Proficiency | 20% | 5-Achieved Excellence | 1.0 |
| 6 | | | | |
| 7 | | | | |
| Competencies Evenly Weighted to Add Up to 100% Total => | | 100% | < | 4.6 |

### Performance Goals

| Goal Number | Brief Description | Weight | Performance Rating *(Select from drop down list)* | Points |
|---|---|---|---|---|
| 1 | Quality | 35% | 5-Achieved Excellence | 1.8 |
| 2 | Fraud Detection and National Security | 35% | 4-Exceeded Expectations | 1.4 |
| 3 | Contribution to USCIS Mission | 30% | 5-Achieved Excellence | 1.5 |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| Weights Must Add Up to 100% Total => | | 100% | | 4.7 |

### Rating Calculation

| Category | Points Earned | % of Rating | Points Toward Rating |
|---|---|---|---|
| Competencies | 4.6 | 40% | 1.8 |
| Performance Goals | 4.7 | 60% | 2.8 |
| The total will be rounded to the nearest one-tenth (for example, using standard rounding, 3.45 is rounded up to 3.5; 3.44 is rounded to 3.4) | | Total | 4.6 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

### Overall Rating

| Point Scale | Summary Rating Descriptions | Rating |
|---|---|---|
| 4.5 or more | Achieved Excellence | Achieved Excellence |
| 3.5 - 4.4 | Exceeded Expectations | |
| 3.0 - 3.4 | Achieved Expectations | |
| < 3.0 | Unacceptable | |

## Employee's Comments and Signature

*Employee's Comments/Self-Assessment Can Be Attached Using a Word Document*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

| Signature of Employee | | Date |
|---|---|---|
| RICHARD C JACKSON | Digitally signed by RICHARD C JACKSON Date: 2020.10.14 08:06:24 -05'00' | 10/14/2020 |

**Employee's Comments**

## Rating Official's Comments and Signature

| Rating Official's Last Name | Rating Official's First Name | Rating Official's Middle Name |
|---|---|---|
| | | |

| Signature of Rating Official | | Date |
|---|---|---|
| ALICIA L MENDOZA-ERDOGAN | Digitally signed by ALICIA L MENDOZA-ERDOGAN Date: 2020.10.13 14:40:22 -05'00' | |

**Rating Official's Comments**

CC1 - COMMUNICATION:
Officer Jackson has excellent communication skills.  He continues to write decisions that are exceptionally clear, concise and well organized.  Officer Jackson seeks clarification when needed and makes informed contributions to discussions.  He participates during team meetings and is receptive to necessary feedback during individual meetings.  Officer Jackson demonstrates excellent perception of issues and communicates his position effectively.  Also, he has the ability to communicate relevant information effectively to team members, customers and management.  When assistance is needed or questions are asked relating to system usage, decision verbiage or office policy and procedures, Officer Jackson can be counted on to help answer questions in detail. Officer Jackson continues to assist senior and junior officers when that have questions about systems and naturalization application processes.  Officer Jackson, who was one of the officers who first started issuing NTA via Eagle was detrimental in assisting many officers access/ manuever he EAGLE database. For example, Officer Jackson gave EAGLE training of SISO Bernal's team, who encompasses many newer officer in our section. SISO Bernal communicated that Officer Jackson in his training was a wealth of information and his capacity to communicate the complexity of using EAGLE in layman terms gave her officers the ability and confidence to tackle NTAs.

CC2 - CUSTOMER SERVICE:
Officer Jackson continues to complete his work in a timely fashion. He is a conscientious

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
| --- | --- | --- |
| JACKSON | Richard | C |

officer who works well with customers to understand their needs and responds to or relays their concerns. He is punctual, settles quickly to his daily tasks, begins his interviews promptly, and generally adheres to standard interview time frames. In one instance, another officer had taken Officer Jackson's bundle, instead of panicking, Officer Jackson pulled the A#'s from the Interview Check-in spreadsheet to ensure he was ready for his interviews despite not having the files. Officer Jackson does not allow complex cases to accumulate but takes them on in good time. Officer Jackson was responsible to completing NTAs of many C4 cases pending in the file room, several were from 2016.

CC3 - REPRESENTING THE AGENCY:
Officer Jackson continues to be consistently present a confident, articulate, professional image to the public.  He had a friendly, pleasant and respectful demeanor in all of his interactions with others.  Officer Jackson is patient and unruffled in his interviews.  He understands the policies and procedures for conducting interviews.  Officer Jackson enforces the law appropriately while at the same time he treats all customers with fairness and respect.  Officer Jackson has actively sought volunteer opportunities and has participated in three special naturalization ceremonies.

C4 - TEAMWORK AND COOPERATION:
Officer Jackson is friendly and engaging and contributes to achieving goals by working collaboratively with his colleagues and supervisors. He independently offers assistance and provides support to his fellow officers. Officer Jackson works and communicates effectively with a variety of personalities and across functional groups.  He exerts a positive influence on fellow officers.  Officer Jackson is always available to assist by taking on an extra interview when the situation demands. He frequently assists when fellow officers who have fallen behind in their interviews, and readily accepts I-751's from officers who were not trained to interview these applications. Officer Jackson is willing to share his knowledge and answer questions on issues he senses others do not fully understand.  He is always willing to take on trainees and observers, all who have reported that they enjoyed and profited from his example and the additional information and tips he has provided. For example, Officer Jackson provided training to newer officers in the usage of EAGLE for NTA creation.  He gave these new officers the confidence to tackle NTAs. Officer Jackson's previous supervisor remarked at how impressed he was with one of his newest employees, her decision writing and knowledge of the law was exceptional for an employee with no prior immigration knowledge.  He later was informed by this new employee that all the credit should go to Officer Jackson, as he takes the time to assist her and answer any question, she may have anytime she needs help. Officer Jackson is approachable and knowledgeable and makes himself available to other officers.  He is my "to go to" person when less experienced officers need assistance and guidance in interviewing and adjudicating cases; he removes uncertainty, drives up confidence and informs of what is expected. Most recently, Officer Jackson volunteered to assist in the Video Interview Pilot Program.  He was the first officer to video interview L-1, N400 applicants, as well as trained other officers in this process.

CC5 - TECHNICAL PROFICIENCY:
Officer Jackson continues to demonstrate and apply relevant knowledge and skills to perform work in accordance with applicable guidelines.  He understands the technical difficulty and complexity of all systems used to undertake the work and is able to advise others accordingly.  Officer Jackson is able to accomplish complex tasks with expertise and with minimal to no supervisory assistance. Officer Jackson is skilled at writing intricate decisions and working complex adjudication cases with minimal to no errors.  He accomplishes tasks in a highly efficient and effective manner and makes high impact contributions to his team's efforts.  For example, Officer Jackson has a high production

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

rate and submits the most adjudications cases requiring supervisory review. Further, he remains alert to issues of inadmissibility or deportability. For example, Officer Jackson completed a total of 28 NTAs that were submitted to OCC for review. 18 have been served; four are pending review and six were rejected due to insufficient evidence provide by FDNS SOF. Over half of these NTAs were C-4 cases requiring expeditious processing to meet Equalization Report deadlines. Officer Jackson works on producing decisions that are thorough and detailed thereby supporting the Service's stance on the decision.  Officer Jackson continues to broaden and enhance his expertise by performing more complex work activities.  For example, Officer Jackson infrequently misses identifying aggravated felons, even obscured ones. This is because he pays attention to detail and takes appropriate corrective measures. Officer Jackson does not repeat the same error on his decisions.  Officer Jackson is experienced and accomplished in the use of applicable electronic systems. He has a clear understanding of the laws and regulations that apply to the various form types that he is trained on. Officer Jackson takes initiative to expand his knowledge and expertise and can be depended on to self-manage his work efficiently. For example, Officer Jackson has written assessments on two separate cases that have been referred for De-naturalization and accepted by FDNS for further review. Officer Jackson has improved his skills in taking sworn statements and has assisted other officers in this area.  Officer Jackson is always timely in making decisions, updating his statistics, and other administrative tasks with minimal reminders.

PPG1 - Quality:
Officer Jackson is a competent and productive adjudicating officer.  His decisions are generally well-reasoned, grounded on evidence, and nearly always correct. He has vastly improved in taking sworn statements of high quality. Officer Jackson's return rate for processing errors or omissions has been minimal to none and his backlog is more than well within reason, considering that he had completed the most C-4 NTA's in his team and probably section, as well as, a junior officer.

PG2 - Fraud Detection and National Security:
Officer Jackson continues to remain alert to indicators of fraud, inadmissibility, and national security concerns in accordance with established policy and procedure.  He is conscientious in his review of files and electronic databases for fraud indicators and National Security concerns.  Officer Jackson is aware of the importance of maintaining the integrity and security of the immigration system. Officer Jackson has made two Denatz referrals and several fraud referrals.

PG3 - Contribution to the USCIS Mission:
Officer Jackson continues to be a reliable officer who exhibits a strong dedication to the mission. He contributes to the USCIS mission and assists in the achievement of goals through effective teamwork, collaboration and work production. Officer Jackson is competent, conscientious and a team player. Officer Jackson performs works of good quality, shares skills and knowledge with coworkers, and is sought as a resource by supervisors.  For example, several officers have had issues with submitting Recidivist referrals to FDNS.  Officer Jackson met with the officers and provided a detailed template to use when sending referrals to FDNS and which were eventually accepted. Officer Jackson has also provided assistance when the NTA system, EAGLE, malfunctions. As well as, provided training on the use of EAGLE.

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| JACKSON | Richard | C |

## Reviewing Official's Comments and Signature

| Reviewing Official's Last Name | Reviewing Official's First Name | Reviewing Official's Middle Name |
|---|---|---|
| Summers | Stacey | Lynn |

| Signature of Reviewing Official | | Date |
|---|---|---|
| STACEY L SUMMERS | Digitally signed by STACEY L SUMMERS<br>Date: 2020.10.14 07:02:30 -05'00' | 10/14/2020 |
| Reviewing Official's Comments | | |
| | | |

## Next Steps

1. Save the document.
2. Submit the document to the Reviewing Official for comments and signature.
3. Conduct Annual Appraisal with Employee.
4. Attach the entire Ratings Calculator, Form G-1258, to the Employee's PPA.
5. Transmit all related documents per Year-end Closeout Procedures.
6. Email questions to the Performance Management team at **USCIS.PerformanceManagement@uscis.dhs.gov**.

# USCIS Performance Management Ratings Calculator
## for Performance Plan & Appraisal

**USCIS Form G-1258**
Internal Use

### Department of Homeland Security
U.S. Citizenship and Immigration Services

## USCIS Privacy Act Statement

**DISCLOSURE:** Voluntary.

**AUTHORITY:** 49 USC Section 114(n).

**PRINCIPAL PURPOSES:** This information will be used to document your performance appraisal and to certify that the rating official has discussed your performance appraisal with you.

**ROUTINE USES:** This information may be shared in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding, or for routine uses identified in the Office of Personnel Management's system of records, OPM/GOVT-2 Employee Performance File System Records.

## General Instructions

1. **Instructions to complete the Employee Information**
   A. **Complete the following fields:**
      (1) **Organization name**
      (2) **Employee First, Middle, Last Name**
      (3) **SSN Last 4**
      (4) **Employee Title**
      (5) **Employee Series**
      (6) **Employee Grade**
   B. Select **Non-Supervisor** or **Supervisor** checkbox in the section entitled *Information About the Employee*
   C. Enter the Rater and Reviewing Official's name on *Page 3.* of the form (the employee's information is entered automatically from the information contained on *Page 1.*)
2. Instructions to Properly Complete the Rating:
   A. Competencies and the associated weights will be auto-populated
   B. Enter a brief goal description and associated weight
   C. Select a rating for each Competency and Goal
3. Instructions for Entering Comments
   A. Rater enters their comments in the **Rating Official Comments** field
   B. Reviewing Official enters their comments in the **Reviewing Official Comments** field
   C. Employee may enter comments at or after the appraisal is conducted in the **Employee Comments** field
4. Steps to Check Spelling in the Document
   A. Click on the **Edit** button
   B. Select **Check Spelling** option from the list
   C. Click on the **Comments**, **Fields**, and **Editable Text**...option
   D. Click the **Start** button in the Check Spelling dialog box
5. Signature Order
   A. Reviewing Official
   B. Rating Official
   C. Rated Employee

## Organization (Directorate or Program Office)

| FOD C34 CHI |
| --- |

## Information About the Employee *(Required Fields)*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
| --- | --- | --- |
| Jackson | Richard | C |

| The Employee is a *(select only one)*: | ☐ Supervisor | ☒ Non-Supervisor |
| --- | --- | --- |

| Employee's Title/Series/Grade | Employee's Last 4-digits of SSN |
| --- | --- |
| ISO 2/1801/12 | 7357 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

### Performance Period

| Date PPA was Issued *(mm/dd/yyyy)* | Rating Cycle End Date *(mm/dd/yyyy)* |
|---|---|
| 10/15/2020 | 09/30/2021 |

| Employee's Rating *(Auto-populated based on points earned)* | National Finance Center Rating Code *(Auto-populated based on rating)* |
|---|---|
| Achieved Excellence | E5 |

### Competencies

| Competency Number | Brief Description | Weight | Performance Rating *(Select from drop down list)* | Points |
|---|---|---|---|---|
| 1 | Communication | 20% | 5-Achieved Excellence | 1.0 |
| 2 | Customer Service | 20% | 4-Exceeded Expectations | 0.8 |
| 3 | Representing the Agency | 20% | 5-Achieved Excellence | 1.0 |
| 4 | Teamwork and Cooperation | 20% | 5-Achieved Excellence | 1.0 |
| 5 | Technical Proficiency | 20% | 5-Achieved Excellence | 1.0 |
| 6 | | | | |
| 7 | | | | |
| Competencies Evenly Weighted to Add Up to 100% Total => | | 100% | < | 4.8 |

### Performance Goals

| Goal Number | Brief Description | Weight | Performance Rating *(Select from drop down list)* | Points |
|---|---|---|---|---|
| 1 | Quality | 35% | 5-Achieved Excellence | 1.8 |
| 2 | National Security and Fraud Detection | 35% | 5-Achieved Excellence | 1.8 |
| 3 | Contribution to the USCIS Mission | 30% | 4-Exceeded Expectations | 1.2 |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| Weights Must Add Up to 100% Total => | | 100% | | 4.7 |

### Rating Calculation

| Category | Points Earned | % of Rating | Points Toward Rating |
|---|---|---|---|
| Competencies | 4.8 | 40% | 1.9 |
| Performance Goals | 4.7 | 60% | 2.8 |
| The total will be rounded to the nearest one-tenth (for example, using standard rounding, 3.45 is rounded up to 3.5; 3.44 is rounded to 3.4) | | Total | 4.7 |

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

### Overall Rating

| Point Scale | Summary Rating Descriptions | Rating |
|---|---|---|
| 4.5 or more | Achieved Excellence | Achieved Excellence |
| 3.5 - 4.4 | Exceeded Expectations | |
| 3.0 - 3.4 | Achieved Expectations | |
| < 3.0 | Unacceptable | |

## Employee's Comments and Signature

*Employee's Comments/Self-Assessment Can Be Attached Using a Word Document*

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

| Signature of Employee | Date |
|---|---|
| **RICHARD C JACKSON** Digitally signed by RICHARD C JACKSON Date: 2021.10.25 18:41:04 -05'00' | 10/25/2021 |

**Employee's Comments**

## Rating Official's Comments and Signature

| Rating Official's Last Name | Rating Official's First Name | Rating Official's Middle Name |
|---|---|---|
| Tucker | Shanita | R |

| Signature of Rating Official | Date |
|---|---|
| **SHANITA R TUCKER** Digitally signed by SHANITA R TUCKER Date: 2021.10.25 12:34:26 -05'00' | 10/25/2021 |

**Rating Official's Comments**

Communication:  Officer Jackson communicates in a clear and concise manner.  His written communications require very few corrections.  He responds timely to all inquiries from his first line supervisor.  Officer Jackson effectively communicates with Applicants in his interviews to elicit information that will assist him in completing his cases. Officer Jackson effectively tailors his communication to the audience he is addressing and is able to anticipate unique situations and respond accordingly. He meets regularly with his supervisor to address his more difficult cases or to receive guidance when he is unsure of the next step.

Customer Service:  Officer Jackson reaches out to Applicants routinely during the interview to gather information about their requirements and needs.  He discusses expectations so that Applicants understand what the next stage in the process is after the interview.  He responds to questions or requests from Applicants in a reasonable time frame.

Representing the Agency: Officer Jackson represents the Agency every day in his interactions with Applicants during their interviews.  He is always professional and respectful in his interactions.  He engages Applicants in a  manner that advances the Agency's goals by increasing the respect the respect that Applicants have for the Agency. He has recently attended ceremonies both in the office and at federal courthouse on behalf of the Agency and is always professional and courteous.  He is also a member of

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

the military team and works to adjudicate military naturalization cases.   In this capacity he deals directly with members of the military and represents USCIS.

Teamwork and Cooperation:  Officer Jackson treats his co-workers and all supervisors with respect.  He offers assistance to his co-workers both when asked and independently.  In recent months, Officer Jackson has been interviewing more complex cases and has been reaching out to other Agency components (including ICE and FDNS) to coordinate and insure that any investigations they have ongoing will not be affected by his interviews. Recently, when one of his co-workers called out of the office unexpectedly, Officer Jackson pulled the bundle of cases and began interviewing without hesitation, which meant that there was no delay in the interviews.

Technical Proficiency:  Officer Jackson successfully applies knowledge and skills to independently complete his work.  He uses appropriate tools and systems to make decisions or recommendations.  He completes all job related training timely.  Officer Jackson's work is high quality and is sometimes returned for grammatical errors or errors with the law. He regularly forwards work for supervisory review.  Officer Jackson will approach his supervisor or legal counsel for assistance on only the most complex questions of law. Officer Jackson is currently interviewing more form types (N-400, I-751) which has added to his knowledge of the law and his technical proficiency.  He has conducted over 15 Sworn statements covering a variety of topics since the ratings period began.  He also worked on the service of two NTA's in the ratings period.  Officer Jackson has one of the highest denial rates on his team.  As the rating period progressed, Officer Jackson has worked more complex cases including Ombudsman cases and cases involving highly complex fraud issues.

National Security/Fraud Detection: Officer Jackson completes TECS inquiries and submits TECS resolutions when required.  Officer Jackson regularly reviews work for fraud patterns and trends and approaches his supervisor to discuss his more complex cases.  He has referred cases to FDNS and regularly contacts  FDNS for support.  He has referred a large number of cases to FDNS in relation to his cases and continues to conduct high quality sworn statements that he uses to substantiate fraud.

Quality:  Officer Jackson writes high quality decisions that require few corrections.  He is compliant with naturalization law, regulation and USCIS policies and procedure.  He effectively communicates accurate information on highly technical immigration laws, regulations and policies.  He supports his fellow Officers and is always willing to share his knowledge.  He independently conducts his own research and is always open to constructive criticism from his supervisor.

Contribution to USCIS Mission: Officer Jackson is professional and courteous to all Applicants that he interviews which reflects positively back on USCIS.  Officer Jackson's work contributes to the mission by reducing the number of pending cases waiting for a decision.

## Ratings Calculator

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

## Reviewing Official's Comments and Signature

| Reviewing Official's Last Name | Reviewing Official's First Name | Reviewing Official's Middle Name |
|---|---|---|
| Summers | Stacey | L |

| Signature of Reviewing Official | | Date |
|---|---|---|
| STACEY L SUMMERS | Digitally signed by STACEY L SUMMERS Date: 2021.10.25 12:46:13 -05'00' | 10/25/2021 |
| Reviewing Official's Comments | | |
| | | |

## Next Steps

1. Save the document.
2. Submit the document to the Reviewing Official for comments and signature.
3. Conduct Annual Appraisal with Employee.
4. Attach the entire Ratings Calculator, Form G-1258, to the Employee's PPA.
5. Transmit all related documents per Year-end Closeout Procedures.
6. Email questions to the Performance Management team at **USCIS.PerformanceManagement@uscis.dhs.gov**.

# USCIS Performance Management Ratings Calculator
# for Performance Plan & Appraisal

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**DISCLOSURE:** Voluntary.

**AUTHORITY:** 49 USC Section 114(n).

**PRINCIPAL PURPOSES:** This information will be used to document your performance appraisal and to certify that the rating official has discussed your performance appraisal with you.

**ROUTINE USES:** This information may be shared in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding, or for routine uses identified in the Office of Personnel Management's system of records, OPM/GOVT-2 Employee Performance File System Records.

| **Organization** (Directorate or Program Office) | | |
|---|---|---|
| US Citizenship and Immigration Services (USCIS) | | |
| **Information About the Employee** *(Required Fields)* | | |
| **Employee's Last Name** | **Employee's First Name** | **Employee's Middle Name** |
| Jackson | Richard | C |
| **The Employee is a Non-Supervisor** | | |
| **Employee's Title/Series/Grade** | **Employee Identification Number** | |
| IMMIGRATN SVCS OFFCR/1801/12 | 0278399589 | |

| **Performance Period** | |
|---|---|
| **Date PPA was Issued** | **Rating Cycle End Date** |
| *(mm/dd/yyyy)* | *(mm/dd/yyyy)* |
| 10-28-2021 | 09-30-2022 |
| **Employee's Rating** | **National Finance Center Rating Code** |
| *(Auto-populated based on points earned)* | *(Auto-populated based on rating)* |
| Exceeded Expectations | E4 |

## Competencies

| Competency Number | Brief Description | Weight | Performance Rating | Points |
|---|---|---|---|---|
| 1 | COMMUNICATION | 20.00% | 4-Exceeded Expectations | 0.8 |
| 2 | CUSTOMER SERVICE | 20.00% | 4-Exceeded Expectations | 0.8 |
| 3 | REPRESENTING THE AGENCY | 20.00% | 5-Achieved Excellence | 1.0 |
| 4 | TEAMWORK AND COOPERATION | 20.00% | 4-Exceeded Expectations | 0.8 |
| 5 | TECHNICAL PROFICIENCY | 20.00% | 5-Achieved Excellence | 1.0 |
| **Competencies Evenly Weighted to Add Up to 100% Total =>** | | 100% | | 4.4 |

## Performance Goals

| Goal Number | Brief Description | Weight | Performance Rating | Points |
|---|---|---|---|---|
| 1 | Quality: Accurately applies the appropriate rules, regulations, precedent decisions, policies, and procedures associated with the Immigration and Nationality Act (INA) in the timely completion of work assignments. | 35% | 4-Exceeded Expectations | 1.4 |
| 2 | National Security/Fraud Detection: Maintains the integrity and security of the immigration system through detection and deterrence of immigration-related fraud. Accurately applies national security and public safety laws, regulations and policies through interviews, security checks, document reviews, and other actions in accordance with established guidelines. | 35% | 5-Achieved Excellence | 1.8 |
| 3 | Contribution to the USCIS Mission: Contributes to the achievement of the USCIS mission through effective teamwork and collaboration. | 30% | 4-Exceeded Expectations | 1.2 |
| **Weights Must Add Up to 100% Total =>** | | 100% | | 4.4 |

## Rating Calculation

| Category | Points Earned | % of Rating | Points Toward Rating |
|---|---|---|---|
| Competencies | 4.4 | 40% | 1.8 |
| Performance Goals | 4.4 | 60% | 2.6 |
| **The total will be rounded to the nearest one-tenth (for example, using standard rounding, 3.45 is rounded up to 3.5; 3.44 is rounded to 3.4)** | | **Total** | 4.4 |

**Overall Rating**

| Point Scale | Summary Rating Descriptions | Rating |
|---|---|---|
| 4.5 or more | Achieved Excellence | Exceeded Expectations |
| 3.5 - 4.4 | Exceeded Expectations | |
| 3.0 - 3.4 | Achieved Expectations | |
| < 3.0 | Unacceptable | |

**Employee's Signature**

| Employee's Last Name | Employee's First Name | Employee's Middle Name |
|---|---|---|
| Jackson | Richard | C |

| Signature of Employee | Date |
|---|---|
| Jackson, Richard C | 2022-10-26 15:01:58 |

**Employee's Comments**

I concur with the final PPA Rating

# EXHIBIT 6

| Rating Official's Signature | | |
|---|---|---|
| **Rating Official's Last Name** | **Rating Official's First Name** | **Rating Official's Middle Name** |
| Hamilton | Ahmad | J |
| **Signature of Rating Official** | | **Date** |
| Hamilton, Ahmad J | | 2022-10-24 20:23:38 |

## Rating Official's Comments

Duplication of prior Ratings comments, just in case:

### Core Competency #1: Communication

ISO Jackson maintained excellent rapport with his fellow officers, contract staff and management. He understands and incorporated active listening into his interactions with both applicants and coworkers. He promptly responded to all inquiries and emails, and readily seeks clarification on issues when unsure. He regularly kept his 1st –line SISO apprised of any issues or concerns regarding casework, and other matters at hand.

His verbal and written communications were well-formed and cordial. His written work (NOIDs/NOIRs/final denials) contained an occasional typo or two; when corrections were required, ISO Jackson readily accepted feedback from supervisory personnel in a positive manner.

### Core Competency #2: Customer Service

ISO Jackson's professional habits included preparing his cases in advance and timely starting interviews. His demeanor is professional and courteous. He readily accepted additional cases when other officers were unavailable to interview; officers were behind schedule, or simply to process families together.

There were no complaints during the ratings period.

### Core Competency #3: Representing the Agency

ISO Jackson was an enthusiatic participant in functions such as outreaches, naturalization ceremonies, or other occasions outside of the core functions of an adjudicator. This included a high-profile naturalization ceremony at Wrigley Field, which was attended by several notable dignitaries. He engages regularly with the general public (see CC2 above) as part of his routine interview assignments. In that regard, he is more than adequately meeting this Competency. His office is professional and orderly in appearance, and as noted previously, he is very attentive when interacting with the public during the interview.

### Core Competency #4: Teamwork and Cooperation

ISO Jackson is a team player. He works effectively and maintained positive relationships with officers/employees within the team and throughout the office. ISO Jackson displayed the essential elements of teamwork, and leadership, as he volunteered without hesitation to have new employees and interns, or other

invested parties, shadow his interviews. He is very willing to assist in the development of new officers, and has served as an informal mentor to his peers. He did hesitate to adjudicate high priority, or highly complex cases that were assigned.


**Core Competency #5:  Technical Proficiency**

ISO Jackson continues to improve his understanding of immigration law, regulations and policies. He used this knowledge to produce high quality, timely decisions. ISO Jackson sought guidance from his supervisor, senior officers, or other knowledgeable sources such as OCC, appropriately to address complex cases. He is very comfortable mentoring newer officers, and can be relied upon to correctly process complex filings.

ISO Jackson timely completed all mandatory ISO training requirements in PALMS; he also properly maintained access to all relevant databases and systems required to complete his assigned tasks. He has attended all scheduled OCC-specific training courses, staff and team meetings.


**Performance Goal #1:  Quality**

ISO Jackson performed very well in this Performance Goal. This is reflected in how accurately he properly applied laws, regulations, policies and procedures associated with the INA. His written decisions occasionally contained typos or errors, but ISO Jackson readily accepts any feedback and promptly takes steps to correct his work accordingly. To date, his NOIDs/NOIRs and final decisions have been correct, concise and timely. He worked cases diligently, providing quality customer service. As noted before, ISO Jackson has an excellent work ethic. Overall, his productivity is well above an officer at his current experience level. ISO Jackson is enthusiastic in developing his knowledge of the law, regulations, policies and procedures.

ISO Jackson has also shown very good proficiency at completing Notices to Appear (NTAs) following the denial of the I-751 Petition, and termination of the applicant's Conditional Resident Status. One noted area of improvement, however, is that ISO Jackson should avoid copying/pasting the verbiage of the I-751 Petition denial *verbatim* into the I-213 narrative that is associated with the I-862 NTA.

His administrative responsibilities, including updating ELIS, eSTAT, WebTA, ICMS, and other agency systems, are efficiently performed.


**Performance Goal #2: National Security/Fraud Detection**

ISO Jackson did very well in this Performance Goal. He routinely conducted second interviews to elicit sworn testimony, and has used that information to articulate high-quality referrals to FDNS; at close of this ratings period, he has submitted eight (8) referrals. In instances where cases have been returned from FDNS with a finding of fraud, he has produced detailed NOIDs/NOIRs that fully outline and analyze the derogatory information found.

Overall, he continued to ensure that TECS Hits, positive Name Checks, and IDENT criminal matters were properly reviewed and resolved prior to final adjudication. He conducted security checks of all applicable systems. To date, no cases have been returned for DQR or QA concerns.


**Performance Goal #3:  Contribution to USCIS Mission**

ISO Jackson promoted a professional image. He treats his colleagues and the public at large with respect. It is clear that he has a solid understanding of the importance of the agency mission, and a strong desire to maintain the integrity of the process.

| Reviewing Official's Signature | | |
|---|---|---|
| **Reviewing Official's Last Name** | **Reviewing Official's First Name** | **Reviewing Official's Middle Name** |
| Phillips | Paul | H |
| **Signature of Reviewing Official** | | **Date** |
| Phillips, Paul H | | 2022-10-25 12:36:30 |

| Reviewing Official's Comments |
|---|

Concur with final rating.

**From:** Bates, Stacy L
**Sent:** Thursday, February 23, 2023 11:07 AM
**To:** Richard Jackson
**Subject:** RE: ISO 2 ESC-2022-0044 Interview

Yes, selections have been made and sent to our hiring office.

*Thank you*

*Stacy Bates*

*Operation Support Specialist*
*Vermont Service Center*



**From:** Richard Jackson <rcjackson83@outlook.com>
**Sent:** Thursday, February 23, 2023 11:52 AM
**To:** Bates, Stacy L <Stacy.L.Bates@uscis.dhs.gov>
**Subject:** RE: ISO 2 ESC-2022-0044 Interview

| **CAUTION:** This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Phishing" button to report it as a phishing attempt. |
| --- |

Good morning Stacy,

Would you be able to tell me if selections have been made yet?

Best Regards,
Richard C. Jackson

-------- Original message --------
From: "Bates, Stacy L" <Stacy.L.Bates@uscis.dhs.gov>
Date: 1/13/23 13:00 (GMT-06:00)
To: Richard Jackson <rcjackson83@outlook.com>
Subject: RE: ISO 2 ESC-2022-0044 Interview

Will do.

All the best to you.


Thank you


*Stacy Bates*

*Operation Support Specialist*

*Vermont Service Center*





---

**From:** Richard Jackson <rcjackson83@outlook.com>
**Sent:** Friday, January 13, 2023 1:43 PM
**To:** Bates, Stacy L <Stacy.L.Bates@uscis.dhs.gov>
**Subject:** RE: ISO 2 ESC-2022-0044 Interview


**CAUTION:** This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Phishing" button to report it as a phishing attempt.


Stacy,


After speaking with my SISO, I will be able to take leave. You can contact me on Teams with the email you have (rcjackson83@outlook.com). Thank you!